```
 1              IN THE UNITED STATES DISTRICT COURT

 2               FOR THE DISTRICT OF MARYLAND

 3                    SOUTHERN DIVISION

 4   ROCK SPRING PLAZA II, LLC,    ) CIVIL ACTION
                                   ) NO. PJM-20-1502
 5              Plaintiff,         )
                                   )
 6   v.                            )
                                   )
 7   INVESTORS WARRANTY OF AMERICA,)
     LLC, et al.,                  )
 8                                 )
                Defendants.        )
 9
                     TRANSCRIPT OF PROCEEDINGS
10           BEFORE THE HONORABLE PETER J. MESSITTE
                 UNITED STATES DISTRICT JUDGE
11             TUESDAY, JULY 6, 2021; 2:30 P.M.
                    GREENBELT, MARYLAND
12
     FOR THE PLAINTIFF:
13
             PILLSBURY WINTHROP SHAW PITTMAN LLP
14           BY:  KATHERINE T. DANIAL, ESQUIRE
             BY:  WILLIAM M. BOSCH, ESQUIRE
15           1200 Seventeenth Street NW
             Washington, DC  20036
16           (202) 663-8000

17   FOR THE DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC

18           SEYFARTH SHAW LLP
             BY:  REBECCA A. DAVIS, ESQUIRE
19           975 F Street NW
             Washington, DC  20004
20           (202) 828-3597

21

22   OFFICIAL COURT REPORTER:
     Renee A. Ewing, RPR, RMR, CRR - (301) 344-3227
23
        ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***
24

25
```

1    APPEARANCES (Continued):

2    FOR THE DEFENDANT ROCK SPRINGS DRIVE:

3                KROPF MOSELEY PLLC
             BY:  SARA KROPF, ESQUIRE
4            1100 H Street NW, Suite 1220
             Washington, DC  20005
5            (202) 627-6900

6    FOR THE DEFENDANT TRANSAMERICA CORPORATION:

7                DLA PIPER LLP
             BY:  ANTHONY L. MEAGHER, ESQUIRE
8            BY:  NICOLE M. KOZLOWSKI, ESQUIRE
             6225 Smith Avenue
9            Baltimore, Maryland  21209
             (410) 580-4106

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE DEPUTY CLERK:   The United States District Court

2   for the District of Maryland is now in session.   The Honorable

3   Peter J. Messitte presiding.

4          The matter now pending before this Court is

5   PJM-20-cv-1502, Civil Docket No. Rock Spring Plaza II, LLC vs.

6   Investors Warranty of America, LLC.

7          The matter now comes before the Court for the purpose of

8   a motions hearing.

9          THE COURT:   All right.   Counsel for plaintiff,

10  identify yourselves, please.

11         MR. BOSCH:   Good afternoon, Your Honor.   William

12  Bosch from the law firm of Pillsbury Winthrop Shaw Pittman on

13  behalf of the plaintiff.

14         THE COURT:   Go ahead.   Sorry.

15         MR. BOSCH:   It's William Bosch on behalf of the

16  Plaintiff, Rock Springs Properties, LLC, and with me is my

17  colleague, Katherine Danial, who will introduce herself next.

18  Ms. Danial will be arguing the motion.

19         Your Honor, the confusion may be that I have changed law

20  firms.

21         THE COURT:   That's where I am confused.   Who are you

22  with now?

23         MR. BOSCH:   It's Pillsbury Winthrop Shaw Pittman.

24         THE COURT:   Anyone else here as plaintiff's counsel?

25         For Defendant, Investors Warranty, are they on --

1          MR. BOSCH:  And Judge, if I may, I want to make sure

2    that the Court captures the appearance on behalf of the

3    plaintiff of Katherine Danial who will be arguing the motion.

4          THE COURT:  Understood.

5        Is counsel for Investors Warranty here?

6          MS. DAVIS:  Yes, Your Honor.  Rebecca Davis with

7    Seyfarth Shaw for Investors Warranty of America.

8          THE COURT:  Rock Springs Drive?

9          MS. KROPF:  Yes, Your Honor.  Sara Kropf of Kropf

10   Moseley for Rock Springs Drive.

11         THE COURT:  For Transamerica?

12         MR. MEAGHER:  Good afternoon, Your Honor.  Anthony

13   Meagher, DLA Piper, for Transamerica.

14         THE COURT:  Anyone else?  Okay.

15         MS. KOZLOWSKI:  Nicole Kozlowski of DLA Piper for

16   Defendant Transamerica.

17         THE COURT:  All right.  Anyone else?  Okay.

18       A couple of points to make at the beginning before you

19   get started.  This is a non-jury case, pure equity.  The judge

20   becomes the decider of the facts on the merits if it gets

21   there, right?  You are asking me, at this point, Transamerica,

22   to close the door and not even consider the possibility of

23   Transamerica's liability based on a motion to dismiss.

24         Wouldn't it make more sense for me to simply look at this

25   case in its entirety on the merits and then not get stuck in

1  decisions involving either a motion to dismiss or summary

2  judgment?  I mean, we can go through the motions, but given the

3  -- given the fact that I am ultimately the trier of fact,

4  what's -- what's gained here?  What -- and what's risked is I

5  close the door on a potential cause of action.  I need someone

6  to explain.

7          MR. MEAGHER:  Yes, Your Honor.  No, you shouldn't

8  force Transamerica to go --

9          THE COURT:  Go ahead.

10          MR. MEAGHER:  Your Honor, no, you should not force

11  Transamerica to go through the duration of this litigation,

12  participate in discovery, expensive depositions when there has,

13  one, been no factual allegations sufficient to sustain a veil

14  piercing claim for fraudulent conveyance against Transamerica,

15  and, two, on the face of the complaint, it's barred by

16  limitations and there is no basis under Rule 15 to relate back

17  the filing of the amended complaint to the original complaint

18  being filed.  And that's where I'd like to start, Your Honor,

19  with my argument is on limitations.

20          THE COURT:  Before you start with that, I am going to

21  get a response to what I -- the issue I just posed by anyone

22  else.  Does the plaintiff have anything to say about this,

23  Mr. Bosch?

24          MS. DANIAL:  Judge, this is Katherine Daniel on

25  behalf of the plaintiff.  We wholeheartedly agree with you and

1    disagree with Transamerica here.  We believe that this is

2    absolutely a situation in which we should continue based on the

3    merits of the case, that we have without a doubt alleged a

4    plausible claim for relief against Transamerica, and we should

5    continue based on that fact.

6              THE COURT:  Okay.  Well, I will give you some

7    opportunity to get into the factual workup.  I mean, I am going

8    to have very specific questions about when certain emails,

9    among other things, were discovered as far as the apparent

10   intent of Transamerica to get out from under any kind of

11   obligation on this ground lease.

12        I understand the argument is made that the limitations

13   have run, which may or may not be a compelling argument, but

14   that really is where I come down to it in the end.  What did

15   plaintiff know, that is Rock Spring Plaza, at the time that the

16   initial suit was filed June 5th of 2020?  When did it come into

17   possession of emails where it appears rather clearly, candidly,

18   that Transamerica was trying to, quote, to get this case off

19   its books and somehow potentially walk away from a liability

20   that Rock Spring Drive might have?  That would bear on

21   timeliness of amendment, relation back, and so on.

22        I mean, there is very little question in my mind that the

23   claim against Transamerica arises out of the same transaction.

24   That's not the sticking point here.

25        The sticking point, according to you, Mr. Meagher, is

1   that limitations on its face, on their face, whatever, has run,

2   and the Court cannot entertain any further consideration of

3   Transamerica.

4        That said, it's my supposition that discovery is in

5   process and Transamerica will still be involved in discovery

6   whether it is a named defendant or not.  That's my background.

7   That's what I am bringing to this case right now.

8        So I will hand the mike to you, Mr. Meagher, to make the

9   argument that you care to, but that's really where I am as we

10  go.

11       Go ahead.

12       MR. MEAGHER:  Thank you, Your Honor.

13       It is obviously a much different situation to be involved

14  in discovery and have a few witnesses deposed, perhaps, and to

15  spend hundreds of thousands of dollars participating in all

16  aspects of the litigation where you are a defendant.  And the

17  statute of limitations is designed is to give a defendant, such

18  as Transamerica, who was not served -- not sued within three

19  years of the alleged fraudulent conveyance repose against that

20  happening.

21       So there is no dispute that the fraudulent conveyance

22  occurred more than three years prior to the amended complaint

23  being filed, and there is no dispute that there is a three-year

24  statute of limitations on fraudulent conveyances.  So the only

25  way this complaint survives is if there is relation back under

1   Rule 15(c), and there is simply no basis, Your Honor, for there

2   to be relation back here.

3        And the reason for that is that the plaintiff has to

4   show, among other things, that Transamerica Corporation knew or

5   should have known that the action would have been brought

6   against it but for a mistake concerning the proper party's

7   identity.  There has to be a mistake made by the plaintiff in

8   naming the correct party or not naming a party.  And the

9   plaintiff tries to gloss over the mistake requirement.

10        If you look at page 13 of their opposition, they quote

11   the *Goodman* case, which is the Fourth Circuit case on this

12   issue, and they don't highlight the language that talks about

13   mistake, but it -- it says right in *Goodman*, as it does in the

14   rule, at bottom, The inquiry when determining whether an

15   amendment relates back looks at whether the plaintiff made a

16   mistake.

17        So did Transamerica Corporation know the plaintiff made a

18   mistake in not naming Transamerica Corporation?  No.  Candidly,

19   to this day, Transamerica doesn't know what mistake the

20   plaintiff allegedly made.

21        If you look at paragraph 13 of the original complaint, it

22   says that tenant is a subsidiary of Transamerica Financial Life

23   Insurance Company, defined as Transamerica.  So a Transamerica

24   entity is mentioned in the original complaint, which was timely

25   filed, but was not named as a defendant.

1        So, if anything, this suggests that Transamerica

2   Corporation, that it would not be named as a defendant in this

3   matter.

4        Now, if you look at the two controlling cases here, it

5   really illustrates effectively the point.  So you have the

6   Fourth Circuit case in *Goodman* and you have the Supreme Court

7   case in *Krupski*.  Those cases show you, Your Honor, what is

8   required in terms of a mistake.

9        So let's start with *Goodman*.  *Goodman* was a case where

10   the complaint said we, the plaintiff, are suing the successor

11   in interest to the party with whom we have a contract, and they

12   named Praxair -- Praxair, Inc., excuse me, and they didn't name

13   the actual successor in interest, they were mistaken about who

14   the successor in interest was, and the actual successor in

15   interest was Praxair Services.  So they named a Praxair entity

16   as a defendant timely, but they were mistaken as to what the --

17   which the right one was.

18        And so what the Court found is -- Judge Niemeyer wrote

19   the opinion that there was a mistake here, they named the wrong

20   entity, and the defendant knew about it, and they were in a

21   best position to know that the wrong defendant had been named

22   because they knew Praxair Services was the real successor in

23   interest.

24        So there was a mistake, there was knowledge, there was

25   relation back.

1          The same thing happened, Your Honor, in the *Krupski* case,

2     which is a Supreme Court case.  And there, the plaintiff was a

3     passenger on a cruise ship and she tripped over a cable and her

4     lawyer sued the wrong cruise line entity.  So the ticket issued

5     by the company, which, of course, the ticket is the contract

6     for passage on the ship, was issued by an Italian company, the

7     parent company of the cruise operator, and it said right in

8     there that you had to give notice to them and you had to sue

9     them within a year.

10          Well, her attorney sued the cruise operator, had the same

11     similar name, but sued the wrong entity.  Well, the Supreme

12     Court said that was a mistake, and we have knowledge on the

13     part of the defendant that they should -- they were the entity

14     that should have been named but for the mistake.  And the

15     reason they knew that is the answer in the case, filed by the

16     cruise -- the cruise operator, said, We are not the right

17     entity; we didn't issue the ticket; our parent company is.

18          And then they filed a motion for summary judgment on the

19     point.  So the Court said, Look, we have a mistake here, they

20     named the wrong entity, and we have knowledge, admitted

21     knowledge on the part of the proper entity that they should

22     have been named because both in *Goodman* and in the *Krupski*

23     case, it was absolutely clear that the plaintiff intended to

24     name the correct entity as a defendant.

25          Well, here, the opposite is true.  What we have is a

1   complaint that sues only two entities, IWA and Rock Springs

2   Drive, and it refers to a Transamerica entity but doesn't sue

3   them, which, again, Your Honor, to me, suggests exactly the

4   opposite, suggests to Transamerica exactly the opposite, that

5   there is not a veil piercing claim being made, that there is no

6   argument being made that Transamerica is -- is -- should be a

7   defendant here, so there was no reason to know that they would

8   be named as a defendant.

9        If the Court has any questions about that -- this issue,

10  I am happy to answer them; otherwise, I am prepared to move on

11  to the failure to state a claim point.  But there is just no

12  mistake here and there is no knowledge of a mistake by

13  Transamerica Corporation, and, therefore, no basis to relate

14  back.

15          THE COURT:  So it doesn't matter if firmer evidence

16  on fraud is not discovered until after limitations -- until, in

17  a situation like this, where at least they are a related party,

18  but the involvement of that unnamed defendant is shown by

19  further evidence after the three-year limitations to have

20  engaged in fraud, that would not extend the time for relation

21  back?

22          MR. MEAGHER:  No, Your Honor.  There has to be a

23  mistake in naming such that the defendant would know that they

24  should have been the party named in the lawsuit, and there is

25  nothing about the lawsuit, the original complaint that would

1    suggest that.

2         And, Your Honor, the -- the limitations -- the issue

3    about discovery of evidence, I mean, that's the whole reason we

4    have -- the limitations isn't, you know, six months.  I mean,

5    you have three years.  So they happened to wait until the last

6    minute to sue, or close to the last minute to sue IWA and Rock

7    Spring Drive, but they could have sued them at any time prior

8    to that and taken discovery and found whatever evidence.

9         So Rule 15 doesn't relieve you of an obligation as a

10   plaintiff to investigate your claim and sue the people you have

11   a claim against.

12        What it does is if you make a mistake about who you name,

13   it allows you, provided you have made a mistake and the real

14   defendant knows you did and is just trying to capitalize on

15   that, it allows you some limited relief -- it allows you relief

16   in that limited circumstance.

17            THE COURT:  Let me pause, Mr. Meagher.  I read in the

18   papers that there was constant refusal on the part of the

19   counsel for one or more of the defendants to disclose the --

20   any details about the assignee in this case.

21        Who is the assignee, what were they connected with, and

22   so on and so forth on the theory, I guess, that the original

23   tenant had no obligation to give that information?

24        Is that a correct statement, that there was a refusal to

25   disclose who was getting the assignment?

1          MR. MEAGHER:  I honestly don't have any idea, Your

2    Honor.  We were not involved in that.  And that was IWA and --

3    and the assignee and the plaintiff, as far as I know, and that

4    was -- and that's kind of the point in that, you know, they

5    sued the parties involved in the transaction, and they -- and

6    Transamerica Corporation wasn't party to any of those

7    communications.

8          THE COURT:  Well, under -- just looking under the

9    restatement second of contracts on the assignment of rights,

10   this is Section 317, essentially, a contractual right can be

11   assigned unless, A, the substitution of the right of the

12   assignee for the right of the assignor would materially change

13   the duty of the obligor or materially increase the burden or

14   risk imposed upon him by his contract or materially impair his

15   chance of obtaining return performance or materially reduce its

16   value to them.

17         If there was a refusal to indicate in the beginning,

18   particularly as to RSD whether they were fairly capitalized,

19   whether they could follow up on the ground lease obligation,

20   and so on and so forth, refusal by counsel to disclose, mind

21   you, why would not the provision of 317 restatement second say,

22   Well, wouldn't the obligor in this case, who would be the

23   original tenant -- sorry, the original landlord be entitled to

24   some security about who it was that was substituting?  And if

25   there was a refusal on the part of counsel for, effectively,

1  the assignor, the assignee that disclosed any of the

2  information, how would the landlord be able to know whether

3  their risk was increased, materially impaired in terms of

4  obtaining return performance?

5       I mean, could Rock Spring Drive -- did it have the

6  capability of performing on a ground lease?  Maybe when you

7  know that Transamerica is in on the deal, the answer is yes,

8  but, of course, Transamerica, from the evidence I have seen,

9  seems to say, Let's get this off the books, whatever that

10 means.

11      Well, anyway, that's sort of the way I see it.  And it

12 isn't necessarily so much as a -- maybe so much as a Rule 15(c)

13 provision.  It may have to do with, basically, a

14 non-concealment of a potential fraudulent position.  I am not

15 deciding that definitively now, but that's one of the concerns

16 that I have here, that -- well, let me hear from Ms. Danial; am

17 I correct?

18             MS. DANIAL:  Yes.

19             MR. MEAGHER:  Judge Messitte, I'm sorry, before you

20 go there, could I respond to the restatement point you made?

