**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| Rock Spring Plaza II, LLC<br>6500 rock Spring Drive, Suite 5<br>Bethesda, MD 20817,<br><br>       Plaintiff<br><br>     v.<br><br>    Investors Warranty of America, LLC,<br>    4333 Edgewood Road NE<br>    Cedar Rapids, IA 52499,<br><br>Rock Springs Drive, LLC,<br>1519 York Road<br>Lutherville, MD 21093<br><br>Transamerica Corp.,<br>4333 Edgewood Road NE<br>Cedar Rapids, IA 52499,<br><br>    and<br><br>Jane Does,<br><br>       Defendants. | Case No. 8:20-cv-01502-PJM |

<u>SECOND AMENDED COMPLAINT</u>

Plaintiff Rock Spring Plaza II, LLC ("Rock Spring Plaza," "Plaintiff," or "Landlord"), by counsel, files this Second Amended Complaint[1] against Defendants Investors Warranty of America, LLC ("IWA" or "Tenant"), Rock Springs Drive, LLC ("RSD" or "Assignee"), Transamerica Corp. ("Transamerica"), and Jane Does, certain unidentified individuals and entities (collectively, with Investors Warranty of America, LLC, Rock Springs Drive, LLC, and Transamerica Corp., "Defendants"), and in support thereof alleges as follows:

---

[1] In accordance with Local Rule 103(6)(c), Plaintiff is filing with this Second Amended Complaint a copy of the amended pleading in which stricken material has been lined through and new material has been underlined.

## NATURE OF ACTION

1. This is an action brought by the Landlord against Defendants seeking a declaratory judgment that the conveyance of a leasehold interest from Tenant to Assignee was wrongful and fraudulent, and therefore should be voided.

## PARTIES

2. Plaintiff Rock Spring Plaza is a Maryland limited liability company with an address at 6500 Rock Spring Drive, Suite 5, Bethesda, MD 20817.  Plaintiff's members are citizens of the state of Maryland.

3. Defendant Investors Warranty of America, LLC, is an Iowa limited liability company with an address at 4333 Edgewood Road NE, Cedar Rapids, IA 52499.  Investors Warranty's member is a citizen of Delaware and California.

4. Defendant Rock Springs Drive, LLC, is a Maryland limited liability company with an address at 1519 York Road, Lutherville, MD 21093.  One of Rock Springs Drive, LLC's members is a citizen of Delaware and California.  On information and belief, none of Rock Springs Drive, LLC's members are citizens of the state of Maryland.

5. Defendant Transamerica Corp. is a Delaware corporation with an address at 4333 Edgewood Road NE, Cedar Rapids, IA 52499, and a principal place of business of Cedar Rapids, IA.

6. Jane Doe Defendants are certain unknown individuals and entities who directed the actions giving rise to the fraudulent conveyance, and who personally stand to gain financially from the fraudulent conveyance.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds the sum or value of $75,000.

8. This Court has personal jurisdiction over Defendants because they transact business in Maryland and Plaintiff's claims arise directly out of that business.

9.  Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Plaintiff's claim occurred in Maryland and the property at issue is located in Maryland.

10. This Court has the authority to grant declaratory relief pursuant to 28 U.S.C. § 2201.

<strong>FACTUAL ALLEGATIONS</strong>

**I.     The Ground Lease**

11. On November 14, 1990, Landlord's predecessor-in-interest, Anne Camalier, entered into an Amended and Restated Ground Lease Indenture ("Ground Lease") with Tenant's predecessor-in-interest, Rock Spring II Limited Partnership.  A "ground lease" is a long-term lease of land only, as opposed to a lease of a building on land or of a unit in a building.  *See* Ground Lease, BLACK'S LAW DICTIONARY (10th ed. 2014).

12. The tenant under a ground lease typically operates a business out of the property on the land in order to generate revenues that it will then use to, among other things, pay the "ground rent" to the landlord.  Alternatively, the tenant may sublease the property to one or more third party sublessees, to operate a business out of the property.  In that case, the tenant to the ground lease would be able to use the rent it receives from its sublessees to pay the ground rent to the landlord.  If the tenant builds any improvements (i.e., buildings) on the land, those improvements usually revert to the landlord when the ground lease terminates.

13. Under the Ground Lease at issue here, Landlord leased to Tenant's predecessor-in- interest the land located at 6560 Rock Spring Drive in Bethesda, Maryland (the "Property").  The term of the Ground Lease is 99 years and expires in November 2089.

