```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MARYLAND
 2                      SOUTHERN DIVISION

 3   ROCK SPRING PLAZA II, LLC,    )
                                   )
 4        Plaintiff,               )
                                   )Civil No.
 5        vs.                      )20-cv-01502-PJM
                                   )
 6   INVESTORS WARRANTY OF AMERICA,)Teleconference
     LLC, ET AL.                   )
 7                                 )April 13, 2023
          Defendants.             )
 8   _____)

 9

10            THE ABOVE-ENTITLED MATTER CAME ON FOR
                         TELECONFERENCE
11            BEFORE THE HONORABLE PETER J. MESSITTE

12

13                   A P P E A R A N C E S

14   ON BEHALF OF THE PLAINTIFF:
          WILLIAM M. BOSCH, ESQUIRE
15
     ON BEHALF OF DEFENDANT INVESTORS WARRANTY:
16        REBECCA A. DAVIS, ESQUIRE

17   ON BEHALF OF DEFENDANT ROCK SPRINGS DRIVE, LLC:
          SARA KROPF, ESQUIRE
18        REBECCA GUITERMAN, ESQUIRE

19   ALSO PRESENT:
          TROY TAYLOR
20        PAUL RUBIN

21

22       (Computer-aided transcription of stenotype notes)

23                      Reported by:
                  Ronda J. Thomas, RMR, CRR
24                Federal Official Reporter
             101 W. Lombard Street, 4th Floor
25                Baltimore, Maryland 21201
```

1   (11:04 a.m.)

2          THE COURT:  Counsel, Judge Messitte here.  We have a

3   court reporter.  Would you identify yourself?

4          THE COURT REPORTER:  Hi, Judge.  This is Ronda Thomas.

5          THE COURT:  Okay.  Good.

6      Counsel for Plaintiff, identify yourself.

7          MR. BOSCH:  Good morning, Your Honor.  It's Bill Bosch

8   on behalf of the Plaintiffs.

9          THE COURT:  And the Defendants Investors Warranty?

10          MS. DAVIS:  Rebecca Davis for Investors Warranty of

11   America.

12          THE COURT:  Anybody else on the line?

13          MS. KROPF:  Yes, Your Honor.  Sara Kropf for Rocks

14   Springs Drive along with another lawyer from our firm, Rebecca

15   Guiterman.  And I believe the two principals for Rock Springs

16   Drive are on the line as well, Troy Taylor and Paul Rubin.

17          THE COURT:  Sorry, the last name again?

18          MS. KROPF:  Troy Taylor and Paul Rubin.

19          THE COURT:  Again, we're trying to unscramble a

20   situation here.  As far as -- I don't know whether there's

21   anything preliminarily to talk about?  Anybody have a

22   preliminary statement to make?  Not a summary of your position

23   in the case, just something that needs to be attended to before

24   we get into the merits?  Okay.

25      Well, first of all, I understand that Investors Warranty

1  has filed a Notice of Withdrawal of the Motion To Quash Without

2  Prejudice.

3      Am I correct on that, Ms. Davis?

4          MS. DAVIS:  Yes, Your Honor.

5          THE COURT:  All right.  I'll sign that then effective

6  today.

7      I still, I gather, am awaiting a response from the

8  Plaintiff to the memo that was filed at my direction by

9  Defendants, that is the Court Reconsideration.

10     Am I correct on that, Mr. Bosch?

11         MR. BOSCH:  Yes, Your Honor.  It's currently scheduled

12  for Friday, and what I've asked in my response letter is just

13  to give us until the following Tuesday in light of the time we

14  had to spend in addressing the motion that has us in this

15  hearing today.  But, yes, you're waiting for our response.

16         THE COURT:  Well, you've stated that it's your

17  position that the Plaintiff should not be able to respond to

18  your paper, or are you allowing that they are entitled to file

19  one in opposition?

20         MS. DAVIS:  Yes, Your Honor, is this with respect to

21  the crime-fraud exception briefing?

22         THE COURT:  I'm sorry, I need to hear you again.  You

23  broke up a little bit on that.

24         MS. KROPF:  Is this with respect to the crime-fraud

25  briefing?

1          THE COURT:  I'm not catching you.  Can they file it?

2   Are you opposing that they file an opposition?

3          MS. KROPF:  Is this with respect to the crime-fraud

4   briefing, Your Honor?

5          THE COURT:  Right.  Yes.

6          MS. KROPF:  I believe Your Honor has already stated

7   that they're to file a response Friday.  They're asking to

8   extend it until Monday.  We have not taken a position on that.

9          THE COURT:  All right.  So you have no problem giving

10  them until Tuesday to do it?  All right.

11         MS. KROPF:  That's not a problem.  I would ask that we

12  have the same extension, of course.

13         THE COURT:  That's fine.  You'll have the similar

14  extension on the reply, so that part is taken care of.

15      The real issue is whether anything goes forward until the

16  Court addresses that issue of the crime-fraud exception.  And I

17  gather, Ms. Davis, your position is that the Court should act

18  on certain things before I even make a decision relative to the

19  crime-fraud exception; am I correct in that?

20         MS. DAVIS:  With respect to Mr. Sowka, Plaintiffs have

21  taken the position that it may not need to depose Mr. Sowka

22  depending on the Court's decision with respect to that.  We

23  have not made any other position at this point.  I don't

24  believe.

25         THE COURT:  As I understand it, Mr. Bosch, you're

1  prepared to wait to depose and potentially seek leave to

2  depose, depending on the Court's ruling on the crime-fraud

3  issue, correct?

4       MR. BOSCH:  Yes, sir.  That's the position I took with

5  respect to the deposition of Mr. Sowka, who is Ms. Davis's

6  partner, as well as with respect to Jordi Guso, who is one of

7  the lawyers for Ms. Kropf's client.

8       THE COURT:  Maybe I need to be more specific.

9       Ms. Davis, are you objecting and asking the Court to rule

10  right now on the possible deposition of Mr. Guso?

11       MS. DAVIS:  Your Honor, just to clarify, the issue is

12  actually related to a letter that Rock Springs Drive submitted.

13  So with respect to Mr. Sowka, we aren't taking any other

14  positions at the moment, other than what was stated within our

15  notice that we filed late last night, early this morning, and

16  that we had sent to you, if Mr. Bosch wants to take Mr. Sowka's

17  deposition at a later date we would certainly refile a motion

18  to quash but right now we're not taking any other positions.

19       THE COURT:  Okay.  Well, if the determination is made,

20  and correctly it's my inclination to make it, nothing should go

21  forward until we resolve the crime-fraud issue.  Much of this

22  stuff is academic.  Obviously, I'll give the parties time to

23  arrange their affairs once I make the ruling in that case.  And

24  it may or may not involve some of the procedural steps the

25  Defendant raises.  Although Plaintiff has not had a chance to

 1   respond to some of those contentions.

 2        So I think the short answer is neither of these

 3   depositions should go forward.  Notwithstanding the deadline

 4   for discovery, we'll extend the time.  Lord knows you folks

 5   have lived in this case for a long time, and you can certainly

 6   abide a matter of additional days here to get this, I think,

 7   Court preliminary issue decided.

 8        So then there -- with the representation, unless you want

 9   an order to this effect, Counsel, I would say defer any

10   depositions pending the Court's ruling in the matter.

11        Any objection to that?  The Court perhaps could put in its

12   memorandum order after the conversation today that there won't

13   be a deposition of these individuals pending the Court's ruling

14   on the crime-fraud issue.  I think that probably will take care

15   of it.

16        Are there other issues that need to be discussed this

17   morning?

18        **MS. KROPF:**  Your Honor, this is Sarah Kropf for Rock

19   Springs Drive.

20        **THE COURT:**  Go ahead.

21        **MS. KROPF:**  Your Honor, we do oppose not taking

22   Mr. Barron's deposition, which is scheduled for tomorrow.  And

23   to give a little context, Plaintiff noted -- served a subpoena

24   for Mr. Barron's deposition about five or six weeks ago.  We

25   accepted service and scheduled it.  Mr. Barron has prepared for

1  his deposition.  Cleared his calendar.

2      As Mr. Bosch knows, I'm traveling to Florida this evening

3  to be there for it.  Mr. Barron has cleared his schedule and

4  prepared, the general counsel, they're all going to be there

5  given the allegations that counsel for Plaintiff are throwing

6  around that all of the lawyers are involved in fraud here.

7  And, as he said, there are nonprivileged matters to which

8  Mr. Barron is a witness.

9      So our suggestion is that we go forward with the scheduled

10  deposition, given that it's burdensome for us to prepare twice

11  on the same matters.  Have the Plaintiff take Mr. Barron's

12  deposition.  He's available, has prepared, and has cleared his

13  calendar.  And, quite frankly, gone to a lot of trouble to do

14  that, to accommodate this deposition.  And then, take that

15  deposition.  We will be asserting privilege to things that are

16  conversations between Mr. Barron and his client, Rock Springs

17  Drive; and then if the crime-fraud decision affects Mr. Barron,

18  or has to do with any of his communications, then Plaintiff can

19  of course let the Court know and seek the opportunity to depose

20  them on those narrow issues that might be raised.

21      But my concern is that we are now canceling a deposition

22  the day before when a lot of work and preparation has gone into

23  this.  This is the first time I've received notice that after

24  my meet and confer with Mr. Bosch, which I had thought we had

25  reached an agreement that we would have Mr. Barron's

1  deposition, that he's now seeking to cancel it.

2      So given the practical matter, given the time and effort

3  of where we are, our strong preference is to have this

4  deposition go forward to allow Mr. Bosch to ask questions and

5  we will, of course, interpose the appropriate privilege

6  objections, but not to cancel the deposition the day before.

7  That would require us to re-prepare Mr. Barron on matters that

8  are not privileged.  And really imposes a burden on us, which

9  we don't think is quite right at this late stage in discovery.

10     So what we are asking, Your Honor, is that if you sought

11 to quash Mr. Guso's deposition, Mr. Bosch has made clear that

12 if the crime-fraud issues don't relate to Mr. Guso, he wouldn't

13 seek to depose him on other matters that would be duplicative.

14     But our proposal is that we go forward with Mr. Barron's

15 deposition scheduled for 9:00 a.m. tomorrow.

16     **THE COURT:**  All right.  Mr. Bosch, do you want to

17 respond?

18     **MR. BOSCH:**  Yes, Your Honor.  There are four lawyers'

19 depositions that are currently noticed in this case.  The two

20 the Court has already decided, and this was -- my proposal to

21 Ms. Davis and to Ms. Kropf was as to Mr. Sowka, one of the

22 lawyers, and as to Mr. Guso, the second lawyer, I would hold

23 off on deposing him until after the Court has ruled on the

24 privilege issues.

25     Then recall that there is Mr. Robert Barron.  There was

1    already a motion to quash the subpoena to Robert Barron that

2    Ms. Kropf argued unsuccessfully.  The Court denied that motion

3    without prejudice.

4         Mr. Barron, as the Court may recall, in addition to being

5    a lawyer for Algon -- remember there's the IWA member of the

6    Defendant Rock Springs Drive, and then there's this Algon

7    member, and that's Mr. Taylor and Mr. Rubin, the two gentlemen

8    who are on the line right now.

9         The Algon member brought in Mr. Berger -- I'm sorry,

10   Mr. Barron, in addition to negotiate the transaction on their

11   behalf.  He also was the person identified on the notice of

12   assignment to whom the landlord should address any questions.

13        And recall at the hearing in February on their first

14   motion to quash the Barron subpoena, the Court said that not

15   everything Mr. Barron did is subject to privilege.  And the

16   Court said, for example, it's appropriate when he's acting as

17   the mouthpiece to ask him why you didn't disclose information?

18   What did you know about IWA's involvement in this new company,

19   RSD?  Were you instructed not to disclose information?  That

20   that's not privileged.

21        But the Court said, you know, you're going to take the

22   principals of RSD, Mr. Taylor and Mr. Rubin, and you're going

23   to take their depositions so why don't you ask them first, and

24   then you can evaluate whether you need Mr. Barron's testimony.

25        We did that, Judge, although Ms. Kropf in her letter says

 1    that we declined to do that and, in fact, we did.

 2        In my response letter, I don't know if Your Honor had a

 3    chance to review it, it's long, but what I did is I laid out --

 4    I showed the testimony.  I showed what Ms. Kropf did there and

 5    she told you, again, what she's going to do when I depose

 6    Mr. Barron, which is, her position is, any of the

 7    communications between Mr. Rubin and Mr. Taylor, the

 8    principals, and Mr. Barron, are attorney-client privileged.  So

 9    that when he was writing his letters to me, responding and not

10    providing information, that anything he discussed with his

11    client is privileged.  Of course that's not accurate.

12        And he cited a case that says when you're acting as the

13    mouthpiece for your client, you're not serving in an

14    attorney -- those are not attorney-client privileged

15    communications.  That's, in fact, what Your Honor has already

16    found.

17        So what Ms. Kropf has done is she is instructing the

18    principals, she has done that, not to answer what they've

19    discussed with Mr. Barron on what he should disclose and what

20    he shouldn't disclose.  So we've given some of the citations

21    for that in our letter.

22        Judge, at that last hearing you said if that happens of

23    course we have a problem.  So now we have a problem.

24        And Ms. Kropf has reiterated today that if I proceed with

25    Mr. Barron's deposition, she's obviously going to continue to

1    instruct him not to answer any questions about his
2    conversations with Mr. Rubin and Mr. Taylor about what
3    information to provide to the landlord and what information not
4    to provide, which is one of -- it's the crux of the case.
5         So, Judge, what I said, when I met and conferred with
6    Ms. Kropf, she was raising the issue of the timeliness of the
7    subpoena to Mr. Guso.  And I raised with her then, as I did
8    during the course of the principal depositions, why don't we
9    figure out today, Ms. Kropf, if you're going to continue to
10   assert attorney-client privilege over any conversations before
11   I go through the burden of deposing Mr. Barron.  Because I
12   don't want to do it twice.  I don't want to take Mr. Barron's
13   deposition, having instruct the witness not to answer and then
14   have to burden the Court.  Especially if when the Court
15   resolves the privilege issues, we likely will need to take
16   Mr. Barron a second time.
17        So it's in that context, I said, why don't we get some
18   guidance from the Court on your instructions, and it probably
19   makes sense in the light of this Court's ruling that the Sowka
20   and the Guso depositions should be delayed.  There's no
21   prejudice to them or to us.  That, why don't we wait until the
22   privilege issues are resolved so I'll take Mr. Barron once and
23   the context of that deposition this Court can then decide the
24   scope of Ms. Kropf's privilege objections.
25        Let me just say the fourth witness, the fourth lawyer, is

1 me; that two weeks ago today Ms. Kropf had a process server

2 show up at my law firm while I was in the middle of deposing

3 two IWA witnesses to serve me with a subpoena.

