**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| ROCK SPRING PLAZA II, LLC<br><br>      Plaintiff,<br><br>  v.<br><br>INVESTORS WARRANTY OF AMERICA,<br>LLC, *et al.*,<br>      Defendants. | Civil Action No. 8:20-cv-01502-PJM |

**PLAINTIFF ROCK SPRING PLAZA II, LLC'S COMBINED MEMORANDUM
(1) IN SUPPORT OF ITS MOTION TO COMPEL THE NON-PARTY TRANSAMERICA
ENTITIES TO RESPOND TO DOCUMENT SUBPOENAS AND (2) IN OPPOSITION
TO DEFENDANT INVESTORS WARRANTY OF AMERICA, LLC'S MOTION TO
QUASH NON-PARTY SUBPOENAS, OR IN THE ALTERNATIVE, MOTION FOR
PROTECTIVE ORDER**

Plaintiff Rock Spring Plaza II, LLC ("Plaintiff") submits this combined memorandum: (1)

in support of its motion to compel Non-Parties Transamerica Financial Life Insurance Company,

Transamerica Corporation, and Transamerica Life Insurance Corporation (collectively, the

"Transamerica Entities") to respond to document subpoenas; and (2) in opposition to Defendant

Investors Warranty of America, LLC's ("IWA" or "Defendant") motion to quash, or in the

alternative, motion for protective order (the "IWA Motion") pertaining to the same subpoenas

(ECF No. 321). Plaintiff is entitled to discovery from the Transamerica Entities, which have been

directly and materially involved in the conduct at issue in this fraudulent conveyance action, and

which very well may be the real parties in interest given their financial and operational control

over IWA and Defendant Rock Springs Drive, LLC ("RSD").

**FACTUAL BACKGROUND**

This action concerns IWA's wrongful and fraudulent assignment of its unprofitable interest in the Ground Lease at issue to RSD. It is undisputed that in July 2016, IWA determined that the Ground Lease it had acquired in early 2012 was "worthless" and that it needed an "exit strategy to get it off the books." Pl.'s Mot. Partial Summ J., Exh. R, ECF No. 127-21. To that end, IWA "engaged outside counsel to explore an exit which would stop the monthly losses and any future liability." *Id.* As the deposition testimony elicited from the principals to the Assignment confirms, the "exit strategy" involved the formation of a new entity, RSD, to accept the Assignment just days after it was formed.

As part of its exit strategy, IWA retained a 98% membership interest in RSD, controlled all its major decisions, and was the only entity responsible for funding RSD's obligations – including the payment of ground rent under the Ground Lease.[1] But IWA intended to hide its role in RSD, for at least three years, for the purpose of trying to get past the statute of limitations on a fraudulent conveyance claim, at which point it intended to stop funding RSD and leave Plaintiff to chase an empty shell. Again, there is no genuine dispute that at the time of the Assignment, IWA knew—and in fact intended—that RSD would have no independent capacity to perform tenant's obligations without IWA's continued financial backing. Nor is there any dispute that from and after the Assignment, and for the foreseeable future, RSD had no prospect for generating any income on its own and would be entirely dependent upon IWA for funding, well past the limited "start up" funding IWA committed to contribute. But there was never any genuine effort to have RSD operate as a stand-alone entity; the whole purpose of the Assignment was to permit IWA to

---

[1]  IWA purports to have no continuing obligation to fund RSD, which it admits has no income and therefore has no ability to satisfy the "assignee's" obligations to fulfill the "assignor's" (i.e., IWA's) duties and responsibilities under the Ground Lease.

walk away from the money-losing Ground Lease, once IWA was clear of the risk of a fraudulent conveyance claim.

