## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **Rock Spring Plaza II, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 8:20-cv-01502-PJM** |
| **Investors Warranty of America, LLC, et al.,** | |
| **Defendants.** | |

### MOTION FOR LEAVE TO TAKE DEPOSITION OF WILLIAM BOSCH

Defendant Rock Springs Drive LLC (RSD) moves for leave to depose Mr. William Bosch, counsel to Plaintiff, about his involvement in pre-litigation written and telephone communications between the parties.[1] These communications are directly relevant to Plaintiff's claim in this case that RSD defrauded it by not providing Plaintiff with certain information about RSD in these communications. For example, Mr. Bosch's letters contend that RSD did not provide Plaintiff with the name of a contact person. Discovery has revealed that, contrary to Mr. Bosch's contention, Plaintiff was in contact with RSD's principal, Paul Rubin, almost immediately after the Assignment and Mr. Rubin confirmed to Plaintiff that he was the "right person" to contact. Accordingly, Mr. Bosch has become a key fact witness in this matter as to the credibility of Plaintiff's claim that RSD concealed certain information from Plaintiff. Plaintiff deposed RSD's counsel, Robert Barron, on April 14, 2023, and asked him questions about Mr. Barron's communications with Mr. Bosch. RSD seeks the same opportunity to question Mr. Bosch about Mr. Bosch's communications with RSD.

---

[1] The Court ordered RSD to seek leave to depose Mr. Bosch. *See* Apr. 13, 2023 Order, Doc. 307 ("Defendants shall` not depose William Bosch, counsel for Plaintiff, unless the Court, upon motion, issues an Order authorizing his testimony, should Defendants wish to pursue such deposition.").

## FACTS

One of Plaintiff's claims in this case is that RSD's alleged failure to identify "basic information about RSD" after the Assignment constituted fraud. *See, e.g.*, Doc. 264 (Pl. Opp. to RSD Mot. to Quash Dep. of R. Barron), at 4. In particular, Plaintiff claims that RSD "refused to provide any information to Landlord about its identity and intentions." Doc. 21 (Pl. Mot. to Dismiss), at 18. The Court has stated that RSD's alleged failure to provide basic information to Plaintiff in its communications is a "fairly central potentially dispositive issue in this case." Doc. 264 at 4 (quoting 8/12/21 hearing).

Material to this claim are four communications from Mr. Bosch to Mr. Barron after the Assignment: a phone call in September 2017; a letter dated February 22, 2018; a letter dated April 25, 2018; and a letter dated June 6, 2019. Plaintiff cites its letters as evidence that RSD did not provide Plaintiff with contact information for someone at RSD so that Plaintiff could contact RSD to discuss operational issues. For example, Plaintiff has claimed that RSD "dodged legitimate inquiries" for information and that this "furtiveness" in providing contact information is evidence of fraud. Doc. 264 at 1.

IWA provided notice to Plaintiff of the Assignment on August 31, 2017, the same day it occurred. About a month later, Mr. Bosch reached out to Robert Barron, RSD's counsel. This is the first contact by Plaintiff to RSD. Mr. Barron testified about his recollection of the telephone call during his April 2023 deposition. Around this same time, Plaintiff's real estate brokers met with RSD's principals, Paul Rubin and Troy Taylor, to discuss subleasing opportunities. During that meeting, Mr. Rubin and Mr. Taylor told Plaintiff's brokers that they were the managing member of RSD and gave the brokers their contact information. Ex. A (Taylor Dep. Tr.) at 182-84. The brokers later passed that information directly to Charles Camalier, the principal for

Plaintiff. Ex. B. About a month after the assignment, on October 6, 2017, Plaintiff emailed Mr. Rubin about an operational issue involving insurance for the property. Ex. C.

Plaintiff's real estate brokers provided information about RSD to Plaintiff. For example, in January 2018, the brokers provided updates to Plaintiff about RSD's subleasing efforts (Ex. D) and scheduled a conference call with Mr. Camalier on February 5, 2018 (Ex. E). The next day, the brokers sent Mr. Camalier the information he had "requested" about RSD—providing him with the contact information for Mr. Rubin and Mr. Taylor, and also for Nick Koluch, who was on RSD's management committee and worked for Aegon USA Realty Advisors, LLC (Ex. B). *By February 6, 2018, Plaintiff knew who RSD's managing member was, had the contact information for RSD's principals, and was aware that the previous tenant Aegon (IWA) was still involved in the property in some way.*

On February 22, 20218, Mr. Bosch wrote his first letter to RSD's counsel. Ex. F. He said that Plaintiff wanted information about "your client's identity," even though Plaintiff had a considerable amount of information about who was managing RSD and handling operational issues. In the letter, Mr. Bosch did not disclose that Plaintiff knew that Mr. Taylor and Mr. Rubin were the points of contact—and that Plaintiff had already been in touch with Mr. Rubin directly. Instead, Mr. Bosch's letter suggests that RSD's principals were a complete mystery to Plaintiff.

