**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **Rock Spring Plaza II, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 8:20-cv-01502-PJM** |
| **Investors Warranty of America, LLC, et al.,** | |
| **Defendants.** | |

## DEFENDANTS' JOINT MOTION TO COMPEL DEPOSITION TESTIMONY OF CHARLES CAMALIER, III

Defendant/Counterclaim Plaintiff Investors Warranty of America, LLC and Defendant/Counterclaim Plaintiff Rock Springs Drive, LLC, by counsel and pursuant to Local Rule 105.1, move to compel Charles Camalier, III to adequately prepare and provide complete responses to the questions presented during his deposition taken pursuant to Fed. R. Civ. P. 30(b)(6) and during his individual deposition. The grounds for this motion are set forth in the attached memorandum of points and authorities.

Dated:  August 29, 2023

/s/Rebecca A. Davis

Rebecca A. Davis, Bar No. 23183
ARNALL GOLDEN GREGORY LLP
171 17TH Street NW, Suite 2100
Atlanta, Georgia 30363
rebecca.davis@agg.com
Telephone:  (404) 873-8768
*Counsel for Investors Warranty of America, LLC*

Respectfully Submitted,

/s/ Sara E. Kropf

Sara E. Kropf (Bar No. 26818)
Kropf Moseley PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
(202) 627-6900
sara@kmlawfirm.com
*Attorney for Rock Springs Drive LLC*

i

## <u>TABLE OF CONTENTS</u>

BACKGROUND ......................................................................................................................... 1

LEGAL STANDARD ................................................................................................................... 4

ARGUMENT ............................................................................................................................... 7

A.      Mr. Camalier Failed to Answer Questions Within the Topics Noticed For His Corporate
        Deposition ........................................................................................................................ 8

        1.      The Ground Lease ................................................................................................ 8

        2.      The Estoppel Agreement .................................................................................... 12

                a. The 30(b)(6) Deposition ............................................................................. 12

                b. Camalier Deposition .................................................................................. 14

        3.      Documents Relevant to IWA as a Surety ........................................................... 15

        4.      Assignment ........................................................................................................ 16

        5.      Evidence of Impairment or Damages Relating to the Assignment ...................... 16

        6.      Plaintiff's Interest in the Property ...................................................................... 17

        7.      Testimony Withheld Based on Plaintiff's Allegations of Incomplete ................. 17

CONCLUSION .......................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

**Page(s)**

*Boyd v. Univ. of Maryland Med. Sys.*,
    173 F.R.D. 143 (D. Md. 1997)..................................................................................5

*Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*,
    265 F.R.D. 235 (D. Md. 2010)..................................................................................7

*E.E.O.C. v. Freeman*,
    288 F.R.D. 92 (D. Md. 2012).................................................................................6, 8

*InfoTek Corp. v. Preston*,
    No. CV CCB-18-1386, 2022 WL 4121414 (D. Md. Sept. 9, 2022) .........................6

*Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*,
    390 F. Supp. 2d 479 (D. Md. 2005) ......................................................................6, 7

*Paul Revere Life Ins. Co. v. Jafari*,
    206 F.R.D. 126 (D. Md. 2002)........................................................................6, 12, 13

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)..................................................................................................5

Fed. R. Civ. P. 30(b)(6)....................................................................................1, 6, 7, 13

Fed. R. Civ. P. 30(d)(1)...............................................................................................5, 6

Fed. R. Civ. P. 30(d)(1) and (3) ..................................................................................6, 7

Fed. R. Civ. P. 37 ............................................................................................................5

Local Rule 104.8 .............................................................................................................1

Fed. R. Civ. P. 37(d) .......................................................................................................7

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| Rock Spring Plaza II, LLC, | |
| **Plaintiff,** | |
| **v.** | Civil Action No. 8:20-cv-01502-PJM |
| Investors Warranty of America, LLC, et al., | |
| **Defendants.** | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' JOINT MOTION TO COMPEL DEPOSITION
TESTIMONY OF CHARLES CAMALIER, III**

Defendant/Counterclaim Plaintiff Investors Warranty of America, LLC ("IWA") and Defendant/Counterclaim Plaintiff Rock Springs Drive, LLC ("RSD", and together with IWA, "Defendants"), move to compel Charles Camalier, III, who testified as a fact witness and Plaintiff's corporate representative, to adequately prepare and provide complete responses to the questions presented during his deposition taken pursuant to Fed. R. Civ. P. 30(b)(6) and his individual deposition.[1]

**BACKGROUND**

Plaintiff Rock Spring Plaza II, LLC ("Plaintiff") is the landlord under the Amended and Restated Ground Lease Indenture dated November 14, 1990 (the "Ground Lease"), which was originally entered into with Plaintiff's affiliate, Rock Spring II Limited Partnership (the "Original Tenant"). Plaintiff is a Camalier Family company. *See* 30(b)(6) Deposition of Plaintiff, March

---

[1] Local Rule 104.8 "shall not govern motions to compel . . . (b) answers to deposition questions. Such latter motions shall be filed with the Court and treated as any non-discovery motion."