21             THE COURT:  Yeah.  Sure.

22             MR. MEAGHER:  Okay.  So I think that goes to whether

23 the -- the assignment is effective or not.  I mean, it, you

24 know -- and we are not -- we don't have a dog in that fight,

25 and so -- but the plaintiff can't just say, Well, Transamerica

1    is in this because we think the veil should be pierced, and

2    they didn't put Transamerica in it as an -- any Transamerica

3    entity in it as a defendant in the original complaint.  So, you

4    know, I -- I don't think the restatement section, while it may

5    go to things like who has liability going forward as between

6    the assignor and the assignee, you know, those communications

7    about what's -- who is the assignee, those were with IWA, not

8    with Transamerica Corporation, and the whole point of corporate

9    -- I mean, Maryland is very loathe as a state to pierce the

10   corporate veil.  It rarely happens.  And there is a slew of

11   District Court of Maryland cases --

12            THE COURT:  I have been on the bench too long to hear

13   this again.  I know what you are talking about.  Do not give me

14   cases about piercing the corporate veil.

15            MR. MEAGHER:  I am just saying that your Court has

16   thrown out at the motion to dismiss stage many cases where

17   there was no basis, no allegation sufficient to support a veil

18   piercing.

19            THE COURT:  Let me -- okay.  Let me hear what

20   Ms. Danial has to say first before you go any further, and then

21   I will let you rejoin.

22         Ms. Danial.

23            MS. DANIAL:  Yes.  Thank you, Your Honor.

24         So, Transamerica here is -- it's claiming that the

25   relation back requirements under Rule 15(c)(1) have not been

1   met, claiming that they could not have known that they should

2   have been named in the lawsuit and that this was a result of a

3   totally informed decision and not a mistake.  However, we

4   believe that these statements rest on facts and not law and are

5   just demonstrably incorrect, especially now that we have, you

6   know, secured some discovery from the other parties to the

7   fraud here, the Transamerica subsidiaries Investors Warranty of

8   America, which I will refer to as IWA, and Rock Springs Drive,

9   RSD.

10          In fact, we received, just this weekend, July 3rd,

11   further evidence that makes clear that Transamerica, which they

12   referred to in -- in also other names, TLIC in their internal

13   emails, was behind the formation of Rock Springs Drive and the

14   intermediary holding company, RCC North America, it's the

15   common corporate parent of both IWA and RSD, and that these

16   internal transactions were designed to move the long-term

17   ground lease liability off of Transamerica's books.

18          We have learned all of this --

19          THE COURT:  Wait a minute.  Did you not know -- I

20   mean, did you not know that -- I believe Transamerica was a 98

21   percent owner of RSD, the parent.  Did you not know that?  Did

22   you not know that Transamerica was a 98 percent owner of Rock

23   Springs Drive at the time you filed suit?

24          MS. DANIAL:  So, what -- after we filed the suit,

25   after trying to acquire all of this information, as you were

1  correctly pointing out, from RSD and reaching out to their

2  counsel in an effort to try and understand this, it was after

3  the -- the case was -- was filed that we did our own inquiry

4  and found out that RSD's two -- I think the company that you

5  were referring to as RCC North America, which is the 98 percent

6  owner of RSD --

7          THE COURT:  Are they totally owned by Transamerica?

8          MS. DANIAL:  Yes.  Yes.  Which we learned subsequent

9  to the filing of this case.

10          THE COURT:  Well --

11          MR. BOSCH:  I just want to correct the record.  As

12  Ms. Danial was not involved in the initial pleading, I want to

13  make sure that the Court gets the correct facts.

14      At the time of the filing of the original complaint, what

15  was discovered is that RCC North America was the common parent

16  and that RCC North America was an affiliate of some

17  Transamerica entity.  What Transamerica's direct role was in

18  the formation of RSD and in the assignment was not known until

19  the recently discovered documents.  All that was known --

20          THE COURT:  What does that mean, "until recently

21  discovered"?  There is a gap between the three-year period and

22  the filing of the amended complaint.  Months go by.  What do

23  you mean, "recently discovered"?

24          MR. BOSCH:  Ms. Danial can give you the specific

25  timeline as to when documents were produced by IWA and RSD in

1  response to our requests.  Those are the documents, the sample

2  of which we just provided to the Court, and, Ms. Danial, why

3  don't you do that so the Court has that specific fact?

4         MS. DANIAL:  Correct.  Yes.  I am happy to do that.

5      So the documents in which we learned of Transamerica's

6  direct involvement in this were all in productions that we

7  received from IWA and RSD from May 2021 on to just recently

8  this past weekend, and so that is what Mr. Bosch is referring

9  to as recently learned.

10        THE COURT:  How were they discovered?  Was there a

11 request for production of documents?  I gather that some of the

12 initial information was simply a request that was made to

13 common counsel and that was refused, the particulars were not

14 given.

15     Was that done outside the litigation or what?

16        MS. DANIAL:  No.  These are documents that are

17 responsive to document requests that were sent from the

18 plaintiff to the defendants IWA and RSD, and rolling

19 productions have been coming in since the beginning of 2021.

20        THE COURT:  All right.  Go ahead.

21        MS. DANIAL:  And, so, again, as I was stating, just

22 this past weekend, we received documents that further speak to

23 Transamerica's role in both the conversations surrounding the

24 assignment and the creation of RSD, and, in fact, the

25 facilitation of that request.

1      We included in our sur-reply that we filed last week two

2  examples of emails that we received in June of 2021 stating

3  conversations between IWA and Transamerica and their efforts to

4  engage outside counsel to explore an exit strategy which would

5  stop monthly losses and any future liability related to the

6  ground lease, and there were over 239 emails between IWA and

7  Transamerica discussing this transaction and discussing the

8  setting up of this RSD, LLC over, you know, a six-day period in

9  order to -- what we believe IWA and Transamerica was looking to

10  dump their obligations under the ground lease.

11      THE COURT:  Well, suppose they were.  What's wrong

12  with that?

13      MS. DANIAL:  So, it is also our understanding in what

14  we have learned subsequently from the discovery that this RSD

15  is inadequately capitalized, that the intention of Transamerica

16  and IWA, in learning that this was a liability on their books,

17  was to create this company to undercapitalize it through just

18  the statute of limitation period and then make it difficult to

19  -- for the plaintiff to then go back and to kind of be held

20  with the bag and make it difficult.

21      While there may have been a breach of contract claim, if

22  there was no money there, the plaintiff would have been held

23  with everything with very little to do, which was why this

24  claim was filed in the first place.

25      THE COURT:  Well, would not Investors Warranty still

1  be on the hook for the ground lease?

2          MS. DANIAL:  I'm sorry.  You cut out.

3          THE COURT:  Would not Investors Warranty still be on

4  the hook as the assignor of the ground lease?

5          MS. DANIAL:  Well, we believe -- yes.  That is true.

6  But we believe that Transamerica is an alterego of IWA as well,

7  and so that in learning in this discovery that they -- that

8  Transamerica was, in fact, behind and pushing for this to come

9  off of their own books, that it was important to bring them

10  into this case as well.

11          THE COURT:  All right.  But I understand what you are

12  seeking here is to set aside the transaction, invalidate the

13  assignment, but what, also get adjustment for the present value

14  of a 99-year ground lease?  What are you seeking here?

15          MS. DANIAL:  No.  Just -- just declaratory judgment

16  that this was a fraudulent conveyance and to secure, as it

17  relates to IWA, to have them continue to be obligated to pay

18  the ground lease because it is our understanding that RSD is

19  undercapitalized and wouldn't be able to continue to do so and

20  we believe are only continuing to pay the ground lease because

21  of this actual suit.

22          THE COURT:  Well, where does Transamerica come in,

23  though?  Does IWA not have the wherewithal to pay -- you want

24  judgment in the amount of the ground lease, don't you?  You

25  want a repossession?  You want to set aside the transfer, as I

1  understand it?  I am looking at your cause of action.

2          MS. DANIAL:  Yes.

3          THE COURT:  You want the, essentially, the assignment

4  to be declared null and void, essentially a breach, then, by --

5  I guess by IWA, and you'd like judgment for the amount of the

6  ground lease.  Is that right?

7          MS. DANIAL:  And it is because we believe that

8  Transamerica and IWA is an alterego as well in order to secure

9  -- we understand that we would be able to move forward and get

10  judgment -- we believe get judgment against RSD and IWA and

11  then be able to then go after Transamerica in an effort to be

12  efficient or doing it all in one claim.

13          MR. BOSCH:  Judge, may I address the ultimate relief

14  that the plaintiff is seeking?

15          THE COURT:  All right.

16          MR. BOSCH:  So -- and, again, this does relate to two

17  different aspects of the complaint against Transamerica.  One

18  is the alterego claim.  That alterego claim could have been

19  brought after this Court declared declaratory judgment in favor

20  of the plaintiff setting aside the fraudulent conveyance and

21  leaving IWA as the ongoing ground lease tenant.

22     And after that, in the course of discovery, if we,

23  plaintiff, had discovered that Transamerica had set up this

24  whole thing for purposes of creating IWA now as a sham entity,

25  which is what we are finding, that's the involvement of RCC

1   North America that was created incident to this, that we could

2   pursue an alterego claim against Transamerica even after the

3   statute of the limitations for the fraud issue had long since

4   expired.

5       The issue, as Transamerica said in their motion, is if we

6   can establish alterego, there is no statute of limitations

7   concern.  The only statute of limitations question arises in

8   question with the affirmative relief that we are seeking, the

9   declaratory judgment, and the set aside.  And Your Honor

10  rightly asks:  Why is Transamerica a party to that?  And that

11  is because what we have now learned is, in fact, that this

12  specific Transamerica entity was a direct party to the fraud

13  and that that fraud was designed to -- to lessen our client's

14  ability to execute and enforce the ground lease.  And we think

15  that Transamerica ultimately should be the obligor under the

16  ground lease.

17      That's the ultimate relief we are seeking against

18  Transamerica.  Not damages, not to accelerate the rent, but to

19  hold Transamerica directly liable as the ground lease tenant

20  because it has used its control over IWA and over RSD to

21  perpetrate a fraud.

22          THE COURT:  All right.  Ms. Danial, do you want to

23  continue?

24          MS. DANIAL:  Sure.  And, so, in -- in continuing with

25  what we have learned here and addressing what Transamerica's

1  counsel has stated about the cases, as stated in *Krupski*, a

2  plaintiff might know that the prospective defendant exists,

3  but, nonetheless, harbor a misunderstanding about the status or

4  role.

5        And that goes back to the fact that while we loosely

6  mentioned Transamerica in the first complaint, we are looking

7  to figure out which was the appropriate entity in doing our own

8  diligence and then supplying a subpoena to Transamerica in

9  December of 2020, getting back from them a -- responses and no

10  documents but actually responses from the same counsel both for

11  Transamerica and IWA.  And in our own diligence, understanding,

12  and learning about the connection between the parties, which

13  then led to IWA producing more documents as they continued to

14  come in showing the fact that the -- that Transamerica was

15  absolutely involved and -- and led and pushed for to get this

16  -- this ground lease off of what they say, quote, their books,

17  and was involved in all of these discussions at every point.

18        And so we are just, as we continue to get this

19  information, bringing it to the Court's attention and bringing

20  to the Court's attention here today, and also to mention that

21  back in December of 2020, during another motion to dismiss

22  hearing, the Court asked us directly whether or not we were --

23  would likely bring Transamerica into this case and said that

24  that was very much still likely going to be the fact, and, just

25  two months later, did just that.

1        THE COURT:  But is there something you discovered

2   between the time I made that remark and the time you filed the

3   amended complaint?  I mean, I know you -- you seem to be

4   arguing that Transamerica has always been behind this, and

5   maybe you didn't have the full -- the full evidence on it until

6   later on, but that's been your suspicion all along, hasn't it?

7   Here is the whole thing from the beginning I mean.

8        MS. DANIAL:  And during that period of time, it

9   became known to us, and to understand their corporate

10  structure, that we felt that Transamerica Corporation was, in

11  fact, the correct defendant to bring into this case, so that is

12  something that we, you know, subsequently after that -- that

13  hearing in December of 2020 learned, and then as we now are

14  receiving productions from the other defendants in this case

15  are being confirmed of that fact.

16       THE COURT:  But when did -- did you do a search of

17  the SEC filings to determine the corporate relationships?  You

18  said that there were certain SEC discovery that you did.  When

19  was that done?  Do you know, Mr. Bosch?

20       MR. BOSCH:  Yes, Your Honor.  Yes.  So the SEC

21  filings were reviewed incident or prior to filing the original

22  complaint.  And what they showed is that a Transamerica

23  subsidiary, RCC North America, was the common parent of, as I

24  said before, RSD and IWA, and so what we knew at the time was

25  that Transamerica, through RCC North America or through IWA,

1   was involved in this effort.

2        We didn't know which Transamerica entity.  We didn't know

3   that they were involved in the fraud.  We just knew that

4   Transamerica was involved, and that's why we alleged in our

5   original complaint that Transamerica -- I think we misnamed the

6   entity even in the original complaint because there was no way

7   to know, from a review of those SEC documents, A, what

8   Transamerica did specifically, and, B, which Transamerica

9   entity controlled IWA or RSD.

10       All we knew about was this interim corporation which we

11  have now discovered was formed in the same year, 2017, as this

12  assignment occurred as -- and roughly contemporaneously with

13  the formation of RSD.  And those are some documents that we

14  discovered when they were produced to us Saturday night, Judge,

15  July 3rd.

16       So, again, the discovery is beginning to unveil more

17  details about the corporate structure between Transamerica, RCC

18  North America, IWA, and RSD, which we did not and could not

19  have known at the time we filed the original complaint.

20       However, Transamerica certainly knew or should have

21  known, and, through their common counsel, Ms. Davis, there was

22  -- I just find it implausible that Transamerica could argue

23  even today that they had no reason to believe that they might

24  have been named --

25            THE COURT:  Well, they may have had reason to

1  believe.  I mean, I don't know that that's such a dubious

2  proposition.  The question is whether you had reason to act

3  sooner and not whether they had reason to believe.  That's

4  really the gist of Transamerica's argument today.  They are not

5  really denying that -- maybe they are, that they had anything

6  to do with this, although this suggests otherwise.

7       Anything more that you want to add, Ms. Danial, at this

8  point?

9       MS. DANIAL:  I think that's it as it relates to the

10  discovery and the mistake, I think that that is -- oh,

11  actually, I apologize, Your Honor.  I think the -- the final

12  thing that I would like to add is that their assertion that --

13  that we would have made some fully informed decision and that

14  there wasn't a mistake or would have had this information is --

15  is belied by the admitted difficulty to navigating

16  Transamerica's multiple corporate entities as both my

17  co-counsel mentioned.

18       But also as another example, even in replying to our

19  discovery, IWA, one of the defendants here, hasn't actually

20  produced anything from that company and it's produced files

21  only from a company called Aegon, which we have come to

22  understand to be the asset arm of Transamerica.  This is just

23  another example of the fact that there are just so many

24  Transamerica entities involved here, Your Honor, and that

25  certainly was excusable for plaintiff not to have named the

1   specific Transamerica entity in its original complaint.

2           THE COURT:  Well, let me go back again to the relief

3   that you are seeking.  I gather, and maybe Mr. Bosch, you are

4   the one to answer this because you had a position on this

5   earlier, do you want to set aside the assignment to RSD?  Do

6   you want to reinstate IWA as the tenant on the lease?  And then

7   what do you want -- and then you want Transamerica to be

8   substituted as the tenant?  Help me out here and see what the

9   outcome of this is.

10          MR. BOSCH:  Yeah.  We would like to hold Transamerica

11  responsible as the ultimate obligor under the lease because

12  what we learned is that IWA is, itself, a sham alterego, is,

13  itself, now being undercapitalized.  They have moved the

14  structure of IWA into an intermediary holding company, RCC

15  North America.  We didn't know that at the time of the initial

16  complaint, and we are learning that now through discovery.

17      So, ultimately, the relief we would seek against

18  Transamerica is not arising solely by reference to alterego

19  liability.  It arises because they were a direct party to the

20  fraud, and, as an equitable matter, they ought to be assuming

21  the obligations of the ground lease tenant through their direct

22  control of that entity in perpetrating a fraud on our client.

23          THE COURT:  But you see -- let me be clear about your

24  reliance on Rule 15.  You see their, what, concealment under

25  fraud, to sort of phrase it the way I think you would want it

1  to be phrased, was such that you should be able to keep them in

2  the case even though the evidence of the alleged fraud comes

3  more than three years after the initial assignment?  Is that

4  correct?  And you do that on the basis of what theory?

5  Fraudulent concealment?

6       I am just trying to get my hands around what it is that

7  takes you beyond three years.  You learned about -- you say you

8  learned about the extent of their fraud, their fraud, because

9  you didn't allege fraud against them in the beginning, but you

10 learned about it after three years, and so what is the theory

11 which you extend limitations?