14. Tenant is a subsidiary of Transamerica, a multibillion-dollar insurance company.  Under the terms of the Ground Lease, Tenant agreed to pay Landlord an escalating annual ground rent, payable in monthly one-twelfth installments due on the first of each month.  The current monthly installment of ground rent is $144,980.50.

## II.    Tenant Acquires the Ground Lease But Then Plans Its "Exit Strategy" To Get the Ground Lease "Off Its Books"

15. When Tenant decided to acquire the Ground Lease through foreclosure in 2012 Tenant prepared an analysis and recognized that the Ground Lease would obligate Tenant to pay Plaintiff substantial ground rent through November 2089. A few years earlier, the primary tenant had opted not to renew, and Tenant knew it would acquire a near-vacant building.

16. After acquiring the Ground Lease, Tenant was unable to secure subtenants for the Property and was unable to sell its interest in the Ground Lease. Year after year, Tenant wrote down the value of its interest in the Ground Lease, such that by 2017 Tenant recorded the Ground Lease on its books as a liability of $3,000,000.

17. In 2016, Tenant determined that the Ground Lease was "worthless" and designed an "exit strategy" to get the Ground Lease "off its books."

18. Tenant, as part of its "exit strategy," "engaged outside counsel to explore an exit which would stop the monthly losses and any future liability," and discussed internally the "need to be mindful of defending against the fraudulent transfer claims during negotiations [with a potential buyer]."

## III.    Tenant Conveys Its Interest in the Ground Lease to Assignee

19. On August 31, 2017, Landlord received a one-page letter from Tenant indicating that Tenant had assigned its interest in the Ground Lease to RSD, a limited liability company that was formed just six days earlier, on August 25, 2017. *See* Exhibit A, Letter from Tenant to Landlord (Aug. 31, 2017); Exhibit B, RSD Registration Information.[2]

20. In its letter to Landlord, Tenant did not explain a business purpose for the assignment. Nor did Tenant provide any information about the identity of Assignee aside from its name. The letter stated only that if Landlord had any questions, it should contact Robert Barron, an attorney in Fort Lauderdale, Florida.

---

[2]  In accordance with Local Rule 103(6)(b), Plaintiff is attaching only newly added exhibits to this Second Amended Complaint. Exhibits A through F were attached to Plaintiff's First Amended Complaint (Dkt. 59, Feb. 25, 2021).

21. RSD does not physically occupy the Property and has not generated any income since the Ground Lease was purportedly assigned from Tenant to RSD.  On information and belief, RSD terminated Tenant's retention of a broker, and the Property is "off-market," meaning any potential subtenant or buyer would have no reason to believe the Property, in whole or in part, is available for rent or purchase.  Tenant and RSD have not operated a business out of the Property or subleased the Property to a third party.

22. Yet, from August 2017 to October 2022, RSD has paid monthly ground rent to Landlord.  All funding for the payment of monthly ground rent by RSD to Landlord has come from IWA, which has no obligation to continue to fund ground rent.  On information and belief, IWA has continued to fund RSD's financial obligations under the Ground Lease, including payment of ground rent, only because this lawsuit was filed, tolling the running of the statute of limitations on a fraudulent conveyance claim.

23. On information and belief, Tenant conveyed its interest in the Ground Lease to defendant Assignee for the sole purpose of shielding Transamerica and Tenant from their obligation to pay ground rent and fulfill Tenant's other obligations under the Ground Lease.  On information and belief, if Plaintiff had not timely filed suit, IWA would have stopped funding RSD, which in turn would have stopped fulfilling the financial obligations under the Ground Lease that IWA purportedly assigned to RSD.

### IV.    Assignee Refuses to Provide Any Information About Its Identity or Intentions

24. Immediately after it received Tenant's letter advising that it assigned the Ground Lease to Assignee (RSD), Landlord contacted Assignee's attorney, Mr. Barron, to inquire as to the identity and intentions of Assignee.  Mr. Barron declined to provide the requested information. This was unusual, as the landlord and tenant under a ground lease typically communicate regularly about the tenant's intentions for the property given that most ground leases (including the Ground Lease between Landlord and Tenant) obligate tenant to pay real estate taxes and to

repair and maintain improvements on the property in which the landlord retains a reversionary interest.

25. While Mr. Barron initially indicated that he would contact his client about potentially brokering an introduction with Landlord, Landlord heard nothing from Assignee.