4      So and she didn't raise that with the Court.  My

5 deposition is scheduled for Monday, the last day of fact

6 discovery.  Why they need my deposition, they haven't shown.

7 It's certainly distinguishable from Mr. Barron's deposition,

8 Mr. Sowka's, Mr. Guso's.  I was not involved in perpetrating a

9 fraud.  My evidence bears on nothing in this case.  But,

10 nevertheless, that's the fourth lawyer deposition that they're

11 proceeding with.

12      So my view is they should certainly not proceed with my

13 deposition.

14      And as to Mr. Barron and Mr. Guso and Mr. Sowka, let's

15 wait and see how this Court resolves the privilege issues, the

16 upcoming summary judgment briefing is on the contract-based

17 theories.  Their fraud, their evidence on fraud and crime-fraud

18 does not bear on the summary judgment briefing.  So there's no

19 prejudice to either party.  We can deal with those depositions

20 in the context of this Court's ruling on the privilege issues.

21 That's what I wanted to raise with this Court.

22          MS. KROPF:  Your Honor, may I respond?

23          THE COURT:  Sure.

24          MS. KROPF:  So a few points.  First of all, the case

25 that Plaintiff relies on, he cites one case for this

1   proposition, that if a lawyer speaks for a client there is

2   suddenly no attorney-client privilege between the lawyer and

3   the client, that's the *Koch* case, it's a District of Maryland

4   case from 2005, and they are completely misrepresenting the

5   holding of that Court.  That decision reaches the exact

6   opposite conclusion of what they're arguing here.

7          There, the lawyers were hired and helped write a letter

8   that was given to a third-party.  And the people on the other

9   side tried to claim that there was no attorney-client privilege

10  because the information that was given from the client to the

11  lawyers was eventually in a letter to a third-party.

12         And this Court says absolutely not, those communications

13  are still privileged.  And what the Court said exactly was:

14  The Court does not believe that Fourth Circuit precedent strips

15  consultative attorney-client communications of privilege simply

16  because as a result a public letter of legal position is

17  subsequently sent.

18         So what the Court made clear there is that even if you

19  communicate with your client and then you communicate with a

20  third-party, your communications with your client are

21  absolutely privileged.

22         The distinction that's drawn in that case that it's

23  looking to a grand jury case in the criminal context is a very

24  narrow exception, and the two things the Fourth Circuit has

25  held are, when you're doing your tax returns that you talk to a

```
 1   tax attorney and then that information you give the tax
 2   attorney goes in your return; or you're doing a public offering
 3   document, something like a prospective, and you hire the lawyer
 4   to put information in that public prospective.  That is the
 5   narrow time when the communications between a client and a
 6   lawyer, because of those very (inaudible) communications, are
 7   never intended to be confidential.
 8        What this Court held in Koch -- and the Plaintiff is
 9   misrepresenting what it says -- it says that as long as it's
10   the intent of the client to keep those communications
11   confidential then they are confidential.  They are covered by
12   the attorney-client privilege.
13        It does not matter that Mr. Barron was sending letters for
14   the client.  It is just the same thing as if there was a demand
15   letter and a response to a demand letter.  Because that's
16   effectively what was happening here.  It was litigation from
17   the very start.  Mr. Barron's communication with his client are
18   privileged under controlling Fourth Circuit law.  And the Koch
19   case has not changed that conclusion.
20        The second thing is with respect to Mr. Barron's
21   deposition, there should be a record for the Court to consider
22   about where we have asserted privilege and where we have not.
23   What Mr. Bosch seems to be proposing is that we leave it
24   open-ended and then he files some sort of motion saying that
25   all of the communications between Rock Springs Drive and
```

1  Mr. Barron are not privileged.  What would be more
2  straightforward would be to go ahead with the deposition.  He
3  obviously can depose Mr. Barron on any nonprivileged matters
4  because there are some and Plaintiffs are aware of that, and I
5  do intend to ask them.  And then he can ask any questions that
6  he wishes to ask that may implicate privilege, Rock Springs
7  Drive will object.  And that way the Court will have in front
8  of it what questions to which we object.  What information are
9  Plaintiffs not able to obtain.  That way the Court will not
10  need to decide any privileged issues in a vacuum.  And it won't
11  be vague, it will know exactly what questions I objected on
12  privilege grounds to and what information they say they were
13  not able to obtain.  But, otherwise, we're going to be doing it
14  in a vacuum without any context.
15      Obviously, if the crime-fraud issue somehow affects
16  Mr. Barron then I guess we can reach that narrow issue down the
17  road.
18      Our proposal for Mr. Barron would be to go ahead with the
19  deposition.  I think it would give the Court a much clearer
20  understanding of where the dispute between the parties is, and
21  it will give you the context of what information they already
22  have.
23      Plaintiffs deposed Mr. Taylor extensively about the
24  reasons for the assignment, the reason behind the assignment,
25  the reason why information was not shared with Plaintiff,

1  that's exactly because they knew litigation was coming.  One of

2  the main reasons.

3       So they have obtained this information, Your Honor.  So

4  under the District of Maryland law, there's absolutely no

5  reason they need Mr. Barron's testimony on it.

6       I should say, that it will still ask those questions and,

7  if appropriate, we'll assert privilege.

8       I'll just say very briefly, with respect to Mr. Bosch's

9  deposition, we only served him through a process server because

10 he refused to accept service via email.  We sent it by email.

11 I was very surprised -- and I understand he's not a Maryland

12 lawyer and may not understand practice here -- but I was

13 surprised he wouldn't accept service via email.  I tried to do

14 it, obviously, the straightforward and very professional way.

15 Unfortunately, given the timing of discovery, we needed to get

16 him served and couldn't try to avoid service by saying he

17 wouldn't accept it by email.  But I would have very much

18 preferred not to send a process server to his office.  But we

19 were in the unfortunate situation where neither he nor anyone

20 would agree to accept service, which, of course, we had done

21 for our lawyers.

22       But let me pause there with respect to Mr. Barron.

23 Mr. Barron's deposition, we do still propose that we go

24 forward.  It's going to give the Court a much better

25 understanding of where the record is.  And allow you to make

1  decisions based on specific questions and topics, rather than

2  making -- issuing an opinion about something very general that

3  might be harder for the parties to implement down the road.

4        **THE COURT:**  Let me just ask a question, Ms. Kropf.

5  What do you think you're going to get from Mr. Bosch?  Why are

6  you deposing him?

7        **MS. KROPF:**  Sure, a few things, Your Honor.

8      The Court has been treating the letters from the landlord

9  as good faith business communication.  And what we've learned

10  during discovery is that there were misrepresentations in the

11  letter.  I'll just say the primary ones.  The letters

12  continually ask Rock Springs Drive to identify its principals.

13  They act as though they don't know who they're supposed to

14  communicate with on day-to-day matters related to the building.

15  Mr. Bosch said that repeatedly in his letters.

16      What we've learned through discovery, and that was in, I

17  think, five weeks, by October 7th, 2017, right after the

18  assignment, the contact person identified for the Plaintiff or

19  the landlord was communicating directly with Mr. Rubin, one of

20  the principals for Rock Springs Drive.

21      We also see, as part of our discovery, that Mr. Camalier

22  apparently sent out his real estates brokers to meet with

23  Mr. Taylor and Mr. Rubin and find out information.  And what

24  those real estate brokers immediately did for Mr. Camalier,

25  because he's a big client, is sent him Mr. Taylor and

18

1   Mr. Rubin's contact information.  And the email said directly
2   to Mr. Camalier, "As requested, here's the contact
3   information."
4        So what we want to ask Mr. Bosch about is why his letters
5   continue to represent false facts, which is continue to
6   misrepresent that they don't know who the principals are or who
7   to communicate with.  And to challenge, I think, the Court's
8   view of those letters as simply good faith business discussion,
9   when, in fact, they were for litigation purposes.
10       We wanted to challenge that they knew much of the
11  information they were asking for and so they just kept asking,
12  and asking, and creating what turned out to be, you know, an
13  effective litigation record because I think the Court believed
14  that they were (inaudible) communication in that way.
15       What turned out behind the scene is that they knew this
16  information about who the principals were and just kept putting
17  it in letters; and, unfortunately, have put them in front of
18  the Court as though they are just business communications.
19       So we would like to inquire from Mr. Bosch about what
20  information he had before he sent his letter, and whether he
21  already knew that Mr. Cavalier was directly in contact with
22  Rock Springs Drive, had the contact information, knew who to
23  communicate with about day-to-day matters, and why he continued
24  to ask for that information.  Legally, it was simply for
25  litigation purposes and to try to create a record that we

1  weren't being cooperative.  When, in fact, they have all of the

2  information.  It's just information that has come out through

3  discovery, through documents we got from the brokers, which

4  revealed these communications with Mr. Camalier.  So I don't

5  believe it will be a very long deposition.  But those are --

6  the primary issue is -- are those letters.

7      Then there is a phone communication with respect to

8  Mr. Bosch and Mr. Barron that we want to be sure we get both

9  sides of what happened during that call.  Mr. Bosch is a fact

10 witness on what happened and what requests were made during

11 that call.  So those are the topics for Mr. Bosch.

12      THE COURT:  Mr. Bosch, can you respond to that very,

13 very briefly.

14      MR. BOSCH:  Yes.  On the merits issues we'll respond

15 in due course.  And I will prove to this Court that what

16 Ms. Kropf just represented about what Plaintiffs knew, what I

17 knew, what the Camas knew based on communications from the

18 brokers, or based on communications from the Defendants, is

19 absolutely false.

20      In fact, the evidence will show that at no point did they

21 ever disclose or was any information provided from the brokers

22 or otherwise as to who the principals in RSD were.  And the

23 witnesses, they're all witnesses, Mr. Taylor and Mr. Rubin who

24 are on the line, will explain that they were instructed not to

25 share that information, even after an all-hands meeting in 2019

1  where Mr. Taylor said he had urged them to reach out to the

2  landlord, them being IWA, and they instructed him, stay the

3  course, don't talk at all, don't disclose who we are.  So I'll

4  address that until due course.

5       But that's not a reason for deposing me.

6       What you heard Ms. Kropf argue is that we have misstated

7  the *Koch* case.  Actually, on the contrary, and if that case is

8  familiar, Judge, it's because we discussed it at the hearing in

9  February.

10            **THE COURT:**  Who was the author of that opinion?

11            **MR. BOSCH:**  Forgive me.  I will pull it out.

12            **MS. KROPF:**  Magistrate Judge Gauvey, Your Honor.

13            **THE COURT:**  You always say it's district court law.

14  It's one magistrate judge's opinion on a given set of facts.

15  The district judge is not bound by what another district judge

16  say, not by what a magistrate judge says so if there's internal

17  logic that is compelling one could consider it.  Binding?  No.

18  In any way --

19            **MR. BOSCH:**  Judge, what he [sic] says there is he's

20  citing the Fourth Circuit authority.  It's the Fourth Circuit

21  authority, forgive me, I don't have it directly in front of me,

22  but it's the Fourth Circuit authority that discusses the

23  general sensitivity about deposing lawyers; but it says it's

24  not without exceptions, and the exceptions, and the Fourth

25  Circuit case established this exception, is where the lawyer is

1   serving as the mouthpiece.  And the distinction between what
2   happened in the *Koch* case and what happened here is that it's
3   not consultative discussions that are at issue here between the
4   party, RSD, and their lawyer, Mr. Barron.  It's Mr. Barron
5   acting in his representative capacity.  This is the person to
6   whom the landlord was instructed to direct questions.  And when
7   questions were directed, he provided answers.  And as this
8   Court has already found, those answers were not consistent with
9   what the obligations were under the restatement.

10      In fact, as we will prove, they were part of a strategy, a
11  plan, of which Mr. Barron was a part, to prevent the landlord
12  from understanding and knowing what was actually happening.
13  Why was RSD formed?  Who was behind it?  What was their ability
14  to perform?  All of which is evidence of fraud.

15      So what are my questions directed to Mr. Barron?  They do
16  fall into two categories:  One is the questions directed to him
17  in his representative capacity, not in his legal capacity in
18  providing advice behind the scenes because that's going to be
19  subject to the crime-fraud exception.  But, rather, what did he
20  know and when did he know it when he was writing to the
21  Plaintiff, and when he did not, for example, disclose, and
22  remember -- when he did not disclose the reasons for failing to
23  record this (inaudible).  When he was making affirmative
24  misstatements, was he doing that under the direction?  Did he
25  have information that he could have but did not share?  That's

 1  not him acting as a lawyer.  That's him perpetrating a fraud,

 2  but it's also him in his representative capacity.

 3       And we had this information at the last hearing, Judge,

 4  where you asked me what kinds of questions would you ask?  And

 5  I gave some examples.  And that's when you said, you know,

 6  there's nothing wrong with that, there's nothing privileged

 7  about that.

 8       So the issue we have today is Ms. Kropf is saying she has

 9  a view of what is not privileged and what is privileged.  We've

10  seen her view because when I asked Mr. Taylor -- and I asked

11  Mr. Taylor very -- several questions.

12       When Mr. Barron received my correspondence, did you talk

13  to him about how to respond?  You're the RSD principal, you're

14  the managing member.  And she instructed him not to answer any

15  of those questions on privileged grounds.  So they're hiding

16  their correspondence through Mr. Barron on privilege grounds.

17       How do we get to the why behind what information they had

18  and refused to share that they're going to hide behind

19  privilege.  There is no privilege in that particular

20  circumstance so that's why I said I've got to resolve this

21  issue.

22          THE COURT:  I need to stop your arguments on this for

23  a moment.

24       What about going to Florida tomorrow to depose Barron, yes

25  or no, Mr. Bosch, and, if not, why not?

1          **MR. BOSCH:**  I'm prepared to take the deposition.  We

2  already agreed that I did not need to travel to Florida.  I

3  don't know why Ms. Kropf is traveling, but we're going to do

4  that remotely.  I can take that deposition.  We'll make the

5  record, which I think may be a lot of instructions not to

6  answer, if not 99 percent of it.  And then we'll have to come

7  back to the judge, to you, Your Honor, and say now that the

8  crime-fraud resolution is here, let's take him again and this

9  time we'll do it with these other questions being answered.