In pursuit of this exit strategy, IWA did not act alone. In fact, it remains unclear how IWA "acts" at all. As discovery in this case bears out, IWA is a fictional entity not just from a corporate standpoint but operationally. Not a single IWA employee has been identified thus far; not one who works in connection with IWA's interest in the Ground Lease or in RSD, and not one who is employed in any capacity by IWA. All of IWA's conduct in connection with the Assignment of the Ground Lease was undertaken by individuals employed by IWA's parent corporation, AEGON N.V., and affiliated entities, which include AURA[2] and various Transamerica Corporation subsidiaries, including the Transamerica Entities. For example, nearly all of the e-mails sent by purported IWA employees or directors involved in the decision-making process for the Assignment came from @transamerica domain names. IWA's "exit strategy" was devised by David Feltman, who headed up the asset management team at AURA, and Aegon's in-house counsel Gregg Snitker. And it is undisputed that communications regarding the need for a consolidation analysis were exchanged with AEGON's accounting department. Even today, IWA's putative members on RSD's management committee are not employed by IWA and have no understanding of the basis for their purported authority to act on behalf of IWA.

Since the inception of this case, Plaintiff has sought to understand the relationship between and among IWA, RSD, and the Transamerica Entities that appear to be the real parties in interest. Instead of giving straight answers, Defendants and the Transamerica Entities have opted to plead

---

[2]   All undefined terms will have the same definitions ascribed to them in the Subpoenas at issue, which are collectively attached hereto as **Exhibit A**.

ignorance of any relationship and have disclaimed any involvement by the Transamerica Entities. But, again, what their lawyers have been saying is inconsistent with the evidence.

For example, the Transamerica Entities in 2019 disclosed in SEC filings that RCC North America LLC ("RCC"), a subsidiary of one or more of the Transamerica Entities, not IWA, purports to be the 98% member of RSD. However, as the Court and Plaintiff both have heard the Defendants state repeatedly, both at hearings and in interrogatory responses, IWA – not RCC – is the 98% member of RSD. Sec. Am. Compl. ¶¶ 35 & 36; *see also* IWA's Answers to Plaintiff's Second Set of Interrogatories, attached hereto as **Exhibit B**; SEC Form N-4 filed on or about April 30, 2019 by Transamerica Financial Life Insurance Company, attached hereto as **Exhibit C**.

It is undisputed that the assignor (IWA) is the same party that controls the assignee (RSD), but Defendants continue to hide who the real parties in interest are. The formation of RSD, the owners of RSD, the owners' obligations to fund RSD, the business discussions related to RSD's creation, any financial analysis related to the long-term liabilities of the Ground Lease and RSD's ability to perform tenant's obligations, and the relationship between any of the entities involved in or directing the exit strategy behind the formation of RSD and the Assignment are all relevant to Plaintiff's claims. Sec. Am. Compl. ¶¶ 16-23, 33-41.

When Plaintiff asked Defendants to explain the contradiction between what they represented to the Court and what the SEC filings indicate about Transamerica's relationship to RSD, Defendants stonewalled and ultimately disclaimed any responsibility for the SEC filings. And attempts to elicit explanations behind the numerous documents showing the involvement of Transamerica in the exit strategy that led to the formation of RSD and the Assignment of the Ground Lease similarly led to a dead end, with corporate representatives who could not even recall who employed them and where their authority to act on behalf of IWA arises, much less the role

played by other Transamerica Entities. Plaintiff therefore had to turn to the Transamerica Entities

for an explanation and served document subpoenas to that end.

## The Discovery Transamerica Does Not Want to Provide

Defendants and the Transamerica Entities continue to block Plaintiff's legitimate discovery

requests. On June 2, 2023, Plaintiff served Subpoenas seeking documents from the Transamerica

Entities that would clarify the relationship between them, RSD, and IWA. *See* Exh. A. The

Subpoenas requested nine categories of documents that would speak to these relationships and the

role the Transamerica Entities had in day-to-day operations and business decisions of IWA and

RSD. Specifically, the Subpoenas sought:

1. All documents constituting, referencing, reflecting, or regarding Your correspondence with, or work performed for or on behalf of, RCC North America, AEGON N.V., AURA, or IWA in connection with IWA's Ground Lease interest in the Property and/or IWA's interest in RSD.