If there was any question about the right contact person at RSD, Mr. Rubin resolved it. Mr. Rubin emailed Plaintiff on April 17, 2018, telling Plaintiff directly that he was "the right person" to contact about RSD. Ex. G. Despite Mr. Rubin's assurance to Plaintiff that he was the contact person, Mr. Camalier never contacted Mr. Rubin to ask about RSD. Instead, Mr. Bosch wrote a second letter to Mr. Barron on April 25, claiming that RSD had not provided "basic contact information for Assignee, including a point of contact with whom my client can discuss

day-to-day operational issues concerning the Building." Ex. H. This representation makes no

sense: Mr. Rubin had identified himself as RSD's point of contact, Plaintiff's real estate brokers

had identified him as RSD's point of contact, and Plaintiff's own employees had contacted Mr.

Rubin about the property. And all of this happened *before* Mr. Bosch sent his April 25, 2018

letter.

Mr. Bosch wrote a third letter to Mr. Barron in June 2019 in which he continued to say

that RSD had not provided "the name of a contact person who can discuss day-to-day operational

issues concerning the Property." Ex. I. But RSD had already confirmed in April 2018 that Mr.

Rubin was the "right person" to contact.

## LEGAL STANDARD

The Federal Rules of Civil Procedure permit the deposition of another party's lawyer so

long as the deposition seeks information unavailable from another source. *See Carr v. Double T

Diner*, 272 F.R.D. 431, 435 (D. Md. 2010). When the attorney to be deposed is a fact witness,

and the deposition seeks relevant, nonprivileged information, courts have found that "his or her

deposition may be 'both necessary and appropriate.'" *Id*. (quoting *N.F.A. Corp. v. Riverview

Narrow Fabrics, Inc.*, 117 F.R.D. 83, 86 (M.D.N.C. 1987)). *See also Allen v. TV One, LLC*, No.

CV DKC 15-1960, 2016 WL 7157420, at *2 (D. Md. Dec. 8, 2016) ("The courts have

recognized that if an attorney is a witness of or actor in prelitigation conduct, the attorney may be

deposed the same as any other witness.") (quoting Jay E. Grenig & Jeffrey S. Kinsler, *Handbook

of Federal Civil Discovery & Disclosure* § 5:6 (4th ed. 2016)).

Communications are not privileged merely because one party is an attorney or because an

attorney was present when communications were made. *See Allen v. TV One, LLC*, No. CV DKC

15-1960, 2016 WL 7157420, at *3 (D. Md. Dec. 8, 2016). *See also Neuberger Berman Real

Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 410 (D. Md. 2005) ("The

4

Fourth Circuit has spoken unequivocally on this point: 'it is the unquestioned rule that the mere relationship of attorney-client does not warrant a presumption of confidentiality.'") (quoting *United States v. (Under Seal)*, 748 F.2d 871, 874-75 (4th Cir. 1984)). In particular, actions of a lawyer in a business capacity do not qualify for attorney-client privilege protection. *See Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 422 (D. Md. 2005) ("When an individual acts in a dual capacity, but executes business documents in his capacity as a businessperson, privilege does not apply.") The proponent of attorney-client privilege has the burden of demonstrating its applicability. *See United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir. 1982).

## ARGUMENT

### I.  Mr. Bosch is a material fact witness and the information is not available from another source.

The Court has said repeatedly that it considers RSD's failure to provide basic information to Plaintiff is a "fairly central potentially dispositive issue in this case." Doc. 264 at 4 (quoting 8/12/21 hearing). In April 2023, Plaintiff questioned Mr. Barron about the September 2017 telephone call between Mr. Bosch and Mr. Barron, and about Mr. Barron's letters responding to Mr. Bosch's letters. RSD requests the same opportunity to question Mr. Bosch about his representations in these letters and to explore the incongruity between Mr. Bosch's representations that Plaintiff did not have RSD's contact information and the evidence that Plaintiff had RSD's contact information within just a few weeks of the Assignment.

RSD's requested deposition of Mr. Bosch seeks information unavailable from another source. *See Carr v. Double T Diner*, 272 F.R.D. 431, 435 (D. Md. 2010). One of the topics that RSD noticed for Plaintiff's Rule 30(b)(6) deposition was "Plaintiff's communications with RSD since the date of the Assignment and before the Complaint was filed." At the deposition,

however, Plaintiff's corporate representative, Charles Camalier, testified that he was not

prepared to testify about the letters because he "did not draft the letter or review the letter."

Instead, he testified that Mr. Bosch sent the letter without any review by Mr. Camalier. *See* C.

Camalier 30(b)(6) Dep. Tr. at 192:7-11; *id.* 194:7-13 (Q This letter was sent on behalf of the

plaintiff, right?  A Correct. Q And are you prepared to testify about what this letter means today?

A I did not draft the letter or review the letter.").

      Plaintiff may contend that this deposition would seek testimony about privileged matters.