4856-1697-4460.v2

21, 2023, Vol. I, ("30(b)(6) Dep. Vol I") 13:16; 14:8-14), cited portions of which are attached hereto as <u>Exhibit A</u>.

IWA and Plaintiff are parties to the Ground Lessor Estoppel and Non-Disturbance Agreement dated June 2, 2006 (the "Estoppel Agreement") for the property located at 6560 Rock Spring Drive (the "Property"). The Estoppel Agreement was negotiated and entered into in connection with a $30 million loan (the "Loan") made to Original Tenant. Mr. Camalier negotiated the Ground Lease executed the Estoppel Agreement on behalf of Plaintiff and Original Tenant.

In 2011, Original Tenant defaulted on repayment of its Loan obligations and the Ground Lease. As a result of the defaults, IWA, as the lender, foreclosed on the Ground Lease in 2012, Then, on August 31, 2017, pursuant to the express terms of the Ground Lease and Estoppel Agreement, IWA assigned the Ground Lease to RSD (the "Assignment"). Plaintiff filed this lawsuit claiming that the Assignment is a fraudulent conveyance, and has argued that the fraud is evidenced by the fact that RSD did not voluntarily share its proprietary and confidential information with Plaintiff, including its corporate structure and business purpose. Defendants contend that Plaintiff's requests for information were overreaching and that RSD shared all of the information that they were legally obligated to share with Plaintiff. Thus, from Defendants' perspectives, one of the key issues in this case is what information they were legally obligated to share at the time of the Assignment, and what rights Plaintiff understood IWA had under the Ground Lease and the Estoppel Agreement to assign the Ground Lease to RSD.

Further still, one of IWA's primary defenses is that the Assignment is valid because the Ground Lease and Estoppel Agreement granted IWA an absolute right to assign the Ground Lease, without any restrictions or conditions. Section 5. 2 of the Ground Lease states that a tenant may assign the Ground Lease, and Section 14.5 states that a "[t]enant and its successors and assigns

2

shall be liable only for obligations accruing while it holds the leasehold estate." Section 19 of the Estoppel Agreement provides that if a lender that acquires the Ground Lease it has the "absolute right" to assign the Ground Lease to any third party. Another of IWA's defenses is that through its execution of the Estoppel Agreement, Plaintiff waived its right to challenge the Assignment. IWA's only obligation to Plaintiff was to provide notice of the Assignment within ten (10) day after it was made.

On December 30, 2022, IWA served Plaintiff with a Notice of Rule 30(b)(6) Deposition. Following a hearing on multiple discovery motions held on February 16, 2023, on February 26, 2023, IWA served a Supplemental Notice of Rule 30(b)(6) Deposition ("Supplemental Notice") to Plaintiff, scheduling Plaintiff's deposition for March 21, 2023. A copy of the Supplemental Notice is attached hereto as Exhibit B. Plaintiff served its objections to the Supplemental Notice ("Objections") on March 7, 2023, a copy of which is attached hereto as Exhibit C. Defendant RSD served a cross-notice for the Supplemental Notice on March 12, 2023. Also on March 12, 2023, RSD served a subpoena on Mr. Camalier for his individual deposition, which was scheduled for March 22, 2023. On March 20, 2023, IWA served a Cross-Notice of Deposition of Charles Camalier.

Relevant information that Defendants sought through the Depositions, included, among other things:

- The basis for Plaintiff's objection to the Assignment, including as to any Ground Lease or Estoppel Agreement provisions;

- The basis for Plaintiff's claims that it was entitled to information about RSD, including RSD's proprietary and confidential information;

- Whether Plaintiff contends that IWA is a surety or guarantor of the Ground Lease, and if so, the basis for that contention;

- Plaintiff's evidence of fraud;

3

- Plaintiff's identification of any John Doe defendants;

- Plaintiff's ongoing ownership interest in the real property (the ground) that is leased under the Ground Lease; and

- Any impairment created by the Assignment and Plaintiff's damages.

Mr. Camalier was deposed as Plaintiff's corporate representative in a (30)(b)(6) Deposition (the "30(b)(6) Deposition") on March 21 and 22, 2023, and Mr. Camalier was deposed in his individual capacity on March 22, 2023 (the "Individual Deposition"). Counsel for RSD (Sara Kropf) served as the questioning attorney during both depositions. Although Mr. Camalier appeared for both depositions, he was unprepared as a corporate witness and refused to answer several questions during the 30(b)(6) and Individual Depositions. Moreover, Plaintiff's attorney, who also represented Mr. Camalier in his Individual Deposition, lodged meritless objections and instructed Mr. Camalier not to answer several relevant questions, including questions that fell within the scope of the topics noticed in the Supplemental Notice and to which Plaintiff had agreed to provide testimony. Mr. Camalier also refused to admit that he received certain documents, although he was the person who produced them.