12       MR. BOSCH:  So, Judge, we do extend -- and I take the

13 Court's point that what we are learning now is that there was

14 fraudulent concealment which would have allowed the plaintiff

15 to name Transamerica as a party at the time of filing the

16 original complaint.

17      At that time, was there a mistake?  And I disagree with

18 counsel's representation that the core component of this is the

19 existence of a mistake.  The core component of this is really

20 the statute of limitations and was there a basis for the

21 defendant, in this case, Transamerica, to know and is it

22 prejudiced by the failure to timely name them and is there a

23 reason for that?

24      Now, we know what the reason was, as the Court has

25 pointed out, that at the time we filed the original complaint,

1   we made legitimate inquiries to counsel for the assignee asking

2   about the entities.  The argument was raised by the assignee

3   that this is a third-party entity, that we have no connection,

4   we are not -- that IWA -- this is all at arms-length -- what we

5   learned from our own research was that IWA is involved through

6   a common parent that is affiliated with Transamerica.  We could

7   not have known that Transamerica was directly involved in

8   perpetrating a fraud.

9            THE COURT:  That's the (c) argument, isn't it?  Is

10   fraudulent concealment a cause of action where the statute

11   would be tolled?  I don't think you believe the theory here

12   that you are really kind of hanging your hat on.  I mean, to

13   argue mistake just on the surface is not a particularly

14   overwhelming argument, but maybe tolling the statute by reason

15   of fraudulent concealment is the correct approach to this.

16            MR. BOSCH:  Well, and, Judge, we could not have

17   argued that until we got this discovery.

18            THE COURT:  I understand that.  I understand that.

19   But now the question is:  Are you -- are you effectively

20   restricted to arguing 15(c) or can you argue tolling of the

21   statute by reason of fraudulent concealment?

22            MR. BOSCH:  Right.  And, of course, I am not going to

23   look a gift horse in the mouth, Judge.  Of course, by virtue of

24   the discovery of documentation that we believe fascially shows

25   fraudulent concealment, yes, that that would be an independent

1   grounds for tolling the statute of limitations as to

2   Transamerica.

3            THE COURT:  All right.  Mr. Meagher, I will hear back

4   from you.

5            MR. MEAGHER:  Yes, Your Honor.  So let's be clear

6   about something, and that is that the emails that were produced

7   by IWA, which I understand from Ms. Davis were produced in May

8   of this year and then I guess there were some documents that I

9   haven't seen that were produced this weekend, but the ones that

10  were submitted as Exhibits 1 and 2, which I would guess would

11  be the best evidence they have or else they wouldn't have

12  submitted it to the Court, were produced in May, and they had

13  nothing to do, Your Honor, nothing to do with the decision made

14  by the plaintiff to sue or not sue Transamerica originally and

15  to sue or not sue Transamerica in the amended complaint.

16           And here is why we know that is.  If you look at the

17  original complaint, paragraph 26 of the original complaint, it

18  says, "While the assignee has refused to provide any

19  information as to its true identity," that would be Rock

20  Springs Drive, "landlord has been able to determine, through a

21  review of Transamerica's public filings and other publicly

22  available information, that the assignee is an affiliate of

23  tenant and ultimately a subsidiary of Transamerica.  Confirming

24  landlord suspicions, the assignee was created for the sole

25  purpose of shielding Transamerica and tenant from their

1  obligation to pay ground rent."

2      So they made the same allegation from the beginning that

3  somehow this was being done to shield Transamerica, but they

4  didn't sue Transamerica, any Transamerica -- Transamerica Life,

5  which they mentioned here, or Transamerica Corporation.

6      And then in the amended complaint, they basically just

7  changed a few words and they changed the definition of

8  Transamerica to be Transamerica Corporation.  So the emails

9  that IWA produced have nothing to do with any of this in terms

10  of what they knew and decided to do or not do at the time they

11  filed the original complaint or the amended complaint.  And if

12  you look at 15(c)(ii), the question is, Did Transamerica

13  Corporation know it should have -- that it would have been

14  brought -- a suit would have been brought against it but for a

15  mistake concerning the proper identity?  And the answer is

16  absolutely no.

17      And your question, Your Honor, about the relief requested

18  is perhaps the best illustration of that because if you look,

19  it's a truly astonishing leap that we are at a point now, by

20  virtue of the amended complaint, the plaintiff is seeking to

21  basically substitute Transamerica Corporation as the tenant

22  under the ground lease.  I mean, we are two levels removed in

23  corporate -- so they have to pierce two corporate veils.

24      But the point is they never asked for that in the

25  original complaint.  Item E in the prayers for relief in the

1    amended complaint is to enter judgment that Transamerica is the

2    alterego of tenant.  They never asked for that in the original

3    complaint.  And so what could we -- what would we have known

4    from looking at the original complaint, that they intend that

5    they would have sued us but for a mistake?  No.

6           What we learned from the original complaint is that they

7    weren't suing for that, and they are now trying to add a claim,

8    a completely different claim after the statute of limitations

9    has past and there is no way to relate back.

10          And with regard to fraudulent concealment, those -- we

11   didn't produce those documents.  Those aren't Transamerica

12   Corporation documents.  Those were produced by IWA.  And there

13   are lots of Transamerica entities, and the use of a

14   Transamerica.com email address does not mean that that person

15   is an employee of Transamerica Corporation.  And, in fact, the

16   best information I have sitting here today suggests that none

17   of the people that are on those emails with a Transamerica.com

18   email address are Transamerica Corporation employees.

19          So those emails really have nothing to do with the

20   decisions that were made and not made.  But Transamerica

21   Corporation was not involved in any concealment of anything,

22   and this fraudulent concealment argument really has no bearing

23   on Transamerica Corporation.

24              THE COURT:  Did you have something more you wanted to

25   say about failure to state a claim?

1          MR. MEAGHER:  I did, but I wanted to respond to those

2     points that had come up.

3          THE COURT:  What are you claiming, the failure to

4     state a claim?  If, in fact, what they say is so, you don't

5     want them to be able to say it, but why is there no claim for

6     potential fraud assertable apart from limitations?

7          MR. MEAGHER:  We have to look at the four corners of

8     the complaint and look at what they have alleged.  And if you

9     look at what they have alleged, and they say on page 4 of their

10    opposition at page 6 and 7 that they have alleged three things,

11    there are three things that they say are sufficient to state a

12    claim for veil piercing against Transamerica Corporation.

13         They say Transamerica and IWA share the same address.

14    That's one.  Two, they say that Rock Springs Drive is

15    undercapitalized and failed to observe corporate formalities.

16    That's two.  And three, they say allowing Transamerica to avoid

17    its financial obligations would be inequitable.  So those are

18    the three things they say are sufficient together to state a

19    claim.

20         Let me start with the last one and work back.  So they

21    say that letting Transamerica out of its financial obligations

22    would be inequitable.  Well, what financial obligations?

23    Transamerica Corporation is not a party to the ground lease,

24    not a party to the assignment, has no obligation to pay ground

25    rent, never had any transactions with the plaintiff.  It's a

1   completely circular argument.

2       They are basically -- you don't have any financial

3   obligations on the part of Transamerica unless you pierce two

4   corporate veils.  So they are saying, Well, you should pierce

5   the corporate veil to create a financial obligation, and

6   because they have a financial obligation now, you should pierce

7   the corporate veil.  It's a completely circular argument.  So

8   that allegation is not sufficient.

9       Allegation No. 2 about Rock Springs Drive being

10  undercapitalized is a conclusion.  I mean, there is no factual

11  support for that.  In fact --

12          THE COURT:  Wait a minute.  You are in a motion to

13  dismiss.  I don't have the discovery on whether they were

14  formed -- I know that they were formulated and they were formed

15  within a week of limitations, my recollection is.  I don't know

16  anything about the capitalization.  They have alleged they are

17  undercapitalized, but they don't have to plead their proof in

18  the beginning.

19          MR. MEAGHER:  This is a fraudulent conveyance action,

20  it's a fraud claim, and they have to prove -- you have to

21  allege fraud with particularity.

22          THE COURT:  That's an interesting point that you

23  make.  You are making a very interesting point.  I was waiting

24  for you to say that, and that's why, perhaps, they held off

25  doing it in the beginning because they didn't have the

1  particularity that you are insisting on.

2          MR. MEAGHER:  Yes.  But they didn't -- the discovery

3  of these emails had nothing to do with them bringing us into

4  the lawsuit.

5          THE COURT:  That's what you say.  That's what you

6  say.  I don't have all this.  I haven't studied all the

7  evidence in this case.  I have got a pleading in front of me,

8  and the question is:  Is it plausible at this point, the *Iqbal*

9  standard, is it plausible that -- I mean, I can read the litany

10  here, that a corporation that is set up a week before

11  limitations, we don't know what their ability is to perform a

12  ground lease of multi years; is that enough right on its face

13  to raise suspicion?

14          Then they get further evidence they say after the fact.

15  Then they feel confident that they can come against the big

16  corporation like Transamerica and say fraud.  Now you are

17  insisting, no, you want the fraud particularity up front.  This

18  may be as particular as you can get in this situation.

19          MR. MEAGHER:  My point, though, Your Honor, is not --

20  they -- they brought the claim against Transamerica, the late

21  belated claim that's barred by limitations before any of these

22  emails, so it's not -- they made the claim without regard to

23  this -- these -- these emails, so they had to state -- they

24  have to have a basis to make the claim.

25          And to say, you know, our company is undercapitalized

1   when you also, in the same complaint, make no allegation of

2   default in the payment of the ground rent because there hasn't

3   been, and so that suggests exactly the opposite.  I mean, if

4   there has been an assignment and if they had not been paid the

5   ground rent, they would be suing for the ground rent, but they

6   are not because they have been paid.

7        So you can't just make these conclusory statements.  And

8   the cases we have cited make clear that there has to be some

9   level of particularity pled.

10       And --

11       THE COURT:  Well, let's wind up your argument,

12  Mr. Meagher.

13       MR. MEAGHER:  So the last two points are they claim

14  that RSD failed to follow corporate formalities, but the things

15  that they claim are a failure to follow corporate formalities

16  are not corporate formalities.  They are perhaps legal

17  obligations under Maryland law with regard to an assignment,

18  but they are not things like you didn't have board meetings,

19  you didn't have bylaws, you didn't have minutes, things like

20  that.

21       They say, Well, you didn't record the assignment, RSD

22  didn't record the assignment, and RSD didn't pay transfer

23  taxes.  Well, that may go to whether there is liability to the

24  state of Maryland for transfer taxes, but that's not a failure

25  to follow corporate formalities.  So it just doesn't support a

1  veil piercing claim.

2           THE COURT:  By the way, are there, in fact, corporate

3  minutes, corporate meetings, and so on and so forth for RSD?

4           MR. MEAGHER:  I don't represent RSD.  I really don't

5  know.  I have no idea.

6           THE COURT:  Well --

7           MR. MEAGHER:  I have no reason to think there aren't.

8           THE COURT:  I have reason to wonder and wonder if

9  there are given the fact that it was formed a week before the

10 limitations.  I mean, I don't know whether anything was done.

11          MR. MEAGHER:  Your Honor, I agree that might go to

12 the liability, you know, whether the assignment is valid, but,

13 you know, that doesn't say why Transamerica Corporation two

14 corporations removed should be held liable on a veil piercing

15 theory.

16          THE COURT:  Let me hear from Ms. Danial in response.

17          MS. DANIAL:  So, as it relates to whether or not we

18 have sufficiently met the motion to dismiss standard,

19 especially as it relates to this alterego test, which, in

20 *Maryland Electric*, for example, in one of the cases cited in

21 our briefs, the alterego test is fact intensive, and such

22 analysis is usually appropriate on a motion to dismiss.

23     I think what we continue to go back to is the fact that

24 while we are learning additional information in discovery here,

25 that you have to take the -- what is in our complaint as true,

1   and that we feel as though that we have sufficiently met that

2   standard.  And whether or not going into, sounds like the

3   *Hildreth* factors that defense counsel is going through right

4   now, we believe those will be beared (sic) out in the

5   discovery, and we are learning those things as discovery is

6   coming in as recent as this weekend.  But we feel as though we

7   have met the standard and will continue to learn more

8   information during discovery that will just continue to bolster

9   those arguments.

10          THE COURT:  Mr. Meagher, final word?

11          MR. MEAGHER:  They have to allege sufficient facts in

12  the first place to sustain a claim.  You can't say we are going

13  to sue you and then we are going to take discovery and hope it

14  pans out.  And, you know, the -- they didn't allege sufficient

15  facts for a veil piercing claim, and we cited five or six

16  decisions from this Court that dismissed cases for similarly

17  deficient allegations.

18          But even more importantly, they did not make a mistake in

19  not naming Transamerica Corporation.  They mentioned a

20  Transamerica entity, elected not to sue them timely, and so

21  there was no mistake in naming that entity versus Transamerica

22  Corporation such that Transamerica Corporation should know that

23  it should have been named in the first place.

24          THE COURT:  All right.  This matter is before the

25  Court on defendant, Transamerica's, motion to dismiss for

1   failure to state a claim.  This suit is brought by Rock Spring

2   Plaza II, LLC against Investors Warranty of America, IWA, Rock

3   Springs Drive, LLC, known as RSD, and Transamerica Corporation,

4   and proceeds in four counts.  Count One for declaratory

5   judgment, that the assignment to be described momentarily was

6   fraudulent; second, Count Two, set aside the fraudulent

7   conveyance; third, pierce the corporate veil and enter a

8   judgment for the tenant for the remainder of the lease; and

9   Count Four, judgment that the tenant is the alterego of the

10   assignee of Rock Springs, RSD.

11      Essentially, the factual background is that the Rock

12   Spring Plaza is the landlord of an office building in Bethesda

13   that seeks this relief against the previous tenant, IWA, who it

14   alleges fraudulently conveyed a leasehold interest in a 99-year

15   ground lease to Rock Springs Drive and certain Jane Does.  We

16   are talking about property involving a 180,000, approximately,

17   square-foot office building that is part of a larger complex.

18      There was a ground lease entered into on November 14,

19   1990, expiring in November 2089.  On August 31, 2017, IWA

20   informed plaintiff, without explanation, that it had assigned

21   its interest in the ground lease to RSD on August 25 of that

22   year.

23      It's true that RSD has paid its monthly rent.  They have

24   refused to identify ownership and management of RSD despite

25   numerous requests or share their intentions with regards to the

1   property.  And according to the original complaint, well, it's

2   repeated in the amended complaint, the property has languished

3   in vacancy since and RSD has repeatedly refused to explore

4   numerous opportunities to sublease the property to commercially

5   viable tenants.

6       The plaintiffs have claimed that IWA is a subsidiary of

7   Transamerica Financial Life.  RSD is a limited liability

8   company formed on August 25, 2017, the same day that IWA

9   assigned its interests in the lease.  Plaintiff alleges that

10  IWA conveyed its interests in the ground lease to the

11  defendant, RSD, for the sole purpose of shielding Transamerica

12  and IWA from their obligation to pay ground rent.  Plaintiff

13  believes that RSD intends to stop paying the rent after a

14  certain period of time which would be the date that the claim

15  for fraudulent conveyance would expire under Maryland law.

16      In any event, the allegation does allege that the

17  original tenant, the plaintiff, were under the common control

18  of a family, eventually to the point where the plaintiff says

19  that IWA and RSD are essentially controlled by Transamerica

20  through various subsidiaries.  And Transamerica says they were

21  not party to the ground lease in any way.  They deny any

22  involvement in this except to say that they were originally in

23  the case and subpoenaed as a witness, they had no reason to

24  believe they might otherwise be sued as a defendant, and

25  certainly three years came and went with regard to

1    Transamerica, and then, subsequent to that, this amended

2    complaint brought them in on allegations of fraud.  That's the

3    essential claim.

4        This question really is, on a motion to dismiss, whether

5    there is a claim that is plausible on its face, not just

6    through bare recitals according to *Iqbal* but conclusory

7    statements and specific factual details as much as possible.

8        Again, the essential argument that Transamerica makes is

9    that it was not involved in the transactions, involved in the

10   ground lease and the assignment, and they say that there is no

11   claim stated, and, secondly, of course, the limitations being

12   three years in duration would have been tolled -- would have

13   past by the time suit was filed against it.

14       The alterego argument of -- made by the plaintiff as to

15   IWA, as to RSD, is -- is out there.

16       Now, the Court starts with a couple of observations.

17   Number one, this is a non-jury case.  The Court is the trier of

18   fact on the ultimate issue, one.  Number two, the essential

19   claim on a motion to dismiss is close the door, do not let the

20   suit proceed against a party, and, in this case, because it's

21   so implausible and so delayed in making the claim, that the

22   Court should not even consider it.

23       Now, the Court starts with the general observation, after

24   a fairly long time on the bench, that ruling out causes of

25   action at the start is always a risk, not letting a party go

1   forward on a cause of action.  Particularly here, where summary

2   judgment would be a much better way for the Court to decide on

3   the merits and then not run risks about whether, A, a cause of

4   action has been stated, or, B, there is the genuine issue of

5   material fact the Court can simply make -- make these

6   decisions.