26. On February 22, 2018, Landlord wrote to Assignee again to follow up on its request for basic information about the identity and intentions of Assignee. *See* Exhibit C, Letter from Landlord to Assignee (Feb. 22, 2018). Landlord noted in the letter that it had reviewed the land records of Montgomery County and determined that Defendants had not recorded the assignment or paid recordation taxes. *Id*. at 1. Landlord also noted that there had been no business activity at the Property since notice of the assignment was provided in August 2017. *Id*. Landlord explained that the lack of communication and activity from Assignee was giving Landlord "reasonable insecurity with respect to Assignee's ability to perform under the Ground Lease, including without limitation its financial ability to pay rent, taxes, insurance, utilities, and to maintain the Property in first class operating condition and repair." *Id*. at 2. Landlord also explained that the identity of Assignee's members was essential for Landlord to comply with federal statutes and regulations that place restrictions on Landlord's dealings with certain entities. *Id*. Landlord reiterated its request for information and indicated a willingness to travel to Florida for the meeting. *Id*.

27. Over a month later, on March 30, 2018, Mr. Barron responded to Landlord but refused to provide the requested information and refused to meet with Landlord. *See* Exhibit D, Letter from Assignee to Landlord (Mar. 22, 2018). Assignee's purported reason for refusing to provide the information was that the Ground Lease did not require Assignee to "provide to Landlord any additional information regarding [Assignee's] strategic and proprietary commercial activity and business plans with respect to the property," *id*. at 3, even though Landlord had not requested any of Assignee's "strategic and proprietary" information.

28. On April 25, 2018, Landlord followed up, again by letter, explaining that it was not seeking any strategic and proprietary information and reiterating its request for basic information about

Assignee.  *See* <u>Exhibit E</u>, Letter from Landlord to Assignee (Apr.  25, 2018).  Landlord noted that Assignee's furtiveness was causing Landlord concern as to the legitimacy of the purported conveyance.  *Id*. at 1.  Landlord also noted that it was standard practice for landlords and tenants to maintain regular channels of communication and that Landlord was regularly receiving requests for proposals from potential subtenants, including subtenants who were seeking to occupy several office buildings such as the buildings on the Property, which had been vacant for several years.  *Id*. at 2.  Landlord noted that if Assignee was legitimately interested in engaging in commercial activity at the Property, it would be in both parties' interests to be able to discuss these potential opportunities as they arose.  *Id*.  Finally, Landlord explained that Assignee had a legal obligation to record the assignment of the leasehold interest under Maryland law but that Assignee had failed to do so, further calling into question whether Assignee was a legitimate entity.  *Id*. at 3.

29. Assignee did not respond to Landlord's letter.

## V.     Assignee Has Refused to Engage in Commercial Activity at the Property or Engage with Potential Subtenants

30. Since the conveyance in August 2017, the Property has languished in vacancy, without any meaningful commercial activity at the Property.  Assignee has repeatedly refused to explore numerous opportunities to sublease the Property to commercially viable tenants.  For example, in November 2017, Landlord learned that Assignee had been approached about a potential opportunity to sublease the Property to Marriott, which was looking to lease a property just like the Property that had been conveyed to Assignee.  Assignee, however, inexplicably declined to submit a proposal for the Marriott deal.

31. Similarly, on June 6, 2019, Landlord informed Assignee that the General Services Administration ("GSA") had expressed an interest in a long-term lease at the Property.  *See* <u>Exhibit G</u>, Letter from Landlord to Assignee (June 6, 2019).[3]  Landlord offered to pursue

---

[3]  This letter was inadvertently omitted as an attachment to the original Complaint and First Amended Complaint.

discussions with GSA jointly with the goal of potentially modifying the Ground Lease if discussions proved successful.  Assignee rejected further exploration of the GSA opportunity, asserting without explanation that it was not financially viable.  Landlord requested that Assignee consult with its broker to evaluate the lease rental rate by GSA's deadline for submitting the best offer lease rent.  On information and belief, Assignee did not follow up with its broker or with the GSA, and thus lost the GSA sublease opportunity.

## VI.    Landlord Learns of Assignee's Relationship to Tenant and Transamerica

32. Even though Assignee refused to provide any information as to its true identity, Landlord was able to determine, through a review of Transamerica's public filings and other publicly available information, that Assignee is in fact an affiliate of Tenant and, ultimately, a subsidiary of Transamerica, confirming Landlord's suspicions that Assignee is a sham entity created for the sole purpose of shielding Transamerica and Tenant from their long term financial obligations to pay ground rent.   In effect, Transamerica and Tenant retained possession and control of the property after Tenant's interest was purportedly assigned to Assignee.