10  I'm fine with doing that, I think it's wasteful.  But it is

11  what it is.

12          **THE COURT:**  All right.  Well, I don't have a problem

13  with you going forward with the understanding that you may well

14  want and will be allowed to further depose Mr. Barron depending

15  on the Court's future ruling.  So that takes care of that.

16      And, Ms. Kropf, you're okay with a long-distance

17  deposition?

18          **MS. KROPF:**  Yes, I will be there, given the

19  complicated privilege issue, but when I spoke with Mr. Bosch I

20  have no issue if he wants to take it by video.  That's fine.

21          **THE COURT:**  Let me pose another consideration to you.

22  You folks are certainly not unfamiliar with filing

23  multitudinous motions, but it's hard for me to rule on some of

24  these things where, for example, to depose Mr. Bosch when:  I

25  don't get any prior notification that you wanted to depose him,

1  and he's got an objection, and what am I supposed to do unless

2  there's a motion to quash, or there's a motion to compel,

3  there's something.

4      I've got to deal with specific requested rulings rather

5  than do stuff on the fly.  And because of what seems to be

6  amiably a lack of competence between counsel here, I've got to

7  do this, really, pretty much on the straight and narrow.

8      So that's what we'll do.

9      I know there's more to be said on that, but I want to

10  point out some of the issues that concern me.  And perhaps we

11  can start first with the Barron.

12      I don't know that there is -- I can't even recall at this

13  point whether there was some sort of motion for protective

14  order as to Mr. Barron.  Has there been?

15          MS. KROPF:  Your Honor --

16          MR. BOSCH:  Your Honor, there was a motion to quash

17  filed by RSD.

18          THE COURT:  But that was not -- that's not what was

19  just withdrawn, I gather?

20          MR. BOSCH:  No, that was something that was argued at

21  the February hearing, Your Honor.  Where they moved to quash

22  Mr. Barron's subpoena and the Court denied it without

23  prejudice.

24          THE COURT:  Okay.  Well, in any event, since

25  Plaintiff's counsel is agreeable to go forward with Mr. Bosch

1  tomorrow, and let's see specifically what he declines to

2  answer.  Presumably, at that point, Plaintiff will file a

3  motion to compel his answer and Defendant will be able to

4  respond, to reply.

5       A key concern, as you go through this, is to the extent to

6  which Mr. Barron, a) was identified as a point of contact for

7  the Plaintiffs; and b), the extent to which he, in fact, was

8  serving as a principal in any way for any of the defense

9  entities, those are considerations that are going to bear, I

10 think, on the issue of whether he can claim privilege.

11      And, frankly, those are issues that in my view very likely

12 are independent, although might be influenced by the

13 crime-fraud exception where someone purports to speak for an

14 organization, and you're asked why you did something, it's

15 questionable in my experience to be able to say, well, he did

16 it -- I did it on the advice of counsel and I'm not going to

17 talk about it.  That part needs to be briefed in the motion to

18 compel, or however you characterize it, Mr. Bosch.

19      Enough for Mr. Barron for a moment.

20      Go back to the Defendant's Motion To Reconsider The Issue

21 Of Crime-Fraud Exception.  There are a lot of assertions of

22 law, in fact, that are made by the Defendants here.  Some of it

23 seems to be unfairly challengeable, but I think the legwork

24 under the adversary system belongs to the Plaintiff and not to

25 the Court.

1    Let me highlight for you some of the points that I

2    understand the Defendants to be making that I think Plaintiff

3    needs to focus on in their opposition.

4    Number one, they suggest that the Court should never even

5    have done it, I think, an in-camera review because the Court

6    never articulated either the standard for that or what the

7    standard was.  You can go back to the record and see what the

8    Court said or did in that regard.

9    Second point is, what is the standard by which the Court

10   then reviews the documents that the Court identifies as

11   potentially relevant.  One of the assertions that the Court

12   seems to understand the Defendant to be making is that

13   Plaintiff hasn't proved the crime-fraud exception and,

14   therefore, has no business in diving into the records.  Well,

15   that's one of the reasons why you're allowed to look into it.

16   If you have a *prima facie* case, you may be able to unearth

17   evidence that, in fact, goes to establishing the crime-fraud

18   exceptions.

19   So the argument that the Plaintiff has to prove the

20   crime-fraud exceptions before they can look into privileged

21   records is one that I think Plaintiff needs to respond to.

22   There are further supportive points that the Defendant

23   makes that the Court has not, frankly, searched, but seems to

24   me to be fairly open for discussion.

25   Number one is that the Defendant is entitled to some sort

1  of an *ex parte* hearing, I gather for production of witnesses or

2  whatever, with regard to whether documents should be

3  deliverable under the crime-fraud exception.  I don't know

4  where that comes from but that's a proposition that I think

5  Defendants are moving.

6      And third is that the Court can't suggest that the

7  documents it may determine to be relevant to the crime-fraud

8  exception may only be submitted by the Defendants' themselves.

9  The Court can order that it be done, but the Defendants

10 apparently believe they have an array of protections pursuant

11 to some case law, that they're the ones that get to decide just

12 how documents get delivered.

13     I think all of those propositions need to be addressed,

14 Mr. Bosch, in your response, to the extent to which the Court

15 makes a decision on any we shall see.

16     But those are issues that are raised and, I think, as I

17 say, fairly -- potentially disputable and need to be looked at.

18     So if you can do that all by Tuesday or whatever the time

19 is, that's what I want you to do.

20     I don't -- I can't think of anything else at the moment.

21     **MS. KROPF:**  Did you make a decision on Mr. Bosch's

22 deposition?

23     **THE COURT:**  I don't think Mr. Bosch's deposition

24 should go forward at this time.  Insofar as there's a request

25 to depose Mr. Bosch, that needs to be by motion.  That sort of

1  thing is like, candidly, what I hear defense counsel say he's

2  made misrepresentations, therefore we get to depose him.  Lord

3  knows how many lawyers make misrepresentations, if even it's

4  accurate they (inaudible) that they be deposed on it.

5      This is a different situation as far as defense counsel is

6  concerned.  This is a case, essentially, alleging a fraud in

7  the exit strategy of the Defendants.  And it may well have --

8  there may well have been discussions with counsel,

9  recommendations of counsel to help that go forward.  I'm not

10  deciding that there was but the only issue is was there.  My

11  view at this point is, as a *prima facie* case, they should be

12  able to look into the issue and ask the Court is the Court in a

13  position to say yes, this information should be provided, and,

14  if so, what is the procedure.  Is there an ex parte hearing

15  that the Defendants are entitled to?  Is there some sort of

16  arrangement whereby only the Defendants and not the Court can

17  make the production?

18      I'm willing to entertain those responses.

19      So I think that's where we are.  And, look, folks, you've

20  been at this for a long time.  You may be at it for years in

21  the future, I don't know.  But this is not the kind of thing

22  that stands and falls on a more or less arbitrary discovery

23  schedule.  We can keep moving this around and, hopefully,

24  there's substantial justice in this case if we had to, and so

25  far we had done that.  And but let's keep that in mind.  Nobody

```
1  is going to be rockbound to -- I shouldn't use the word rock.

2      No one is going to be ironbound to one outcome or another.

3  Let's try to get out there what the relevant evidence is.

4      That said then, summarizing, you'll have -- Plaintiff will

5  have until Tuesday, or however I set up the timeline, to oppose

6  the motion to reconsider.  Defendant can reply according to the

7  timeline.

8      Mr. Bosch's deposition will not go forward pending the

9  ruling on a specific motion to request that he be deposed, with

10 the reasons being given and, again, an opposition that replied

11 in the ordinary course.

12     As far as Mr. Barron's deposition, it can go forward as

13 planned tomorrow, subject to being renewed depending on the

14 Court's (inaudible) noncompliance issue.

15     I think that takes care of what we have.  Unless there's

16 something more to talk about at this time?

17         MS. KROPF:  Your Honor, this is Sara Kropf again.

18 Just two very brief matters.  One is counsel for Plaintiff are

19 choosing lawyers abroad here and, unfortunately, counsel for

20 Plaintiff called, you know, Mr. Sowka's employer and told her

21 in a call and she now -- that Mr. Sowka had personally, you

22 know, committed fraud, not that they alleged fraud, that he

23 committed it.  Can we just ask that counsel for the Plaintiff

24 not make these statements lightly and not make those people's

25 employers -- we saw what goes on in litigation.  We all
```

 1  understand, we understand there will be filings here.  But to

 2  call someone's employer and accuse a lawyer in good standing of

 3  fraud, it's problematic on many levels.

 4          THE COURT:  Goodness gracious.

 5          MS. KROPF:  And then -- and then the second point,

 6  Your Honor, is that -- with respect to motions for summary

 7  judgment, given that I think we all can fairly anticipate there

 8  are going to be motions to compel and perhaps an extension of

 9  discovery, if there needs to be second depositions, which it

10  makes sense.  We think from a defense standpoint it probably

11  makes sense, it will be our motion for summary judgment, to

12  delay that to allow us to finish discovery, so that we're not

13  simultaneously dealing with summary motions and also trying to

14  get summary judgment to the Court.

15      So we thought it might make sense to extend that deadline

16  maybe a little indefinitely.  We can put something on the

17  calendar, but perhaps we extend it until all of the discovery

18  has been complete.

19          THE COURT:  Well, certainly.  Mr. Bosch, I doubt you

20  have any problem with putting off indefinitely motions for

21  summary judgment?

22          MR. BOSCH:  The first I've heard of it, Judge.  We

23  would like to get the issues under the restatement resolved,

24  but if Ms. Kropf thinks they need some more time, I'm not

25  averse to it.

1        **THE COURT:**  All right.  Goodness, let's just open the

2    timeline for motions for summary judgment.  Maybe partial

3    summary judgment on a legal issue, we shall see.  But the full

4    summary judgment, assuming there's any real prospect of that

5    anyway, let's keep that open and not have a deadline.

6        Now, as far as contacting a lawyer --

7        **MR. BOSCH:**  Judge, that's not what happened.  It's

8    absolutely false.  And I'm a little shocked to hear for the

9    first time Ms. Kropf make that kind of accusation, again, in

10   light of what this Court has said previously.

11       Mr. Sowka is a partner with Seyfarth Shaw.  That is

12   Rebecca Davis's law firm.  We gave advanced notice a multitude

13   of times that we sought to depose Mr. Sowka, and Ms. Davis

14   refused to accept service of the subpoena.  She refused to

15   accept service on a subpoena of her own partner.  So we tried

16   to effect service.  Mr. Sowka ducked service.

17       So we went to their office and sought to serve a subpoena

18   on the general counsel for Seyfarth because Seyfarth refused to

19   allow anybody to accept service of the subpoena.  In the course

20   of that conversation, it was indicated this is a complaint,

21   this is a subpoena in connection with a case involving a

22   fraudulent conveyance.  We were not accusing Mr. Sowka of

23   fraud.  I think that's incendiary language that Ms. Kropf was

24   using for whatever purpose she thinks it serves with Your

25   Honor.  That's not accurate.

32

         **MS. DAVIS:**  Your Honor, this is Rebecca Davis.
Actually, none of that is true.  First of all, we did not
accept -- I did not accept service for Mr. Sowka because he was
on vacation out of town and nobody could get in touch with him.
I am not authorized to accept service of a subpoena that is
being served on an individual that I cannot even get in touch
with that person.  He did not duck service.  He was out of
town.  He was not in the office.  They were sending a process
server to the office, and he was on vacation.

     And, again, nobody was authorized to accept service on
behalf of an individual who is not in town and they could not
be reached.

     Second of all, that is not true what Mr. Bosch indicated
that he was involved in a case that involved fraudulent
conveyance.  I have email correspondence that was sent to our
general counsel saying that he engaged in fraud.  I then sent
an email to Mr. Bosch's firm asking that they cease and desist
from any further language of that sort, and accusing him, and
defaming him to his employer.  And Mr. Bosch actually responded
that their language is perfectly correct and appropriate so --
and I can send that language to the Court.

     All we're asking is -- and I don't know why this is even a
point of conflict and contention -- that Mr. Bosch refrain from
either reaching out to Mr. Sowka's employers or having people
reach out to Mr. Sowka's employer and defaming him.  There's

1  nothing wrong with that request.  I don't understand why

2  Mr. Bosch is pushing back on that request.

3      MR. BOSCH:  I'm not, Judge.  And, in fact, I have no

4  reason to speak with anybody now that Ms. Davis, after months

5  of trying -- Mr. Sowka evidently had months of vacation -- but

6  after Ms. Davis now has accepted service of the subpoena

7  there's no issue.

8      We reached out to the general counsel of the firm to see

9  if they'll accept service even though weeks, if not months, we

10  were trying to do that because Ms. Davis refused to do it.

11      (Crosstalk.)

12      MR. BOSCH:  So we don't need to fight.  I'm not

13  reaching out to defame anybody here.  But, I think, for

14  whatever reason they're trying to make me look like a bad guy,

15  obviously, which I think it's beneath them.

16      (Crosstalk.)

17      THE COURT:  Let's stop.  Let's stop this right now.  I

18  can't recall in 38 years on the bench where counsel have called

19  each other liars or speakers of falsehoods that has been more

20  intense than in this case.  And I've tried a lot of cases,

21  folks.  It is quite remarkable to me to hear these

22  conversations, allegations go back and forth about counsel's

23  mendacity.  I mean, really, it's troublesome.

24      Let me suggest something which will be a separate matter.

25  I'm not asking you to file with the Court at this point, but I

1  want to make your lives a little bit difficult.  Why don't each

2  of you keep a log every time that you think opposing counsel

3  has told a lie, write it down, the date and the nature of the

4  lie, and keep a log.  I don't want to hear about it, but when

5  you have, let's say, 100 that you've reached for each, I may

6  look at it.  And I may impose sanctions.  But this, frankly, is

7  ridiculous.  Really.  These kinds of back and forth, these

8  accusations are something I haven't seen before.  You guys have

9  lost it.

10     Paul Grimm said once you seem to be -- I think it was the

11 same counsel -- doing pretty well on another Camalier property

12 out in Rock Ledge, or whatever, and now it's just descended

13 into a hurling of insults that I'm just unfamiliar with.