2. All documents constituting, referencing, reflecting, or regarding any consolidation analysis, as referred to by IWA's corporate representative, Mr. David Feltman, in his deposition on March 17, 2023,1 including the consolidation analysis itself, performed in connection with IWA's Ground Lease interest in the Property and/or IWA's interest in RSD.

3. All documents constituting, referencing, reflecting, or regarding any accounting, valuation, or reserve for IWA's Ground Lease interest in the Property and/or IWA's interest in RSD.

4. All documents constituting, referencing, reflecting, or regarding communications with lawyers in connection with the assignment of IWA's Ground Lease interest in the Property.

5. All documents constituting, referencing, reflecting, or regarding the review and approval of the assignment of IWA's Ground Lease interest in the Property by You or anyone in AEGON N.V., AURA, or IWA's accounting department or anyone with authority to review or approve the assignment.

6. All documents constituting, referencing, reflecting, or regarding any disposition lists related to IWA's Ground Lease interest in the Property and/or IWA's interest in RSD and any exit strategy or disposition related to IWA's Ground Lease interest in the Property and/or IWA's interest in RSD.

7. All documents constituting, referencing, reflecting, or regarding Your affiliation with RCC North America, AEGON N.V., AURA, IWA, and/or RSD.

8. All documents constituting, referencing, reflecting, or regarding any changes in RCC North America, AEGON N.V., AURA, or IWA's ownership, control, or structure and the business rationale for any such changes.

9. To the extent not produced in response to other Document Requests, all documents constituting, referencing, reflecting, or regarding disclosures made in filings with any government agency, including the U.S. Securities and Exchange Commission, regarding RSD, including all documents constituting, referencing, reflecting, or regarding corrections to any such disclosures regarding RSD.

On June 29, 2023, IWA moved to quash the document subpoenas, even before the Transamerica Entities responded. Then the Transamerica Entities objected, refusing to even conduct a cursory search for responsive documents.

Facts regarding the ownership of RSD and whether and how the ownership has been passed between entities under common control are plainly relevant. That information bears directly on Plaintiff's assertion that RSD is not an unaffiliated third party but a sham entity that was formed for the purpose of effectuating IWA's exit strategy from its long-term Ground Lease liability, which it wanted to get off its books. Throughout this litigation, RSD, IWA, and the Transamerica Entities have refused to provide reasonable discovery regarding the formation, funding, and ownership of RSD. The Transamerica Entities should be compelled to produce documents in response to Plaintiff's subpoenas.

I.      **ARGUMENT**

  A. **Plaintiff's Subpoenas to the Transamerica Entities are Relevant and Proportionate to the Needs of the Case.**

Plaintiff's Subpoenas to the Transamerica Entities seek documents and information bearing on IWA's interest in the Ground Lease, including the decision-making process behind forming a special purpose LLC to hold that interest and who was involved in the decision to assign the

Ground Lease to RSD. The Transamerica Entities have objected and refused to search for documents, let alone produce documents. As such, Plaintiff is forced to file a Motion to Compel. For the purposes of this Opposition/Memorandum in Support, Plaintiff will address IWA's arguments regarding relevance and proportionality as though they were also the Transamerica Entities' arguments.

The Federal Rules of Civil Procedure contemplate a broad scope of discovery. *See, e.g., Hickman v. Taylor*, 329 U.S. 495, 501 (1947). Rule 26 provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party …." Fed.R.Civ.P. 26(b)(1). Relevance for discovery purposes is viewed more liberally than relevance for evidentiary purposes. *See, e.g., Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 198 (N.D.W.Va. 2000); *Hofer v. Mack Trucks*, 981 F.2d 377, 380 (8th Cir. 1992) (cases cited therein). So long as the requesting party can make a "rudimentary showing of relevance" between the information sought and a claim, then they have met their burden. *See United Oil Co. v. Parts Assocs., Inc*., 227 F.R.D. 404, 409 (D. Md. 2005) (citing Christopher G. Frost, Note, *The Sound and the Fury or the Sound of Silence*, 37 Ga. L.Rev. 1039, 1067 (Spring 2003).