However, it is  not clear whether Mr. Bosch was acting as Plaintiff's lawyer when he sent these

letters. At Plaintiff's Rule 30(b)(6) deposition, Mr. Camalier could not answer the question. He

said that only Mr. Bosch could testify as to whether he was acting as Plaintiff's lawyer or as its

corporate representative when he communicated with RSD:

> Q Okay. So my question was, when he called Mr. Barron, was Mr. Bosch acting
> as Plaintiff's lawyer during that call?
>
> A Again, he was trying to get information from Mr. Barron of who RSD was. So,
> again, he was acting on our behalf.
>
> Q (BY MS. KROPF) As Plaintiff's lawyer, or as Plaintiff's corporate
> representative?
>
> A I -- again, I -- I -- ***you'll have to ask Mr. Bosch*** what -- what his position was.
> But we asked him to call Mr. Barron. (emphasis added).

*See, e.g.*, *id.* at 115:25-116:12 (objections removed); *see also id.* at 184:14-20 (objection

removed) ("Q. And so I was just trying to find out, is [Mr. Bosch] writing as Plaintiff's lawyer or

as Plaintiff's representative? A Again, I -- I don't understand the conclusion you want me to

draw. So, again, we asked him to write the letter.").

If Mr. Bosch was acting as Plaintiff's lawyer when he wrote the letters, then this should preclude RSD from asking Mr. Bosch about his communications with his client. [2] But if he was acting only as Plaintiff's representative—and not its lawyer—then his communications with Mr. Camalier may be discoverable.

Mr. Bosch (perhaps unwittingly) confirmed his role as a key witness and his personal knowledge of facts relevant to Plaintiff's case during Mr. Bosch's deposition of Mr. Barron. He inserted his version of the facts into the questions, asking Mr. Barron, "And then we talked about how six months later, *that you had not provided any information*, and I wrote [the February 22, 2018 letter]?" *Id.* at 299. Mr. Bosch asked Mr. Barron whether Mr. Barron had "disclose[d] that IWA is a member in RSD" to Mr. Bosch. *Id.* at 267-68 (Q [BY MR. BOSCH] And so at any point, between August 30, 2017, to the date of the lawsuit, did you disclose that IWA is a member in RSD? A. To who? Q. To me."). Mr. Bosch claimed to recall what happened on his September 2017 call with Mr. Barron—a discussion that Mr. Barron did not fully recall. *Id.* at 271-73 (Q. Do you recall that *I asked you* who you were and what role you played? A. I -- no, I don't have conscious memory of that. But that sounds right. Q. I gather you don't recall what you said? A. I don't. Honestly, I don't recall. Q. Do you recall that *I asked you* to identify the principals in RSD and what their intentions are? A. I -- I think you may have asked that. Q. Do you recall what you said in response? A. I don't. I did not give you the information, but I don't recall what I said in response.") (emphasis added).

---

[2] Plaintiff has taken the position in this case that the communications between RSD's counsel (Mr. Barron) and his client related to Mr. Barron's communications with Plaintiff are not privileged. *See* Doc. 264 at 5 ("Mr. Barron's role in developing, implementing and then hiding IWA's exit strategy is not privileged."). While RSD disagrees with Plaintiff's position, if the Court finds that Mr. Barron's communications with RSD are not privileged because he sent letters to Plaintiff, then the same holding should apply to Mr. Bosch's communications with Plaintiff.

"[W]hen a party employs a counsel to represent it in a case where an attorney has played a role in the underlying facts, both the attorney and the party have every reason to expect that the attorney's deposition may be requested." *United States v. Newman*, 531 F. Supp. 3d 181, 193 (D.D.C. 2021) (quoting *Amicus Commc'ns v. Hewlett Packard Company*, 1999 WL 33117227, at *2 (D.D.C. Dec. 3, 1999)). Here, Mr. Bosch made clear that he personally has discoverable information about what information was provided to Plaintiff and what information Plaintiff was asking for in the letters and in a telephone call.

The Court has relied heavily on Plaintiff's version of what it knew about RSD as recited in these letters. RSD is entitled to the opportunity to challenge Plaintiff's version of what it knew when Mr. Bosch sent these letters and what it did not know. `

## II.    Mr. Bosch's deposition testimony is necessary to evaluate whether RSD must file a motion for disqualification under Maryland Rule of Professional Conduct 3.7

Maryland Rule of Professional Conduct Rule 3.7(a) states that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client." MRPC 3.7(a). Because Mr. Bosch is likely to be Plaintiff's trial counsel and is also a necessary witness, RSD is entitled to depose Mr. Bosch to determine the scope of his testimony. If, as RSD believes, Mr. Bosch is a material fact witness, RSD may need to file a motion to disqualify Mr. Bosch as trial counsel under Rule 3.7 and would want to do so well in advance of any trial date.

## **CONCLUSION**

For these reasons, RSD respectfully requests that the Court grant its motion for leave to depose William Bosch.

A proposed order is attached.

Dated: August 22, 2023                                  Respectfully submitted,


                                                        /s/ Sara E. Kropf
                                                        Sara E. Kropf (Bar No. 26818)
                                                        Kropf Moseley PLLC
                                                        1100 H Street NW, Suite 1220
                                                        Washington, DC 20005
                                                        (202) 627-6900
                                                        sara@kmlawfirm.com

                                                        *Attorney for Rock Springs Drive LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 22nd day of August 2023, the foregoing motion was served

through the court's electronic filing system on all counsel of record.

/s/ Sara E. Kropf
Sara E. Kropf