For the reasons set forth herein, Defendants respectfully request that the Court order Mr. Camalier to appear for a second deposition to complete this questioning in both his Individual and 30(b)(6) Depositions, at Plaintiff's cost and expense, and Mr. Camalier should be ordered to answer the questions on the topics identified herein.

## LEGAL STANDARD

The Federal Rules of Civil Procedure permit broad factual discovery, granting parties access to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "[T]he key to determining whether information is discoverable under Fed. R. Civ. P. 26(b)(1) is relevance and lack of

4

privilege, not ultimate admissibility at trial." *Boyd v. Univ. of Maryland Med. Sys.*, 173 F.R.D. 143, 148 (D. Md. 1997). "Evidence is relevant if it has any tendency to make more likely, or less likely, any fact that is of consequence to the litigation." *Id.*

In September 1995, this Court adopted nine Discovery Guidelines in order to "facilitate the just, speedy, and inexpensive conduct of discovery in all civil cases before this court." *Boyd*, 173 F.R.D. at 146 (citing Local Discovery Guidelines, Guideline 1(a) (D. Md. 1995)). "Although the Guidelines are not mandatory, compliance is considered by the Court in resolving discovery disputes, including whether sanctions should be imposed pursuant to Fed. R. Civ. P. 37." *Id.*

Within this framework, this Court has distilled the assessment of an improper instruction not to answer to the following considerations:

> (1) pursuant to Fed. R. Civ. P. 26(b)(1), a deponent may be questioned about any matter which is relevant to the litigation, which is not privileged, and the fact that the information sought may not ultimately be admissible does not mean that it is not discoverable; (2) pursuant to Fed. R. Civ. P. 30(d)(1) and Guideline 5(d), any time that a lawyer instructs a deponent not to answer a question *except as authorized* by Rules 30(d)(1) or 30(d)(3) the instruction is presumptively improper.

*Boyd*, 173 F.R.D. at 147 (emphasis added). Fed. R. Civ. P. 30(d)(1) governs the duration of the deposition, not to exceed seven hours, and 30(d)(3) governs termination on the grounds of a deposition being conducted in bad faith or that harasses the deponent. Additionally, in determining the appropriateness of sanctions, the District Court has established:

> Whether such a presumptively improper instruction warrants the imposition of sanctions pursuant to Fed. R. Civ. P. 37, however, will depend upon the Court's assessment of the following five factors: (1) the importance of the requested information to the issues in the litigation (i.e., is the solicited information collateral or marginally relevant, or alternatively, is it material to a claim or defense); (2) the number of times the attorney instructed the witness not to answer (i.e., was the instruction an isolated incident or is there a pattern of disruptive instructions); (3) whether the question which prompted the instruction not to answer was proper and unobjectionable; (4) whether the instruction not to answer appears to have been made in a sincere, although misguided, effort to preserve a colorably valid objection, or, instead, for purposes of disrupting the deposition; and (5) whether the

5

> attorney instructing the deponent not to answer had advance notice of the likelihood that the deposing attorney would initiate questions in an area considered objectionable, and whether the attorney sought a protective order pursuant to Fed. R. Civ. P. 26(c).

*Id.* "It must be emphasized that any instruction not to answer a deposition question which does not comply with Fed. R. Civ. P. 30(d)(1) and (3) and Guideline 5(d) is presumptively improper." *Id.*

District Courts "enjoy substantial discretion in the management of discovery and whether to grant motions to compel." *E.E.O.C. v. Freeman*, 288 F.R.D. 92, 98 (D. Md. 2012). "When the deposition was conducted pursuant to Rule 30(b)(6), the court may consider the scope of the notice of deposition in determining whether to compel answers." *Id.* It is the "obligation" of the deponent to be prepared to answer the "topics in the Rule 30(b)(6) notice of deposition." *Id.* at 99. "This interpretation is necessary in order to make the deposition a meaningful one and to prevent the 'sandbagging' of an opponent by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial." *InfoTek Corp. v. Preston*, No. CV CCB-18-1386, 2022 WL 4121414, at *9 (D. Md. Sept. 9, 2022).