7        There is enough plausible allegation in this case to

8   suggest that both IWA and RSD were under the common control of

9   Transamerica.  Now, that's -- I am not saying definitively that

10  that's the case, but there is enough now alleged at this

11  juncture in the case to suggest that that was so.

12       It's also in the case that -- evidence to the effect that

13  Transamerica, in one form or another, was trying to get this

14  obligation off the books.  After all, you have RSD with a --

15  you have IWA, but then RSD, which allegedly is

16  undercapitalized, and given its one-week existence before it

17  became the assignee does raise serious questions.  Would they

18  be able to pay in future the obligation of the -- of the ground

19  rent over multiple years?  And that question is, right now,

20  it's plausible to suggest that perhaps they would not be.

21       Then the question would be, Well, who would be left

22  holding the bag?  Transamerica would have tried, if they were,

23  indeed, the architect of this whole transaction trying to get

24  it off the books so that they wouldn't have to pay a ground --

25  on the ground lease.

1          Right now, you have got RSD with capitalization of which

2    apparently we still don't know holding a ground lease with

3    multiple years of obligation and no apparent income, no assets.

4    We don't know what was paid by RSD to get this assignment.  We

5    have no idea what the quid pro quo was, at least I don't

6    reading the papers.  Surely, this is a transaction which is

7    questionable throughout.

8          So when plaintiff -- sorry, defendant says shut the door

9    right now and don't inquire any further, Judge, it's much more

10   difficult for us to be a party than to be a witness, well, that

11   may be, but there is enough, in the Court's view, at least, to

12   pass on a motion to dismiss right now and look to see what we

13   get by way of discovery.  It may well turn out that things are

14   done here.

15         Now, there is a lot of argument about piercing the

16   corporate veil and it's not done and it's not done.  The Court

17   has been around long enough to know that there is a lot of

18   ledger domain that goes on among and between corporations to

19   try and deflect liability and so on, so piercing the corporate

20   veil is a very fact specific kind of a transaction.  There is a

21   lot of -- a lot going on in this case that needs to be

22   unscrambled, and it seems to me the Court, as the ultimate

23   trier of fact, is in a perfect position to see where we come

24   out in this case.

25         Something is going on here that seems rather unusual that

1 you have a space that's not being leased, you have refusals to

2 even entertain the possibility of space from a corporation,

3 RSD, whose corporate vitality is open to question, and then

4 public filings apparently showing that there was a control

5 transmitted here.

6      Now, whether, in fact, there was a mistake under Rule 15

7 of the Federal Rules of Civil Procedure, whether or not there

8 was fraudulent concealment as to the existence of a cause of

9 action, and, indeed, plaintiff -- defendant, rather, itself,

10 has suggested that there are not enough specifics about fraud

11 in the case.  Well, you know, there is enough to get you

12 through the door, and maybe further discovery will show more.

13 So maybe there was a tolling of the statute of limitations as

14 you look through all the evidence in this case.

15      And that, I am prepared to do.  So a lot of these things

16 are fact specific.  Certainly, although the defendant suggests

17 that alterego is an issue that should be decided on a motion to

18 dismiss, Judge Quarrels in *Maryland Electric Industry Health*

19 *Fund vs. Masters Electric, Inc.*, at 2016 Westlaw 164301, said,

20 "It is apparent that the alterego test is fact intensive and

21 such analysis is usually inappropriate on a motion to dismiss,"

22 citing another Maryland case.  Moreover, all the cases that

23 were decided there were decided on summary judgment, not on

24 motions to dismiss.  The Court had not found any case applying

25 a particular ruling cited by the defendant in that case to

1  result in a dismissal on a motion to dismiss.

2       So this is a case which is raw and buzzing.  The Court is

3  prepared to look at it as we go down the road.  Certainly,

4  Transamerica has known about this case from day one.  Whether

5  or not they should have suspected that they were going to be

6  sued in the case remains to be seen, but, certainly, they were

7  intimately involved all along.

8       Were they parties to the ground lease ostensibly?  No.

9  Did they engineer the transfer?  Very possibly.  Did they

10  engineer the transfer in a way that made the future payment of

11  the ground lease obligation open to question?  Maybe.  That's

12  something the Court will look at at the end of the -- as we get

13  to the final chapters.

14       But for now, the Court denies without prejudice the

15  motion to dismiss.  A cause of action has been stated with as

16  much specificity as can often be formulated at the beginning of

17  a case and presumably will be fortified in the course of

18  discovery, but this case definitely merits further inspection.

19       The feeling that I get from Transamerica's argument is

20  close the door based on technicalities at this point.  I am not

21  quite sure that technicalities is quite the way that it gets

22  done, but they may yet have a claim with regard to limitations.

23  We shall see.

24       For now, the motion to dismiss for failure to state a

25  claim is denied without prejudice.

1          Now, this is a motion to dismiss, and I don't know that

2   you have even a scheduling order in place.  Am I correct about

3   that?  We don't have a scheduling order as to Transamerica.  We

4   do as to the other defendants.

5          Is there -- I am not sure how far along we are with the

6   other defendants in the case.  I think counsel really need to

7   confer and see whether there is some way to coordinate the

8   discovery period vis-a-vis the other defendants and

9   Transamerica to see what we are doing here because we are going

10  to get into a potential overlap that could create problems.

11         But in any event, it may be better to, unless counsel

12  feel they can't do it, the Court can enter a scheduling order

13  on its own or give counsel an opportunity to consult and see

14  whether there might be a scheduling order that I am prepared to

15  enter jointly.

16         What's your feeling about that, Mr. Meagher?

17              MR. MEAGHER:  I am happy to confer with counsel and

18  try to work it out.

19              THE COURT:  Well, do that.  Let's get a response

20  within 30 days.  If you have a joint proposed scheduling order,

21  do it, let me know where we are.  You know what the form

22  scheduling orders look like, I should think.  Any question, you

23  can contact my law clerk, and she will let you know, although

24  you will be gone by then.  Right?  She will still be here one

25  more day.

1        All right.  That said, thank you, Counsel, for your

2   presentations, and we will look to hear from you.

3            MR. MEAGHER:  Thank you, Your Honor.

4            MS. DANIAL:  Thank you, Your Honor.

5        (The proceedings were concluded at 3:48 p.m.)

1                    C E R T I F I C A T E

2

3          I, Renee A. Ewing, an Official Court Reporter for

4    the United States District Court for the District of Maryland,

5    do hereby certify that the foregoing is a true and correct

6    transcript of the stenographically reported proceedings taken

7    on the date and time previously stated in the above matter;

8    that the testimony of witnesses and statements of the parties

9    were correctly recorded in machine shorthand by me and

10   thereafter transcribed under my supervision with computer-aided

11   transcription to the best of my ability; and that I am neither

12   of counsel nor kin to any party in said action, nor interested

13   in the outcome thereof.

14

15                    Renee A. Ewing
                      _____
16
                      Renee A. Ewing, RPR, RMR, CRR
17                    Official Court Reporter
                      July 12, 2021
18

19

20

21

22

23

24

25

## 1

**1** [1] - 30:10
**1100** [1] - 2:4
**12** [1] - 48:17
**1200** [1] - 1:15
**1220** [1] - 2:4
**13** [2] - 8:10, 8:21
**14** [1] - 39:18
**15** [4] - 5:16, 12:9, 27:24, 44:6
**15(c** [3] - 8:1, 14:12, 29:20
**15(c)(1** [1] - 15:25
**15(c)(ii** [1] - 31:12
**164301** [1] - 44:19
**180,000** [1] - 39:16
**1990** [1] - 39:19

## 2

**2** [2] - 30:10, 34:9
**20004** [1] - 1:19
**20005** [1] - 2:4
**20036** [1] - 1:15
**2016** [1] - 44:19
**2017** [3] - 25:11, 39:19, 40:8
**202** [3] - 1:16, 1:20, 2:5
**2020** [4] - 6:16, 23:9, 23:21, 24:13
**2021** [5] - 1:11, 18:7, 18:19, 19:2, 48:17
**2089** [1] - 39:19
**21209** [1] - 1:19
**239** [1] - 19:6
**25** [2] - 39:21, 40:8
**26** [1] - 30:17
**2:30** [1] - 1:11

## 3

**30** [1] - 46:20
**301** [1] - 1:22
**31** [1] - 39:19
**317** [2] - 13:10, 13:21
**344-3227** [1] - 1:22
**3:48** [1] - 47:5
**3rd** [2] - 16:10, 25:15

## 4

**4** [1] - 33:9
**410** [1] - 2:9

## 5

**580-4106** [1] - 2:9
**5th** [1] - 6:16

## 6

**6** [2] - 1:11, 33:10
**6225** [1] - 2:8
**627-6900** [1] - 2:5
**663-8000** [1] - 1:16

## 7

**7** [1] - 33:10

## 8

**828-3597** [1] - 1:20

## 9

**975** [1] - 1:19
**98** [3] - 16:20, 16:22, 17:5
**99-year** [2] - 20:14, 39:14

## A

**ability** [3] - 22:14, 35:11, 48:11
**able** [8] - 14:2, 20:19, 21:9, 21:11, 28:1, 30:20, 33:5, 42:18
**absolutely** [4] - 6:2, 10:23, 23:15, 31:16
**accelerate** [1] - 22:18
**according** [3] - 6:25, 40:1, 41:6
**acquire** [1] - 16:25
**act** [1] - 26:2
**action** [11] - 5:5, 8:5, 21:1, 29:10, 34:19, 41:25, 42:1, 42:4, 44:9, 45:15, 48:12
**ACTION** [1] - 1:4
**actual** [3] - 9:13, 9:14, 20:21
**add** [3] - 26:7, 26:12, 32:7
**additional** [1] - 37:24
**address** [4] - 21:13, 32:14, 32:18, 33:13
**addressing** [1] - 22:25
**adjustment** [1] - 20:13
**admitted** [2] - 10:20, 26:15
**Aegon** [1] - 26:21
**affiliate** [2] - 17:16, 30:22
**affiliated** [1] - 29:6
**afternoon** [2] - 3:11, 4:12
**agree** [2] - 5:25, 37:11

**ahead** [4] - 3:14, 5:9, 7:11, 18:20
**aided** [1] - 48:10
**AIDED** [1] - 1:23
**al** [1] - 1:7
**allegation** [7] - 15:17, 31:2, 34:8, 34:9, 36:1, 40:16, 42:7
**allegations** [3] - 5:13, 38:17, 41:2
**allege** [5] - 28:9, 34:21, 38:11, 38:14, 40:16
**alleged** [9] - 6:3, 7:19, 25:4, 28:2, 33:8, 33:9, 33:10, 34:16, 42:10
**allegedly** [2] - 8:20, 42:15
**alleges** [2] - 39:14, 40:9
**allowed** [1] - 28:14
**allowing** [1] - 33:16
**allows** [3] - 12:13, 12:15
**alterego** [15] - 20:6, 21:8, 21:18, 22:2, 22:6, 27:12, 27:18, 32:2, 37:19, 37:21, 39:9, 41:14, 44:17, 44:20
**amended** [11] - 5:17, 7:22, 17:22, 24:3, 30:15, 31:6, 31:11, 31:20, 32:1, 40:2, 41:1
**amendment** [2] - 6:21, 8:15
**America** [13] - 3:6, 4:7, 16:8, 16:14, 17:5, 17:15, 17:16, 22:1, 24:23, 24:25, 25:18, 27:15, 39:2
**AMERICA** [2] - 1:7, 1:17
**amount** [2] - 20:24, 21:5
**analysis** [2] - 37:22, 44:21
**answer** [5] - 10:15, 11:10, 14:7, 27:4, 31:15
**ANTHONY** [1] - 2:7
**Anthony** [1] - 4:12
**anyway** [1] - 14:11
**apart** [1] - 33:6
**apologize** [1] - 26:11
**apparent** [4] - 6:9, 43:3, 44:20
**appearance** [1] - 4:2

**APPEARANCES** [1] - 2:1
**applying** [1] - 44:24
**approach** [1] - 29:15
**appropriate** [2] - 23:7, 37:22
**architect** [1] - 42:23
**argue** [3] - 25:22, 29:13, 29:20
**argued** [1] - 29:17
**arguing** [4] - 3:18, 4:3, 24:4, 29:20
**argument** [17] - 5:19, 6:12, 6:13, 7:9, 11:6, 26:4, 29:2, 29:9, 29:14, 32:22, 34:1, 34:7, 36:11, 41:8, 41:14, 43:15, 45:19
**arguments** [1] - 38:9
**arises** [3] - 6:23, 22:7, 27:19
**arising** [1] - 27:18
**arm** [1] - 26:22
**arms** [1] - 29:4
**arms-length** [1] - 29:4
**aside** [6] - 20:12, 20:25, 21:20, 22:9, 27:5, 39:6
**aspects** [2] - 7:16, 21:17
**assertable** [1] - 33:6
**assertion** [1] - 26:12
**asset** [1] - 26:22
**assets** [1] - 43:3
**assigned** [3] - 13:11, 39:20, 40:9
**assignee** [14] - 12:20, 12:21, 13:3, 13:12, 14:1, 15:6, 15:7, 29:1, 29:2, 30:18, 30:22, 30:24, 39:10, 42:17
**assignment** [19] - 12:25, 13:19, 14:23, 17:18, 18:24, 20:13, 21:3, 25:12, 27:5, 28:3, 33:24, 36:4, 36:17, 36:21, 36:22, 37:12, 39:5, 41:10, 43:4
**assignor** [4] - 13:12, 14:1, 15:6, 20:4
**assuming** [1] - 27:20
**astonishing** [1] - 31:19
**attention** [2] - 23:19, 23:20
**attorney** [1] - 10:10
**August** [3] - 39:19, 39:21, 40:8

**available** [1] - 30:22
**Avenue** [1] - 2:8
**avoid** [1] - 33:16

## B

**background** [2] - 7:6, 39:11
**bag** [2] - 19:20, 42:22
**Baltimore** [1] - 2:9
**bare** [1] - 41:6
**barred** [2] - 5:15, 35:21
**based** [4] - 4:23, 6:2, 6:5, 45:20
**basis** [7] - 5:16, 8:1, 11:13, 15:17, 28:4, 28:20, 35:24
**bear** [1] - 6:20
**beared** [1] - 38:4
**bearing** [1] - 32:22
**became** [2] - 24:9, 42:17
**becomes** [1] - 4:20
**BEFORE** [1] - 1:10
**beginning** [10] - 4:18, 13:17, 18:19, 24:7, 25:16, 28:9, 31:2, 34:18, 34:25, 45:16
**behalf** [4] - 3:13, 3:15, 4:2, 5:25
**behind** [3] - 16:13, 20:8, 24:4
**belated** [1] - 35:21
**belied** [1] - 26:15
**believes** [1] - 40:13
**bench** [2] - 15:12, 41:24
**best** [5] - 9:21, 30:11, 31:18, 32:16, 48:11
**Bethesda** [1] - 39:12
**better** [2] - 42:2, 46:11
**between** [8] - 15:5, 17:21, 19:3, 19:6, 23:12, 24:2, 25:17, 43:18
**beyond** [1] - 28:7
**big** [1] - 35:15
**board** [1] - 36:18
**bolster** [1] - 38:8
**books** [8] - 6:19, 14:9, 16:17, 19:16, 20:9, 23:16, 42:14, 42:24
**BOSCH** [14] - 1:14, 3:11, 3:15, 3:23, 4:1, 17:11, 17:24, 21:13, 21:16, 24:20, 27:10, 28:12, 29:16, 29:22
**Bosch** [6] - 3:12, 3:15, 5:23, 18:8, 24:19,

27:3
**bottom** [1] - 8:14
**breach** [2] - 19:21, 21:4
**briefs** [1] - 37:21
**bring** [3] - 20:9, 23:23, 24:11
**bringing** [4] - 7:7, 23:19, 35:3
**brought** [7] - 8:5, 21:19, 31:14, 35:20, 39:1, 41:2
**building** [2] - 39:12, 39:17
**burden** [1] - 13:13
**buzzing** [1] - 45:2
**BY** [6] - 1:14, 1:14, 1:18, 2:3, 2:7, 2:8
**bylaws** [1] - 36:19