33. For example, Assignee's Articles of Organization identify a "[f]iling party[] return address" of 2457 Collins Ave, PH2, Miami Beach, Florida 33140."  *See* Exhibit F, Articles of Organization for Rock Springs Drive, LLC.  A public-records search revealed that the resident of 2457 Collins Ave is Troy T.  Taylor, President of Algon Group ("Algon"), a financial advisory firm in Atlanta.  Algon has previously retained Assignee's attorney Robert Barron.

34. One of Algon's Senior Managing Directors, David C. Feltman, was formerly the Executive Vice President at Aegon Real Assets US, another Transamerica subsidiary and affiliate of Tenant.  *See* Exhibit A at 3.  At Aegon, Mr. Feltman was a member of the Aegon Real Estate Executive Committee, the governing approval body for all Aegon/Transamerica U.S. real-estate debt and equity investments.

35. Transamerica's public Securities and Exchange Commission filings further confirm the relationship among Assignee, Tenant, and Transamerica.

    a. According to Transamerica's SEC filings, Assignee is a "person controlled by or under common control with [Transamerica]." Those filings stated that Assignee's members are RCC North America LLC (98% voting interest) and Longshore Ventures LLC (2% voting interest). RCC North America LLC's sole member is Transamerica Corporation.

    b. According to the same public SEC filings, Tenant is also a person controlled by or under common control with Transamerica. Tenant's sole member is RCC North America LLC, the same entity that owns 98% of the voting interests in Assignee.

36. According to Assignee's responses to Plaintiff's interrogatories, however, IWA, not RCC North America LLC, has the 98% interest in Assignee: "Longshore Ventures has a 2% membership and voting interest [in Assignee]. IWA has a 98% ownership and voting interest." RSD's Responses to Plaintiff's First Set of Interrogatories.

37. On information and belief, Defendants perpetrated the fraudulent conveyance and personally stand to gain financially from the fraudulent conveyance.

38. Based on the foregoing—including the fact that Assignee (i) was formed just days before the conveyance, (ii) is a related party to Tenant and Transamerica, (iii) has refused to provide any information to Landlord about its identity and intentions, (iv) has not engaged in any commercial activity at the Property, and (v) refuses to engage with prospective subtenants—Landlord believed that Tenant conveyed its interest to Assignee for the sole purpose of avoiding its obligation to pay rent to Landlord under the Ground Lease and, as such, filed this lawsuit in June 2020.

39. On information and belief, Tenant has undercapitalized Assignee and initially planned to provide it with only enough funds to pay monthly rent through August 31, 2020, and Assignee does not have the ability on its own to raise capital, take out loans, or otherwise generate revenues to meet its obligations under the Ground Lease.

40. On information and belief, had Plaintiff not initiated this lawsuit in June 2020, Tenant would have ceased paying monthly rent after August 31, 2020, which is the date that Maryland's three-year statute of limitations for fraudulent conveyance claims would have run.

41. On information and belief, Tenant planned to contend that any action brought by Landlord after Assignee stopped paying rent would be barred by Maryland's statute of limitations. Accordingly, Landlord brings this action to declare invalid Tenant's purported assignment to Assignee.

### COUNT I
### Wrongful, Invalid Assignment (IWA)

42. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as fully set forth herein.

43. In August 2017, Tenant purported to convey by assignment its interest in the Ground Lease to Assignee.

44. Tenant intended the assignment to be an "exit strategy" to get what it deemed a "worthless" investment for which it had substantial on-going financial obligations, including the requirement to pay ground rent, taxes, insurance, and repair and maintenance expenses, "off its books."

45. Plaintiff, upon learning of the assignment, promptly and in good faith, sought information as to whether the assignment might materially increase the burden or risk imposed on Plaintiff or materially impair Plaintiff's chance of obtaining return performance, or materially reduce the Ground Lease's value to Plaintiff.

46. Tenant and Assignee did not provide adequate information to Plaintiff about Assignee, its identity, and its ability to perform.

47. Without adequate knowledge of Assignee's identity and ability to perform, Plaintiff could not confirm the validity of the assignment.