14     Do that.  Keep the log.  Keep the log.  You'll see it,

15 frankly, in the end perhaps how futile it all is, but do it.

16 Because I don't need to hear about it back and forth each time.

17 And if it really becomes relevant, really relevant in the case,

18 I certainly would have to take it into account.

19     So far, on this last business, it seems to me we have

20 descended into a snakepit.  And I don't want to be here.  But

21 do this.

22     I'm actually ordering that you keep a log when you feel

23 that one side, one counsel or another, has told -- let me be

24 charitable -- a falsehood.  I won't call it a lie.  Although

25 that word is looming back and forth.  But that's the way I

```
1    react to the way you folks are interacting.  It's troublesome.
2         All right.  Is there anything else?
3              MR. BOSCH:  No.  Thank you, Your Honor.
4              THE COURT:  That's all.  Thank you folks, goodbye.
5         (Hearing concluded at 11:55 a.m.)
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1          CERTIFICATE OF OFFICIAL REPORTER

2

3

4        I, Ronda J. Thomas, Registered Merit Reporter, Certified

5   Realtime Reporter, in and for the United States District Court

6   for the District of Maryland, do hereby certify, pursuant to 28

7   U.S.C. § 753, that the foregoing is a true and correct

8   transcript of the stenographically-reported proceedings held in

9   the above-entitled matter and the transcript page format is in

10  conformance with the regulations of the Judicial Conference of

11  the United States.

12                          Dated this 18th day of June 2023.

13

14

15                          _Ronda J. Thomas_____

16                          Ronda J. Thomas, RMR, CRR
                            Federal Official Reporter

17

18

19

20

21

22

23

24

25

**MR. BOSCH: [15]** 2/7
3/11 5/4 8/18 19/14
20/11 20/19 23/1 24/16
24/20 30/22 31/7 33/3
33/12 35/3

**MS. DAVIS: [6]** 2/10
3/4 3/20 4/20 5/11 32/1

**MS. KROPF: [17]**
2/13 2/18 3/24 4/3 4/6
4/11 6/18 6/21 12/22
12/24 17/7 20/12 23/18
24/15 27/21 29/17 30/5

**THE COURT: [34]** 2/2
2/5 2/9 2/12 2/17 2/19
3/5 3/16 3/22 4/1 4/5
4/9 4/13 4/25 5/8 5/19
6/20 8/16 12/23 17/4
19/12 20/10 20/13
22/22 23/12 23/21
24/18 24/24 27/23 30/4
30/19 31/1 33/17 35/4

**1**

**100 [1]** 34/5
**101 [1]** 1/24
**11:04 [1]** 2/1
**11:55 [1]** 35/5
**13 [1]** 1/7
**18th [1]** 36/12

**2**

**20-cv-01502-PJM [1]**
1/5
**2005 [1]** 13/4
**2017 [1]** 17/17
**2019 [1]** 19/25
**2023 [2]** 1/7 36/12
**21201 [1]** 1/25
**28 [1]** 36/6

**3**

**38 [1]** 33/18

**4**

**4th [1]** 1/24

**7**

**753 [1]** 36/7
**7th [1]** 17/17

**9**

**99 percent [1]** 23/6
**9:00 a.m [1]** 8/15

**A**

**a.m [3]** 2/1 8/15 35/5
**abide [1]** 6/6
**ability [1]** 21/13
**able [7]** 3/17 15/9
15/13 25/3 25/15 26/16

28/12
**about [22]** 2/21 6/24
9/18 11/1 11/2 14/22
15/23 17/2 18/4 18/16
18/19 18/23 19/16
20/23 22/7 22/13 22/24
25/17 29/16 33/22 34/4
34/16
**above [2]** 1/10 36/9
**above-entitled [2]**
1/10 36/9
**abroad [1]** 29/19
**absolutely [5]** 13/12
13/21 16/4 19/19 31/8
**academic [1]** 5/22
**accept [12]** 16/10
16/13 16/17 16/20
31/14 31/15 31/19 32/3
32/3 32/5 32/10 33/9
**accepted [2]** 6/25 33/6
**accommodate [1]**
7/14
**according [1]** 29/6
**account [1]** 34/18
**accurate [3]** 10/11
28/4 31/25
**accusation [1]** 31/9
**accusations [1]** 34/8
**accuse [1]** 30/2
**accusing [2]** 31/22
32/18
**act [2]** 4/17 17/13
**acting [4]** 9/16 10/12
21/5 22/1
**actually [6]** 5/12 20/7
21/12 32/2 32/19 34/22
**addition [2]** 9/4 9/10
**additional [1]** 6/6
**address [2]** 9/12 20/4
**addressed [1]** 27/13
**addresses [1]** 4/16
**addressing [1]** 3/14
**advanced [1]** 31/12
**adversary [1]** 25/24
**advice [2]** 21/18 25/16
**affairs [1]** 5/23
**affects [2]** 7/17 15/15
**affirmative [1]** 21/23
**after [7]** 6/12 7/23 8/23
17/17 19/25 33/4 33/6
**again [9]** 2/17 2/19
3/22 10/5 23/8 29/10
29/17 31/9 32/10
**ago [2]** 6/24 12/1
**agree [1]** 16/20
**agreeable [1]** 24/25
**agreed [1]** 23/2
**agreement [1]** 7/25
**ahead [3]** 6/20 15/2
15/18

**aided [1]** 1/22
**AL [1]** 1/6
**Algon [3]** 9/5 9/6 9/9
**all [27]** 2/25 3/5 4/9
4/10 7/4 7/6 8/16 12/24
14/25 19/1 19/23 19/25
20/3 21/14 23/12 27/13
27/18 29/25 30/7 30/17
31/1 32/2 32/13 32/22
34/15 35/2 35/4
**all-hands [1]** 19/25
**allegations [2]** 7/5
33/22
**alleged [1]** 29/22
**alleging [1]** 28/6
**allow [4]** 8/4 16/25
30/12 31/19
**allowed [2]** 23/14
26/15
**allowing [1]** 3/18
**along [1]** 2/14
**already [8]** 4/6 8/20
9/1 10/15 15/21 18/21
21/8 23/2
**also [5]** 1/19 9/11
17/21 22/2 30/13
**although [4]** 5/25 9/25
25/12 34/24
**always [1]** 20/13
**am [6]** 3/3 3/7 3/10
4/19 24/1 32/5
**AMERICA [2]** 1/6 2/11
**amiably [1]** 24/6
**another [6]** 2/14 20/15
23/21 29/2 34/11 34/23
**answer [8]** 6/2 10/18
11/1 11/13 22/14 23/6
25/2 25/3
**answered [1]** 23/9
**answers [2]** 21/7 21/8
**anticipate [1]** 30/7
**any [25]** 4/23 5/13
5/18 6/9 6/11 7/18 9/12
10/6 11/1 11/10 15/3
15/5 15/10 15/14 19/21
20/18 22/14 23/25
24/24 25/8 25/8 27/15
30/20 31/4 32/14 32/18
**anybody [5]** 2/12 2/21
31/19 33/4 33/13
**anyone [1]** 16/19
**anything [5]** 2/21 4/15
10/10 27/20 35/2
**anyway [1]** 31/5
**apparently [2]** 17/22
27/10
**appropriate [4]** 8/5
9/16 16/7 32/20
**April [1]** 1/7
**arbitrary [1]** 28/22

**are [59]**
**aren't [1]** 5/13
**argue [1]** 20/6
**argued [2]** 9/2 24/20
**arguing [1]** 13/6
**argument [1]** 26/19
**arguments [1]** 22/22
**around [2]** 7/6 28/23
**arrange [1]** 5/23
**arrangement [1]** 28/16
**array [1]** 27/10
**articulated [1]** 26/6
**as [45]**
**ask [15]** 4/11 8/4 9/17
9/23 15/5 15/5 15/6
16/6 17/4 17/12 18/4
18/24 22/4 28/12 29/23
**asked [5]** 3/12 22/4
22/10 22/10 25/14
**asking [9]** 4/7 5/9 8/10
18/11 18/11 18/12
32/17 32/22 33/25
**assert [2]** 11/10 16/7
**asserted [1]** 14/22
**asserting [1]** 7/15
**assertions [2]** 25/21
26/11
**assignment [4]** 9/12
15/24 15/24 17/18
**assuming [1]** 31/4
**attended [1]** 2/23
**attorney [10]** 10/8
10/14 10/14 11/10 13/2
13/9 13/15 14/1 14/2
14/12
**attorney-client [7]**
10/8 10/14 11/10 13/2
13/9 13/15 14/12
**author [1]** 20/10
**authority [3]** 20/20
20/21 20/22
**authorized [2]** 32/5
32/10
**available [1]** 7/12
**averse [1]** 30/25
**avoid [1]** 16/16
**awaiting [1]** 3/7
**aware [1]** 15/4

**B**

**back [8]** 23/7 25/20
26/7 33/2 33/22 34/7
34/16 34/25
**bad [1]** 33/14
**Baltimore [1]** 1/25
**Barron [38]**
**Barron's [15]** 6/22
6/24 7/11 7/25 8/14
9/24 10/25 11/12 12/7
14/17 14/20 16/5 16/23

**24/22 29/12**
**based [4]** 12/16 17/1
19/17 19/18
**be [61]**
**bear [2]** 12/18 25/9
**bears [1]** 12/9
**because [19]** 11/11
13/10 13/16 14/6 14/15
15/4 16/1 16/9 17/25
18/13 20/8 21/18 22/10
24/5 26/5 31/18 32/3
33/10 34/16
**becomes [1]** 34/17
**been [6]** 17/8 24/14
28/8 28/20 30/18 33/19
**before [5]** 1/11 2/23
4/18 7/22 8/6 11/10
18/20 26/20 34/8
**behalf [5]** 1/14 1/15
1/17 2/8 9/11 32/11
**behind [6]** 15/24 18/15
21/13 21/18 22/17
22/18
**being [7]** 9/4 19/1 20/2
23/9 29/10 29/13 32/6
**believe [6]** 2/15 4/6
4/24 13/14 19/5 27/10
**believed [1]** 18/13
**belongs [1]** 25/24
**bench [1]** 33/18
**beneath [1]** 33/15
**Berger [1]** 9/9
**better [1]** 16/24
**between [9]** 7/16 10/7
13/2 14/5 14/25 15/20
21/1 21/3 24/6
**big [1]** 17/25
**Bill [1]** 2/10
**Binding [1]** 20/17
**bit [2]** 3/23 34/1
**BOSCH [31]** 1/14 2/7
3/10 4/25 5/16 7/2 7/24
8/4 8/11 8/16 14/23
17/5 17/15 18/4 18/19
19/8 19/9 19/11 19/12
22/25 23/19 23/24
24/25 25/18 27/14
27/25 30/19 32/13
32/19 32/23 33/2
**Bosch's [5]** 16/8 27/21
27/23 29/8 32/17
**both [1]** 19/8
**bound [1]** 20/15
**brief [1]** 29/18
**briefed [1]** 25/17
**briefing [5]** 3/21 3/25
4/4 12/16 12/18
**briefly [2]** 16/8 19/13
**broke [1]** 3/23
**brokers [5]** 17/22

## B

**brokers... [4]** 17/24
19/3 19/18 19/21
**brought [1]** 9/9
**building [1]** 17/14
**burden [3]** 8/8 11/11
11/14
**burdensome [1]** 7/10
**business [5]** 17/9 18/8
18/18 26/14 34/19

## C

**calendar [3]** 7/1 7/13
30/17
**call [5]** 19/9 19/11
29/21 30/2 34/24
**called [2]** 29/20 33/18
**Camalier [5]** 17/21
17/24 18/2 19/4 34/11
**Camas [1]** 19/17
**CAME [1]** 1/10
**camera [1]** 26/5
**can [25]** 4/1 6/5 7/18
9/24 11/23 12/19 15/3
15/5 15/16 19/12 23/4
24/11 25/10 26/7 26/20
27/9 27/18 28/16 28/23
29/6 29/12 29/23 30/7
30/16 32/21
**can't [4]** 24/12 27/6
27/20 33/18
**cancel [2]** 8/1 8/6
**canceling [1]** 7/21
**candidly [1]** 28/1
**cannot [1]** 32/6
**capacity [4]** 21/5
21/17 21/17 22/2
**care [4]** 4/14 6/14
23/15 29/15
**case [27]** 2/23 5/23
6/5 8/19 10/12 11/4
12/9 12/24 12/25 13/3
13/4 13/22 13/23 14/19
20/7 20/7 20/25 21/2
26/16 27/11 28/6 28/11
28/24 31/21 32/14
33/20 34/17
**cases [1]** 33/20
**catching [1]** 4/1
**categories [1]** 21/16
**Cavalier [1]** 18/21
**cease [1]** 32/17
**certain [1]** 4/18
**certainly [7]** 5/17 6/5
12/7 12/12 23/22 30/19
34/18
**CERTIFICATE [1]** 35/6
**Certified [1]** 36/4
**certify [1]** 36/6
**challenge [2]** 18/7

18/10
**challengeable [1]**
25/23
**chance [2]** 5/25 10/3
**changed [1]** 14/19
**characterize [1]** 25/18
**charitable [1]** 34/24
**choosing [1]** 29/19
**Circuit [7]** 13/14 13/24
14/18 20/20 20/20
20/22 20/25