IWA and the Transamerica Entities argue that Plaintiff's requests seek information regarding confidential financial records, which are outside the scope of relevant discovery. This argument is a red herring because the requested documents are not IWA's "balance sheets, general ledger, profit and loss statements, operating budgets, capital expenditure budgets and tax returns" previously excluded by the Court. Instead, to the extent they exist, Plaintiff seeks non-party documents regarding analyses of the profitability of the Ground Lease, who IWA discussed the formation of RSD with and the purpose of that assignment, and whether the Assignment had the

intended effect of getting the Ground Lease off the books of IWA. The Transamerica Entities undoubtedly have responsive documents but do not want to produce them, presumably because they will lend further proof to Plaintiff's allegations that IWA and RSD are both sham and/or shell entities wholly controlled by the Transamerica Corporation umbrella.

These issues are central to Plaintiff's Restatement and fraud claims and are directly related to allegations in Plaintiff's Second Amended Complaint. *Id.* at ¶¶ 16-23, 33-41. Plaintiff has made an effort to narrowly tailor its requests to the Transamerica Entities to avoid any undue burden,[3] and the documents Plaintiff seeks, which are not nearly as extensive as IWA and the Transamerica Entities would suggest, are **highly relevant**:

- Documents reflecting any work performed or correspondence by the Transamerica Entities in connection with IWA's Ground Lease interest in the Property and/or IWA's interest in RSD bears on IWA's intention to defraud by moving an on-going liability for a "worthless" investment "off its books." (Request 1).

- Documents reflecting the consolidation analysis performed prior to forming RSD, which was referred to by IWA's corporate representative at his deposition on March 17, 2023, and any accounting or valuation of IWA's interest in the Ground Lease, will establish that RSD was formed solely as an "off balance sheet" contrivance to avoid booking a liability for IWA's investment in a worthless Ground Lease. (Requests 2 & 3).

- Communications by the Transamerica Entities with lawyers in connection with the Assignment of IWA's Ground Lease will demonstrate IWA's intention to defraud Plaintiff and to get around a potential statute of limitations claim by inadequately capitalizing RSD. (Request 4).[4]

- Documents reflecting the Transamerica Entities' internal accounting, approval authorization, government filings, and disposition lists, will establish how IWA attempted to execute on its exit strategy as part of a broader corporate restructuring in 2017/2018

---

[3] And any claims of undue burden are not IWA's to assert in any case. *See CineTel Films, Inc. v. Does 1-1,052*, 853 F. Supp. 2d 545, 556 (D. Md. 2012) ("[T]he undue burden contemplated by Rule 45 is one placed on the direct recipient of the subpoena[.]").

[4] Depending on the Court's ruling regarding the crime-fraud exception, these communications may be produced at a future date but, regardless, any claims of attorney-client privilege for these communications belong to the Transamerica Entities, and not IWA. *See* Md. R. Attorneys Rule 19-301.6; *Newman v. State*, 384 Md. 285, 302 (2004) (holding the attorney-client privilege is a rule of evidence established for the protection of clients).

that moved IWA out from Transamerica Life Insurance Company to a new AEGON-affiliated entity, RCC North America, and as part of that process moved all funding of on-going payments under the Ground Lease from IWA bank accounts to accounts held by AURA, which effectively controls IWA's decision-making regarding RSD. (Requests 5-9). Recent deposition testimony by IWA's corporate designee, David Feltman, discussed conducting a consolidation analysis with the help of the Transamerica Entities to determine whether to assign the Ground Lease to RSD and how that assignment would be reflected in IWA's and the Transamerica Entities' accounting books, but was later instructed by IWA's attorney not to answer any further questions on the matter. IWA 30(b)(6) Dep. Tr., Vol. 2, 458:15-459:2; 568:5-569:3; 569:4-575:15. IWA also potentially would have been assigned to a non-life insurance entity in order to avoid property disclosures. IWA 30(b)(6) Dep. Tr., Vol. 2, 559:10-563:21. These are the disclosures that indicated RCC-North America LLC was at one time an owner of RSD according to public SEC filings that Plaintiff discovered during its due diligence period.