A "corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation." *Paul Revere Life Ins. Co. v. Jafari*, 206 F.R.D. 126, 127 (D. Md. 2002); (citation omitted); *see also Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 487 (D. Md. 2005) (explaining that a corporation is obligated to produce one or more 30(b)(6) witnesses who were thoroughly educated about the noticed deposition topics with respect to any and all facts known to the corporation or its counsel). "Where a corporate deponent fails to provide an adequately prepared designee for deposition, sanctions are proper." *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 239 (D. Md. 2010). "Monetary sanctions are mandatory under Rule 37(d) for failure to appear by means of

wholly failing to educate a Rule 30(b)(6) witness, unless the conduct was substantially justified." *Werner-Masuda,* 390 F. Supp. 2d at 489.  The rule provides that a court "shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure."  *Id.*  (*citing* Fed. R. Civ. P. 37(d)).

## **ARGUMENT**

Defendants deposed Mr. Camalier on matters that are relevant to this litigation and laser-focused on Plaintiff's claims and Defendants' defenses and counterclaims.  Rather than cooperate with the discovery process, Plaintiff hid behind improper objections and instructions to evade discovery.  At no time during the 30(b)(6) Deposition of Mr. Camalier as the corporate witness, or during Mr. Camalier's Individual Deposition, did Plaintiff's counsel justify his objection to the questions on the basis of Fed. R. Civ. P. 30(d)(1) and (3) or Guideline 5(d) - the only permissible grounds recognized by this Court.

Instead, Mr. Camalier's counsel argued that the questions were not relevant, or were otherwise outside the scope of the 30(b)(6) topics – even though the questions were squarely within the topics that Plaintiff promised to provide a corporate representative to testify about.[2]

Also, to the extent that Mr. Camalier asserted that certain matters were not relevant based on the Court's rulings at the February 16, 2023 hearing, Mr. Camalier and Plaintiff's counsel misstated and misapplied the Court's ruling.  But even still, relevance is not a permissible basis to instruct a deponent not to answer a deposition question.  *See Freeman*, 288 F.R.D. 92, 100 (D. Md. 2012) ("Relevance is not a proper basis for instructing a deponent not to answer a question, as

---

[2] Had Plaintiff informed Defendants that it would not produce a witness on these topics, Defendants would have filed a motion to compel, which could have been resolved ahead of the deposition. Instead, Plaintiff agreed to provide a corporate representative but then turned around at the deposition and refused to allow the corporate representative to answer questions about these topics.

4856-1697-4460.v2

questions of relevance should be decided by the trial judge.") (citing Fed. R. Civ. P. 30(c); Local Disc. Guidelines 6(d)).

Additionally, Mr. Camalier admitted that he did not prepare for some of the deposition topics, impeding Defendants' ability to attain needed, discoverable information. *See Weintraub v. Mental Health Auth. of St. Mary's, Inc.*, No. CIVA DKC 2008-2669, 2010 WL 347882, at *3 (D. Md. Jan. 22, 2010) ("[I]f the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation.") (citation omitted).

Given the extreme breadth of Plaintiff's objections and the witness' refusal not to answer highly relevant questions as Ms. Kropf explained at the deposition, "we can raise all the issues that we might need to raise about [Mr. Camalier's] lack of preparation on certain topics and give it all at once" to the Court and is now doing so (*see* (30(b)(6) Deposition of Plaintiff, March 22, 2023, Vol. II, ("30(b)(6) Dep. Vol II") 76:6-15, cited portions of which are attached hereto as Exhibit D), and Defendants request that resumption of Plaintiff's 30(b)(6) Deposition and Plaintiff's Individual Deposition.

A. **Mr. Camalier Failed to Answer Questions Within the Topics Noticed For His Corporate Deposition**

Plaintiff failed to meet its obligation to prepare a witness so that he is knowledgeable about the noticed topics.

1. **The Ground Lease**

Mr. Camalier, in both the 30(b)(6) and Individual Depositions, refused to answer questions about the provisions of the Ground Lease, including the basis for a number of Plaintiff's claims. Topic 1 for the 30(b)(6) Deposition was "[d]rafting and negotiation of the Ground Lease." (*See*

Supplemental Notice at 1)  Plaintiff objected to Topic 1 and stated that the topic was, among other things, disproportionate to the needs of this case and exceeded the limits on discovery imposed by the Court.  (*See* Objections at 1)   However, the topic is not disproportionate because unlike Defendants who stepped into the terms of the Ground Lease, Plaintiff drafted the provisions of thAT contract.