## C

**cable** [1] - 10:3
**candidly** [2] - 6:17, 8:18
**cannot** [1] - 7:2
**capability** [1] - 14:6
**capitalization** [2] - 34:16, 43:1
**capitalize** [1] - 12:14
**capitalized** [2] - 13:18, 19:15
**captures** [1] - 4:2
**care** [1] - 7:9
**case** [45] - 4:19, 4:25, 6:3, 6:18, 7:7, 8:11, 9:6, 9:7, 9:9, 10:1, 10:2, 10:15, 10:23, 12:20, 13:22, 17:3, 17:9, 20:10, 23:23, 24:11, 24:14, 28:2, 28:21, 35:7, 40:23, 41:17, 41:20, 42:7, 42:10, 42:11, 42:12, 43:21, 43:24, 44:11, 44:14, 44:22, 44:24, 44:25, 45:2, 45:4, 45:6, 45:17, 45:18, 46:6
**cases** [10] - 9:4, 9:7, 15:11, 15:14, 15:16, 23:1, 36:8, 37:20, 38:16, 44:22
**causes** [1] - 41:24
**certain** [4] - 6:8, 24:18, 39:15, 40:14
**certainly** [6] - 25:20, 26:25, 40:25, 44:16, 45:3, 45:6
**certify** [1] - 48:5

**chance** [1] - 13:15
**change** [1] - 13:12
**changed** [3] - 3:19, 31:7
**chapters** [1] - 45:13
**Circuit** [2] - 8:11, 9:6
**circular** [2] - 34:1, 34:7
**circumstance** [1] - 12:16
**cited** [4] - 36:8, 37:20, 38:15, 44:25
**citing** [1] - 44:22
**Civil** [2] - 3:5, 44:7
**CIVIL** [1] - 1:4
**claim** [39] - 5:14, 6:4, 6:23, 11:5, 11:11, 12:10, 12:11, 19:21, 19:24, 21:12, 21:18, 22:2, 32:7, 32:8, 32:25, 33:4, 33:5, 33:12, 33:19, 34:20, 35:20, 35:21, 35:22, 35:24, 36:13, 36:15, 37:1, 38:12, 38:15, 39:1, 40:14, 41:3, 41:5, 41:11, 41:19, 41:21, 45:22, 45:25
**claimed** [1] - 40:6
**claiming** [3] - 15:24, 16:1, 33:3
**clear** [5] - 10:23, 16:11, 27:23, 30:5, 36:8
**clearly** [1] - 6:17
**CLERK** [1] - 3:1
**clerk** [1] - 46:23
**client** [1] - 27:22
**client's** [1] - 22:13
**close** [5] - 4:22, 5:5, 12:6, 41:19, 45:20
**co** [1] - 26:17
**co-counsel** [1] - 26:17
**colleague** [1] - 3:17
**coming** [2] - 18:19, 38:6
**commercially** [1] - 40:4
**common** [8] - 16:15, 17:15, 18:13, 24:23, 25:21, 29:6, 40:17, 42:8
**communications** [2] - 13:7, 15:6
**Company** [1] - 8:23
**company** [12] - 10:5, 10:6, 10:7, 10:17, 16:14, 17:4, 19:17, 26:20, 26:21, 27:14, 35:25, 40:8

**compelling** [1] - 6:13
**complaint** [42] - 5:15, 5:17, 7:22, 7:25, 8:21, 8:24, 9:10, 11:1, 11:25, 15:3, 17:14, 17:22, 21:17, 23:6, 24:3, 24:22, 25:5, 25:6, 25:19, 27:1, 27:16, 28:16, 28:25, 30:15, 30:17, 31:6, 31:11, 31:20, 31:25, 32:1, 32:3, 32:4, 32:6, 33:8, 36:1, 37:25, 40:1, 40:2, 41:2
**completely** [3] - 32:8, 34:1, 34:7
**complex** [1] - 39:17
**component** [2] - 28:18, 28:19
**computer** [1] - 48:10
**COMPUTER** [1] - 1:23
**computer-aided** [1] - 48:10
**COMPUTER-AIDED** [1] - 1:23
**concealment** [12] - 14:14, 27:24, 28:5, 28:14, 29:10, 29:15, 29:21, 29:25, 32:10, 32:21, 32:22, 44:8
**concern** [1] - 22:7
**concerning** [2] - 8:6, 31:15
**concerns** [1] - 14:15
**concluded** [1] - 47:5
**conclusion** [1] - 34:10
**conclusory** [2] - 36:7, 41:6
**confer** [2] - 46:7, 46:17
**confident** [1] - 35:15
**confirmed** [1] - 24:15
**confirming** [1] - 30:23
**confused** [1] - 3:21
**confusion** [1] - 3:19
**connected** [1] - 12:21
**connection** [2] - 23:12, 29:3
**consider** [2] - 4:22, 41:22
**consideration** [1] - 7:2
**constant** [1] - 12:18
**consult** [1] - 46:13
**contact** [1] - 46:23
**contemporaneously** [1] - 25:12
**continue** [9] - 6:2, 6:5, 20:17, 20:19, 22:23,

23:18, 37:23, 38:7, 38:8
**Continued** [1] - 2:1
**continued** [1] - 23:13
**continuing** [2] - 20:20, 22:24
**contract** [4] - 9:11, 10:5, 13:14, 19:21
**contracts** [1] - 13:9
**contractual** [1] - 13:10
**control** [5] - 22:20, 27:22, 40:17, 42:8, 44:4
**controlled** [2] - 25:9, 40:19
**controlling** [1] - 9:4
**conversations** [2] - 18:23, 19:3
**conveyance** [8] - 5:14, 7:19, 7:21, 20:16, 21:20, 34:19, 39:7, 40:15
**conveyances** [1] - 7:24
**conveyed** [2] - 39:14, 40:10
**coordinate** [1] - 46:7
**core** [2] - 28:18, 28:19
**corners** [1] - 33:7
**corporate** [24] - 15:8, 15:10, 15:14, 16:15, 24:9, 24:17, 25:17, 26:16, 31:23, 33:15, 34:4, 34:5, 34:7, 36:14, 36:15, 36:16, 36:25, 37:2, 37:3, 39:7, 43:16, 43:19, 44:3
**corporation** [4] - 25:10, 35:10, 35:16, 44:2
**Corporation** [24] - 8:4, 8:17, 8:18, 9:2, 11:13, 13:6, 15:8, 24:10, 31:5, 31:8, 31:13, 31:21, 32:12, 32:15, 32:18, 32:21, 32:23, 33:12, 33:23, 37:13, 38:19, 38:22, 39:3
**CORPORATION** [1] - 2:6
**corporations** [2] - 37:14, 43:18
**correct** [12] - 8:8, 10:24, 12:24, 14:17, 17:11, 17:13, 18:4, 24:11, 28:4, 29:15, 46:2, 48:5
**correctly** [2] - 17:1,

48:9
**Counsel** [1] - 47:1
**counsel** [20] - 3:9, 3:24, 4:5, 12:19, 13:20, 13:25, 17:2, 18:13, 19:4, 23:1, 23:10, 25:21, 26:17, 29:1, 38:3, 46:6, 46:11, 46:13, 46:17, 48:12
**counsel's** [1] - 28:18
**Count** [3] - 39:4, 39:6, 39:9
**counts** [1] - 39:4
**couple** [2] - 4:18, 41:16
**course** [7] - 10:5, 14:8, 21:22, 29:22, 29:23, 41:11, 45:17
**COURT** [55] - 1:1, 1:22, 3:9, 3:14, 3:21, 3:24, 4:4, 4:8, 4:11, 4:14, 4:17, 5:9, 5:20, 6:6, 11:5, 12:17, 13:8, 14:21, 15:12, 15:19, 16:19, 17:7, 17:10, 17:20, 18:10, 18:20, 19:11, 19:25, 20:3, 20:11, 20:22, 21:3, 21:15, 22:22, 24:1, 24:16, 25:25, 27:2, 27:23, 29:9, 29:18, 30:3, 32:24, 33:3, 34:12, 34:22, 35:5, 36:11, 37:2, 37:6, 37:8, 37:16, 38:10, 38:24, 46:19
**Court** [38] - 3:1, 3:4, 3:7, 4:2, 7:2, 9:6, 9:18, 10:2, 10:12, 10:19, 11:9, 15:11, 15:15, 17:13, 18:2, 18:3, 21:19, 23:22, 28:24, 30:12, 38:16, 38:25, 41:16, 41:17, 41:22, 41:23, 42:2, 42:5, 43:16, 43:22, 44:24, 45:2, 45:12, 45:14, 46:12, 48:3, 48:4, 48:17
**Court's** [4] - 23:19, 23:20, 28:13, 43:11
**create** [3] - 19:17, 34:5, 46:10
**created** [2] - 22:1, 30:24
**creating** [1] - 21:24
**creation** [1] - 18:24
**CRR** [2] - 1:22, 48:16
**cruise** [6] - 10:3, 10:4,

10:7, 10:10, 10:16
**cut** [1] - 20:2

## D

**damages** [1] - 22:18
**Danial** [12] - 3:17, 3:18, 4:3, 14:16, 15:20, 15:22, 17:12, 17:24, 18:2, 22:22, 26:7, 37:16
**DANIAL** [20] - 1:14, 5:24, 14:18, 15:23, 16:24, 17:8, 18:4, 18:16, 18:21, 19:13, 20:2, 20:5, 20:15, 21:2, 21:7, 22:24, 24:8, 26:9, 37:17, 47:4
**Daniel** [1] - 5:24
**date** [2] - 40:14, 48:7
**DAVIS** [2] - 1:18, 4:6
**Davis** [3] - 4:6, 25:21, 30:7
**days** [1] - 46:20
**DC** [3] - 1:15, 1:19, 2:4
**deal** [1] - 14:7
**December** [3] - 23:9, 23:21, 24:13
**decide** [1] - 42:2
**decided** [4] - 31:10, 44:17, 44:23
**decider** [1] - 4:20
**deciding** [1] - 14:15
**decision** [3] - 16:3, 26:13, 30:13
**decisions** [4] - 5:1, 32:20, 38:16, 42:6
**declaratory** [4] - 20:15, 21:19, 22:9, 39:4
**declared** [2] - 21:4, 21:19
**default** [1] - 36:2
**Defendant** [2] - 3:25, 4:16
**defendant** [26] - 7:6, 7:16, 7:17, 8:25, 9:2, 9:16, 9:20, 9:21, 10:13, 10:24, 11:7, 11:8, 11:18, 11:23, 12:14, 15:3, 23:2, 24:11, 28:21, 38:25, 40:11, 40:24, 43:8, 44:9, 44:16, 44:25
**DEFENDANT** [3] - 1:17, 2:2, 2:6
**defendants** [7] - 12:19, 18:18, 24:14, 26:19, 46:4, 46:6,

46:8
**Defendants** [1] - 1:8
**defense** [1] - 38:3
**deficient** [1] - 38:17
**defined** [1] - 8:23
**definitely** [1] - 45:18
**definition** [1] - 31:7
**definitively** [2] - 14:15, 42:9
**deflect** [1] - 43:19
**delayed** [1] - 41:21
**demonstrably** [1] - 16:5
**denied** [1] - 45:25
**denies** [1] - 45:14
**deny** [1] - 40:21
**denying** [1] - 26:5
**deposed** [1] - 7:14
**depositions** [1] - 5:12
**DEPUTY** [1] - 3:1
**described** [1] - 39:5
**designed** [3] - 7:17, 16:16, 22:13
**despite** [1] - 39:24
**details** [3] - 12:20, 25:17, 41:7
**determine** [2] - 24:17, 30:20
**determining** [1] - 8:14
**different** [3] - 7:13, 21:17, 32:8
**difficult** [3] - 19:18, 19:20, 43:10
**difficulty** [1] - 26:15
**diligence** [2] - 23:8, 23:11
**direct** [5] - 17:17, 18:6, 22:12, 27:19, 27:21
**directly** [3] - 22:19, 23:22, 29:7
**disagree** [2] - 6:1, 28:17
**disclose** [3] - 12:19, 12:25, 13:20
**disclosed** [1] - 14:1
**discovered** [11] - 6:9, 11:16, 17:15, 17:19, 17:21, 17:23, 18:10, 21:23, 24:1, 25:11, 25:14
**discovery** [28] - 5:12, 7:4, 7:5, 7:14, 12:3, 12:8, 16:6, 19:14, 20:7, 21:22, 24:18, 25:16, 26:10, 26:19, 27:16, 29:17, 29:24, 34:13, 35:2, 37:24, 38:5, 38:8, 38:13, 43:13, 44:12, 45:18,

46:8
**discussing** [2] - 19:7
**discussions** [1] - 23:17
**dismiss** [18] - 4:23, 5:1, 15:16, 23:21, 34:13, 37:18, 37:22, 38:25, 41:4, 41:19, 43:12, 44:18, 44:21, 44:24, 45:1, 45:15, 45:24, 46:1
**dismissal** [1] - 45:1
**dismissed** [1] - 38:16
**dispute** [2] - 7:21, 7:23
**DISTRICT** [3] - 1:1, 1:2, 1:10
**District** [5] - 3:1, 3:2, 15:11, 48:4
**DIVISION** [1] - 1:3
**DLA** [3] - 2:7, 4:13, 4:15
**Docket** [1] - 3:5
**document** [1] - 18:17
**documentation** [1] - 29:24
**documents** [14] - 17:19, 17:25, 18:1, 18:5, 18:11, 18:16, 18:22, 23:10, 23:13, 25:7, 25:13, 30:8, 32:11, 32:12
**dog** [1] - 14:24
**dollars** [1] - 7:15
**domain** [1] - 43:18
**done** [8] - 18:15, 24:19, 31:3, 37:10, 43:14, 43:16, 45:22
**door** [6] - 4:22, 5:5, 41:19, 43:8, 44:12, 45:20
**doubt** [1] - 6:3
**down** [2] - 6:14, 45:3
**DRIVE** [1] - 2:2
**Drive** [14] - 4:8, 4:10, 6:20, 11:2, 12:7, 14:5, 16:8, 16:13, 16:23, 30:20, 33:14, 34:9, 39:3, 39:15
**dubious** [1] - 26:1
**dump** [1] - 19:10
**duration** [2] - 5:11, 41:12
**during** [3] - 23:21, 24:8, 38:8
**duty** [1] - 13:13

## E

**effect** [1] - 42:12

**effective** [1] - 14:23
**effectively** [3] - 9:5, 13:25, 29:19
**efficient** [1] - 21:12
**effort** [3] - 17:2, 21:11, 25:1
**efforts** [1] - 19:3
**either** [1] - 5:1
**elected** [1] - 38:20
**Electric** [1] - 37:20, 44:18, 44:19
**email** [2] - 32:14, 32:18
**emails** [12] - 6:8, 6:17, 16:13, 19:2, 19:6, 30:6, 31:8, 32:17, 32:19, 35:3, 35:22, 35:23
**employee** [1] - 32:15
**employees** [1] - 32:18
**end** [2] - 6:14, 45:12
**enforce** [1] - 22:14
**engage** [1] - 19:4
**engaged** [1] - 11:20
**engineer** [2] - 45:9, 45:10
**enter** [4] - 32:1, 39:7, 46:12, 46:15
**entered** [1] - 39:18
**entertain** [2] - 7:2, 44:2
**entirety** [1] - 4:25
**entities** [5] - 11:1, 26:16, 26:24, 29:2, 32:13
**entitled** [1] - 13:23
**entity** [24] - 8:24, 9:15, 9:20, 10:4, 10:11, 10:13, 10:17, 10:20, 10:21, 10:24, 11:2, 15:3, 17:17, 21:24, 22:12, 23:7, 25:2, 25:6, 25:9, 27:1, 27:22, 29:3, 38:20, 38:21
**equitable** [1] - 27:20
**equity** [1] - 4:19
**especially** [2] - 16:5, 37:19
**ESQUIRE** [6] - 1:14, 1:14, 1:18, 2:3, 2:7, 2:8
**essential** [3] - 41:3, 41:8, 41:18
**essentially** [5] - 13:10, 21:3, 21:4, 39:11, 40:19
**establish** [1] - 22:6
**et** [1] - 1:7
**event** [2] - 40:16,

46:11
**eventually** [1] - 40:18
**evidence** [13] - 11:15, 11:19, 12:3, 12:8, 14:8, 16:11, 24:5, 28:2, 30:11, 35:7, 35:14, 42:12, 44:14
**Ewing** [4] - 1:22, 48:3, 48:15, 48:16
**exactly** [3] - 11:3, 11:4, 36:3
**example** [3] - 26:18, 26:23, 37:20
**examples** [1] - 19:2
**except** [1] - 40:22
**excusable** [1] - 26:25
**excuse** [1] - 9:12
**execute** [1] - 22:14
**Exhibits** [1] - 30:10
**existence** [3] - 28:19, 42:16, 44:8
**exists** [1] - 23:2
**exit** [1] - 19:4
**expensive** [1] - 5:12
**expire** [1] - 40:15
**expired** [1] - 22:4
**expiring** [1] - 39:19
**explain** [1] - 5:6
**explanation** [1] - 39:20
**explore** [2] - 19:4, 40:3
**extend** [3] - 11:20, 28:11, 28:12
**extent** [1] - 28:8