48. Tenant breached the covenant of good faith and fair dealing implied in the Ground Lease because it sought to assign the Ground Lease to a sham entity that it controlled to avoid its

long-term financial obligations under the Ground Lease, leaving Assignee without assets or business operations sufficient to fulfill its obligations.

49. The purported assignment of the Ground Lease to Assignee materially increases the burden and risk imposed on Plaintiff by the Ground Lease, materially impairs Plaintiff's chance of obtaining return performance under the Ground Lease, and/or materially reduces the Ground Lease's value to Plaintiff.

50. The purported assignment of the Ground Lease by Tenant to Assignee is contrary to public policy and the terms of Tenant's promise to Plaintiff because Tenant knows, and knew at the time of the purported assignment, that Assignee could not fulfill Tenant's obligations under the Ground Lease.

51. Tenant's purported assignment of the Ground Lease to Assignee does not discharge Tenant of its duties to Plaintiff under the Ground Lease.

52. Accordingly, the Court should enter judgment that Tenant's purported assignment to Assignee was wrongful and invalid and should void the assignment or, in the alternative, should declare that IWA remains in privity of contract with Landlord under the Ground Lease and therefore is jointly and severally liable with RSD for the satisfaction of the tenant's obligations under the Ground Lease.

**COUNT II**
**Declaratory Judgment That Assignment Was A Fraudulent Conveyance**

53. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

54. In August 2017, Tenant conveyed by assignment its interest in the Property to Assignee.

55. The conveyance was made with the intent to hinder, delay, or defraud Landlord. Tenant conveyed its interest in the Property to avoid its obligation to pay rent under the Ground Lease to landlord.

56. By assigning its interest in the Property, Tenant and Transamerica used a sham entity, Assignee, as an instrumentality to evade their long term financial obligations under the Ground Lease

11

and to implement their fraudulent scheme in which Assignee is left without assets sufficient to fulfill its obligations.

57. Accordingly, Plaintiff seeks a declaratory judgment that the conveyance constitutes a fraudulent conveyance.

### COUNT III
### Set Aside the Fraudulent Conveyance

58. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

59. Defendants made the conveyance with the intent to hinder, delay, or defraud Landlord.

60. Accordingly, the Court should set aside the fraudulent conveyance under Md. Comm. Law § 15-210.

### COUNT IV
### Pierce the Corporate Veil to Enter Judgment that Landlord May Collect Rent From Tenant for the Remainder of the Lease

61. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

62. Defendants made the conveyance with the intent to defraud Landlord.

63. Tenant has used Assignee merely as a shield to defraud Landlord and for the perpetration of the fraudulent conveyance.

64. Accordingly, the Court should pierce the corporate veil and enter judgment that Landlord may collect rent from Tenant for the remainder of the lease term.

### COUNT V
### Judgment That Tenant is Alter Ego of Assignee and Transamerica is the Alter Ego of Tenant

65. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

66. Assignee is an affiliate of Tenant and, ultimately, a subsidiary of Transamerica.  Assignee was created for the sole purpose of shielding Transamerica and Tenant from their obligation to pay ground rent.

67. Defendants have failed to observe the corporate entity.

68. Defendants operate the businesses or deal with the property as if they are not separate entities.

69. Accordingly, the Court should enter judgment that Tenant is the alter ego of Assignee and Transamerica is the alter ego of Tenant.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

a.    Issue a declaratory judgment that Tenant's purported assignment of its interest in the Property to Assignee was wrongful, invalid, and a fraudulent conveyance;

b.    Set aside the assignment or, in the alternative, declare that Tenant remains in privity of contract with Landlord under the Ground Lease and therefore is jointly and severally liable with Assignee for the satisfaction of Tenant's obligations under the Ground Lease;

c.    Enter judgment that Tenant is the alter ego of Assignee;

d.    Enter judgment that Transamerica is the alter ego of Tenant; and

e.    Provide such other and further relief as the Court deems just and proper.

Dated:  November 17, 2022                  Respectfully submitted,

*/s/ William M. Bosch*
William M. Bosch (D. Md. Bar No. 16017)
Alvin Dunn (D. Md. Bar No. 29068)
Katherine Danial (D. Md. Bar No. 21270)
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone: 202-663-8000
Facsimile: 202-663-8007
william.bosch@pillsburylaw.com
alvin.dunn@pillsburylaw.com
katherine.danial@pillsburylaw.com

*Attorneys for Plaintiff Rock Spring Plaza II, LLC*