**circumstance [1]**
22/20
**citations [1]** 10/20
**cited [1]** 10/12
**cites [1]** 12/25
**citing [1]** 20/20
**Civil [1]** 1/4
**claim [2]** 13/9 25/10
**clarify [1]** 5/11
**clear [2]** 8/11 13/18
**cleared [3]** 7/1 7/3
7/12
**clearer [1]** 15/19
**client [21]** 5/7 7/16
10/8 10/11 10/13 10/14
11/10 13/1 13/2 13/3
13/9 13/10 13/15 13/19
13/20 14/5 14/10 14/12
14/14 14/17 17/25
**come [2]** 19/2 23/6
**comes [1]** 27/4
**coming [1]** 16/1
**committed [2]** 29/22
29/23
**communicate [5]**
13/19 13/19 17/14 18/7
18/23
**communicating [1]**
17/19
**communication [4]**
14/17 17/9 18/14 19/7
**communications [14]**
7/18 10/7 10/15 13/12
13/15 13/20 14/5 14/6
14/10 14/25 18/18 19/4
19/17 19/18
**company [4]** 9/18
**compel [4]** 24/2 25/3
25/18 30/8
**compelling [1]** 20/17
**competence [1]** 24/6
**complaint [1]** 31/20
**complete [1]** 30/18
**completely [1]** 13/4
**complicated [1]** 23/19
**Computer [1]** 1/22
**Computer-aided [1]**
1/22
**concern [3]** 7/21

24/10 25/5
**concerned [1]** 28/6
**concluded [1]** 35/5
**conclusion [2]** 13/6
14/19
**confer [1]** 7/24
**Conference [1]** 36/10
**conferred [1]** 11/5
**confidential [3]** 14/7
14/11 14/11
**conflict [1]** 32/23
**conformance [1]**
36/10
**connection [1]** 31/21
**consider [2]** 14/21
20/17
**consideration [1]**
23/21
**considerations [1]**
25/9
**consistent [1]** 21/8
**consultative [2]** 13/15
21/3
**contact [6]** 17/18 18/1
18/2 18/21 18/22 25/6
**contacting [1]** 31/6
**contention [2]** 32/23
**contentions [1]** 6/1
**context [7]** 6/23 11/17
11/23 12/20 13/23
15/14 15/21
**continually [1]** 17/12
**continue [4]** 10/25
11/9 18/5 18/5
**continued [1]** 18/23
**contract [1]** 12/16
**contract-based [1]**
12/16
**contrary [1]** 20/7
**controlling [1]** 14/18
**conversation [2]** 6/12
31/20
**conversations [4]**
7/16 11/2 11/10 33/22
**conveyance [2]** 31/22
32/15
**cooperative [1]** 19/1
**correct [6]** 3/3 3/10
4/19 5/3 32/20 36/7
**correctly [1]** 5/20
**correspondence [3]**
22/12 22/16 32/15
**could [5]** 6/11 20/17
21/25 32/4 32/11
**couldn't [1]** 16/16
**counsel [22]** 2/2 2/6
6/9 7/4 7/5 24/6 24/25
25/16 28/1 28/5 28/8
28/9 29/18 29/19 29/23
31/18 32/16 33/8 33/18

34/2 34/11 34/23
**counsel's [1]** 33/22
**course [12]** 4/12 7/19
8/5 10/11 10/23 11/8
16/20 19/15 20/3 20/4
29/11 31/19
**court [61]**
**Court's [9]** 4/22 5/2
6/10 6/13 11/19 12/20
18/7 23/15 29/14
**covered [1]** 14/11
**create [1]** 18/25
**creating [1]** 18/12
**crime [21]** 3/21 3/24
4/3 4/16 4/19 5/2 5/21
6/14 7/17 8/12 12/17
15/15 21/19 23/8 25/13
25/21 26/13 26/17
26/20 27/3 27/7
**crime-fraud [21]** 3/21
3/24 4/3 4/16 4/19 5/2
5/21 6/14 7/17 8/12
12/17 15/15 21/19 23/8
25/13 25/21 26/13
26/17 26/20 27/3 27/7
**criminal [1]** 13/23
**Crosstalk [2]** 33/11
33/16
**CRR [2]** 1/23 36/16
**crux [1]** 11/4
**currently [2]** 3/11 8/19
**cv [1]** 1/5

## D

**date [2]** 5/17 34/3
**Dated [1]** 36/12
**DAVIS [11]** 1/16 2/10
3/3 4/17 5/9 8/21 31/13
32/1 33/4 33/6 33/10
**Davis's [2]** 5/5 31/12
**day [8]** 7/22 8/6 12/5
17/14 17/14 18/23
18/23 36/12
**days [1]** 6/6
**deadline [3]** 6/3 30/15
31/5
**deal [2]** 12/19 24/4
**dealing [1]** 30/13
**decide [3]** 11/23 15/10
27/11
**decided [2]** 6/7 8/20
**deciding [1]** 28/10
**decision [6]** 4/18 4/22
7/17 13/5 27/15 27/21
**decisions [1]** 17/1
**declined [1]** 10/1
**declines [1]** 25/1
**defame [1]** 33/13
**defaming [2]** 32/19
32/25

**DEFENDANT [9]** 1/15
1/17 5/25 9/6 25/3
26/12 26/22 26/25 29/6
**Defendant's [1]** 25/20
**Defendants [11]** 1/7
2/9 3/9 19/18 25/22
26/2 27/5 27/9 28/7
28/15 28/16
**Defendants' [1]** 27/8
**defense [4]** 25/8 28/1
28/5 30/10
**defer [1]** 6/9
**delay [1]** 30/12
**delayed [1]** 11/20
**deliverable [1]** 27/3
**delivered [1]** 27/12
**demand [2]** 14/14
14/15
**denied [2]** 9/2 24/22
**depending [4]** 4/22
5/2 23/14 29/13
**depose [14]** 4/21 5/1
5/2 7/19 8/13 10/5 15/3
15/22 22/4 23/14 23/24
23/25 27/25 28/2 31/13
**deposed [3]** 15/23
28/4 29/9
**deposing [6]** 8/23
11/11 12/2 17/6 20/5
20/23
**deposition [38]**
**depositions [8]** 6/3
6/10 8/19 9/23 11/8
11/20 12/19 30/9
**descended [2]** 34/12
34/20
**desist [1]** 32/17
**determination [1]** 5/19
**determine [1]** 27/7
**did [25]** 9/15 9/18 9/25
10/1 10/3 10/4 11/7
17/24 19/20 21/19
21/20 21/21 21/22
21/24 21/25 22/12 23/2
25/14 25/15 25/16 26/8
27/21 32/2 32/3 32/7
**didn't [2]** 9/17 12/4
**different [1]** 28/5
**difficult [1]** 34/1
**direct [1]** 21/6
**directed [3]** 21/7
21/15 21/16
**direction [2]** 3/8 21/24
**directly [4]** 17/19 18/1
18/21 20/21
**disclose [8]** 9/17 9/19
10/19 10/20 19/21 20/3
21/21 21/22
**discovery [12]** 6/4 8/9
12/6 16/15 17/10 17/16

Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC, et al.

Case 8:20-cv-01502-PJM    Document 319    Filed 06/21/23    Page 39 of 44

**D**

discovery... [6]  17/21
19/3 28/22 30/9 30/12
30/17

discussed [4]  6/16
10/10 10/19 20/8

discusses [1]  20/22

discussion [2]  18/8
26/24

discussions [2]  21/3
28/8

disputable [1]  27/17

dispute [1]  15/20

distance [1]  23/16

distinction [2]  13/22
21/1

distinguishable [1]
12/7

district [9]  1/1 1/1
13/3 16/4 20/13 20/15
20/15 36/5 36/6

diving [1]  26/14

DIVISION [1]  1/2

do [28]  4/10 6/21 7/13
7/18 8/16 10/1 10/5
11/12 15/5 16/13 16/23
17/5 21/15 22/17 23/3
23/9 24/1 24/5 24/7
24/8 27/18 27/19 33/10
33/10 34/14 34/15
34/21 36/6

document [1]  14/3

documents [5]  19/3
26/10 27/2 27/7 27/12

does [3]  12/18 13/14
14/13

doing [6]  13/25 14/2
15/13 21/24 23/10
34/11

don't [32]  2/20 4/23
8/9 8/12 9/23 10/2 11/8
11/12 11/12 11/17
11/21 17/13 18/6 19/4
20/3 20/3 20/21 23/3
23/12 23/25 24/12 27/3
27/20 27/23 28/21
32/22 33/1 33/12 34/1
34/4 34/16 34/20

done [6]  10/17 10/18
16/20 26/5 27/9 28/25

doubt [1]  30/19

down [3]  15/16 17/3
34/3

drawn [1]  13/22

DRIVE [12]  1/17 2/14
2/16 5/12 6/19 7/17 9/6
14/25 15/7 17/12 17/20
18/22

duck [1]  32/7

ducked [1]  31/16

**E**

due [2]  19/15 20/4

duplicative [1]  8/13

during [4]  11/8 17/10
19/9 19/10

each [4]  33/19 34/1
34/5 34/16

early [1]  5/15

effect [2]  6/9 31/16

effective [2]  3/5 18/13

effectively [1]  14/16

effort [1]  8/2

either [3]  12/19 26/6
32/24

else [3]  2/12 27/20
35/2

email [7]  16/10 16/10
16/13 16/17 18/1 32/15
32/17

employer [4]  29/20
30/2 32/19 32/25

employers [2]  29/25
32/24

end [1]  34/15

ended [1]  14/24

engaged [1]  32/16

Enough [1]  25/19

entertain [1]  28/18

entities [1]  25/9

entitled [5]  1/10 3/18
26/25 28/15 36/9

Especially [1]  11/14

ESQUIRE [4]  1/14
1/16 1/17 1/18

essentially [1]  28/6

established [1]  20/25

establishing [1]  26/17

estate [1]  17/24

estates [1]  17/22

ET [1]  1/6

evaluate [1]  9/24

even [9]  4/18 13/18
19/25 24/12 26/4 28/3
32/6 32/22 33/9

evening [1]  7/2

event [1]  24/24

eventually [1]  13/11

ever [1]  19/21

every [1]  34/2

everything [1]  9/15

evidence [6]  12/9
12/17 19/20 21/14
26/17 29/3

evidently [1]  33/5

ex [2]  27/1 28/14

exact [1]  13/5

exactly [3]  13/13
15/11 16/1

example [3]  9/16

**F**

21/21 23/24

examples [1]  22/5

exception [11]  3/21
4/16 4/19 13/24 20/25
21/19 25/13 25/21
26/13 27/3 27/8

exceptions [4]  20/24
20/24 26/18 26/20

exit [1]  28/7

experience [1]  25/15

explain [1]  19/24

extend [4]  4/8 6/4
30/15 30/17

extension [3]  4/12
4/14 30/8

extensively [1]  15/23

extent [3]  25/5 25/7
27/14

facie [2]  26/16 28/11

fact [12]  10/1 10/15
12/5 18/9 19/1 19/9
19/20 21/10 25/7 25/22
26/17 33/3

facts [2]  18/5 20/14

failing [1]  21/22

fairly [3]  26/24 27/17
30/7

faith [2]  17/9 18/8

fall [1]  17/1

falls [1]  28/22

false [3]  18/5 19/19
31/8

falsehood [1]  34/24

falsehoods [1]  33/19

familiar [1]  20/8

far [6]  2/20 28/5 28/25
29/12 31/6 34/19

February [3]  9/13 20/9
24/21

Federal [2]  1/24 36/16

feel [1]  34/22

few [2]  12/24 17/7

fight [1]  33/12

figure [1]  11/9

file [6]  3/18 4/1 4/2 4/7
25/2 33/25

filed [4]  3/1 3/8 5/15
24/17

files [1]  14/24

filing [1]  23/22

filings [1]  30/1

find [1]  17/23

fine [3]  4/13 23/10
23/20

finish [1]  30/12

firm [5]  2/14 12/2
31/12 32/17 33/8

first [9]  2/25 7/23 9/13

**G**

9/23 12/24 24/11 30/22
31/9 32/2

five [2]  6/24 17/17

Floor [1]  1/24

Florida [3]  7/2 22/24
23/2

fly [1]  24/5

focus [1]  26/3

folks [6]  6/4 23/22
28/19 33/21 35/1 35/4

following [1]  3/13

foregoing [1]  36/7

forgive [2]  20/11
20/21

format [1]  36/9

formed [1]  21/13

forth [4]  33/22 34/7
34/16 34/25

forward [13]  4/15 5/21
6/3 7/9 8/4 8/14 16/24
23/13 24/25 27/24 28/9
29/8 29/12

found [2]  10/16 21/8

four [1]  8/18

fourth [10]  11/25
11/25 12/10 13/14
13/24 14/18 20/20
20/20 20/22 20/24

frankly [5]  7/13 25/11
26/23 34/6 34/15

fraud [33]  3/21 3/24
4/3 4/16 4/19 5/2 5/21
6/14 7/6 7/17 8/12 12/9
12/17 12/17 12/17
15/15 21/14 21/19 22/1
23/8 25/13 25/21 26/13
26/17 26/20 27/3 27/7
28/6 29/22 29/22 30/3
31/23 32/16

fraudulent [2]  31/22
32/14

Friday [2]  3/12 4/7

front [3]  15/7 18/17
20/21

full [1]  31/3

further [3]  23/14 26/22
32/18

futile [1]  34/15

future [2]  23/15 28/21

gather [4]  3/7 4/17
24/19 27/1

Gauvey [1]  20/12

gave [2]  22/5 31/12

general [6]  7/4 17/2
20/23 31/18 32/16 33/8

gentlemen [1]  9/7

get [16]  2/24 6/6 11/17
16/15 17/5 19/8 22/17

**H**

9/23 12/24 24/11 30/22
31/9 32/2 [column continued]