IWA and the Transamerica Entities cannot claim Plaintiff's tailored requests are irrelevant when the requests seek specific information that make the "facts pertaining to the claims [] in the pleadings more [] likely than without the information." *Hall v. Sullivan*, 231 F.R.D. 468, 472 (D. Md. 2005); Rule 26(b)(1).

> **B.      The Transamerica Entities' Claims of Undue Burden or Hardship Do Not Outweigh Plaintiff's Need for the Information, and the Transamerica Entities Should Be Compelled To Produce the Requested Documents.**

Rules 45 and 26 govern the Court's legal analysis of the reasonableness and necessity of non-party subpoenas. Rule 45(b) allows a court to quash or modify a subpoena for documents "if it is unreasonable and oppressive." Rule 26(c) authorizes the use of protective orders in discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." When considering undue burden, the Court will consider whether the discovery is "unreasonably cumulative or duplicative"; whether the discovery sought is "obtainable from some other source that is more convenient, less burdensome, or less expensive"; and whether "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Rule 26(b)(1)-

(2); *see also Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007). If a non-party objects to a subpoena, it must specifically show how each request is either not relevant or overbroad, burdensome, or oppressive. *See Healthedge Software, Inc. v. Sharp Health Plan*, 2021 WL 1821358, at *4 (D. Mass. May 6, 2021).

The Transamerica Entities served Plaintiff boilerplate objections, attached hereto as **Exhibit D**, devoid of any individualized analysis regarding any undue burden, hardship, or asserted privilege they assert they would be subject to if they were compelled to respond to the Subpoenas, which is not a sufficient basis to refuse to respond. *Id.* Furthermore, during the meet and confer by counsel for the parties and the Transamerica Entities on July 31, 2023, counsel for the Transamerica Entities indicated that no preliminary searches had been undertaken that would allow the Transamerica Entities to even estimate any time or cost involved, as they were awaiting a ruling on IWA's Motion to Quash. *See Katz v. Shell Energy N. Am. (US), LP*, 566 F. Supp. 3d 104, 107 (D. Mass. 2021) (noting that failure to conduct preliminary search contradicted claims regarding overbreadth or burden). Based on these factors, the Transamerica Entities will not be subject to an undue burden or expense.[5] As explained above, the documents requested are extremely relevant to Plaintiff's claims regarding the fraudulent transfer. These documents will likely solely consist of easily accessible electronically stored information, found via simple key word searches, so proportionality dictates their production. Rule 26(b)(2)(B). Finally, Plaintiff's requests are not duplicative or cumulative because IWA refused to produce the requested documents, and these are the first requests Plaintiff has served on two of the Transamerica Entities.

---

[5]  If this Court determines that any of the above requests are overly broad or unduly burdensome, this Court should modify the subpoena rather than quash it outright. *See Fadalla v. Life Auto. Prod., Inc.*, 258 F.R.D. 501, 507 (M.D. Fla. 2007) ("Generally, modification of a subpoena is preferable to quashing it outright.") (internal quotation marks omitted).

They, presumably, have different information and documents from IWA because they are purported to be completely independent legal entities, according to IWA.

## C.    IWA Failed To Meet and Confer.

The Court should deny IWA's Motion to Quash because IWA failed to confer with Plaintiff prior to filing its motion – and failed to include a certificate of conference with its motion – as required by pursuant to Local Rule 104.7. Local Rule 104.7 states that "Counsel shall confer with one another concerning a discovery dispute and make a reasonable effort to resolve the differences between them. The Court will not consider any discovery motion unless the moving party has filed a certificate reciting (a) the date, time, and place of the discovery conference, and the names of all persons participating therein, or (b) counsel's attempts to hold such a conference without success; and (c) an itemization of the issues requiring resolution by the Court." IWA made no effort to hold a meet and confer with Plaintiff's counsel and failed to file the required certificate.