Plaintiff represented that it would instead "designate a witness to testify on Plaintiff's behalf regarding the provisions of the Ground Lease pertaining to the Assignment."  Defendants prepared their own questions based on the Objections and the scope of inquiry to which Plaintiff agreed, which was to include "provisions of the Ground Lease pertaining to the Assignment." However, Mr. Camalier was not prepared to testify about the provisions in the Ground Lease pertaining to the Assignment.  (30(b)(6) Dep. Vol I 29:3-11, 30:4-11)  Instead, at the 30(b)(6) deposition, its counsel insisted that the witness need only testify about the "negotiations" of the Ground Lease – the exact topic that Plaintiff stated in its Objections was irrelevant.  (*Id*. at 27:9-20)  On such grounds, Plaintiff's counsel also instructed him not to answer, among other things, whether the landlord can sublease the property at issue under the Ground Lease (*Id*. at 32:6-8), as well as whether the landlord can enter the building to inspect it without the landlord's consent under the Ground Lease (*Id*. at 32:3-8).  Mr. Camalier's counsel repeated the same instruction as to Ms. Kropf's question about whether any provision of the Ground Lease requires a tenant to share information about assignees with the landlord, which is unequivocally a material issue in this litigation.  (*Id.* at 32:21-24)  Plaintiff also refused to answer the basis for Plaintiff's demands for information from RSD by Plaintiff's counsel, such as RSD's identity and ownership, and what provision of the Ground Lease (if any) formed the basis for Plaintiff's demands.  (*Id*. at 258:2-261:20)  Mr. Camalier also refused to answer whether a tenant required a landlord's consent to

sublease.  (*Id*. at 32:9-15)  Mr. Camalier's justification for instructing his client not to answer was simply, "outside the scope."  (Id. at 32:7)

When asked specifically what provisions of the Ground Lease requires the tenant to provide the landlord with the tenant's identity, counsel again instructed Mr. Camalier not to answer.  This time, counsel's objection was that the question sought testimony regarding legal obligations under the Ground Lease.  (30(b)(6) Dep. Vol. I 259:3-12, 259:23-25; 260:1-3)  Mr. Camalier's counsel made the same instruction not to answer the question "where in the ground lease does [it] require the tenant to provide information about its intentions to the landlord?", again claiming that it was outside the scope.  (*Id*. at 260:12-15)  Similarly, Ms. Kropf asked Mr. Camalier whether there is a requirement in the Ground Lease that the assignee cannot be funded by an entity with an ownership interest in the assignee, and Mr. Camalier was instructed not to answer by his counsel.  (30(b)(6) Dep. Vol. II 71:6-73:17)  Last, when asked whether he was prepared to testify to the drafting and negotiations of provisions *other than* the capitalization terms, Mr. Camalier's counsel intercepted so that his client could not answer, asserting that the inquiry was "outside the scope."  (*Id*. at 16:10-25)

Mr. Camalier also would not testify, either as the corporate witness or in an individual capacity about the role of special purpose entities with respect to the Ground Lease.  (Deposition of Charles Camalier, March 22, 2023 ("Camalier Dep.") 8:13-12:25, cited portions of which are attached hereto as Exhibit E)  Although relevant under Topics 1, 2 and 6, Plaintiff would not answer questions about the facts related to whether IWA was a surety or guarantor of the Ground Lease, even though the Court specifically raised this as a possible basis to keep IWA on the hook for lease payments during the February 16, 2023 hearing.  (30(b)(6) Dep. Vol. I 99:3-25; 2/16/23

10

Hrg. Tr. at 10 ("it is my view that under the law, the assignor of the lease is the surety on the contract.")).

Plaintiff answered some questions in a self-serving manner and then refused to answer follow-up questions about them. For example, when asked what part of the Estoppel Agreement "goes to whether or not IWA agreed to be jointly responsible for Rock Springs Drive for ground rent payments? Which part of Section 12?", Mr. Camalier answered "Section 12 requires our consent. We did not consent to the assignment." But when counsel asked Mr. Camalier to identify where in Section 12 does it "require [Plaintiff's] consent"," counsel instructed him not to answer the questions. (30(b)(6) Dep. Vol. I 98:20-99:11). Defendants are entitled to answers to all of the foregoing questions, and any follow-up questions that would arise from the witness' responses—not to have a witness answer one question and then refuse to answer follow-up questions to challenge the basis of that answer.

Mr. Camalier's refusal to answer questions about the Ground Lease carried over to his individual deposition, and counsel again instructed him not to answer relevant and proper questions relating to the Ground Lease in his Individual Deposition as it relates to single purpose entities.  (Camalier Dep. 9:4-9:18)

Plaintiff's refusal to answer these questions was improper.  First, in most of its objections, Plaintiff argued that it was not obligated to testify about provisions of the Ground Lease because the topic was limited to negotiations.  That objection was directly contradicted by Plaintiff's Objections, which state that Plaintiff would not testify about "negotiations," but would instead testify about the "provisions" of the Ground Lease.  Second, this case, brought by Plaintiff, is about the validity of the Assignment, which was authorized by both the Ground Lease and the Estoppel Agreement. Defendants' position is that because the agreements executed by Plaintiff permitted