## F

**face** [5] - 5:15, 7:1, 35:12, 41:5
**facilitation** [1] - 18:25
**fact** [29] - 5:3, 6:5, 16:10, 18:3, 18:24, 20:8, 22:11, 23:5, 23:14, 23:24, 24:11, 24:15, 26:23, 32:15, 33:4, 34:11, 35:14, 37:2, 37:9, 37:21, 37:23, 41:18, 42:5, 43:20, 43:23, 44:6, 44:16, 44:20
**factors** [1] - 38:3
**facts** [5] - 4:20, 16:4, 17:13, 38:11, 38:15
**factual** [5] - 5:13, 6:7, 34:10, 39:11, 41:7
**failed** [2] - 33:15, 36:14
**failure** [8] - 11:11, 28:22, 32:25, 33:3,

36:15, 36:24, 39:1, 45:24
**fairly** [2] - 13:18, 41:24
**family** [1] - 40:18
**far** [3] - 6:9, 13:3, 46:5
**fascially** [1] - 29:24
**favor** [1] - 21:19
**Federal** [1] - 44:7
**felt** [1] - 24:10
**few** [2] - 7:14, 31:7
**fight** [1] - 14:24
**figure** [1] - 23:7
**filed** [16] - 5:18, 6:16, 7:23, 8:25, 10:15, 10:18, 16:23, 16:24, 17:3, 19:1, 19:24, 24:2, 25:19, 28:25, 31:11, 41:13
**files** [1] - 26:20
**filing** [6] - 5:17, 17:9, 17:14, 17:22, 24:21, 28:15
**filings** [4] - 24:17, 24:21, 30:21, 44:4
**final** [3] - 26:11, 38:10, 45:13
**financial** [6] - 33:17, 33:21, 33:22, 34:2, 34:5, 34:6
**Financial** [2] - 8:22, 40:7
**firm** [1] - 3:12
**firmer** [1] - 11:15
**firms** [1] - 3:20
**first** [5] - 15:20, 19:24, 23:6, 38:12, 38:23
**five** [1] - 38:15
**follow** [4] - 13:19, 36:14, 36:15, 36:25
**foot** [1] - 39:17
**FOR** [5] - 1:2, 1:12, 1:17, 2:2, 2:6
**force** [2] - 5:8, 5:10
**foregoing** [1] - 48:5
**form** [2] - 42:13, 46:21
**formalities** [5] - 33:15, 36:14, 36:15, 36:16, 36:25
**formation** [3] - 16:13, 17:18, 25:13
**formed** [5] - 25:11, 34:14, 37:9, 40:8
**formulated** [2] - 34:14, 45:16
**forth** [3] - 12:22, 13:20, 37:3
**fortified** [1] - 45:17
**forward** [3] - 15:5, 21:9, 42:1
**four** [2] - 33:7, 39:4

**Four** [1] - 39:9
**Fourth** [2] - 8:11, 9:6
**fraud** [23] - 11:16, 11:20, 16:7, 22:3, 22:12, 22:13, 22:21, 25:3, 27:20, 27:22, 27:25, 28:2, 28:8, 28:9, 29:8, 33:6, 34:20, 34:21, 35:16, 35:17, 41:2, 44:10
**fraudulent** [20] - 5:14, 7:19, 7:21, 7:24, 14:14, 20:16, 21:20, 28:5, 28:14, 29:10, 29:15, 29:21, 29:25, 32:10, 32:22, 34:19, 39:6, 40:15, 44:8
**fraudulently** [1] - 39:14
**front** [2] - 35:7, 35:17
**full** [2] - 24:5
**fully** [1] - 26:13
**Fund** [1] - 44:19
**future** [3] - 19:5, 42:18, 45:10

**G**

**gained** [1] - 5:4
**gap** [1] - 17:21
**gather** [2] - 18:11, 27:3
**general** [1] - 41:23
**genuine** [1] - 42:4
**gift** [1] - 29:23
**gist** [1] - 26:4
**given** [5] - 5:2, 5:3, 18:14, 37:9, 42:16
**gloss** [1] - 8:9
**Goodman** [6] - 8:11, 8:13, 9:6, 9:9, 10:22
**GREENBELT** [1] - 1:11
**ground** [40] - 6:11, 13:19, 14:6, 16:17, 19:6, 19:10, 20:1, 20:4, 20:14, 20:18, 20:20, 20:24, 21:6, 21:21, 22:14, 22:16, 22:19, 23:16, 27:21, 31:1, 31:22, 33:23, 33:24, 35:12, 36:2, 36:5, 39:15, 39:18, 39:21, 40:10, 40:12, 40:21, 41:10, 42:18, 42:24, 42:25, 43:2, 45:8, 45:11
**grounds** [1] - 30:1
**guess** [4] - 12:22, 21:5, 30:8, 30:10

**H**

**hand** [1] - 7:8
**hands** [1] - 28:6
**hanging** [1] - 29:12
**happy** [3] - 11:10, 18:4, 46:17
**harbor** [1] - 23:3
**hat** [1] - 29:12
**Health** [1] - 44:18
**hear** [6] - 14:16, 15:12, 15:19, 30:3, 37:16, 47:2
**hearing** [3] - 3:8, 23:22, 24:13
**held** [4] - 19:19, 19:22, 34:24, 37:14
**help** [1] - 27:8
**hereby** [1] - 48:5
**herself** [1] - 3:17
**highlight** [1] - 8:12
**Hildreth** [1] - 38:3
**hold** [2] - 22:19, 27:10
**holding** [4] - 16:14, 27:14, 42:22, 43:2
**honestly** [1] - 13:1
**Honor** [28] - 3:11, 3:19, 4:6, 4:9, 4:12, 5:7, 5:10, 5:18, 7:12, 8:1, 9:7, 10:1, 11:3, 11:22, 12:2, 13:2, 15:23, 22:9, 24:20, 26:11, 26:24, 30:5, 30:13, 31:17, 35:19, 37:11, 47:3, 47:4
**HONORABLE** [1] - 1:10
**Honorable** [1] - 3:2
**hook** [2] - 20:1, 20:4
**hope** [1] - 38:13
**horse** [1] - 29:23
**hundreds** [1] - 7:15

**I**

**idea** [3] - 13:1, 37:5, 43:5
**identify** [2] - 3:10, 39:24
**identity** [3] - 8:7, 30:19, 31:15
**II** [3] - 1:4, 3:5, 39:2
**illustrates** [1] - 9:5
**illustration** [1] - 31:18
**impair** [1] - 13:14
**impaired** [1] - 14:3
**implausible** [2] - 25:22, 41:21
**important** [1] - 20:9
**importantly** [1] - 38:18

**imposed** [1] - 13:14
**IN** [1] - 1:1
**inadequately** [1] - 19:15
**inappropriate** [1] - 44:21
**Inc** [2] - 9:12, 44:19
**incident** [2] - 22:1, 24:21
**included** [1] - 19:1
**income** [1] - 43:3
**incorrect** [1] - 16:5
**increase** [1] - 13:13
**increased** [1] - 14:3
**indeed** [2] - 42:23, 44:9
**independent** [1] - 29:25
**indicate** [1] - 13:17
**Industry** [1] - 44:18
**inequitable** [2] - 33:17, 33:22
**information** [11] - 12:23, 14:2, 16:25, 18:12, 23:19, 26:14, 30:19, 30:22, 32:16, 37:24, 38:8
**informed** [3] - 16:3, 26:13, 39:20
**initial** [5] - 6:16, 17:12, 18:12, 27:15, 28:3
**inquire** [1] - 43:9
**inquiries** [1] - 29:1
**inquiry** [2] - 8:14, 17:3
**insisting** [2] - 35:1, 35:17
**inspection** [1] - 45:18
**Insurance** [1] - 8:23
**intend** [1] - 32:4
**intended** [1] - 10:23
**intends** [1] - 40:13
**intensive** [2] - 37:21, 44:20
**intent** [1] - 6:10
**intention** [1] - 19:15
**intentions** [1] - 39:25
**interest** [7] - 9:11, 9:13, 9:14, 9:15, 9:23, 39:14, 39:21
**interested** [1] - 48:12
**interesting** [2] - 34:22, 34:23
**interests** [2] - 40:9, 40:10
**interim** [1] - 25:10
**intermediary** [2] - 16:14, 27:14
**internal** [2] - 16:12, 16:16
**intimately** [1] - 45:7

**introduce** [1] - 3:17
**invalidate** [1] - 20:12
**investigate** [1] - 12:10
**INVESTORS** [2] - 1:7, 1:17
**Investors** [8] - 3:6, 3:25, 4:5, 4:7, 16:7, 19:25, 20:3, 39:2
**involved** [17] - 7:5, 7:13, 13:2, 13:5, 17:12, 23:15, 23:17, 25:1, 25:3, 25:4, 26:24, 29:5, 29:7, 32:21, 41:9, 45:7
**involvement** [4] - 11:18, 18:6, 21:25, 40:22
**involving** [2] - 5:1, 39:16
**Iqbal** [2] - 35:8, 41:6
**issue** [10] - 5:21, 8:12, 10:17, 11:9, 12:2, 22:3, 22:5, 41:18, 42:4, 44:17
**issued** [2] - 10:4, 10:6
**Italian** [1] - 10:6
**Item** [1] - 31:25
**itself** [3] - 27:12, 27:13, 44:9
**IWA** [49] - 11:1, 12:6, 13:2, 15:7, 16:8, 16:15, 17:25, 18:7, 18:18, 19:3, 19:6, 19:9, 19:16, 20:6, 20:17, 20:23, 21:5, 21:8, 21:10, 21:21, 21:24, 22:20, 23:11, 23:13, 24:24, 24:25, 25:9, 25:18, 26:19, 27:6, 27:12, 27:14, 29:4, 29:5, 30:7, 31:9, 32:12, 33:13, 39:2, 39:13, 39:19, 40:6, 40:8, 40:10, 40:12, 40:19, 41:15, 42:8, 42:15

**J**

**Jane** [1] - 39:15
**joint** [1] - 46:20
**jointly** [1] - 46:15
**judge** [3] - 4:19, 5:24, 21:13
**Judge** [9] - 4:1, 9:18, 14:19, 25:14, 28:12, 29:16, 29:23, 43:9, 44:18
**JUDGE** [1] - 1:10
**judgment** [15] - 5:2,

5

10:18, 20:15, 20:24, 21:5, 21:10, 21:19, 22:9, 32:1, 39:5, 39:8, 39:9, 42:2, 44:23
**July** [3] - 16:10, 25:15, 48:17
**JULY** [1] - 1:11
**juncture** [1] - 42:11
**June** [2] - 6:16, 19:2
**jury** [2] - 4:19, 41:17

**K**

**Katherine** [3] - 3:17, 4:3, 5:24
**KATHERINE** [1] - 1:14
**keep** [1] - 28:1
**kin** [1] - 48:12
**kind** [5] - 6:10, 13:4, 19:19, 29:12, 43:20
**knowledge** [5] - 9:24, 10:12, 10:20, 10:21, 11:12
**known** [11] - 8:5, 16:1, 17:18, 17:19, 24:9, 25:19, 25:21, 29:7, 32:3, 39:3, 45:4
**knows** [1] - 12:14
**KOZLOWSKI** [2] - 2:8, 4:15
**Kozlowski** [1] - 4:15
**KROPF** [3] - 2:3, 2:3, 4:9
**Kropf** [2] - 4:9
**Krupski** [4] - 9:7, 10:1, 10:22, 23:1

**L**

**landlord** [5] - 13:23, 14:2, 30:20, 30:24, 39:12
**language** [1] - 8:12
**languished** [1] - 40:2
**larger** [1] - 39:17
**last** [5] - 12:5, 12:6, 19:1, 33:20, 36:13
**late** [1] - 35:20
**law** [6] - 3:12, 3:19, 16:4, 36:17, 40:15, 46:23
**lawsuit** [4] - 11:24, 11:25, 16:2, 35:4
**lawyer** [1] - 10:4
**leap** [1] - 31:19
**learn** [1] - 38:7
**learned** [14] - 16:18, 17:8, 18:5, 18:9, 19:14, 22:11, 22:25,

24:13, 27:12, 28:7, 28:8, 28:10, 29:5, 32:6
**learning** [7] - 19:16, 20:7, 23:12, 27:16, 28:13, 37:24, 38:5
**lease** [36] - 6:11, 13:19, 14:6, 16:17, 19:6, 19:10, 20:1, 20:4, 20:14, 20:18, 20:20, 20:24, 21:6, 21:21, 22:14, 22:16, 22:19, 23:16, 27:6, 27:11, 27:21, 31:22, 33:23, 35:12, 39:8, 39:15, 39:18, 39:21, 40:9, 40:10, 40:21, 41:10, 42:25, 43:2, 45:8, 45:11
**leased** [1] - 44:1
**leasehold** [1] - 39:14
**least** [3] - 11:17, 43:5, 43:11
**leaving** [1] - 21:21
**led** [2] - 23:13, 23:15
**ledger** [1] - 43:18
**left** [1] - 42:21
**legal** [1] - 36:16
**legitimate** [1] - 29:1
**length** [1] - 29:4
**lessen** [1] - 22:13
**letting** [2] - 33:21, 41:25
**level** [1] - 36:9
**levels** [1] - 31:22
**liability** [11] - 4:23, 6:19, 15:5, 16:17, 19:5, 19:16, 27:19, 36:23, 37:12, 40:7, 43:19
**liable** [2] - 22:19, 37:14
**Life** [3] - 8:22, 31:4, 40:7
**likely** [2] - 23:23, 23:24
**limitation** [1] - 19:18
**limitations** [25] - 5:16, 5:19, 6:12, 7:1, 7:17, 7:24, 11:16, 11:19, 12:2, 12:4, 22:3, 22:6, 22:7, 28:11, 28:20, 30:1, 32:8, 33:6, 34:15, 35:11, 35:21, 37:10, 41:11, 44:13, 45:22
**limited** [3] - 12:15, 12:16, 40:7
**line** [1] - 10:4
**litany** [1] - 35:9

**litigation** [3] - 5:11, 7:16, 18:15
**LLC** [9] - 1:4, 1:7, 1:17, 3:5, 3:6, 3:16, 19:8, 39:2, 39:3
**LLP** [3] - 1:13, 1:18, 2:7
**loathe** [1] - 15:9
**long-term** [1] - 16:16
**look** [18] - 4:24, 8:10, 8:21, 9:4, 10:19, 29:23, 30:16, 31:12, 31:18, 33:7, 33:8, 33:9, 43:12, 44:14, 45:3, 45:12, 46:22, 47:2
**looking** [5] - 13:8, 19:9, 21:1, 23:6, 32:4
**looks** [1] - 8:15
**loosely** [1] - 23:5
**losses** [1] - 19:5

**M**

**machine** [1] - 48:9
**management** [1] - 39:24
**MARYLAND** [2] - 1:2, 1:11
**Maryland** [11] - 2:9, 3:2, 15:9, 15:11, 36:17, 36:24, 37:20, 40:15, 44:18, 44:22, 48:4
**masters** [1] - 44:19
**material** [1] - 42:5
**materially** [5] - 13:12, 13:13, 13:14, 13:15, 14:3
**matter** [7] - 3:4, 3:7, 9:3, 11:15, 27:20, 38:24, 48:7
**Meagher** [8] - 4:13, 6:25, 7:8, 12:17, 30:3, 36:12, 38:10, 46:16
**MEAGHER** [23] - 2:7, 4:12, 5:7, 5:10, 7:12, 11:22, 13:1, 14:19, 14:22, 15:15, 30:5, 33:1, 33:7, 34:19, 35:2, 35:19, 36:13, 37:4, 37:7, 37:11, 38:11, 46:17, 47:3
**mean** [21] - 5:2, 6:7, 6:22, 12:3, 12:4, 14:5, 14:23, 15:6, 16:20, 17:20, 17:23, 24:3, 24:7, 26:1,

29:12, 31:22, 32:14, 34:10, 35:9, 36:3, 37:10
**means** [1] - 14:10
**meetings** [2] - 36:18, 37:3
**mention** [1] - 23:20
**mentioned** [5] - 8:24, 23:6, 26:17, 31:5, 38:19
**merits** [5] - 4:20, 4:25, 6:3, 42:3, 45:18
**MESSITTE** [1] - 1:10
**Messitte** [2] - 3:3, 14:19
**met** [4] - 16:1, 37:18, 38:1, 38:7
**might** [6] - 6:20, 23:2, 25:23, 37:11, 40:24, 46:14
**mike** [1] - 7:8
**mind** [2] - 6:22, 13:20
**minute** [4] - 12:6, 16:19, 34:12
**minutes** [2] - 36:19, 37:3
**misnamed** [1] - 25:5
**mistake** [29] - 8:6, 8:7, 8:9, 8:13, 8:16, 8:18, 8:19, 9:8, 9:19, 9:24, 10:12, 10:14, 10:19, 11:12, 11:23, 12:12, 12:13, 16:3, 26:10, 26:14, 28:17, 28:19, 29:13, 31:15, 32:5, 38:18, 38:21, 44:6
**mistaken** [2] - 9:13, 9:16
**misunderstanding** [1] - 23:3
**momentarily** [1] - 39:5
**money** [1] - 19:22
**monthly** [2] - 19:5, 39:23
**months** [3] - 12:4, 17:22, 23:25
**moreover** [1] - 44:22
**MOSELEY** [1] - 2:3
**Moseley** [1] - 4:10
**motion** [21] - 3:18, 4:3, 4:23, 5:1, 10:18, 15:16, 22:5, 23:21, 34:12, 37:18, 37:22, 38:25, 41:4, 41:19, 43:12, 44:17, 44:21, 45:1, 45:15, 45:24, 46:1
**motions** [3] - 3:8, 5:2, 44:24
**mouth** [1] - 29:23