23/25 27/11 27/12 28/2
29/3 30/14 30/23 32/4
32/6

give [7]  3/13 5/22 6/23
14/1 15/19 15/21 16/24

given [12]  7/5 7/10 8/2
8/2 10/20 13/8 13/10
16/15 20/14 23/18
29/10 30/7

giving [1]  4/9

go [19]  5/20 6/3 6/20
7/9 8/4 8/14 11/11 15/2
15/18 16/23 24/25 25/5
25/20 26/7 27/24 28/9
29/8 29/12 33/22

goes [4]  4/15 14/2
26/17 29/25

going [19]  7/4 9/21
9/22 10/5 10/25 11/9
15/13 16/24 17/5 21/18
22/18 22/24 23/3 23/13
25/9 25/16 29/1 29/2
30/8

gone [2]  7/13 7/22

good [5]  2/5 2/7 17/9
18/8 30/2

goodbye [1]  35/4

Goodness [2]  30/4
31/1

got [5]  19/3 22/20 24/1
24/4 24/6

gracious [1]  30/4

grand [1]  13/23

Grimm [1]  34/10

grounds [3]  15/12
22/15 22/16

guess [1]  15/16

guidance [1]  11/18

GUITERMAN [2]  1/18
2/15

Guso [7]  5/6 5/10 8/12
8/22 11/7 11/20 12/14

Guso's [2]  8/11 12/8

guy [1]  33/14

guys [1]  34/8

had [17]  3/14 5/16
5/25 7/24 7/24 10/2
12/1 16/20 18/20 18/22
20/1 22/3 22/17 28/24
28/25 29/21 33/5

hands [1]  19/25

happened [5]  19/9
19/10 21/2 21/2 31/7

happening [2]  14/16
21/12

happens [1]  10/22

hard [1]  23/23

harder [1]  17/3

**H**

has [33] 3/1 3/14 4/6
5/25 6/25 7/3 7/12 7/12
7/18 7/22 8/11 8/20
8/23 10/15 10/17 10/18
10/24 13/24 14/19 17/8
19/2 21/8 22/8 24/14
26/14 26/19 26/23
30/18 31/10 33/6 33/19
34/3 34/23
hasn't [1] 26/13
have [48]
haven't [2] 12/6 34/8
having [2] 11/13 32/24
he [47]
he's [8] 7/12 8/1 9/16
16/11 17/25 20/19 24/1
28/1
hear [6] 3/22 28/1 31/6
33/21 34/4 34/16
heard [2] 20/6 30/22
hearing [3] 3/15 9/13
10/22 20/8 22/3 24/21
27/1 28/14 35/5
held [3] 13/25 14/8
36/8
help [1] 28/9
helped [1] 13/7
her [6] 9/25 10/6 11/7
22/10 29/20 31/15
here [16] 2/2 2/20 6/6
7/6 13/6 14/16 16/12
21/2 21/3 23/8 24/6
25/22 29/19 30/1 33/13
34/20
here's [1] 18/2
hereby [1] 36/6
Hi [1] 2/4
hide [1] 22/18
hiding [1] 22/15
highlight [1] 26/1
him [22] 8/13 8/23
9/17 11/1 16/9 16/16
17/6 17/25 20/2 21/16
22/1 22/21 22/2 22/13
22/14 23/8 23/25 28/2
32/4 32/18 32/19 32/25
hire [1] 14/3
hired [1] 13/7
his [21] 7/1 7/1 7/3
7/12 7/16 7/18 10/9
10/10 11/1 14/17 16/18
17/15 17/22 18/4 18/20
21/5 21/17 21/17 22/2
25/3 32/19
hold [1] 8/22
holding [1] 13/5
Honor [27] 2/7 2/13
3/4 3/11 3/20 4/4 4/6
5/11 6/18 6/21 8/10

8/18 10/2 10/15 12/22
16/3 17/7 20/12 23/7
24/15 24/16 24/21
29/17 30/6 31/25 32/1
35/3
HONORABLE [1] 1/1
hopefully [1] 28/23
how [6] 12/15 22/13
22/17 27/12 28/3 34/15
however [2] 25/18
29/5
hurling [1] 34/13

**I**

I'll [6] 3/5 5/22 11/22
16/8 17/11 20/3
I'm [16] 3/22 4/1 7/2
9/9 23/1 23/10 25/16
28/9 28/18 30/24 31/8
33/3 33/12 33/25 34/13
34/22
I've [7] 3/12 7/23 22/20
24/4 24/6 30/22 33/20
identified [3] 9/11
17/18 25/6
identifies [1] 26/10
identify [3] 2/3 2/6
17/12
II [1] 1/3
immediately [1] 17/24
implement [1] 17/3
implicate [1] 15/6
impose [1] 34/6
imposes [1] 8/8
inaudible [5] 14/6
18/14 21/23 28/4 29/14
incendiary [1] 31/23
inclination [1] 5/20
indefinitely [2] 30/16
30/20
independent [1] 25/12
indicated [2] 31/20
32/13
individual [2] 32/6
32/11
individuals [1] 6/13
influenced [29] 9/17
9/19 10/10 11/3 11/3
13/10 14/1 14/4 15/8
15/12 15/21 15/25 16/3
17/23 18/1 18/3 18/11
18/16 18/20 18/22
18/24 19/2 19/2 19/21
19/25 21/25 22/3 22/17
28/13
inquire [1] 18/19
Insofar [1] 27/24
instruct [2] 11/1 11/13
instructed [5] 9/19

19/24 20/2 21/6 22/14
instructing [1] 10/17
instructions [2] 11/18
23/5
insults [1] 34/13
intend [1] 15/5
intended [1] 14/7
intense [1] 33/20
intent [1] 14/10
interacting [1] 35/1
internal [1] 20/16
interpose [1] 8/8
INVESTORS [5] 1/6
1/15 2/9 2/10 2/25
involve [1] 5/14
involved [4] 7/6 12/8
32/14 32/14
involvement [1] 9/18
involving [1] 31/21
ironbound [1] 29/2
is [126]
issue [23] 4/15 4/16
5/3 5/11 5/21 6/7 6/14
11/6 15/15 15/16 19/6
21/3 22/8 22/21 23/19
23/20 25/10 25/20
28/10 28/12 29/14 31/3
33/7
issues [14] 6/16 7/20
8/12 8/24 11/15 11/22
12/15 12/20 15/10
19/14 24/10 25/11
27/16 30/23
issuing [1] 17/2
it [85]
it's [34] 2/7 3/11 3/16
5/20 7/10 9/16 10/3
11/4 11/17 12/7 13/3
13/22 14/9 16/24 19/2
20/8 20/13 20/14 20/20
20/22 20/23 21/2 21/4
22/2 23/10 23/23 25/14
28/3 30/3 31/7 33/15
33/23 34/12 35/1
its [2] 6/11 17/12
IWA [3] 9/5 12/3 20/2
IWA's [1] 9/18

**J**

Jordi [1] 5/6
judge [16] 2/2 2/4 9/25
10/22 11/5 20/8 20/12
20/15 20/15 20/16
20/19 22/3 23/7 30/22
31/7 33/3
judge's [1] 20/14
judgment [9] 12/16
12/18 30/7 30/11 30/14
30/21 31/2 31/3 31/4
Judicial [1] 36/10

June [1] 36/12
jury [1] 13/23
just [20] 2/23 3/12
5/11 11/25 14/14 16/8
17/4 17/11 18/11 18/16
18/18 19/2 19/16 24/19
27/11 29/18 29/23 31/1
34/12 34/13
justice [1] 28/24

**K**

keep [9] 14/10 28/23
28/25 31/5 34/2 34/4
34/14 34/14 34/22
kept [2] 18/11 18/16
key [1] 25/5
kind [2] 28/21 31/9
kinds [2] 22/4 34/7
knew [8] 16/1 18/10
18/15 18/21 18/22
19/16 19/17 19/17
know [20] 2/20 7/19
9/18 9/21 10/2 15/11
17/13 18/6 18/12 21/20
21/20 22/5 23/3 24/9
24/12 27/3 28/21 29/20
29/22 32/22
knowing [1] 21/12
knows [3] 6/4 7/2 28/3
Koch [5] 13/3 14/8
14/18 20/7 21/2
KROPF [22] 1/17 2/13
6/18 8/21 9/2 9/25 10/4
10/17 10/24 11/6 11/9
12/1 17/4 19/16 20/6
22/8 23/3 23/16 29/17
30/24 31/9 31/23
Kropf's [2] 5/7 11/24

**L**

lack [1] 24/6
laid [1] 10/3
landlord [7] 9/12 11/3
17/8 17/19 20/2 21/6
21/11
language [4] 31/23
32/18 32/20 32/21
last [6] 2/17 5/15
10/22 12/5 22/3 34/19
late [2] 5/15 8/9
later [1] 5/17
law [7] 12/2 14/18 16/4
20/13 25/22 27/11
31/12
lawyer [15] 2/14 8/22
9/5 11/25 12/10 13/1
13/2 14/3 14/6 16/12
20/25 21/4 22/1 30/2
31/6
lawyers [9] 5/7 7/6
8/22 13/7 13/11 16/21

20/23 28/3 29/19
lawyers' [1] 8/18
learned [2] 17/9 17/16
leave [2] 5/1 14/23
Ledge [1] 34/12
legal [3] 13/16 21/17
31/3
Legally [1] 18/24
legwork [1] 25/23
less [1] 28/22
let [8] 7/19 11/25
16/22 17/4 23/21 26/1
33/24 34/23
let's [10] 12/14 23/8
25/1 28/25 29/3 31/1
31/5 33/17 33/17 34/5
letter [12] 3/12 5/12
9/25 10/2 10/21 13/7
13/11 13/16 14/15
14/15 17/11 18/20
letters [10] 9/14 13/13
17/8 17/11 17/15 18/4
18/18 18/17 19/6
levels [1] 30/3
liars [1] 33/19
lie [3] 34/3 34/4 34/24
light [3] 3/13 11/19
31/10
lightly [1] 29/24
like [5] 14/3 18/19
28/1 30/23 33/14
likely [2] 11/15 25/11
line [4] 2/12 2/16 9/8
19/24
litigation [6] 14/16
16/1 18/9 18/13 18/25
29/25
little [5] 3/23 6/23
30/16 31/8 34/1
lived [1] 6/5
lives [1] 34/1
LLC [3] 1/3 1/6 1/17
log [5] 34/2 34/4 34/14
34/14 34/22
logic [1] 20/17
Lombard [1] 1/24
long [6] 6/5 10/3 14/9
19/5 23/16 28/20
long-distance [1]
23/16
look [6] 26/15 26/20
28/12 28/19 33/14 34/6
looked [1] 27/17
looking [1] 13/23
looming [1] 34/25
Lord [2] 6/4 28/2
lost [1] 34/9
lot [5] 7/13 7/22 23/5
25/21 33/20

**M**

magistrate [3]  20/12 20/14 20/16
main [1]  16/2
make [15]  2/22 4/18 5/20 5/23 16/25 23/4 27/21 28/3 28/17 29/24 29/24 30/15 31/9 33/14 34/1
makes [5]  11/19 26/23 27/15 30/10 30/11
making [4]  17/2 21/23 26/2 26/12
managing [1]  22/14
many [2]  28/3 30/3
MARYLAND [6]  1/1 1/25 13/3 16/4 16/11 36/6
matter [7]  1/10 6/6 6/10 8/2 14/13 33/24 36/9
matters [8]  7/7 7/11 8/7 8/13 15/3 17/14 18/23 29/18
may [17]  4/21 5/24 5/24 9/4 12/22 15/6 16/12 23/5 23/13 26/16 27/7 27/8 28/7 28/8 28/20 34/5 34/6
maybe [3]  5/8 30/16 31/2
me [21]  10/9 11/25 12/1 12/3 16/22 17/4 20/5 20/11 20/21 20/21 22/4 23/21 23/23 24/10 26/1 26/24 33/14 33/21 33/24 34/19 34/23
mean [1]  33/23
meet [2]  7/24 17/22
meeting [1]  19/25
member [4]  9/5 9/7 9/9 22/14
memo [1]  3/8
memorandum [1]  6/12
mendacity [1]  33/23
Merit [1]  36/4
merits [2]  2/24 19/14
MESSITTE [2]  1/11 2/2
met [1]  11/5
middle [1]  12/2
might [4]  7/20 17/3 25/12 30/15
mind [1]  28/25
misrepresent [1]  18/6
misrepresentations [3]  17/10 28/2 28/3
misrepresenting [2]  13/4 14/9
misstated [1]  20/6

misstatements [1]  21/24
moment [4]  5/14 22/23 25/19 27/20
Monday [2]  4/8 12/5
months [3]  33/4 33/5 33/9
more [7]  5/8 15/1 24/9 28/22 29/16 30/24 33/19
morning [3]  2/7 5/15 6/17
motion [18]  3/1 3/14 5/17 9/1 9/2 9/14 14/24 24/2 24/22 24/13 24/16 25/3 25/17 25/20 27/25 29/6 29/9 30/11
motions [6]  23/23 30/6 30/8 30/13 30/20 31/2
mouthpiece [3]  9/17 10/13 21/1
moved [1]  24/21
moving [2]  27/5 28/23
Mr [2]  8/14 23/24
Mr. [131]
Mr. Barron [33]  6/25 7/3 7/8 7/16 7/17 8/7 9/4 9/10 9/15 10/6 10/8 10/19 11/11 11/16 11/22 12/14 14/13 15/1 15/3 15/16 15/18 16/22 19/8 21/4 21/4 21/11 21/15 22/12 22/16 23/14 24/14 25/6 25/19
Mr. Barron's [14]  6/22 6/24 7/11 7/25 9/24 10/25 11/12 12/7 14/17 14/20 16/5 16/23 24/22 29/12
Mr. Berger [1]  9/9
Mr. Bosch [28]  3/10 4/25 5/16 7/2 7/24 8/4 8/11 8/16 14/23 17/5 17/15 18/4 18/19 19/8 19/9 19/11 19/12 22/25 23/19 24/25 25/18 27/14 27/25 30/19 32/13 32/19 32/23 33/2
Mr. Bosch's [5]  16/8 27/21 27/23 29/8 32/17
Mr. Camalier [4]  17/21 17/24 18/2 19/4
Mr. Cavalier [1]  18/21
Mr. Guso [5]  5/10 8/12 8/22 11/7 12/14
Mr. Guso's [2]  8/11 12/8
Mr. Robert [1]  8/25
Mr. Rubin [7]  9/7 9/22

10/7 11/2 17/19 17/23 19/23
Mr. Rubin's [1]  18/1
Mr. Sowka [13]  4/20 4/21 5/5 5/13 8/21 12/14 29/21 31/11 31/13 31/16 31/22 32/3 33/5
Mr. Sowka's [5]  5/16 12/8 29/20 32/24 32/25
Mr. Taylor [11]  9/7 9/22 10/7 11/2 15/23 17/23 17/25 19/23 20/1 22/10 22/11
Ms [1]  31/9
Ms. [28]  3/3 4/17 5/5 5/7 5/9 8/21 8/21 9/2 9/25 10/4 10/17 10/24 11/6 11/9 11/24 12/1 17/4 19/16 20/6 22/8 22/3 23/16 30/24 31/13 31/23 33/4 33/6 33/10
Ms. Davis [8]  3/3 4/17 5/9 8/21 31/13 33/4 33/6 33/10
Ms. Davis's [1]  5/5