## D.    IWA Has No Standing to Quash the Non-Party Subpoenas.

A party has no standing to object to a subpoena issued to a non-party, except to the extent "the party claims some personal right or privilege with regard to the documents sought." *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 441 n.12 (D. Md. 2012) (quoting *United States v. Idem*a, 118 Fed.Appx. 740, 744 (4th Cir. 2005)). IWA asserts no such personal right or privilege.

IWA argues that all responsive documents in the Transamerica Entities' possession are irrelevant and simultaneously asserts broad privilege over the same, but IWA makes no effort to explain how it knows what responsive documents the Transamerica Entities possess.[6] IWA and Transamerica Corporation have both asserted on several occasions that they cannot speak about or

---

[6] IWA filed its Motion before the Transamerica Entities responded to Plaintiff's Subpoenas.

produce documents of other companies.[7] Most recently, IWA refused to explain in its Answer to Plaintiff's Interrogatory No. 24 the disclosure made by a Transamerica entity in its SEC filing that is inconsistent with Defendant's interrogatory responses, asserting that the SEC disclosure was "created by a third party" that was "*a separate legal entity that IWA does not control*." The "third party" in question was Transamerica Financial Life Insurance Company, one of the subpoenaed Transamerica Entities.

IWA cannot have it both ways; if IWA and the Transamerica Entities in fact are separate corporations, then these documents can only be obtained from the Transamerica Entities. *See Sherrill v. DIO Transp., Inc.*, 317 F.R.D. 609, 615 (D.S.C. 2016) (finding that the requested documents could not have been obtained from the party to the action, and therefore must come from the subpoenaed non-party). And IWA has no expectation of privacy in its business transactions with other corporations and has not made any factual showing that the records are confidential or proprietary. *See Clayton Brokerage Co., Inc. v. Clement*, 87 F.R.D. 569, 571 (D. Md. 1980) (bank customer had no legitimate expectation of privacy in the contents of checks, deposit slips and other banking documents subpoenaed from his bank and, therefore, lacked standing to challenge the subpoena issued to the bank). Accordingly, IWA's motion to quash should be denied because it does not have standing under Rule 45 to quash the Subpoenas.

**E.       IWA Is Not Entitled to a Protective Order.**

Rule 26 (c)(1) permits a court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." As discussed above, IWA

---

[7]  *See* attached Discovery Letters from IWA and Transamerica Corporation, attached hereto as **Exhibits E and F**, IWA's Answers to Plaintiff's First Set of Interrogatories, **Exhibit G**, and Transamerica Corporations Responses and Objections to Plaintiff's First Set of Requests for Production of Documents, attached hereto as **Exhibit H**.

had no expectation of privacy in the documents held by the Transamerica Entities, and there is no burden, embarrassment, or harassment to endure since it is not the recipient of the challenged Subpoenas.

## II.    CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant Plaintiff's Motion, deny IWA's Motion, and direct Non-parties Transamerica Life Insurance Company, Transamerica Financial Life Insurance Company, and Transamerica Corporation to provide the requested documents within fourteen (14) days.

Dated: August 2, 2023

Sincerely,

/s/ *William M. Bosch*
William M. Bosch
Alvin Dunn
Anthony F. Cavanaugh
Katherine Danial
Nicole Steinberg
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street N.W.
Washington, D.C. 20036
Telephone: (202) 663-8000
Facsimile: (202) 663-8007
william.bosch@pillsburylaw.com
alvin.dunn@pillsburylaw.com
anthony.cavanaugh@pillsburylaw.com
katherine.danial@pillsburylaw.com
nicole.steinberg@pillsburylaw.com

*Counsel for Plaintiff Rock Spring Plaza II, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2023, I caused a copy of the foregoing Memorandum in Support of Plaintiff's Motion to Compel the Transamerica Entities to Respond to Document Subpoenas and Opposition to Defendant Investors Warranty of America, LLC's Motion to Quash, or in the alternative, Motion for Protective Order to be served via email from the Court's ECF filing system on all counsel of record.

/s/ Nicole Steinberg
Nicole Steinberg