11

the Assignment, it was not a fraudulent conveyance and that Plaintiff has waived these claims by agreeing to the Assignment. Plaintiff has taken the position that the Ground Lease and the Estoppel Agreement do not allow the Assignment. Defendants are therefore permitted to explore the basis of that position so that there are no surprises as trial. Despite the relevance of these issues, et Plaintiff refuses to provide any testimony regarding them.  A "corporation must provide its interpretation of documents and events." *Paul Revere*, 206 F.R.D. at 127 (citation omitted).  Third, before the litigation was filed, Plaintiff sent multiple letters to RSD stating that Plaintiff was entitled to information from RSD (including information that exceeds the "basic information" standard imposed by the Court), and then filed its lawsuit based on Defendants' failures to meet these information sharing obligations.  At the very least, Defendants are entitled to learn during discovery what Plaintiff is relying on to support its claim that Defendants did not meet their obligations under the Ground Lease and Estoppel Agreement as far as sharing information with Plaintiff.

### 2.  The Estoppel Agreement

#### a.   The 30(b)(6) Deposition

In both the 30(b)(6) and Individual Depositions, Mr. Camalier refused to testify about the Estoppel Agreement.  Topic 2 of the "Subject Matter of Inquiry" from IWA's 30(b)(6) Deposition Notice is "Negotiation and execution of the Estoppel Agreement."  (*See* Supplemental Notice at 2)  In its Objections, Plaintiff again asserted that the negotiations were not relevant, but that "Plaintiff is willing to designate a witness to testify on Plaintiff's behalf regarding the provisions of the estoppel agreement pertaining to the assignment."  (*See* Ex. C at 2; (30(b)(6) Dep. Vol. I 52:35-35 - 55:1-2)  Yet, Mr. Camalier's counsel instructed his client not to answer questions within

the very scope proscribed by Plaintiff.  Instead, after Defendants prepared on the scope created by Plaintiff, Plaintiff demanded that the deposition questions be limited to a different scope.

Yet, even as to negotiation, Mr. Camalier was also not prepared to answer fundamental inquiries about the Estoppel Agreement.  When asked "Did the tenant sign the estoppel agreement to get the loan?", Mr. Camalier answered that it "could have been *a* reason."  (30(b)(6) Dep. Vol. I 42:6-9) (emphasis added).  As a follow-up, Mr. Camalier would not answer "why did the tenant execute the estoppel agreement?"  Instead, he only vaguely offered "there may be other reasons that I don't recall right now."  (*Id*. at 44:23-25)  Similarly, when asked simply who drafted the Estoppel Agreement, Mr. Camalier answered he did not know.  (*Id*. at 49:24)  Although possibly true, Mr. Camalier also did not consult with Plaintiff's counsel from the negotiations of the Estoppel Agreement, Holland & Knight, to obtain any records to prepare for the deposition.  (*Id*. at 52:21-22); *see Paul Revere*, 206 F.R.D. at 128 (explaining that a corporate representative is required to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition).  Finally, when asked plainly whether the Landlord participated in the negotiations of the Estoppel Agreement, and further, whether Mr. Camalier was prepared to testify as to the extent of the negotiations, Mr. Camalier answered unequivocally that he did not remember.  (*Id*. at 25:4-27:20)  It is evident that Mr. Camalier did not take any steps to prepare to address the topic to enable him to answer questions on the topic on behalf of Plaintiff.   At most, Mr. Camalier checked his personal records and one email account.  (*Id*. at 51:2-5, 52:7-13)

When Ms. Kropf proceeded to ask Mr. Camalier about Plaintiff's understanding of certain terms of the Estoppel Agreement, his counsel was selective in instructing him not to answer, claiming it was "beyond the scope."  (30(b)(6) Dep. Vol. I 46:20-22, 47:9-16, 80:15-24)  For example, Mr. Kropf inquired as to "Plaintiff's understanding" of particular sentences in Section

12 of the Estoppel Agreement, to which Mr. Camalier was instructed not to answer.  (*Id*. at 57:19-
25 – 58:1-19)  Likewise, when asked "what does Plaintiff understand" certain phrases in the
Estoppel Agreement mean, Mr. Camalier was instructed not to answer.  (*Id*. at 78:22-79:1-5)
RSD's counsel primarily focused only on the very same two provisions in the Estoppel Agreement
that have been repeatedly briefed in this case, and counsel still did now allow his client to answer
select questions pertaining to those two provisions. (*Id*. at 62:9-14)  Ultimately, Mr. Camalier
refused to testify about any of the key issues in this case, including whether there were negotiations
about capitalization; approval of assignments; restrictions on assignments, including as to when
an assignor has an interest in the assignee; and any requirements that an assignee must disclose its
owners and members to the landlord.  (30(b)(6) Dep. Vol. II 13:14-18:15)