**move** [3] - 11:10, 16:16, 21:9
**moved** [1] - 27:13
**MR** [35] - 3:11, 3:15, 3:23, 4:1, 4:12, 5:7, 5:10, 7:12, 11:22, 13:1, 14:19, 14:22, 15:15, 17:11, 17:24, 21:13, 21:16, 24:20, 27:10, 28:12, 29:16, 29:22, 30:5, 33:1, 33:7, 34:19, 35:2, 35:19, 36:13, 37:4, 37:7, 37:11, 38:11, 46:17, 47:3
**MS** [22] - 4:6, 4:9, 4:15, 5:24, 14:18, 15:23, 16:24, 17:8, 18:4, 18:16, 18:21, 19:13, 20:2, 20:5, 20:15, 21:2, 21:7, 22:24, 24:8, 26:9, 37:17, 47:4
**multi** [1] - 35:12
**multiple** [3] - 26:16, 42:19, 43:3

**N**

**name** [6] - 9:12, 10:11, 10:24, 12:12, 28:15, 28:22
**named** [16] - 7:6, 8:25, 9:2, 9:12, 9:15, 9:19, 9:21, 10:14, 10:20, 10:22, 11:8, 11:24, 16:2, 25:24, 26:25, 38:23
**names** [1] - 16:12
**naming** [6] - 8:8, 8:18, 11:23, 38:19, 38:21
**navigating** [1] - 26:15
**necessarily** [1] - 14:12
**need** [2] - 5:5, 46:6
**needs** [1] - 43:21
**never** [3] - 31:24, 32:2, 33:25
**next** [1] - 3:17
**NICOLE** [1] - 2:8
**Nicole** [1] - 4:15
**Niemeyer** [1] - 9:18
**night** [1] - 25:14
**NO** [1] - 1:7
**non** [3] - 4:19, 14:14, 41:17
**non-concealment** [1] - 14:14
**non-jury** [2] - 4:19, 41:17
**none** [1] - 32:16

**nonetheless** [1] - 23:3
**North** [9] - 16:14, 17:5, 17:15, 17:16, 22:1, 24:23, 24:25, 25:18, 27:15
**NOTES** [1] - 1:23
**nothing** [6] - 11:25, 30:13, 31:9, 32:19, 35:3
**notice** [1] - 10:8
**November** [2] - 39:18, 39:19
**null** [1] - 21:4
**number** [2] - 41:17, 41:18
**numerous** [2] - 39:25, 40:4
**NW** [3] - 1:15, 1:19, 2:4

## O

**obligated** [1] - 20:17
**obligation** [13] - 6:11, 12:9, 12:23, 13:19, 31:1, 33:24, 34:5, 34:6, 40:12, 42:14, 42:18, 43:3, 45:11
**obligations** [7] - 19:10, 27:21, 33:17, 33:21, 33:22, 34:3, 36:17
**obligor** [4] - 13:13, 13:22, 22:15, 27:11
**observation** [1] - 41:23
**observations** [1] - 41:16
**observe** [1] - 33:15
**obtaining** [2] - 13:15, 14:4
**obviously** [1] - 7:13
**occurred** [2] - 7:22, 25:12
**OF** [5] - 1:2, 1:7, 1:9, 1:17, 1:23
**office** [2] - 39:12, 39:17
**OFFICIAL** [1] - 1:22
**Official** [1] - 48:3
**official** [1] - 48:17
**often** [1] - 45:16
**One** [1] - 39:4
**one** [17] - 5:13, 9:17, 12:19, 14:15, 21:12, 21:17, 26:19, 27:4, 33:14, 33:20, 37:20, 41:17, 41:18, 42:13, 42:16, 45:4, 46:24
**one-week** [1] - 42:16

**ones** [1] - 30:9
**ongoing** [1] - 21:21
**open** [2] - 44:3, 45:11
**operator** [3] - 10:7, 10:10, 10:16
**opinion** [1] - 9:19
**opportunities** [1] - 40:4
**opportunity** [2] - 6:7, 46:13
**opposite** [4] - 10:25, 11:4, 36:3
**opposition** [2] - 8:10, 33:10
**order** [7] - 19:9, 21:8, 46:2, 46:3, 46:12, 46:14, 46:20
**orders** [1] - 46:22
**original** [25] - 5:17, 8:21, 8:24, 11:25, 12:22, 13:23, 15:3, 17:14, 24:21, 25:5, 25:6, 25:19, 27:1, 28:16, 28:25, 30:17, 31:11, 31:25, 32:2, 32:4, 32:6, 40:1, 40:17
**originally** [2] - 30:14, 40:22
**ostensibly** [1] - 45:8
**otherwise** [3] - 11:10, 26:6, 40:24
**ought** [1] - 27:20
**outcome** [2] - 27:9, 48:13
**outside** [2] - 18:15, 19:4
**overlap** [1] - 46:10
**overwhelming** [1] - 29:14
**own** [6] - 17:3, 20:9, 23:7, 23:11, 29:5, 46:13
**owned** [1] - 17:7
**owner** [3] - 16:21, 16:22, 17:6
**ownership** [1] - 39:24

## P

**p.m** [1] - 47:5
**P.M** [1] - 1:11
**page** [3] - 8:10, 33:9, 33:10
**paid** [4] - 36:4, 36:6, 39:23, 43:4
**pans** [1] - 38:14
**papers** [2] - 12:18, 43:6
**paragraph** [2] - 8:21,

30:17
**parent** [7] - 10:7, 10:17, 16:15, 16:21, 17:15, 24:23, 29:6
**part** [6] - 10:13, 10:21, 12:18, 13:25, 34:3, 39:17
**participate** [1] - 5:12
**participating** [1] - 7:15
**particular** [2] - 35:18, 44:25
**particularity** [4] - 34:21, 35:1, 35:17, 36:9
**particularly** [3] - 13:18, 29:13, 42:1
**particulars** [1] - 18:13
**parties** [5] - 13:5, 16:6, 23:12, 45:8, 48:8
**party** [18] - 8:8, 9:11, 11:17, 11:24, 13:6, 22:10, 22:12, 27:19, 28:15, 29:3, 33:23, 33:24, 40:21, 41:20, 41:25, 43:10, 48:12
**party's** [1] - 8:6
**pass** [1] - 43:12
**passage** [1] - 10:6
**passenger** [1] - 10:3
**past** [4] - 18:8, 18:22, 32:9, 41:13
**pause** [1] - 12:17
**pay** [9] - 20:17, 20:20, 20:23, 31:1, 33:24, 36:22, 40:12, 42:18, 42:24
**paying** [1] - 40:13
**payment** [2] - 36:2, 45:10
**pending** [1] - 3:4
**people** [2] - 12:10, 32:17
**percent** [3] - 16:21, 16:22, 17:5
**perfect** [1] - 43:23
**perform** [1] - 35:11
**performance** [2] - 13:15, 14:4
**performing** [1] - 14:6
**perhaps** [5] - 7:14, 31:18, 34:24, 36:16, 42:20
**period** [6] - 17:21, 19:8, 19:18, 24:8, 40:14, 46:8
**perpetrate** [1] - 22:21
**perpetrating** [2] - 27:22, 29:8

**person** [1] - 32:14
**Peter** [1] - 3:3
**PETER** [1] - 1:10
**phrase** [1] - 27:25
**phrased** [1] - 28:1
**pierce** [5] - 15:9, 31:23, 34:3, 34:4, 34:6, 39:7
**pierced** [1] - 15:1
**piercing** [10] - 5:14, 11:5, 15:14, 15:18, 33:12, 37:1, 37:14, 38:15, 43:15, 43:19
**Pillsbury** [2] - 3:12, 3:23
**PILLSBURY** [1] - 1:13
**PIPER** [1] - 2:7
**Piper** [2] - 4:13, 4:15
**PITTMAN** [1] - 1:13
**Pittman** [2] - 3:12, 3:23
**PJM-20-1502** [1] - 1:4
**PJM-20-cv-1502** [1] - 3:5
**place** [4] - 19:24, 38:12, 38:23, 46:2
**plaintiff** [38] - 3:9, 3:13, 4:3, 5:22, 5:25, 6:15, 8:3, 8:7, 8:9, 8:15, 8:17, 8:20, 9:10, 10:2, 10:23, 12:10, 13:3, 14:25, 18:18, 19:19, 19:22, 21:14, 21:20, 21:23, 23:2, 26:25, 28:14, 30:14, 31:20, 33:25, 39:20, 40:9, 40:12, 40:17, 40:18, 41:14, 43:8, 44:9
**Plaintiff** [1] - 1:5, 3:16
**PLAINTIFF** [1] - 1:12
**plaintiff's** [1] - 3:24
**plaintiffs** [1] - 40:6
**plausible** [6] - 6:4, 35:8, 35:9, 41:5, 42:7, 42:20
**Plaza** [4] - 3:5, 6:15, 39:2, 39:12
**PLAZA** [1] - 1:4
**plead** [1] - 34:17
**pleading** [2] - 17:12, 35:7
**pled** [1] - 36:9
**PLLC** [1] - 2:3
**point** [20] - 4:21, 6:24, 6:25, 9:5, 10:19, 11:11, 13:4, 14:20, 15:8, 23:17, 26:8, 28:13, 31:19, 31:24, 34:22, 34:23, 35:8,

35:19, 40:18, 45:20
**pointed** [1] - 28:25
**pointing** [1] - 17:1
**points** [3] - 4:18, 33:2, 36:13
**posed** [1] - 5:21
**position** [4] - 9:21, 14:14, 27:4, 43:23
**possession** [1] - 6:17
**possibility** [2] - 4:22, 44:2
**possible** [1] - 41:7
**possibly** [1] - 45:9
**potential** [4] - 5:5, 14:14, 33:6, 46:10
**potentially** [1] - 6:19
**Praxair** [5] - 9:12, 9:15, 9:22
**prayers** [1] - 31:25
**prejudice** [2] - 45:14, 45:25
**prejudiced** [1] - 28:22
**prepared** [4] - 11:10, 44:15, 45:3, 46:14
**present** [1] - 20:13
**presentations** [1] - 47:2
**presiding** [1] - 3:3
**presumably** [1] - 45:17
**previous** [1] - 39:13
**previously** [1] - 48:7
**pro** [1] - 43:5
**problems** [1] - 46:10
**Procedure** [1] - 44:7
**proceed** [1] - 41:20
**PROCEEDINGS** [1] - 1:9
**proceedings** [2] - 47:5, 48:6
**proceeds** [1] - 39:4
**process** [1] - 7:5
**produce** [1] - 32:11
**produced** [10] - 17:25, 25:14, 26:20, 30:6, 30:7, 30:9, 30:12, 31:9, 32:12
**producing** [1] - 23:13
**production** [1] - 18:11
**productions** [3] - 18:6, 18:19, 24:14
**proof** [1] - 34:17
**proper** [3] - 8:6, 10:21, 31:15
**Properties** [1] - 3:16
**property** [4] - 39:16, 40:1, 40:2, 40:4
**proposed** [1] - 46:20
**proposition** [1] - 26:2

**prospective** [1] - 23:2
**prove** [1] - 34:20
**provide** [1] - 30:18
**provided** [2] - 12:13, 18:2
**provision** [2] - 13:21, 14:13
**public** [2] - 30:21, 44:4
**publicly** [1] - 30:21
**pure** [1] - 4:19
**purpose** [3] - 3:7, 30:25, 40:11
**purposes** [1] - 21:24
**pursue** [1] - 22:2
**pushed** [1] - 23:15
**pushing** [1] - 20:8
**put** [1] - 15:2

## Q

**Quarrels** [1] - 44:18
**questionable** [1] - 43:7
**questions** [3] - 6:8, 11:9, 42:17
**quid** [1] - 43:5
**quite** [2] - 45:21
**quo** [1] - 43:5
**quote** [3] - 6:18, 8:10, 23:16

## R

**raise** [2] - 35:13, 42:17
**raised** [1] - 29:2
**rarely** [1] - 15:10
**rather** [3] - 6:17, 43:25, 44:9
**raw** [1] - 45:2
**RCC** [9] - 16:14, 17:5, 17:15, 17:16, 21:25, 24:23, 24:25, 25:17, 27:14
**reaching** [1] - 17:1
**read** [2] - 12:17, 35:9
**reading** [1] - 43:6
**real** [2] - 9:22, 12:13
**really** [12] - 6:14, 7:9, 9:5, 26:4, 26:5, 28:19, 29:12, 32:19, 32:22, 37:4, 41:4, 46:6
**reason** [15] - 8:3, 10:15, 11:7, 12:3, 25:23, 25:25, 26:2, 26:3, 28:23, 28:24, 29:14, 29:21, 37:7, 37:8, 40:23
**REBECCA** [1] - 1:18

**Rebecca** [1] - 4:6
**received** [4] - 16:10, 18:7, 18:22, 19:2
**receiving** [1] - 24:14
**recent** [1] - 38:6
**recently** [5] - 17:19, 17:20, 17:23, 18:7, 18:9
**recitals** [1] - 41:6
**recollection** [1] - 34:15
**record** [3] - 17:11, 36:21, 36:22
**recorded** [1] - 48:9
**reduce** [1] - 13:15
**refer** [1] - 16:8
**reference** [1] - 27:18
**referred** [1] - 16:12
**referring** [2] - 17:5, 18:8
**refers** [1] - 11:2
**refusal** [5] - 12:18, 12:24, 13:17, 13:20, 13:25
**refusals** [1] - 44:1
**refused** [4] - 18:13, 30:18, 39:24, 40:3
**regard** [5] - 32:10, 35:22, 36:17, 40:25, 45:22
**regards** [1] - 39:25
**reinstate** [1] - 27:6
**rejoin** [1] - 15:21
**relate** [4] - 5:16, 11:13, 21:16, 32:9
**related** [2] - 11:17, 19:5
**relates** [5] - 8:15, 20:17, 26:9, 37:17, 37:19
**relation** [6] - 6:21, 7:25, 8:2, 9:25, 11:20, 15:25
**relationships** [1] - 24:17
**reliance** [1] - 27:24
**relief** [1] - 6:4, 12:15, 21:13, 22:8, 22:17, 27:2, 27:17, 31:17, 31:25, 39:13
**relieve** [1] - 12:9
**remainder** [1] - 39:8
**remains** [1] - 45:6
**remark** [1] - 24:2
**removed** [2] - 31:22, 37:14
**Renee** [4] - 1:22, 48:3, 48:15, 48:16
**rent** [10] - 22:18, 31:1, 33:25, 36:2, 36:5,

39:23, 40:12, 40:13, 42:19
**repeated** [1] - 40:2
**repeatedly** [1] - 40:3
**reply** [1] - 19:1
**replying** [1] - 26:18
**reported** [1] - 48:6
**REPORTER** [1] - 1:22
**Reporter** [2] - 48:3, 48:17
**repose** [1] - 7:19
**repossession** [1] - 20:25
**represent** [1] - 37:4
**representation** [1] - 28:18
**request** [3] - 18:11, 18:12, 18:25
**requested** [1] - 31:17
**requests** [3] - 18:1, 18:17, 39:25
**required** [1] - 9:8
**requirement** [1] - 8:9
**requirements** [1] - 15:25
**research** [1] - 29:5
**respond** [2] - 14:20, 33:1
**response** [4] - 5:21, 18:1, 37:16, 46:19
**responses** [2] - 23:9, 23:10
**responsible** [1] - 27:11
**responsive** [1] - 18:17
**rest** [1] - 16:4
**restatement** [1] - 13:9, 13:21, 14:20, 15:4
**restricted** [1] - 29:20
**result** [2] - 16:2, 45:1
**return** [2] - 13:15, 14:4
**review** [2] - 25:7, 30:21
**reviewed** [1] - 24:21
**rightly** [1] - 22:10
**rights** [1] - 3:2
**risk** [3] - 13:14, 14:3, 41:25
**risked** [1] - 5:4
**risks** [1] - 42:3
**RMR** [2] - 1:22, 48:16
**road** [1] - 45:3
**Rock** [20] - 3:5, 3:16, 4:8, 4:10, 6:15, 6:20, 11:1, 12:6, 14:5, 16:8, 16:13, 16:22, 20:19, 33:14, 34:9, 39:1, 39:2, 39:10, 39:11, 39:15
**ROCK** [2] - 1:4, 2:2