Ms. Kropf [17]  8/21 9/2 9/25 10/4 10/17 10/24 11/6 11/9 12/1 17/4 19/16 20/6 22/8 22/3 23/16 30/24 31/23
Ms. Kropf's [2]  5/7 11/24
much [6]  5/21 15/19 16/17 16/24 18/10 24/7
multitude [1]  31/12
multitudinous [1]  23/23
my [18]  3/8 3/12 5/20 7/21 7/24 8/20 10/2 12/2 12/4 12/6 12/9 12/12 12/12 21/15 22/12 25/11 25/15 28/10

**N**

name [1]  2/17
narrow [5]  7/20 13/24 14/5 15/16 24/7
nature [1]  34/3
need [16]  3/22 4/21 5/8 6/16 9/24 11/15 12/6 15/10 16/5 22/22 23/2 27/13 27/17 30/24 33/12 34/16
needed [1]  16/15
needs [6]  23/25 23/17 26/3 26/21 27/25 30/9
negotiate [1]  9/10
neither [2]  6/2 16/19

never [3]  14/7 26/4 26/6
nevertheless [1]  12/10
new [1]  9/18
night [1]  5/15
no [18]  1/4 4/9 11/20 12/18 13/2 13/9 16/4 19/20 20/17 22/19 22/25 23/20 24/20 26/14 29/2 33/3 33/7 35/3
nobody [3]  28/25 32/4 32/10
noncompliance [1]  29/14
none [1]  32/2
nonprivileged [2]  7/7 15/3
not [90]
noted [1]  6/23
notes [1]  1/22
nothing [5]  5/20 12/9 22/6 22/6 33/1
notice [5]  3/1 5/15 7/23 9/11 31/12
noticed [1]  8/19
notification [1]  23/25
Notwithstanding [1]  6/3
now [13]  5/10 5/18 7/21 8/1 9/8 10/23 23/7 29/21 31/6 33/4 33/6 33/17 34/12
Number [2]  26/4 26/25

**O**

object [2]  15/7 15/8
objected [1]  15/11
objecting [1]  5/9
objection [2]  6/11 24/1
objections [2]  8/6 11/24
obligations [1]  21/9
obtain [2]  15/9 15/13
obtained [1]  16/3
obviously [6]  5/22 10/25 15/3 15/15 16/14 33/15
October [1]  17/17
off [2]  8/23 30/20
offering [1]  14/2
office [4]  16/18 31/17 32/8 32/9
Official [3]  1/24 36/1 36/16
okay [5]  2/5 2/24 5/19 23/16 24/24
once [3]  5/23 11/22

34/10
once you [1]  34/10
one [20]  3/19 5/6 8/21 11/4 12/25 16/1 17/19 20/14 20/17 21/16 26/4 26/11 26/15 26/21 26/25 29/2 29/2 29/18 34/23 34/23
ones [2]  17/11 27/11
only [4]  16/9 27/8 28/10 28/16
open [4]  14/24 26/24 31/1 31/5
open-ended [1]  14/24
opinion [3]  17/2 20/10 20/14
opportunity [1]  7/19
oppose [2]  6/21 29/5
opposing [2]  4/2 34/2
opposite [1]  13/6
opposition [4]  3/19 4/2 26/3 29/10
order [4]  6/9 6/12 24/14 27/9
ordering [1]  34/22
ordinary [1]  29/11
organization [1]  25/14
other [9]  4/23 5/13 5/14 5/18 6/16 8/13 13/8 23/9 33/19
otherwise [2]  15/13 19/22
our [12]  2/14 3/15 5/14 7/9 8/3 8/14 10/21 15/18 16/21 17/21 30/11 32/15
out [18]  10/3 11/9 17/22 17/23 18/12 18/15 19/2 20/1 20/11 24/10 29/3 32/4 32/7 32/24 32/25 33/8 33/13 34/12
outcome [1]  29/2
over [1]  11/10
own [1]  31/15

**P**

page [1]  36/9
paper [1]  3/18
part [5]  4/14 17/21 21/10 21/11 25/17
parte [2]  27/1 28/14
partial [1]  31/2
particular [1]  22/19
parties [3]  5/22 15/20 17/3
partner [3]  5/6 31/11 31/15
party [5]  12/19 13/8 13/11 13/20 21/4

**P**

**PAUL [4]** 1/20 2/16 2/18 34/10
**pause [1]** 16/22
**pending [3]** 6/10 6/13 29/8
**people [2]** 13/8 32/24
**people's [1]** 29/24
**percent [1]** 23/6
**perfectly [1]** 32/20
**perform [1]** 21/14
**perhaps [5]** 6/11 24/10 30/8 30/17 34/15
**perpetrating [2]** 12/8 22/1
**person [4]** 9/11 17/18 21/5 32/7
**personally [1]** 29/21
**PETER [1]** 1/11
**phone [1]** 19/7
**PJM [1]** 1/5
**Plaintiff [25]** 1/4 1/14 2/6 3/8 3/17 5/25 6/23 7/5 7/11 7/18 12/25 14/8 15/25 17/18 21/21 25/2 25/24 26/2 26/13 26/19 26/21 29/4 29/18 29/20 29/23
**Plaintiff's [1]** 24/25
**Plaintiffs [7]** 2/8 4/20 15/4 15/9 15/23 19/16 25/7
**plan [1]** 21/11
**planned [1]** 29/13
**PLAZA [1]** 1/3
**point [11]** 4/23 19/20 24/10 24/13 25/2 25/6 26/9 28/11 30/5 32/23 33/25
**points [3]** 12/24 26/1 26/22
**pose [1]** 23/21
**position [10]** 2/22 3/17 4/8 4/17 4/21 4/23 5/4 10/6 13/16 28/13
**positions [2]** 5/14 5/18
**possible [1]** 5/10
**potentially [3]** 5/1 26/11 27/17
**practical [1]** 8/2
**practice [1]** 16/12
**precedent [1]** 13/14
**preference [1]** 8/3
**preferred [1]** 16/18
**prejudice [5]** 3/2 9/3 11/21 12/19 24/23
**preliminarily [1]** 2/21
**preliminary [2]** 2/22 6/7

**preparation [1]** 7/22
**prepare [2]** 7/10 8/7
**prepared [5]** 5/1 6/25 7/4 7/12 23/1
**PRESENT [1]** 1/19
**Presumably [1]** 25/2
**pretty [2]** 24/7 34/11
**prevent [1]** 21/11
**previously [1]** 31/10
**prima [2]** 26/16 28/11
**primary [2]** 17/11 19/6
**principal [1]** 11/8 22/13 25/8
**principals [9]** 2/15 9/22 10/8 10/18 17/12 17/20 18/6 18/16 19/22
**prior [1]** 23/25
**privilege [23]** 7/15 8/5 8/24 9/15 11/10 11/15 11/22 11/24 12/15 12/20 13/2 13/9 13/15 14/12 14/22 15/6 15/12 16/7 22/16 22/19 22/19 23/19 25/10
**privileged [15]** 8/8 9/20 10/8 10/11 10/14 13/13 13/21 14/18 15/1 15/10 22/6 22/9 22/9 22/15 26/20
**probably [3]** 6/14 11/18 30/10
**problem [6]** 4/9 4/11 10/23 10/23 23/12 30/20
**problematic [1]** 30/3
**procedural [1]** 5/24
**procedure [1]** 28/14
**proceed [2]** 10/24 12/12
**proceeding [1]** 12/11
**proceedings [1]** 36/8
**process [4]** 12/1 16/9 16/18 32/8
**production [2]** 27/1 28/17
**professional [1]** 16/14
**property [1]** 34/11
**proposal [3]** 8/14 8/20 15/18
**propose [1]** 16/23
**proposing [1]** 14/23
**proposition [2]** 13/1 27/4
**propositions [1]** 27/13
**prospect [1]** 31/4
**prospective [2]** 14/3 14/4
**protections [1]** 27/10
**protective [1]** 24/13
**prove [3]** 19/15 21/10

26/19
**proved [1]** 26/13
**provide [2]** 11/3 11/4
**provided [3]** 19/21 21/7 28/13
**providing [2]** 10/10 21/18
**public [1]** 13/16 14/2 14/4
**pull [1]** 20/11
**purports [1]** 25/13
**purpose [1]** 31/24
**purposes [2]** 18/9 18/25
**pursuant [2]** 27/10 36/6
**pushing [1]** 33/2
**put [4]** 6/11 14/4 18/17 30/16
**putting [2]** 18/16 30/20

**Q**

**quash [8]** 3/1 5/18 8/11 9/1 9/14 24/2 24/16 24/21
**question [1]** 17/4
**questionable [1]** 25/15
**questions [16]** 8/4 9/12 11/1 15/5 15/8 15/11 16/6 17/1 21/6 21/7 21/15 21/16 22/4 22/11 22/15 23/9
**quite [3]** 7/13 8/9 33/21

**R**

**raise [2]** 12/4 12/21
**raised [3]** 7/20 11/7 27/16
**raises [1]** 5/25
**raising [1]** 11/6
**rather [3]** 17/1 21/19 24/4
**re [1]** 8/7
**re-prepare [1]** 8/7
**reach [3]** 15/16 20/1 32/25
**reached [4]** 7/25 32/12 33/8 34/5
**reaches [1]** 13/5
**reaching [2]** 32/24 33/13
**react [1]** 35/1
**real [4]** 4/15 17/22 17/24 31/4
**really [6]** 8/8 24/7 33/23 34/7 34/17 34/17
**Realtime [1]** 36/5
**reason [6]** 15/14 15/25

16/5 20/5 33/4 33/14
**reasons [5]** 15/24 16/2 21/22 26/15 29/10
**REBECCA [6]** 1/16 1/18 2/10 2/14 31/12 32/1
**recall [5]** 8/25 9/4 9/13 24/12 33/18
**received [2]** 7/23 22/12
**recommendations [1]** 28/9
**reconsider [2]** 25/20 29/6
**Reconsideration [1]** 3/9
**record [7]** 14/21 16/25 18/13 18/25 21/23 23/5 26/7
**records [2]** 26/14 26/21
**refile [1]** 5/17
**refrain [1]** 32/23
**refused [6]** 16/10 22/18 31/14 31/14 31/18 33/10
**regard [2]** 26/8 27/2
**Registered [1]** 36/4
**regulations [1]** 36/10
**reiterated [1]** 10/24
**relate [1]** 8/12
**related [2]** 5/12 17/14
**relative [1]** 4/18
**relevant [5]** 26/11 27/7 29/3 34/17 34/17
**relies [1]** 12/25
**remarkable [1]** 33/21
**remember [2]** 9/5 21/22
**remotely [1]** 23/4
**renewed [1]** 29/13
**repeatedly [1]** 17/15
**replied [1]** 29/10
**reply [3]** 4/14 25/4 29/6
**reported [2]** 1/23 36/8
**reporter [7]** 1/24 2/3 2/4 36/1 36/4 36/5 36/16
**represent [1]** 18/5
**representation [1]** 6/8
**representative [3]** 21/5 21/17 22/2
**represented [1]** 19/16
**request [4]** 27/24 29/9 33/1 33/2
**requested [2]** 18/2 24/4
**requests [1]** 19/10
**require [1]** 8/7

**resolution [1]** 23/8
**resolve [2]** 5/21 22/20
**resolved [2]** 11/22 30/23
**resolves [2]** 11/15 12/15
**respect [13]** 3/20 3/24 4/3 4/20 4/22 5/5 5/6 5/13 14/20 16/8 16/22 19/7 30/6
**respond [9]** 3/17 6/1 8/17 12/22 19/12 19/14 22/13 25/4 26/21
**responded [1]** 32/19
**responding [1]** 10/9
**response [7]** 3/7 3/12 3/15 4/7 10/2 14/15 27/14
**responses [1]** 28/18
**restatement [2]** 21/9 30/23
**result [1]** 13/16
**return [1]** 14/2
**returns [1]** 13/25
**revealed [1]** 19/4
**review [2]** 10/3 26/5
**reviews [1]** 26/10
**ridiculous [1]** 34/7
**right [14]** 3/5 4/5 4/9 4/10 5/10 5/18 8/9 8/16 9/8 17/17 23/12 31/1 33/17 35/2
**RMR [1]** 1/23 36/16
**road [2]** 15/17 17/3
**Robert [2]** 8/25 9/1
**rock [14]** 1/3 1/17 2/15 5/12 6/18 7/16 9/6 14/25 15/6 17/12 17/20 18/22 29/1 34/12
**rockbound [1]** 29/1
**Rocks [1]** 2/13
**Ronda [4]** 1/23 2/4 36/4 36/16
**RSD [7]** 9/19 9/22 19/22 21/4 21/13 22/13 24/17
**RUBIN [10]** 1/20 2/16 2/18 9/7 9/22 10/7 11/2 17/19 17/23 19/23
**Rubin's [1]** 18/1
**rule [2]** 5/9 23/23
**ruled [1]** 8/23
**ruling [8]** 5/2 5/23 6/10 6/13 11/19 12/20 23/15 29/9
**rulings [1]** 24/4

**S**

**said [18]** 7/7 9/14 9/16 9/21 10/22 11/5 11/17

**S**

said... [11] 13/13
17/15 18/1 20/1 22/5
22/20 24/9 26/8 29/4
31/10 34/10
same [4] 4/12 7/11
14/14 34/11
sanctions [1] 34/6
SARA [3] 1/17 2/13
29/17
Sarah [1] 6/18
saw [1] 29/25
say [14] 6/9 11/25
15/12 16/6 16/8 17/11
20/13 20/16 23/7 25/15
27/17 28/1 28/13 34/5
saying [4] 14/24 16/16
22/8 32/16
says [8] 9/25 10/12
13/12 14/9 14/9 20/16
20/19 20/23
scene [1] 18/15
scenes [1] 21/18
schedule [2] 7/3 28/23
scheduled [6] 3/11
6/22 6/25 7/9 8/15 12/5
11/24
scope [1] 11/24
searched [1] 26/23
second [7] 8/22 11/16
14/20 26/9 30/5 30/9
32/13
see [8] 12/15 17/21
25/1 26/7 27/15 31/3
33/8 34/14
seek [3] 5/1 7/19 8/13
seeking [1] 8/1
seem [1] 34/10
seems [6] 14/23 24/5
25/23 26/12 26/23
34/19
seen [2] 22/10 34/8
send [2] 16/18 32/21