    b.  Camalier Deposition

       Mr. Camalier also refused to answer questions about the Estoppel Agreement in his
Individual Deposition.  Ms. Kropf asked Mr. Camalier whether there was any requirement for the
lender to assign the lease at the time of the foreclosure of the property.  (Camalier Dep. 15:4-7)
Mr. Camalier's counsel instructed him not to answer, claiming it is a legal document that speaks
for itself.  (Camalier Dep. Vol. II 15:8-12)  Yet, it was Mr. Camalier who negotiated that legal
document.  He further insisted that this Court had already ruled on this inquiry as "improper
discovery in this case."  (Camalier Dep. 16:1-5)  Ms. Kropf explained her disagreement, pointing
out the inquiry about the parties' understanding of legal documents that may support Plaintiff's
claims are "not legal conclusions," and is fair game and relevant. (Camalier Dep. 16:11-17)

       After a discussion off the record during which the parties attempted to reach the Court, the
parties reconvened for Ms. Kropf to ask the question yet again, and Mr. Camalier's counsel
instructed him not to answer.  (Camalier Dep. 18:4-9)  With Mr. Camalier's counsel's general

14

objection for his client to not answer any questions pertaining to the Estoppel Agreement, at the conclusion of the deposition, Ms. Kropf set forth additional questions for which she preserved to ask of Mr. Camalier:

a.      Is there any requirement in the ground lease that the assignee cannot be funded by an entity with an ownership interest in the assignee?

b.      Is there any requirement in the estoppel agreement that the Assignee cannot be funded by an entity with an ownership interest in the assignee?

(*Id.* at 38:2-25)  Ms. Camalier's did not answer any of these questions pertaining to his personal interpretation or understanding of the Estoppel Agreement.

Yet Mr. Camalier, fully understood the terms of the Estoppel Agreement.  Indeed, both as the corporate witness and individually, he testified about provisions of the Estoppel Agreement that he deemed favorable to his position, and cherry-picked the subject matter of his own testimony.  (*See*, *e.g.*, Camalier Dep. 15:4-17:23)  It was only when the provision contradicted Plaintiff's claims that his counsel instructed him not to answer.

### 3.  Documents Relevant to IWA as a Surety

Topic 6 of the deposition notice included, "[a]ny communications, offers or agreements with any person or entity to act as a guarantor or surety of the Ground Lease, including as to any requirement of a guarantor or surety for the assignment of the Ground Lease."  Ex. B.  This is a matter that the Court raised at the February 16, 2023 hearing and is therefore relevant to the case. *See* 2/16/23 Hrg. Tr. at 10.  Within that subject, Ms. Kropf asked Mr. Camalier about what provisions of the Estoppel Agreement support Plaintiff's position that it is a surety, but he was instructed not to answer.  (30(b)(6) Dep. Vol. I 99:3-25)  Defendants cannot defend themselves against this new theory of liability—under a theory of suretyship or guarantee—if they cannot

discover the factual basis for it. Refusal to answer these questions denies Defendants the fair opportunity to prepare for trial and means that Plaintiff could surprise Defendants at trial with new evidence to support these this theory.

### 4. Assignment

"The Assignment and any objections by Plaintiff thereto" is covered in topic 7 of the deposition notice.  Ex. B.  Ms. Kropf questioned Mr. Camalier as to whether the notice of the assignment was sufficient or if Plaintiff's position is that it didn't receive notice, to which he was instructed not to answer. (30(b)(6) Dep. Vol. I 105:8-24, 106: 3-10)  Mr. Camalier's counsel also instructed him not to answer where, in any agreement, landlord's consent is required before an assignment can be executed.  (*Id*. at 104:12-22)  This topic is relevant because Defendants' position is that they met the contract's requirement for an assignment (notice to the landlord within 10 days), and thus the Assignment is valid.

### 5. Evidence of Impairment or Damages Relating to the Assignment

Mr. Camalier also refused to answer certain questions about any impairment or other negative impact of the Assignment, which is an allegation of the complaint. *See* 2d Am. Compl. (ECF 196) ¶ 49 ("The purported assignment of the Ground Lease to Assignee materially increases the burden and risk imposed on Plaintiff by the Ground Lease, materially impairs Plaintiff's chance of obtaining return performance under the Ground Lease, and/or materially reduces the Ground Lease's value to Plaintiff.").  For example, Mr. Camalier was instructed not to answer any questions regarding whether there is a loan on the property and whether the Assignment impacted that loan.  (Camalier Dep. 27:9-29:3; 30(b)(6) Dep. Vol. I 353:3-367:23)

Topic 12 of the deposition notice extends to "Plaintiff's agreements with brokers regarding the leading, selling, marketing or any other activities with respect to the Property."  Ex. B.  Under that topic, Ms. Kropf asked Mr. Camalier about one of Plaintiff's real estate broker's involvement

with underwriting loans on the Property that he was instructed not to answer.  (30(b)(6) Dep. Vol. I 360:7-13)  Ms. Kropf also questioned Mr. Camalier about his communications with the lender about the assignment, which Mr. Camalier's counsel instructed his client not to answer, deeming the question "improper" and "outside the scope."  (*Id*. at 361:11 - 363:4)