**role** [3] - 17:17, 18:23, 23:4
**rolling** [1] - 18:18
**roughly** [1] - 25:12
**RPR** [2] - 1:22, 48:16
**RSD** [43] - 13:18, 16:9, 16:15, 16:21, 17:1, 17:6, 17:18, 17:25, 18:7, 18:18, 18:24, 19:8, 19:14, 20:18, 21:10, 22:20, 24:24, 25:9, 25:13, 25:18, 27:5, 36:14, 36:21, 36:22, 37:3, 37:4, 39:3, 39:10, 39:21, 39:23, 39:24, 40:3, 40:7, 40:11, 40:13, 40:19, 41:15, 42:8, 42:14, 42:15, 43:1, 43:4, 44:3
**RSD's** [1] - 17:4
**rule** [1] - 8:14
**Rule** [7] - 5:16, 8:1, 12:9, 14:12, 15:25, 27:24, 44:6
**Rules** [1] - 44:7
**ruling** [2] - 41:24, 44:25
**run** [3] - 6:13, 7:1, 42:3

## S

**sample** [1] - 18:1
**SARA** [1] - 2:3
**Sara** [1] - 4:9
**Saturday** [1] - 25:14
**scheduling** [6] - 46:2, 46:3, 46:12, 46:14, 46:20, 46:22
**search** [1] - 24:16
**SEC** [4] - 24:17, 24:18, 24:20, 25:7
**second** [3] - 13:9, 13:21, 39:6
**secondly** [1] - 41:11
**Section** [1] - 13:10
**section** [1] - 15:4
**secure** [2] - 20:16, 21:8
**secured** [1] - 16:6
**security** [1] - 13:24
**see** [10] - 14:11, 27:8, 27:23, 27:24, 43:12, 43:23, 45:23, 46:7, 46:9, 46:13
**seek** [1] - 27:17
**seeking** [7] - 20:12, 20:14, 21:14, 22:8, 22:17, 27:3, 31:20

**seeks** [1] - 39:13
**seem** [1] - 24:3
**sense** [1] - 4:24
**sent** [1] - 18:17
**serious** [1] - 42:17
**served** [1] - 7:18
**Services** [2] - 9:15, 9:22
**session** [1] - 3:2
**set** [7] - 20:12, 20:25, 21:23, 22:9, 27:5, 35:10, 39:6
**setting** [2] - 19:8, 21:20
**Seventeenth** [1] - 1:15
**Seyfarth** [1] - 4:7
**SEYFARTH** [1] - 1:18
**shall** [1] - 45:23
**sham** [2] - 21:24, 27:12
**share** [2] - 33:13, 39:25
**SHAW** [2] - 1:13, 1:18
**Shaw** [3] - 3:12, 3:23, 4:7
**shield** [1] - 31:3
**shielding** [2] - 30:25, 40:11
**ship** [2] - 10:3, 10:6
**shorthand** [1] - 48:9
**show** [3] - 8:4, 9:7, 44:12
**showed** [1] - 24:22
**showing** [2] - 23:14, 44:4
**shown** [1] - 11:18
**shows** [1] - 29:24
**shut** [1] - 43:8
**sic** [1] - 38:4
**similar** [1] - 10:11
**similarly** [1] - 38:16
**simply** [4] - 4:24, 8:1, 18:12, 42:5
**sitting** [1] - 32:16
**situation** [4] - 6:2, 7:13, 11:17, 35:18
**six** [3] - 12:4, 19:8, 38:15
**six-day** [1] - 19:8
**slew** [1] - 15:10
**Smith** [1] - 2:8
**sole** [2] - 30:24, 40:11
**solely** [1] - 27:18
**someone** [1] - 5:5
**sooner** [1] - 26:3
**sorry** [5] - 3:14, 13:23, 14:19, 20:2, 43:8
**sort** [2] - 14:11, 27:25
**sounds** [1] - 38:2

**SOUTHERN** [1] - 1:3
**space** [2] - 44:1, 44:2
**specific** [8] - 6:8,
17:24, 18:3, 22:12,
27:1, 41:7, 43:20,
44:16
**specifically** [1] - 25:8
**specificity** [1] - 45:16
**specifics** [1] - 44:10
**spend** [1] - 7:15
**SPRING** [1] - 1:4
**Spring** [7] - 3:5, 6:15,
6:20, 12:7, 14:5,
39:1, 39:12
**SPRINGS** [1] - 2:2
**Springs** [13] - 3:16,
4:8, 4:10, 11:1, 16:8,
16:13, 16:23, 30:20,
33:14, 34:9, 39:3,
39:10, 39:15
**square** [1] - 39:17
**square-foot** [1] -
39:17
**stage** [1] - 15:16
**standard** [4] - 35:9,
37:18, 38:2, 38:7
**start** [5] - 5:18, 5:20,
9:9, 33:20, 41:25
**started** [1] - 4:19
**starts** [2] - 41:16,
41:23
**state** [10] - 11:11,
15:9, 32:25, 33:4,
33:11, 33:18, 35:23,
36:24, 39:1, 45:24
**statement** [1] - 12:24
**statements** [4] - 16:4,
36:7, 41:7, 48:8
**States** [2] - 3:1, 48:4
**STATES** [2] - 1:1, 1:10
**stating** [2] - 18:21,
19:2
**status** [1] - 23:3
**statute** [13] - 7:17,
7:24, 19:18, 22:3,
22:6, 22:7, 28:20,
29:10, 29:14, 29:21,
30:1, 32:8, 44:13
**stenographically** [1] -
48:6
**STENOTYPE** [1] -
1:23
**sticking** [2] - 6:24,
6:25
**still** [6] - 7:5, 19:25,
20:3, 23:24, 43:2,
46:24
**stop** [2] - 19:5, 40:13
**strategy** [1] - 19:4
**Street** [3] - 1:15, 1:19,

2:4
**structure** [3] - 24:10,
25:17, 27:14
**stuck** [1] - 4:25
**studied** [1] - 35:6
**sublease** [1] - 40:4
**submitted** [2] - 30:10,
30:12
**subpoena** [1] - 23:8
**subpoenaed** [1] -
40:23
**subsequent** [2] - 17:8,
41:1
**subsequently** [2] -
19:14, 24:12
**subsidiaries** [2] -
16:7, 40:20
**subsidiary** [4] - 8:22,
24:23, 30:23, 40:6
**substitute** [1] - 31:21
**substituted** [1] - 27:8
**substituting** [1] -
13:24
**substitution** [1] -
13:11
**successor** [5] - 9:10,
9:13, 9:14, 9:22
**sue** [12] - 10:8, 11:2,
12:6, 12:10, 30:14,
30:15, 31:4, 38:13,
38:20
**sued** [9] - 7:18, 10:4,
10:10, 10:11, 12:7,
13:5, 32:5, 40:24,
45:6
**sues** [1] - 11:1
**sufficient** [7] - 5:13,
15:17, 33:11, 33:18,
34:8, 38:11, 38:14
**sufficiently** [2] -
37:18, 38:1
**suggest** [4] - 12:1,
42:8, 42:11, 42:20
**suggested** [1] - 44:10
**suggests** [7] - 9:1,
11:3, 11:4, 26:6,
32:16, 36:3, 44:16
**suing** [3] - 9:10, 32:7,
36:5
**suit** [8] - 6:16, 16:23,
16:24, 20:21, 31:14,
39:1, 41:13, 41:20
**Suite** [1] - 2:4
**summary** [4] - 5:1,
10:18, 42:1, 44:23
**supervision** [1] -
48:10
**supplying** [1] - 23:8
**support** [3] - 15:17,
34:11, 36:25

**suppose** [1] - 19:11
**supposition** [1] - 7:4
**Supreme** [3] - 9:6,
10:2, 10:11
**sur** [1] - 19:1
**sur-reply** [1] - 19:1
**surely** [1] - 43:6
**surface** [1] - 29:13
**surrounding** [1] -
18:23
**survives** [1] - 7:25
**suspected** [1] - 45:5
**suspicion** [2] - 24:6,
35:13
**suspicions** [1] - 30:24
**sustain** [2] - 5:13,
38:12

**T**

**talks** [1] - 8:12
**taxes** [2] - 36:23,
36:24
**technicalities** [2] -
45:20, 45:21
**tenant** [16] - 8:22,
12:23, 13:23, 21:21,
22:19, 27:6, 27:8,
27:21, 30:23, 30:25,
31:21, 32:2, 39:8,
39:9, 39:13, 40:17
**tenants** [1] - 40:5
**term** [1] - 16:16
**terms** [3] - 9:8, 14:3,
31:9
**test** [3] - 37:19, 37:21,
44:20
**testimony** [1] - 48:8
**THE** [61] - 1:1, 1:2,
1:10, 1:12, 1:17, 2:2,
2:6, 3:1, 3:9, 3:14,
3:21, 3:24, 4:4, 4:8,
4:11, 4:14, 4:17, 5:9,
5:20, 6:6, 11:15,
12:17, 13:8, 14:21,
15:12, 15:19, 16:19,
17:7, 17:10, 17:20,
18:10, 18:20, 19:11,
19:25, 20:3, 20:11,
20:22, 21:3, 21:15,
22:22, 24:1, 24:16,
25:25, 27:2, 27:23,
29:9, 29:18, 30:3,
32:24, 33:3, 34:12,
34:22, 35:5, 36:11,
37:2, 37:6, 37:8,
37:16, 38:10, 38:24,
46:19
**theory** [5] - 12:22,
28:4, 28:10, 29:11,

37:15
**thereafter** [1] - 48:10
**therefore** [1] - 11:13
**thereof** [1] - 48:13
**third** [2] - 29:3, 39:7
**third-party** [1] - 29:3
**thousands** [1] - 7:15
**three** [15] - 7:18, 7:22,
7:23, 11:19, 12:5,
17:21, 28:3, 28:7,
28:10, 33:10, 33:11,
33:16, 33:18, 40:25,
41:12
**three-year** [3] - 7:23,
11:19, 17:21
**throughout** [1] - 43:7
**thrown** [1] - 15:16
**ticket** [3] - 10:4, 10:5,
10:17
**timeline** [1] - 17:25
**timeliness** [1] - 6:21
**timely** [4] - 8:24, 9:16,
28:22, 38:20
**TLIC** [1] - 16:12
**today** [4] - 23:20,
25:23, 26:4, 32:16
**together** [1] - 33:18
**tolled** [2] - 29:11,
41:12
**tolling** [4] - 29:14,
29:20, 30:1, 44:13
**totally** [2] - 16:3, 17:7
**transaction** [7] - 6:23,
13:5, 19:7, 20:12,
42:23, 43:6, 43:20
**transactions** [3] -
16:16, 33:25, 41:9
**TRANSAMERICA** [1] -
2:6
**Transamerica** [133] -
4:11, 4:13, 4:16,
4:21, 5:8, 5:11, 5:14,
6:1, 6:4, 6:10, 6:18,
6:23, 7:3, 7:5, 7:18,
8:4, 8:17, 8:18, 8:19,
8:22, 8:23, 9:1, 11:2,
11:4, 11:6, 11:13,
13:6, 14:7, 14:8,
14:25, 15:2, 15:8,
15:24, 16:7, 16:11,
16:20, 16:22, 17:7,
17:17, 19:3, 19:7,
19:9, 19:15, 20:6,
20:8, 20:22, 21:8,
21:11, 21:17, 21:23,
22:2, 22:5, 22:10,
22:12, 22:15, 22:18,
22:19, 23:6, 23:8,
23:11, 23:14, 23:23,
24:4, 24:10, 24:22,

24:25, 25:2, 25:4,
25:5, 25:8, 25:17,
25:20, 25:22, 26:22,
26:24, 27:1, 27:7,
27:10, 27:18, 28:15,
28:21, 29:6, 29:7,
30:2, 30:14, 30:15,
30:23, 30:25, 31:3,
31:4, 31:5, 31:8,
31:12, 31:21, 32:1,
32:11, 32:13, 32:15,
32:18, 32:20, 32:23,
33:12, 33:13, 33:16,
33:21, 33:23, 34:3,
35:16, 35:20, 37:13,
38:19, 38:20, 38:21,
38:22, 39:3, 40:7,
40:11, 40:19, 40:20,
41:1, 41:8, 42:9,
42:13, 42:22, 45:4,
46:3, 46:9
**Transamerica's** [11] -
4:23, 16:17, 17:17,
18:5, 18:23, 22:25,
26:4, 26:16, 30:21,
38:25, 45:19
**Transamerica.com** [2]
- 32:14, 32:17
**transcribed** [1] - 48:10
**TRANSCRIPT** [1] - 1:9
**transcript** [1] - 48:6
**TRANSCRIPTION** [1] -
1:23
**transcription** [1] -
48:11
**transfer** [5] - 20:25,
36:22, 36:24, 45:9,
45:10
**transmitted** [1] - 44:5
**tried** [1] - 42:22
**trier** [3] - 5:3, 41:17,
43:23
**tries** [1] - 8:9
**tripped** [1] - 10:3
**true** [6] - 10:25, 20:5,
30:19, 37:25, 39:23,
48:5
**truly** [1] - 31:19
**try** [3] - 17:2, 43:19,
46:18
**trying** [7] - 6:18,
12:14, 16:25, 28:6,
32:7, 42:13, 42:23
**TUESDAY** [1] - 1:11
**turn** [1] - 43:13
**Two** [1] - 39:6
**two** [15] - 5:15, 9:4,
11:1, 17:4, 19:1,
21:16, 23:25, 31:22,
31:23, 33:14, 33:16,

34:3, 36:13, 37:13, 41:18

## U

**ultimate** [5] - 21:13, 22:17, 27:11, 41:18, 43:22
**ultimately** [4] - 5:3, 22:15, 27:17, 30:23
**under** [17] - 5:16, 6:10, 7:25, 13:8, 15:25, 19:10, 22:15, 27:11, 27:24, 31:22, 36:17, 40:15, 40:17, 42:8, 44:6, 48:10
**undercapitalize** [1] - 19:17
**undercapitalized** [7] - 20:19, 27:13, 33:15, 34:10, 34:17, 35:25, 42:16
**understood** [1] - 4:4
**UNITED** [2] - 1:1, 1:10
**United** [2] - 3:1, 48:4
**unless** [3] - 13:11, 34:3, 46:11
**unnamed** [1] - 11:18
**unscrambled** [1] - 43:22
**unusual** [1] - 43:25
**unveil** [1] - 25:16
**up** [7] - 13:19, 19:8, 21:23, 33:2, 35:10, 35:17, 36:11

## V

**vacancy** [1] - 40:3
**valid** [1] - 37:12
**value** [2] - 13:16, 20:13
**various** [1] - 40:20
**veil** [15] - 5:13, 11:5, 15:1, 15:10, 15:14, 15:17, 33:12, 34:5, 34:7, 37:1, 37:14, 38:15, 39:7, 43:16, 43:20
**veils** [2] - 31:23, 34:4
**versus** [1] - 38:21
**viable** [1] - 40:5
**view** [1] - 43:11
**virtue** [2] - 29:23, 31:20
**vis** [2] - 46:8
**vis-a-vis** [1] - 46:8
**vitality** [1] - 44:3
**void** [1] - 21:4
**vs** [2] - 3:5, 44:19

## W

**wait** [3] - 12:5, 16:19, 34:12
**waiting** [1] - 34:23
**walk** [1] - 6:19
**Warranty** [8] - 3:6, 3:25, 4:5, 4:7, 16:7, 19:25, 20:3, 39:2
**WARRANTY** [2] - 1:7, 1:17
**Washington** [3] - 1:15, 1:19, 2:4
**week** [5] - 19:1, 34:15, 35:10, 37:9, 42:16
**weekend** [5] - 16:10, 18:8, 18:22, 30:9, 38:6
**Westlaw** [1] - 44:19
**wherewithal** [1] - 20:23
**whole** [5] - 12:3, 15:8, 21:24, 24:7, 42:23
**wholeheartedly** [1] - 5:25
**WILLIAM** [1] - 1:14
**William** [2] - 3:11, 3:15
**wind** [1] - 36:11
**WINTHROP** [1] - 1:13
**Winthrop** [2] - 3:12, 3:23
**witness** [2] - 40:23, 43:10
**witnesses** [2] - 7:14, 48:8
**wonder** [2] - 37:8
**word** [1] - 38:10
**words** [1] - 31:7
**workup** [1] - 6:7
**wrote** [1] - 9:18

## Y

**year** [7] - 7:23, 10:9, 11:19, 17:21, 25:11, 30:8, 39:22
**years** [11] - 7:19, 7:22, 12:5, 28:3, 28:7, 28:10, 35:12, 40:25, 41:12, 42:19, 43:3
**yourselves** [1] - 3:10