sending [2] 14/13 32/8
sense [4] 11/19 30/10
30/11 30/15
sensitivity [1] 20/23
sent [8] 5/16 13/17
16/10 17/22 17/25
18/20 32/15 32/16
separate [1] 33/24
serve [2] 12/3 31/17
served [4] 6/23 16/9
16/16 32/6
server [4] 12/1 16/9
16/18 32/9
serves [1] 31/24
service [16] 6/25
16/10 16/13 16/16
16/20 31/14 31/15
31/16 31/16 31/19 32/3

32/5 32/7 32/10 33/6
33/9
serving [3] 10/13 21/1
25/8
set [2] 20/14 29/5
several [1] 22/11
Seyfarth [3] 31/11
31/18 31/18
shall [2] 27/15 31/3
share [3] 19/25 21/25
22/18
shared [1] 15/25
Shaw [1] 31/11
she [10] 10/5 10/17
10/18 11/6 12/4 22/8
22/14 29/21 31/14
31/24
she's [2] 10/5 10/25
shocked [1] 31/8
short [1] 6/2
should [15] 3/17 4/17
5/20 6/3 9/12 10/19
11/20 12/12 14/21 16/6
26/4 27/2 27/24 28/11
28/13
shouldn't [2] 10/20
29/1
show [2] 12/2 19/20
showed [2] 10/4 10/4
shown [1] 12/6
sic [1] 20/19
side [2] 13/9 34/23
sides [1] 19/9
sign [1] 3/5
similar [1] 4/13
simply [3] 13/15 18/8
18/24
simultaneously [1]
30/13
since [1] 24/24
sir [1] 5/4
situation [3] 2/20
16/19 28/5
six [1] 6/24
snakepit [1] 34/20
so [48]
some [16] 5/24 6/1
10/20 11/17 14/24 15/4
22/5 23/23 24/10 24/13
25/22 26/1 26/25 27/11
28/15 30/24
somehow [1] 15/15
someone [1] 25/13
someone's [1] 30/2
something [10] 2/23
14/3 17/2 24/3 24/20
25/14 29/16 30/16
33/24 34/8
sorry [3] 2/17 3/22 9/9
sort [6] 14/24 24/13

26/25 27/25 28/15
32/18
sought [3] 8/10 31/13
31/17
SOUTHERN [1] 1/2
Sowka [14] 4/20 4/21
5/5 5/13 8/21 11/19
12/14 29/21 31/11
31/13 31/16 31/22 32/3
33/5
Sowka's [5] 5/16 12/8
29/20 32/24 32/25
speak [2] 25/13 33/4
speakers [1] 33/19
speaks [1] 13/1
specific [4] 5/8 17/1
24/4 29/9
specifically [1] 25/1
spend [1] 3/14
spoke [1] 23/19
SPRING [1] 1/3
SPRINGS [12] 1/17
2/14 2/15 5/12 6/19
7/16 9/6 14/25 15/6
17/12 17/20 18/22
stage [1] 8/9
standard [3] 26/6 26/7
26/9
standing [1] 30/2
standpoint [1] 30/10
stands [1] 28/22
start [2] 14/17 24/11
stated [3] 3/16 4/6
5/14
statement [1] 2/22
statements [1] 29/24
STATES [3] 1/1 36/5
36/11
stay [1] 20/2
stenographically [1]
36/8
stenographically-repo
rted [1] 36/8
stenotype [1] 1/22
steps [1] 5/24
still [4] 3/7 13/13 16/6
16/23
stop [3] 22/22 33/17
33/17
straight [1] 24/7
straightforward [2]
15/2 16/14
strategy [2] 21/10
28/7
Street [1] 1/24
strips [1] 13/14
strong [1] 8/3
stuff [2] 5/22 24/5
subject [3] 9/15 21/19
29/13

submitted [2] 5/12
27/8
subpoena [13] 6/23
9/1 9/14 11/7 12/3
24/22 31/14 31/15
31/17 31/19 31/21 32/5
33/6
subsequently [1]
13/17
substantial [1] 28/24
suddenly [1] 13/2
suggest [3] 26/4 27/6
33/24
suggestion [1] 7/9
summarizing [1] 29/4
summary [11] 2/22
12/16 12/18 30/6 30/11
30/13 30/14 30/21 31/2
31/3 31/4
supportive [1] 26/22
supposed [2] 17/13
24/1
sure [3] 12/23 17/7
19/8
surprised [2] 16/11
19/8
system [1] 25/24

**T**

take [14] 5/16 6/14
7/11 7/14 9/21 9/23
11/12 11/15 11/22 23/1
23/4 23/8 23/20 34/18
taken [3] 4/8 4/14 4/21
takes [2] 23/15 29/15
taking [3] 5/13 5/18
6/21
talk [6] 2/21 13/25
20/3 22/12 25/17 29/16
tax [3] 13/25 14/1 14/1
TAYLOR [14] 1/19
2/16 2/18 9/7 9/22 10/7
11/2 15/23 17/23 17/25
19/23 20/1 22/10 22/11
Teleconference [2]
1/6 1/10
testimony [3] 9/24
10/4 16/5
than [4] 5/14 17/1 24/5
33/20
Thank [2] 35/3 35/4
that [235]
that's [31] 4/11 4/13
5/4 9/7 9/20 10/11
10/15 12/10 12/21 13/3
13/22 14/15 16/1 20/5
21/18 21/25 22/1 22/25
22/20 23/20 24/8 24/18
26/15 27/4 27/19 28/19
31/7 31/23 31/25 34/25

35/4
their [12] 5/23 9/10
9/13 9/23 12/17 12/17
21/4 21/13 22/16 26/3
31/17 32/20
them [9] 4/10 7/20
9/23 11/21 15/5 18/17
20/1 20/2 33/15
themselves [1] 27/8
then [24] 3/5 6/8 7/14
7/17 7/18 8/25 9/6 9/24
11/7 11/13 11/23 13/19
14/1 14/11 14/24 15/5
15/16 19/7 23/6 26/10
29/4 30/5 30/5 32/16
theories [1] 12/17
there [39]
there's [19] 2/20 9/5
9/6 11/20 12/18 16/4
20/16 22/6 22/6 24/2
24/2 24/3 24/9 27/24
28/24 29/15 31/4 32/25
33/7
therefore [2] 26/14
28/2
these [9] 6/2 6/13 19/4
23/9 23/24 29/24 33/21
34/7 34/7
they [44]
they'll [1] 33/9
they're [11] 4/7 4/7 7/4
12/10 13/6 17/13 19/23
22/15 22/18 27/11
33/14
they've [1] 10/18
thing [4] 14/14 14/20
28/1 28/21
things [5] 4/18 7/15
13/24 17/7 23/24
think [30] 6/2 6/6 6/14
8/9 15/19 17/5 17/17
18/7 18/13 23/5 23/10
25/10 25/23 26/2 26/5
26/21 27/4 27/13 27/16
27/20 27/23 28/19
29/15 30/7 30/10 31/23
33/13 33/15 34/2 34/10
thinks [2] 30/24 31/24
third [4] 13/8 13/11
13/20 27/6
third-party [3] 13/8
13/11 13/20
this [69]
Thomas [3] 1/23 2/4
36/4 36/16
those [21] 6/1 7/20
10/14 12/19 13/12 14/6
14/10 16/6 17/24 18/8
19/5 19/6 19/11 21/8
22/15 25/9 25/11 27/13

Rock Spring Plaza II, LLC v.Investors Warranty of America, LLC, et al.

Case 8:20-cv-01502-PJM   Document 319   Filed 06/21/23   Page 44 of 44

**T**

those... **[3]** 27/16 28/18 29/24
though **[3]** 17/13 18/18 33/9
thought **[2]** 7/24 30/15
through **[7]** 11/11 16/9 17/16 19/2 19/3 22/16 25/5
throwing **[1]** 7/5
time **[17]** 3/13 5/22 6/4 6/5 7/23 8/2 11/16 14/5 23/9 27/18 27/24 28/20 29/16 30/24 31/9 34/2 34/16
timeline **[3]** 29/5 29/7 31/2
timeliness **[1]** 11/6
times **[1]** 31/13
timing **[1]** 16/15
today **[7]** 3/6 3/15 6/12 10/24 11/9 12/1 22/8
told **[4]** 10/5 29/20 34/3 34/23
tomorrow **[5]** 6/22 8/15 22/24 25/1 29/13
took **[1]** 5/4
topics **[2]** 17/1 19/11
touch **[2]** 32/4 32/6
town **[3]** 32/4 32/8 32/11
transaction **[1]** 9/10
transcript **[2]** 36/8 36/9
transcription **[1]** 1/22
travel **[1]** 23/2
traveling **[2]** 7/2 23/3
treating **[1]** 17/8
tried **[4]** 13/9 16/13 31/15 33/20
trouble **[1]** 7/13
troublesome **[2]** 33/23 35/1
TROY **[3]** 1/19 2/16 2/18
true **[3]** 32/2 32/13 36/7
try **[3]** 16/16 18/25 29/3
trying **[5]** 2/19 30/13 33/5 33/10 33/14
Tuesday **[4]** 3/13 4/10 27/18 29/5
turned **[2]** 18/12 18/15
twice **[2]** 7/10 11/12
two **[8]** 2/15 8/19 9/7 12/1 12/3 13/24 21/16 29/18

**U**

U.S.C **[1]** 36/7
under **[7]** 14/18 16/4 21/9 21/24 25/24 27/3 30/23
understand **[9]** 2/25 4/25 16/11 16/12 26/2 26/12 30/1 30/1 33/1
understanding **[4]** 15/20 16/25 21/12 23/13
unearth **[1]** 26/16
unfairly **[1]** 25/23
unfamiliar **[2]** 23/22 34/13
unfortunate **[1]** 16/19
unfortunately **[3]** 16/15 18/17 29/19
UNITED **[3]** 1/1 36/5 36/11
unless **[3]** 6/8 24/1 29/15
unscramble **[1]** 2/19
unsuccessfully **[1]** 9/2
until **[10]** 3/13 4/8 4/10 4/15 5/21 8/23 11/21 20/4 29/5 30/17
up **[3]** 3/23 12/2 29/5
upcoming **[1]** 12/16
urged **[1]** 20/1
us **[7]** 3/13 3/14 7/10 8/7 8/8 11/21 30/12
use **[1]** 29/1
using **[1]** 31/24

**V**

vacation **[3]** 32/4 32/9 33/5
vacuum **[2]** 15/10 15/14
vague **[1]** 15/11
very **[14]** 13/23 14/6 14/17 16/8 16/11 16/14 16/17 17/2 19/5 19/12 19/13 22/11 25/11 29/18
via **[2]** 16/10 16/13
video **[1]** 23/20
view **[6]** 12/12 18/8 22/9 22/10 25/11 28/11
vs **[1]** 1/5

**W**

wait **[3]** 5/1 11/21 12/15
waiting **[1]** 3/15
want **[12]** 6/8 8/16 11/12 11/12 18/4 19/8 23/14 24/9 27/19 34/1

wanted **[3]** 12/21 18/10 23/25
wants **[2]** 5/16 23/20
WARRANTY **[5]** 1/6 1/15 2/9 2/10 2/25
was **[59]**
wasteful **[1]** 23/10
way **[8]** 15/7 15/9 16/14 18/14 20/18 25/8 34/25 35/1
we **[90]**
we'll **[7]** 6/4 16/7 19/14 23/4 23/6 23/9 24/8
we're **[6]** 2/19 5/18 15/13 23/3 30/12 32/22
we've **[4]** 10/20 17/9 17/16 22/9
weeks **[4]** 6/24 12/1 17/17 33/9
well **[14]** 2/16 2/25 3/16 5/6 5/19 23/12 23/13 24/24 25/15 26/14 28/7 28/8 30/19 34/11
went **[1]** 31/17
were **[19]** 9/19 13/7 15/12 16/19 17/10 18/9 18/11 18/14 18/16 19/10 19/22 19/24 21/7 21/8 21/9 21/10 31/22 32/8 33/10
weren't **[1]** 19/1
what **[78]**
whatever **[5]** 27/2 27/18 31/24 33/14 34/12
when **[24]** 7/22 9/16 10/5 10/9 10/12 11/5 11/14 13/25 14/5 18/9 19/1 21/6 21/20 21/20 21/21 21/22 21/23 22/5 22/10 22/12 23/19 23/24 34/4 34/22
where **[15]** 8/3 14/22 14/22 15/20 16/19 16/25 20/1 20/25 22/4 23/24 24/21 25/13 27/4 28/19 33/18
whereby **[1]** 28/16
whether **[7]** 2/20 4/15 9/24 18/20 24/13 25/10 27/2
which **[20]** 6/22 7/7 7/24 8/8 10/6 11/4 15/8 16/20 18/5 19/3 21/11 21/14 23/5 25/6 25/7 26/9 27/14 30/9 33/15 33/24
while **[1]** 12/2

who **[14]** 5/5 5/6 9/8 17/13 18/6 18/6 18/16 18/22 19/22 19/23 20/3 20/10 21/13 32/11
whom **[2]** 9/12 21/6
why **[20]** 9/17 9/23 11/8 11/17 11/21 12/6 15/25 17/5 18/4 18/23 21/13 22/17 22/20 22/25 23/3 25/14 26/15 32/22 33/1 34/1
will **[25]** 6/14 7/15 8/5 11/15 15/7 15/7 15/9 15/11 15/21 16/6 19/5 19/15 19/20 19/24 20/11 21/10 23/14 23/18 25/2 25/3 29/4 29/8 30/1 30/11 33/24
WILLIAM **[1]** 1/14
willing **[1]** 28/18
wishes **[1]** 15/6
Withdrawal **[1]** 3/1
withdrawn **[1]** 24/19
within **[1]** 5/14
without **[5]** 3/1 9/3 15/14 20/24 24/22
witness **[4]** 7/8 11/13 11/25 19/10
witnesses **[4]** 12/3 19/23 19/23 27/1
won't **[3]** 6/12 15/10 34/24
word **[2]** 29/1 34/25
work **[1]** 7/22
would **[18]** 2/3 4/11 5/17 6/9 7/25 8/7 8/13 8/22 15/1 15/2 15/18 15/19 16/17 16/20 18/19 22/4 30/23 34/18
wouldn't **[3]** 8/12 16/13 16/17
write **[2]** 13/7 34/3
writing **[1]** 10/9 21/20
wrong **[2]** 22/6 33/1

**Y**

years **[2]** 28/20 33/18
yes **[12]** 2/13 3/4 3/11 3/15 3/20 4/5 5/4 8/18 19/14 22/24 23/18 28/13
you **[72]**
you'll **[3]** 4/13 29/4 34/14
you're **[15]** 3/15 4/25 9/21 9/22 10/12 10/13 11/9 13/25 14/2 17/5 22/13 22/13 23/16 25/14 26/15
you've **[3]** 3/16 28/19

34/5
your **[41]**
yourself **[2]** 2/3 2/6

34/4 34/20