### 6.  Plaintiff's Interest in the Property

When asked whether the Camalier's family interest in the Property has changed since it first entered the ground lease (Camalier Dep. 26:1-4, 15-17), Mr. Camalier was instructed by his counsel not to answer (*Id*. at 26:5-7,18-19)  Counsel contended the question "goes beyond the scope of permissible discovery in this case." (*Id*. at 26:19-20)

When Ms. Kropf proceeded to ask, more specifically, about the time period since 2015 regarding the loan that the Camalier family had on the Property, Mr. Camalier's counsel instructed him not to answer on the same basis. (Camalier Dep.  27:13-15)  The questions concerned whether the Camalier family had called the loan, used ground rents to pay the loan, and had an ability to pay back the loan.  Still, Mr. Camalier's counsel instructed his client not to answer any of these questions.

Section 13.1 of the Ground Lease requires Plaintiff to notify the tenant if it "sells, assigns, or mortgages its fee interest."  Even beyond the relevance of this matter to determine who is the appropriate party-in-interest, if the ownership has changed hands, then RSD is entitled to know that it did to determine whether Plaintiff breached the Ground Lease.  Moreover, if Plaintiff is no longer the owner of the property, its standing to continue this lawsuit is called into question.

### 7.  Testimony Withheld Based on Plaintiff's Allegations of Incomplete Discovery

Finally, Plaintiff's corporate witness also made clear that he was not able to answer certain questions until discovery is complete.  Specifically, Mr. Camalier stated that, on behalf of Plaintiff,

17

he could not answer whether IWA made any false statement to IWA following the Assignment. (30(b)(6) Dep. Vol. II 81:6-82:2)  Similarly, Mr. Camalier testified he could not answer whether RSD made any false statements following the Assignment.  (*Id.* at 82:3-18)  Mr. Camalier also testified that he could not as of yet identify how the Assignment has created any risk until after discovery is complete.  (*Id.* at 87:15-22)  Plaintiff also refused to answer questions regarding Topic 9, which asks about other Jane Doe defendants.  Instead, Mr. Camalier stated that he was not prepared to testify on that topic because discovery was ongoing, but there were a number of other parties, including Transamerica.  (Camalier Dep. Vol. I 333:12-336:3)  Mr. Camalier would not identify any other parties, but just days later Plaintiff's counsel told RSD's corporate witness that Plaintiff was contemplating suing RSD's principals.

Accordingly, on multiple topics Mr. Camalier testified that he could not yet answer questions that are material to Defendants' defenses, but at the same time, Plaintiff would not agree to make a witness available for these topics at the close of discovery.

## CONCLUSION

Because Mr. Camalier did not adequately prepare for the 30(b)(6) Deposition and was otherwise improperly instructed not to answer reasonable, relevant questions during both of his depositions, Defendants respectfully request to continue Mr. Camalier's Individual Deposition and 30(b)(6) Deposition at a near-future date.  As discussed on the record, to address the questions most efficiently and least burdensome to both sides, as well as reduce additional cost or travel on all parties, Defendants are willing to conduct the questioning remotely; however, Plaintiff should bear the costs.  Thus, Defendants seek sanctions against Plaintiff in the form of costs and fees attributable to bringing this motion and deposition resumption, along with any other amount that the Court deems just and proper.

Dated:  August 29, 2023

Respectfully Submitted,

*/s/Rebecca A. Davis*
Rebecca A. Davis, Bar No. 23183
ARNALL GOLDEN GREGORY LLP
171 17TH Street NW, Suite 2100
Atlanta, Georgia 30363
rebecca.davis@agg.com
Telephone:  (404) 873-8768
*Counsel for Investors Warranty of*
*America, LLC*

/s/ Sara E. Kropf
Sara E. Kropf (Bar No. 26818)
Kropf Moseley PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
(202) 627-6900
sara@kmlawfirm.com
*Attorney for Rock Springs Drive LLC*

19

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**Rock Spring Plaza II, LLC,**

               **Plaintiff,**

    **v.**

**Investors Warranty of America, LLC,
et al.,**

               **Defendants.**

**Civil Action No. 8:20-cv-01502-PJM**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2023, I electronically filed the foregoing **DEFENDANTS' JOINT MOTION TO COMPEL DEPOSITION TESTIMONY OF CHARLES CAMALIER, III** via the Court's CM/ECF system, which will automatically provide electronic service copies to all counsel of record.

Respectfully Submitted,

/s/Rebecca A. Davis
Rebecca A. Davis, Bar No. 23183