# EXHIBIT A

Page 1

1         IN THE UNITED STATES DISTRICT COURT

          FOR THE DISTRICT OF MARYLAND

2             CIVIL DIVISION

3      Civil Action No: 8:20-cv-01502-PJM

4

   ROCK SPRING PLAZA II, LLC,

5

          Plaintiff,

6

   vs.

7

   INVESTORS WARRANTY OF AMERICA, LLC,

8   et al.,

9          Defendants.

10   _____

11

12

13     VOLUME I - 30(b)(6) VIDEOTAPE DEPOSITION OF

          ROCK SPRING PLAZA II, LLC,

14        CHARLES A. CAMALIER, III

15

16

          Tuesday, March 21, 2023

17       8:55 a.m. to 5:48 p.m.

18

19

20

       Stenographically reported by:

21       Shauna T. Dietel, RPR

     Registered Professional Reporter

22

23

24

25

30(b)(6) Rock Spring Plaza II, LLC                March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 13

1     dated November 14th, 1990; is that right?

2          A     Correct.

3          Q     And the landlord is Anne D. Camalier,

4     correct?

5          A     Yes.

6          Q     And that's your mother, correct?

7          A     That's correct.

8          Q     And the tenant is listed as "Rock Spring II

9     Limited Partnership," correct?

10         A     Correct.

11         Q     And who owned Rock Spring II Limited

12    Partnership when this ground lease was signed?

13               MR. BOSCH:  Objection to form.

14         Q     (BY MS. KROPF)  You can answer.

15         A     Okay.  It was owned half by the Camalier

16    family and half by COMSAT Corporation.

17         Q     All right.  Do you know who negotiated the

18    ground lease for the landlord -- for your mother,

19    Anne Camalier?

20         A     Yes.  I was involved with that.

21         Q     Were you the lead negotiator for the

22    landlord in that -- for the ground lease in 1990?

23         A     I was involved with it, along with my

24    father and my brother.

25         Q     Is your brother Davis Camalier?

Page 14

1       A     Yes.

2       Q     Who was the principal negotiator?

3       A     I would have been.

4       Q     And do you know who was negotiating for the

5    tenant, for Rock Spring II Limited Partnership?

6       A     That would have been COM- -- COMSAT

7    Corporation.

8       Q     Was the Camalier family -- they owned half

9    of the defendant --

10            MR. BOSCH:  Objection --

11      Q     (BY MS. KROPF)  -- or the tenant?

12            MR. BOSCH:  Objection to form.

13      A     The Camalier family owned half of Rock

14   Spring II Limited Partnership at that time.

15      Q     (BY MS. KROPF)  Was anyone from the

16   Camalier family negotiating the ground lease on

17   behalf of the tenant?

18      A     No.  That would have been COMSAT.

19      Q     So was this an arm's length transaction?

20            MR. BOSCH:  Objection to form.

21      A     That -- I think that's a legal conclusion.

22      Q     (BY MS. KROPF)  Okay.  You're a lawyer,

23   correct?

24      A     Yes.

25      Q     And you practice in real estate, correct?

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 18

1          Q      (BY MS. KROPF)   Okay.   All right.   And I

2     take it COMSAT was also experienced in real estate

3     transactions when it was negotiating the ground lease

4     that's Exhibit 2?

5                 MR. BOSCH:   Objection to form.

6          A      I -- I would think so.

7          Q      (BY MS. KROPF)   Okay.   Well, you said you

8     were the lead person negotiating --

9          A      No --

10         Q      -- correct?

11         A      -- but I don't -- you asked me what -- what

12    they were.   They could answer that better than I

13    could.   But they seemed to be fairly knowledgeable

14    when we were having negotiations.

15         Q      Okay.   All right.   Let's take a look at

16    Section 5.2 of the ground lease.   All right?

17                Do you see that Section 5.2?

18         A      Yes.

19         Q      And what's the title of that section?

20         A      Assignment and Subletting.

21         Q      Okay.   And the first sentence says, "Tenant

22    may assign this lease and may mortgage its leasehold

23    estate," correct?

24         A      That's what it says, yes.

25         Q      Okay.   And could you describe for me what

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

                                                    Page 19

1      limitations are on the tenant to assign this ground

2      lease?

3              MR. BOSCH:  Objection to form.

4          A    There are numerous restrictions in -- in

5      the ground lease on that.

6          Q    (BY MS. KROPF)  Okay.  What's the -- what's

7      the first one?

8          A    First one is in Section 12 of the -- what

9      you've marked as Exhibit 3, Ground Lessor's [sic]

10     Estoppel and Non-Disturbance Agreement.

11         Q    Okay.  We're going to get to the estoppel

12     agreement.  I'm asking you about the ground lease,

13     which is Exhibit 2.

14              Okay?

15         A    Okay.  But you asked about the ground

16     lease, and as I indicated earlier, the ground lease

17     is made up of two documents:  Exhibit 2 and Exhibit

18     3.  So it's hard -- you can't part and parcel; you

19     have to talk about the total.

20         Q    Okay.  Well, let's talk first about what --

21     what restrictions are on assignments of the lease in

22     the ground lease document.

23              Do you understand that I'm referring to

24     Exhibit 2 when I talk about the ground lease

25     document?

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 20

1          MR. BOSCH:  So the question is she's -- do

2      you understand that she's referring to Exhibit 2?

3          A    So you only want to refer to Exhibit 2?

4          Q    (BY MS. KROPF)  Right now.  We're going to

5      get to Exhibit 3.

6          A    Okay.

7          Q    Okay.  Have no fear; we will get to it.

8          A    Okay.

9          Q    Okay.  I want you to look at Exhibit 2.

10         Okay?

11         A    Thank you.

12         Q    All right.  And we're looking at Section

13     5.2, which is about assignments and subleasing,

14     correct?

15         A    Correct.

16         Q    All right.  And the first sentence says,

17     "Tenant may assign the lease and may mortgage its

18     leasehold estate," right?

19         A    That's correct.

20         Q    And my question for you was, with respect

21     to Exhibit 2, what limitations are on a tenant's

22     right to assign the ground lease?

23         MR. BOSCH:  Objection to form.

24         Q    (BY MS. KROPF)  And I believe you said

25     there were several?

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 21

1        A      Correct.

2        Q      Which ones are you referring to that are in

3    the ground lease?

4               MR. BOSCH:  Objection to form.

5               MS. KROPF:  Well, what's the basis of that?

6               MR. BOSCH:  You said, "Which ones are in

7    the ground lease."  You're referring to Exhibit 2 --

8    which limitations are in Exhibit 2?

9               MS. KROPF:  Yes.

10              MR. BOSCH:  Okay.  Well, the basis is the

11   document speaks for itself.

12              MS. KROPF:  That's your objection to form?

13              MR. BOSCH:  Yes.

14              MS. KROPF:  Okay.  So --

15              MR. BOSCH:  And, also, it's -- it's vague

16   and ambiguous.  But you can -- you can continue.

17       Q      (BY MS. KROPF)  Do you understand my

18   question when I ask you which limitations are on

19   assignments and leases -- assignments of leases in

20   the ground lease?

21              Is there anything unclear about that

22   question to you?

23              MR. BOSCH:  Objection to the form.

24       A      The -- as I indicated, you have to read

25   both documents together.  You can't part and parcel

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 22

1      the question.  So when you ask me, "Is there any

2      restrictions in the ground lease," there are

3      restrictions in the ground lease that I was showing

4      to you earlier.  So, again, I'm not here to -- to

5      give a legal conclusion.  I think the document is

6      clear on its face.

7           Q     (BY MS. KROPF)  Okay.  Are there any

8      restrictions on assignment of leases in the ground

9      lease, or can the tenant freely assign the -- the --

10     a ground -- the ground lease anytime it wants to any

11     person it wants?

12           MR. BOSCH:  Objection to form.

13           A     No.

14           Q     (BY MS. KROPF)  Okay.  In Exhibit 2, what

15     are -- what are any restrictions on the assignment of

16     the ground lease by the tenant?

17           MR. BOSCH:  Objection to form.

18           A     Again, as I mentioned to you, you cannot

19     separate the two documents.  The two documents have

20     to be read together.  So you can't -- you can't ask a

21     question on part of the document without talking

22     about the second part.  So your question is

23     confusing.  Both documents make up the ground lease

24     and the restrictions are found.

25           Q     (BY MS. KROPF)  Okay.  Let's take a look at

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 23

1    exhibit -- at Exhibit 2, Section 5.2.

2              Do you see that in front of you?

3         A    Yes.

4         Q    Okay.  The first sentence says, "Tenant may

5    assign this lease and may mortgage its leasehold

6    estate."

7              Do you see that?

8         A    Yes.

9         Q    Okay.  And the second sentence says,

10   "Notwithstanding the foregoing and the provisions of

11   Section 13.1 below, so long as the lien of that

12   certain deed of Trust (the 'Fee Mortgage'), from Anne

13   D. Camalier to Junuis," J-U-N-U-I-S, "S. Morgan and

14   Joseph B. Tockarshewsky," T-O-C-K-A-R-S-H-E-W-S-K-Y,

15   "Trustees for the benefit of American Security Bank

16   N.A., dated October 27, 1989 and recorded among the

17   land records of the Circuit Court for Montgomery

18   County, Maryland, in Liber 9055, folio 84 . . ."

19             Are you following me so far?

20        A    I'm following what you're reading.

21        Q    Okay.  ". . .remains unreleased of record.

22   Tenant may not assign this lease in a manner which

23   would release Tenant from liability hereunder prior

24   to the substantial completion of the office building

25   described in Section 7.1 below . . ."

30(b)(6) Rock Spring Plaza II, LLC                March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

                                                    Page 24

1            And I'm going to pause there.

2            Do you see what I just read?

3      A    Yes.

4      Q    Is that contained in the ground lease in

5   Exhibit 2?

6      A    It's contained in -- yes.

7      Q    Okay.  And is that a limitation on the

8   tenant assigning the ground lease?

9            MR. BOSCH:  Objection to the form.

10     Q    (BY MS. KROPF)  Or is it not a limitation?

11           MR. BOSCH:  Objection to the form.

12     A    I think it speaks for itself.

13     Q    (BY MS. KROPF)  Okay.  Could you take a

14   look at Exhibit 56?  The first exhibit I showed you.

15   And would you take a look at Topic Number 1, which is

16   on -- where it says "Subject Matter of Inquiry"?

17     A    Correct.

18     Q    Okay.  So the first topic is "Drafting and

19   Negotiation of the Ground Lease," correct?

20     A    That's correct.

21     Q    Okay.  And do you understand that your

22   lawyers objected to that topic, but said that he

23   would have a witness prepared on -- on the terms of

24   the ground lease related to the assignment?

25     A    Are you referring to the first topic --

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 25

1      Q    I'm referring --
2      A    -- "Drafting and Negotiation of the Ground
3   Lease"?
4      Q    I'm referring to your lawyer's response.
5   He objected to that topic and said he would have a
6   witness prepared on the terms of the ground lease
7   related to assignment.
8           MR. BOSCH:  What is your question?
9           MS. KROPF:  I'm asking whether or not he's
10  aware of that.
11     Q    (BY MS. KROPF)  Do you understand that?
12     A    I -- your question that you wanted to ask
13  me was drafting and negotiation of the ground lease.
14     Q    Okay.
15     A    That's not what you're asking me.
16     Q    Okay.  Did your -- do you understand that
17  your lawyer objected to those topics?
18     A    I don't know what my lawyer did or didn't
19  do --
20     Q    You didn't --
21     A    -- in that regard.
22     Q    You didn't discuss your lawyer's objections
23  to the topics for the 30(b)(6) deposition today?
24     A    I don't recall.
25     Q    Okay.  And your -- I'm -- I'll represent to

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 26

1    you that what your lawyer said is that "Subject to,

2    and without waiving the foregoing general and

3    specific objections, Plaintiff is willing to

4    designate a witness to testify on Plaintiff's behalf

5    regarding the provisions of the ground lease

6    pertaining to the assignment."

7            Are you aware that your lawyer said that he

8    would have a witness prepared to testify on

9    Plaintiff's behalf regarding the provisions of the

10   ground lease pertaining to the assignment?

11           MR. BOSCH:  I'm sorry.  I think you just

12   misstated the -- what we said we would produce a

13   witness on.

14       Q    (BY MS. KROPF)  Your lawyer said he would

15   "designate a witness to testify on Plaintiff's behalf

16   regarding the provisions of the ground lease

17   pertaining to the assignment."

18           Do you under- --

19           MR. BOSCH:  Right.  And that's the drafting

20   negotiation.

21           MS. KROPF:  I'll -- I will ask --

22           MR. BOSCH:  Well, no, you're asking him to

23   characterize what I wrote to you, which, again, why

24   don't you ask me what the basis for the objection is?

25           MS. KROPF:  Because you're not being

30(b)(6) Rock Spring Plaza II, LLC                March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 27

1    deposed today, Mr. Bosch.

2              MR. BOSCH:  Okay.  But --

3              MS. KROPF:  I'll ask the witness.  If he

4    doesn't know the answer, he can say that.

5              MR. BOSCH:  He already told you he

6    didn't -- was unfamiliar with the objections.

7              MS. KROPF:  Okay.

8              MR. BOSCH:  Go ahead.

9         Q    (BY MS. KROPF)  So, Mr. Camalier, are you

10   unaware that your lawyer said that he would

11   "Designate a witness to testify on Plaintiff's behalf

12   regarding the provisions of the ground lease

13   pertaining to the assignment"?

14             Are you not aware of that?

15        A    What I'm aware of is that I was asked to

16   be -- asked to address the drafting and negotiation

17   of the ground lease.

18        Q    Okay.  And so you're not aware of what your

19   lawyer told us there would be a witness prepared for?

20        A    As I testified earlier, I don't recall.

21        Q    Okay.  And are you prepared to testify

22   regarding the provisions of the ground lease

23   pertaining to the assignment?

24             MR. BOSCH:  Objection to form.

25        A    My understanding is I'm to answer questions

Page 28

1    in regard to drafting and the negotiations of the

2    ground lease.

3         Q    (BY MS. KROPF)  So are you prepared --

4    prepared to testify, sir, on Plaintiff's behalf

5    regarding the provisions of the ground lease

6    pertaining to the assignment?  Are you prepared on

7    that topic or not?

8         A    I'm prepared on what you provided to me,

9    the drafting and negotiation of the ground lease.  I

10   am prepared --

11        Q    Okay.

12        A    -- in that regard.

13        Q    So are you not prepared to testify on

14   Plaintiff's behalf regarding the provisions of the

15   ground lease pertaining to the assignment?

16             MR. BOSCH:  Objection --

17        Q    (BY MS. KROPF)  Is that correct?

18             MR. BOSCH:  Objection to form.

19        Q    (BY MS. KROPF)  It's just a yes or no.  If

20   you're not prepared on it, then we can move on.

21             But are you prepared on it or not?

22             MR. BOSCH:  It's not a yes or no.

23   Objection to form.

24        A    As I indicated, I am prepared to answer the

25   questions in regard to the drafting and

30(b)(6) Rock Spring Plaza II, LLC                                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 29

1    negotiating -- negotiation of the ground lease.  That

2    was what I prepared for.

3         Q     (BY MS. KROPF)  So if I ask you questions

4    about the meaning of the provisions in the ground

5    lease pertaining to the assignment, are you prepared

6    to testify about those topics today as a corporate

7    representative of Plaintiff or not?

8         MR. BOSCH:  No, he is not because I'm not

9    asking and you did not ask for this witness to

10   testify as to the meaning of the provisions of the

11   ground lease.

12         And, Ms. Kropf, if it will help, I'll refer

13   you to IWA's Response to Plaintiff's Second Set of

14   Interrogatories in which your colleague, Ms. Davis,

15   stated, quote, "The Court has ruled that questions

16   referring to obligations under the ground lease are

17   improper discovery requests calling for a legal

18   conclusion."

19         So as I understand your questioning, you're

20   asking this witness to testify on something that is

21   improper discovery according to the Court's rulings.

22   This witness is prepared to testify as to the

23   negotiation and drafting of the provisions of the

24   ground lease pertaining to the assignment.  If you

25   would like to examine him, he's prepared to testify.

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 30

1           If you want to ask this witness to testify

2     as to the meaning of the provisions of the ground

3     lease, that's improper.

4           Q     (BY MS. KROPF)  Mr. Camalier, are you

5     prepared to testify about the plaintiff's

6     understanding of the meaning of the provisions of the

7     ground lease pertaining to the assignment?

8           MR. BOSCH:  I'm going to object.

9     Mr. Camalier, I'm going to instruct you not to answer

10    that question because it's outside the scope, and

11    it's improper discovery.

12          Q     (BY MS. KROPF)  All right.  So if I ask you

13    any questions about Plaintiff's understanding of the

14    meaning of the terms related -- pertaining to the

15    assignment in the ground lease, can you answer them

16    today?

17          MR. BOSCH:  I'm going to instruct you not

18    to answer.  It's outside the score, and it's improper

19    discovery.

20          Q     (BY MS. KROPF)  All right.  So, Mr. --

21    Mr. Camalier, has Rock Springs Drive breached any

22    provision of the ground lease since August 31st,

23    2017?

24          MR. BOSCH:  Objection to the form.

25          A     Could you repeat the question?

30(b)(6) Rock Spring Plaza II, LLC                March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

                                                        Page 32

 1              MR. BOSCH:  Objection to form.

 2       A    We're not aware of any breach as of today.

 3       Q    (BY MS. KROPF)  Under the ground lease,

 4   does the landlord have the right to sublease the

 5   property?

 6              MR. BOSCH:  Objection to form, and it's

 7   outside the scope.  I'm going to instruct you not to

 8   answer these questions.

 9       Q    (BY MS. KROPF)  Okay.  Does a tenant, under

10   the ground lease, need to get the landlord's consent

11   before subleasing it?

12              MR. BOSCH:  Objection.  Same instruction.

13   Ms. Kropf, we've -- again, you . . .

14              MS. KROPF:  I've heard your instruction.

15              MR. BOSCH:  Okay.  I didn't say anything.

16       Q    (BY MS. KROPF)  All right.  And does the

17   landlord, under the ground lease, have the right to

18   enter the building to inspect it without the

19   landlord's consent?

20              MR. BOSCH:  Objection.  Same instruction.

21       Q    (BY MS. KROPF)  Is there any provision of

22   the ground lease that requires a tenant to share

23   information with the landlord?

24              MR. BOSCH:  Objection.  Same instruction.

25       Q    (BY MS. KROPF)  All right.  Let's take a

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 42

1          Why was the tenant willing to sign the

2     estoppel agreement?

3          MR. BOSCH:  Objection to form.

4     A     Again, I don't recall exactly why they --

5     why they would have signed it.

6     Q     (BY MS. KROPF)  Did the tenant sign the

7     estoppel agreement to get the loan?

8          MR. BOSCH:  Objection to form.

9     A     That could have been a reason, yes.

10    Q     (BY MS. KROPF)  Were there any other

11    reasons you know of?

12    A     Again, I don't recall any other reasons at

13    the present time.

14    Q     Could you take a look back at Exhibit 56,

15    which is the -- the topics for your. . .

16         Do you see Topic Number 2?

17    A     Correct.

18    Q     What does that say?

19    A     "Negotiation and execution of the estoppel

20    agreement."

21    Q     Okay.  And are you prepared to testify

22    today on negotiation and the -- and execution of the

23    estoppel agreement?

24    A     Yes.

25    Q     Okay.  Why did the tenant execute the

Page 44

1    you've been -- that you're prepared to testify about.

2        A    I said -- I answered that and said there

3    may be other reasons that I'm unaware of.

4        Q    Okay.  Well, you signed on behalf of the

5    tenant, correct?

6            MR. BOSCH:  Objection to form.

7        A    I signed as part of the tenant, not as the

8    tenant.

9        Q    (BY MS. KROPF)  You testi- -- you signed as

10   the -- you signed as the managing general partner of

11   the tenant, right?

12           MR. BOSCH:  Objection to form.

13       A    That was the title.

14       Q    (BY MS. KROPF)  Okay.  And so you said one

15   of the reasons the tenant may have signed the

16   estoppel agreement was to get the loan, right?

17           MR. BOSCH:  Objection to the form.

18       A    I've testified to that, I believe.

19       Q    (BY MS. KROPF)  And are you prepared here

20   today to testify to any other reasons that the tenant

21   signed the estoppel agreement?

22           MR. BOSCH:  Objection to form.

23       A    Again, I've answered the question, saying

24   there may be other reasons that I don't recall right

25   now.

30(b)(6) Rock Spring Plaza II, LLC                          March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 46

1      assignment provisions in it; is that right?

2                MR. BOSCH:  What?  Can I hear the question

3      back?

4                (The court reporter read the last

5      question.)

6           A    I don't know if that's a question.

7           Q    (BY MS. KROPF)  Okay.  Does the estoppel

8      agreement have provisions related to the assignment

9      of the ground lease?

10          A    I believe so, yes.

11          Q    Okay.  Which ones are you referring to?

12          A    Sections 12 and Sections 19.

13          Q    Okay.  All right.  So let's start with

14     Section 12, then.

15               What's the title of Section 12?

16          A    "Lender's Obligation Upon Tenant Default."

17          Q    And let me understand, are you prepared to

18     testify today about Plaintiff's understanding of

19     Section 12 of the estoppel agreement?

20               MR. BOSCH:  No, he's not.  It's beyond the

21     scope, and I'm going to instruct him not to answer

22     any questions about their understanding, consistent

23     with the Court's ruling and Defendant IWA's

24     objections to the interrogatories and their

25     understanding of the Court's ruling as well.  It's

Page 47

1    improper discovery.

2            MS. KROPF:  Okay.  So let me just state on

3    the record that what Counsel for Plaintiff said in

4    his objections is that Plaintiff is willing to

5    designate a witness to testify on Plaintiff's behalf

6    regarding the provisions of the estoppel agreement

7    pertaining to the assignment.

8            MR. BOSCH:  Which he just did.

9        Q    (BY MS. KROPF)  But you're not prepared

10   here today to testify about what the provisions

11   related to assignment mean according to the plaintiff

12   in this lawsuit, correct?

13           MR. BOSCH:  That -- that's -- that's

14   correct.  He is not here as a legal expert.  Those

15   are legal issues for the Court.  It's improper

16   discovery.

17           MS. KROPF:  Okay.

18           MR. BOSCH:  If you want to ask this witness

19   about the negotiation and execution of those

20   provisions of the estoppel agreement, Mr. Camalier is

21   prepared.  That's within the scope.  That's what we

22   agreed to do.  Seriously.

23           MS. KROPF:  So are you -- Mr. Bosch, are

24   you instructing him not to answer questions on

25   Plaintiff's behalf regarding the provision of the

30(b)(6) Rock Spring Plaza II, LLC                March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 49

1            Okay?

2      A     Well, I -- I think you have.

3      Q     Well, I'm asking you because you are --

4   have been designated as the corporate representative

5   for the plaintiff.

6            Do you understand that?

7      A     Yes.

8      Q     Okay.  And do you understand that one of

9   the topics that your lawyer said you'd be prepared on

10  is the provision of the estoppel agreement pertaining

11  to the assignment.

12           Do you understand that?

13     A     My understanding is I am to be prepared to

14  talk about the negotiation and execution of the

15  estoppel agreement.  That is what I'm --

16     Q     Okay.

17     A     -- that was in your notice to me, and

18  that's what I am prepared on.

19     Q     What were the negotiations around Section

20  12 of the estoppel agreement?

21     A     I don't recall that there were any

22  negotiations concerning that provision.

23     Q     Who drafted the estoppel agreement?

24     A     I don't know.

25     Q     So you don't know who drafted the estoppel

30(b)(6) Rock Spring Plaza II, LLC                      March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

                                                    Page 51

 1     had.  I didn't have any files on this.

 2          Q     (BY MS. KROPF)  Okay.  So you searched your

 3     files for records related to the negotiation of the

 4     estoppel agreement?

 5          A     Correct.

 6          Q     And when you say "files," what do you mean?

 7          A     So if I had any records.

 8          Q     I'm asking you to define it.  Are these

 9     hard-copy records?  Did you look for hard-copy

10     records?

11          A     Yes.

12          Q     Did you look for e-mails?

13          A     Yes.

14          Q     You searched which e-mail accounts?

15          A     All of mine.

16          Q     How many do you have?

17          A     I think I have one.

18          Q     Okay.  Which one is that?

19          A     The ccamalier@wilkesartis.

20          Q     And so did you search the Wilkes Artis

21     e-mail account for e-mails from the 2006 time period

22     related to the negotiation and execution of the

23     estoppel agreement?

24          A     This -- we had a very complete and thorough

25     search of all our records, and anything that was

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 52

1    relevant to your subpoenas, were -- were turned over

2    to counsel.

3         Q    That is not my question.

4         My question is what you did to prepare

5    today to testify on the topic of the negotiation and

6    execution of the estoppel agreement.

7         And I'm asking you, did you search your

8    Wilkes Artis e-mail back to 2006 to find out what

9    happened during the negotiation and execution of the

10   estoppel agreement?

11        A    I found no documents that related to the

12   negotiations back in -- when this document was

13   executed in 2006.

14        Q    Did you have counsel -- did Plaintiff have

15   counsel during these negotiations?

16        A    Probably.

17        Q    Did you ask those lawyers for their records

18   about the negotiations that you could prepare today

19   about the negotiation and execution of the ground

20   lease of the estoppel agreement?

21        A    I don't recall which lawyers would have

22   been involved in this --

23        Q    Okay.  So if you --

24        A    -- transaction.

25        Q    So if you don't recall which lawyers were

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 53

1    involved, you didn't ask them for their records about

2    the negotiation and execution of the estoppel

3    agreement; is that fair to say?

4              MR. BOSCH:  Objection to form.

5         A    I didn't know which lawyers, so I couldn't

6    have asked a lawyer where the records were.

7         Q    (BY MS. KROPF)  Okay.  So there --

8         A    But I have no records.

9         Q    Okay.  We've established that you say you

10   don't have any records related to the negotiation and

11   execution of the estoppel agreement, right?

12        A    Correct.

13        Q    And we've established that you prepared

14   here today on the topic of the negotiation and

15   execution of the estoppel agreement.  You were unable

16   to check with your lawyers because you say you don't

17   remember who it was; is that right?

18        A    That's correct.

19        Q    Did you ask anyone else in your family if

20   they recalled who the lawyers were so that you could

21   check the lawyers' records to prepare for your

22   deposition today?

23        A    No.  I would have been the one involved.  I

24   would be the one that would know.

25        Q    Okay.  I thought you had said that Davis

30(b)(6) Rock Spring Plaza II, LLC                March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 54

1    Camalier was involved as well, or was that with the

2    ground lease?

3          A     That was with the ground lease.

4          Q     Who else was involved in the negotiation

5    and execution of the estoppel agreement for the

6    plaintiff?

7          A     Just myself.

8          Q     All right.  Okay.  So we were looking at

9    Section 12 of the estoppel agreement.  All right?

10          Do you have that in front of you?

11          A     Yes, I do.

12          Q     Okay.  And are you prepared today to

13    testify as the corporate representative about the

14    plaintiff's understanding -- not legal

15    interpretation, but understanding -- of what Section

16    12 means?

17          MR. BOSCH:  That's -- show me the scope.

18    Which is the notice provision?

19          MS. KROPF:  So we've -- we don't need to

20    take time -- more time on the record, but, Bill --

21    Mr. Bosch, the topic was negotiation and execution of

22    the estoppel agreement.

23          Your response was a lot of objections, and

24    then said, "Plaintiff is willing to designate a

25    witness to testify on Plaintiff's behalf regarding

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 55

1    the provisions of the estoppel agreement pertaining

2    to the assignment."

3         MR. BOSCH:  Right.  Yes.  And Mr. Camalier

4    is prepared to testify on the negotiation and

5    drafting of the provisions of the ground lease and of

6    the estoppel agreement regarding the assignment.  But

7    now you're going beyond that.

8         MS. KROPF:  I'm -- I'm -- I'm looking at

9    the objection you served and yours -- your objection

10   does not say regarding the negotiation and execution

11   of the provisions of the estoppel agreement

12   pertaining to the assignment.

13        It says you will have a witness here to

14   testify, quote, "on Plaintiff's behalf regarding the

15   provisions of the estoppel agreement pertaining to

16   the assignment."

17        MR. BOSCH:  Are you saying that our

18   objections expand the scope of your notice,

19   Ms. Kropf?

20        MS. KROPF:  I'm not going to have a legal

21   argument.  Are you going to instruct him not to

22   answer if I ask him about Plaintiff's understanding

23   of Section 12 of the estoppel agreement?

24        MR. BOSCH:  I'm -- I'm asking you to show

25   me where in the notice you had asked for a witness to

Page 57

```
1              If you are not prepared to have a witness
2       testify on that, we can disagree about what your
3       objection means, and we can go to the Court later
4       about it.  If he's not prepared, then he's not
5       prepared.  Let's just get it on the record and move
6       on.
7              Q     (BY MS. KROPF)  Okay.  So, Mr. Camalier,
8       what was the plaintiff's understanding of the
9       provision in Section 12 that says, sort of in the
10      middle there, ". . .upon acquisition of the leasehold
11      estate by a deed or other transfer in lieu of
12      foreclosure, Lender may, without further consent of
13      Landlord, sell and assign the leasehold estate in the
14      Premises"?
15             MR. BOSCH:  Objection to form.  I'm going
16      to instruct you not to answer, Mr. Camalier.  It's
17      beyond the scope, and it's improper discovery,
18      consistent with the defendant's, IWA's, statement.
19             Q     (BY MS. KROPF)  Mr. Camalier, looking at
20      Section 12 of the estoppel agreement, what is
21      Plaintiff's understanding of the next sentence that
22      says, "Lender shall notify Landlord in writing of
23      such sale or assignment within 10 days of such sale
24      or assignment"?
25             MR. BOSCH:  Objection.  I'm going to
```

Page 58

1    instruct the witness not to answer.  It's beyond the

2    scope of the notice, and it's also improper

3    discovery, as stated by defendant, IWA.

4         Q     (BY MS. KROPF)  Mr. Camalier, what is

5    Plaintiff's understanding of the next sentence, which

6    says, "Provided any defaults of the Tenant have been

7    cured to the extent required by the terms of the

8    Lease, any assignee of the leasehold estate following

9    a foreclosure of the deed of trust by power of sale

10   or judicial foreclosure, or transfer by deed in lieu

11   thereof shall be liable to perform the obligations

12   imposed upon Tenant by this lease only during the

13   period such person has ownership of said leasehold

14   estate"?

15         MR. BOSCH:  Objection to form.  I'm going

16   to instruct you not to answer, Mr. Camalier.  It's

17   beyond the scope of the notice.  It's also improper

18   discovery, as determined by the Court, and as

19   acknowledged by the defendant, IWA.

20         Q     (BY MS. KROPF)  Mr. Camalier, could you

21   look at Section 19 of Exhibit 3, please.

22              What's the title of Section 19?

23         A     "Assignments and Subleases."

24         Q     And was this one of the provisions you were

25   referring to earlier when you said there were some

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 62

1    "someone unrelated to the assignor"?  What provisions

2    of the estoppel agreement does that understanding

3    come from?

4          A    I think in Section 19, Section 12.  I think

5    when you read them in the entirety, it's clear that

6    "third party" means an unrelated third party --

7          Q    Okay.

8          A    -- to the assignor.

9          Q    Where in Section 19 is there any language

10   that the third party must be unrelated to the

11   assignor?

12         A    I think it's common knowledge that when you

13   talk about a third party, it would mean someone

14   unrelated.

15         Q    Okay.  Where does that -- when you say

16   "common knowledge," where does that common knowledge

17   come from?

18         A    That's just my understanding of what third

19   party means.

20         Q    Okay.  All right.  And what does

21   "unrelated" mean?

22         A    Well, in this case, the assignee was owned

23   98 percent by the assignor, so -- furthermore, the --

24   the other partner had no financial obligations in the

25   assignee, which is RSD.  So I certainly think that

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 78

1       A    I've answered your questions in regards to

2   Section 19.

3       Q    (BY MS. KROPF)  Right.  And you were

4   explaining to me what Plaintiff's understanding is

5   of, for example, the phrase "third party"; is that

6   right?

7       A    I believe so.

8       Q    And we were also talking about what

9   Plaintiff's understanding of the meaning of "such

10  third party assumes all of the tenant's obligations

11  under the lease."

12          Were we talking about that a moment ago as

13  well?

14      A    We did.

15      Q    What do you understand the phrase

16  "automatically released" to mean?

17          MR. BOSCH:  Objection to form.

18      A    I -- I think the words are clear on their

19  statement.

20      Q    (BY MS. KROPF)  I'd like to hear you

21  explain them as Plaintiff's representative.

22          What do you -- what does Plaintiff

23  understand the phrase "automatically released" to

24  mean?

25          MR. BOSCH:  All right.  Mr. Camalier, this

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 79

```
 1    is where, again, Counsel is asking you to interpret

 2    the plain language of a contract.  So I'm going to

 3    instruct you not to answer.  This is improper, and

 4    it's beyond the scope.  And it's also inconsistent

 5    with the defendant's own instructions.

 6            MS. KROPF:  Where -- where did Rock Springs

 7    Drive make that instruction?

 8            MR. BOSCH:  IWA's instruction.  I'm sure

 9    you did too, Ms. Kropf, but --

10            MS. KROPF:  If you want to identify it for

11    me, you're welcome to, and we can take a look at it

12    during the break.

13            MR. BOSCH:  I'll identify it when I need to.

14            MS. KROPF:  I'm asking you to right now

15    because you just claimed it was an -- an objection

16    that I made for Rock Springs Drive, and I don't

17    believe I did.

18            MR. BOSCH:  Oh, I believe many times you

19    said that the contract speaks for itself.  Does that

20    ring a bell, Ms. Kropf?

21            MS. KROPF:  I'm not going to have a -- I'm

22    asking you to identify -- you --

23            MR. BOSCH:  I'm asking you:  Have you ever,

24    in this court, in these proceedings, said, "The

25    contract speaks for itself"?  Yes or no?
```

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 80

1          If I need to spend the time, I'll do it on

2     the record, searching.  I'll bring my laptop out, and

3     we'll search for your objections to interrogatories,

4     your objections to document requests, your statements

5     to the Court.

6          Are you telling me you have never objected

7     on grounds that the contract speaks for itself?  Yes

8     or no?

9          MS. KROPF:  Okay.

10     Q    (BY MS. KROPF)  Mr. Camalier, let's go on.

11          All right.  Now, we were looking at Section

12     19 of the estoppel agreement, and you were -- we were

13     explaining what third party means.  Let's go back to

14     -- to Section 12, all right?

15          All right.  Could you explain to me what

16     it -- what Plaintiff understands -- sort of halfway

17     down -- where it says, "lender may, without further

18     consent of landlord, sell and assign the leasehold

19     estate in the Premises."

20          MR. BOSCH:  Mr. Camalier, I think I've

21     allowed you to testify as much as you can at this

22     point about the plain language of the contract which

23     speaks for itself.  It's beyond the scope.  I'm going

24     to instruct you not to answer.

25          MS. KROPF:  So Mr. Bosch, is your position

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 81

1      that he was allowed to answer questions about the

2      meaning of Section 19, but not Section 12?

3                  MR. BOSCH:  He can follow my instructions

4      or not.

5                  MS. KROPF:  And are you instructing him to

6      answer -- not to answer questions about the meaning

7      of Section 12?

8                  MR. BOSCH:  I think the record speaks for

9      itself.  I've allowed -- I've given you plenty of

10     leeway, but it's evident you plan to spend hours

11     asking this witness for Plaintiff's understanding of

12     the plain language of a contract.  I think it's

13     improper.  I've all- -- I've given you some moderate

14     leeway, but that's it.

15                 MS. KROPF:  And you've given leeway for him

16     to answer questions about Section 19, but not -- not

17     Section 12.

18                 Why is that?

19                 MR. BOSCH:  Well, I don't have to answer

20     your questions.  If you'd like to examine him about

21     the plaintiff's negotiation and drafting of the

22     assignment provisions, he's here to testify.

23                 If you're asking for Plaintiff's

24     understanding of each and every clause of this

25     contract, I'm not.

30(b)(6) Rock Spring Plaza II, LLC                March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 82

1          MS. KROPF:  I'm asking him to talk about

2     Plaintiff's understanding of the clauses and

3     provisions that relate specifically to assignment in

4     Section 12.

5          And are you -- will you be instructing

6     Mr. Camalier not to answer my questions on those?

7          MR. BOSCH:  Can you point to me where in

8     the notice that was within the scope?

9          MS. KROPF:  We've gone back and forth.  We

10    disagree about the meaning of the notice and the

11    meaning of your response.

12         MR. BOSCH:  Right.

13         MS. KROPF:  I just want to make sure the

14    record's clear that you allowed the witness to

15    testify about the meaning of Section 19, but you are

16    instructing him not to answer similar questions about

17    the meaning of Section 12.

18         MR. BOSCH:  The record will speak for

19    itself.

20         MS. KROPF:  Okay.

21    Q    (BY MS. KROPF)  All right.  So

22    Mr. Camalier, do you understand that Rock Springs

23    Drive assumed all of the tenant's obligations under

24    the ground lease after the assignment?

25         MR. BOSCH:  Objection to form.

Page 98

1    to be jointly responsible with Rock Springs Drive for

2    ground rent payments after the assignment?

3          A    I think I've testified -- we've gone over

4    this before -- that Section 12 and Section 19, read

5    together, we believe requires that IWA still be on

6    the hook.  That they can't get off the hook by

7    assigning to an entity of which they're 98 percent

8    owner.

9          Q    Where does Section 12 say that?

10          A    I said "read together."

11          Q    Right.  I understand.  We've looked at

12    Section 19 in some detail.

13              Where does Section 12 say that?

14          MR. BOSCH:  Objection to form.

15          A    I -- I think I pointed out, again, both

16    Sections 12 and 19 basically do not release IWA from

17    their obligations under the ground lease.  And --

18    and, again, I think I've covered that in earlier

19    questions.

20          Q    (BY MS. KROPF)  Which part of Section 12

21    works with 12 -- with Section 19 that you said goes

22    to whether or not IWA agreed to be jointly

23    responsible for Rock Springs Drive for ground rent

24    payments?  Which part of Section 12?

25              MR. BOSCH:  Objection to form.

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 99

1        A      Section 12 requires our consent.  We did

2    not consent to the assignment.

3        Q      (BY MS. KROPF)  Where does it require your

4    consent?

5              MR. BOSCH:  Objection to form.

6              Mr. Camalier, I believe, again -- well, I'm

7    going to instruct you not to answer.  We're --

8    we're --

9              MS. KROPF:  You're going to instruct him

10   not to answer?

11             MR. BOSCH:  Yes.

12             MS. KROPF:  Okay.  All right.

13             Yeah, for the record, Topic Number 6 is,

14   "Any communications, offers, or agreements with any

15   person or entity to act as a guarantor or surety of

16   the ground lease, including as to any requirement of

17   a guarantor or surety for the assignment of the

18   ground lease."

19             So why are you instructing him not to

20   answer questions about what provisions of the

21   estoppel agreement support his position that it is a

22   surety?

23             MR. BOSCH:  I've stated it on the record at

24   least a half-dozen times now, Ms. Kropf.  I don't

25   need to do anything.

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 104

1    matters of the -- was Subject Matter 4, "Any defaults

2    of the ground lease by RSD or IWA."

3              Are you prepared to testify on that topic?

4         A    Which section is that on the notice?

5         Q    Number 4.

6              MR. BOSCH:  Hold on one second.  Okay.

7    Continue.

8         Q    (BY MS. KROPF)  Is this -- is Exhibit 5 the

9    notice that was sent by IWA to Plaintiff?  Was that

10   proper notice under the ground lease and estoppel

11   agreement of an assignment?

12             MR. BOSCH:  Objection to form.

13             Mr. Camalier, I'm going to instruct you not

14   to answer.  It calls for a legal conclusion.

15        Q    (BY MS. KROPF)  Was it -- was it a default

16   under the ground lease or the estoppel agreement for

17   IWA to have provided notice of its assignment in the

18   form contained in Exhibit 5?

19             MR. BOSCH:  Objection to form.

20             You can answer.

21        A    I don't recall what form it had to be in.

22        Q    (BY MS. KROPF)  Okay.  So was it a default?

23             Are you prepared to testify whether or not

24   that particular assignment -- notice of assignment in

25   Exhibit 5 is a default by IWA under the ground lease

Page 105

1    or the estoppel agreement?

2              MR. BOSCH:  Objection to the form.

3         A    I think I've testified that we're not aware

4    at this time whether that was -- was a -- whether

5    there were any defaults under the ground lease.  I

6    testified to that earlier today.

7         Q    (BY MS. KROPF)  Okay.  All right.  Now, in

8    the notice that's dated August 31st 2017; is that

9    right?

10             MR. BOSCH:  Objection to form.

11             MS. KROPF:  What is the objection to the

12   form?

13             MR. BOSCH:  When you say "the notice,"

14   you're assuming facts not in evidence.  You're making

15   a legal conclusion, and you know it's a disputed fact

16   issue.

17        Q    (BY MS. KROPF)  Do you have Exhibit 5 in

18   front of you, Mr. Camalier?

19        A    Yes, I do.

20        Q    Okay.  Could you turn to second -- the

21   second page of it?

22        A    Is that the second page?

23        Q    Yes.

24        A    Okay.

25        Q    All right.  Do you see on the second page

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 106

1    there it's dated August 31st, 2017?

2         A    I do.

3         Q    Is it Plaintiff's position that it didn't

4    get notice of the assignment from IWA to RSD of the

5    ground lease?

6              MR. BOSCH:  Objection to form.

7              And, again, this is -- to the extent you're

8    asking for him to draw a legal conclusion as to

9    whether this constitutes notice, I'm instructing him

10   not to answer.

11             Why don't you clarify the question,

12   Ms. Kropf?

13             MS. KROPF:  Mr. Bosch, I'm going --

14             MR. BOSCH:  I gave -- you asked me for the

15   clarification -- I gave you.  Why don't you just

16   correct the form error?

17             MS. KROPF:  Mr. Bosch, I'm going to ask you

18   again, many times during your deposition of

19   Mr. Feltman, you asked Ms. Davis not to give speaking

20   objections.  If you want to object as to form, you're

21   welcome to.  If you want --

22             MR. BOSCH:  But I instructed --

23             MS. KROPF:  Please stop interrupting me.

24             MR. BOSCH:  All right.  Ms. Kropf, please

25   keep your voice down.

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 258

1        MR. BOSCH:  Objection to form.

2        A    This was a discussion that Mr. Bosch had

3    with Mr. Barron.  And, again, as I testified earlier

4    today, in the normal course of business, it's usual

5    that the parties would identify themselves to each

6    other.  So, again, this is just another -- another

7    repeat in asking for them to identify themselves.

8        Q    (BY MS. KROPF)  My question was different,

9    sir.

10       My question is whether or not the ground

11   lease requires the tenant, under the ground lease, to

12   provide the landlord with the tenant's identity?

13       MR. BOSCH:  Objection to form.

14       A    We believe that under the ground lease

15   there's a requirement for both parties to act in good

16   faith with dealing with each other, and that that --

17   this request is encompassing that principle.

18       Q    (BY MS. KROPF)  Okay.  Is it encompassed

19   anywhere else in the ground lease other than this

20   duty of good faith that you just identified?

21       MR. BOSCH:  Objection to form.

22       A    There may be.  I don't know specifically

23   which section of the ground lease that may be in --

24       Q    (BY MS. KROPF)  Okay.

25       A    -- at this moment.

Page 259

```
 1         Q     Let's take a look at it then, because this
 2    is an important point.
 3               So Exhibit 2 is the ground lease.   Other
 4    than the -- the good faith that you identified, which
 5    provision of the ground lease requires the tenant,
 6    under the ground lease, to provide the landlord with
 7    the tenant's identity?
 8               MR. BOSCH:  Objection to form.
 9               MS. KROPF:  What's the basis of that?
10               MR. BOSCH:  You're asking him for a legal
11    conclusion, and at this point, given that, you can't
12    even identify -- see the problem.
13               I'm going to instruct you not to answer.
14               This is, again, your efforts to have this
15    witness testify as to the legal obligations of the
16    ground lease, which is improper testimony.  It's
17    outside the scope, and it's also inconsistent with
18    the objections lodged by IWA in this lawsuit.
19         Q     (BY MS. KROPF)  So to be clear, I'm not
20    asking for a legal conclusion, Mr. Camalier.  So I'm
21    asking, in the -- the letter it -- the landlord is
22    asking for information about the tenant's identity.
23               And my question to you is, where in the
24    ground lease does the ground lease require the tenant
25    to provide that information to the landlord?
```

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 260

1          MR. BOSCH:  I'm going to object, and again,

2     instruct not to answer.  This is precisely what the

3     Judge said was improper.

4          MS. KROPF:  Okay.  All right.

5     Q     (BY MS. KROPF)  Do you see in Mr. Bosch's

6     letter of February 22nd, 2018, he also says, in that

7     last paragraph of the letter, "Landlord has asked me

8     to follow up with a second request for information to

9     assignee's identity and intentions"?

10          Do you see that?

11     A     Yes, I do.

12     Q     Okay.  Where in the ground lease does the

13     ground lease require the tenant to provide

14     information about its intentions to the landlord?

15          MR. BOSCH:  Objection.  Same instruction.

16          MS. KROPF:  So you're instructing him not

17     to answer that one as well?

18          MR. BOSCH:  Well, you're asking him where

19     in the ground lease does it provide X.  The ground

20     lease speaks for itself, which, again, is language

21     that you've used.  The Court has already specifically

22     addressed -- and I can recite the Court's language,

23     if you'd like -- that it is improper to ask these

24     witnesses questions about their interpretation or

25     understanding of a contract or a legal document, and

30(b)(6) Rock Spring Plaza II, LLC                March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 261

1      that's what you're asking him.

2              MS. KROPF)  Okay.  So you're instructing

3      him not to answer that question?

4              MR. BOSCH:  It's outside the scope, so yes.

5              MS. KROPF:  So there is a topic about

6      Landlord's communications with Rock Springs Drive

7      about the assignment.  That's one of the scope.

8      but --

9              MR. BOSCH:  Yes.

10              MS. KROPF:  -- your -- your -- your

11      position is that asking where in the ground lease it

12      requires the tenant to provide that information is

13      outside the scope?

14              MR. BOSCH:  Yes.

15              MS. KROPF:  Okay.

16              MR. BOSCH:  And do you have a contrary

17      view?

18              MS. KROPF:  I do, but I don't think we have

19      to debate on the record.  We can get it in front of

20      the Court.

21              MR. BOSCH:  Yes.

22          Q   (BY MS. KROPF)  All right.  Now,

23      Mr. Camalier --

24          A   Thank you.

25              (Deposition Exhibit 13 was marked.)

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 333

1      Q     Yes.  Do you see Paragraph 6?

2      A     Yes.

3      Q     And it says, "Jane Doe defendants" --

4      A     Yes.

5      Q     -- "are certain indi- -- unknown

6    individuals and entities who directed the actions

7    given rise -- giving rise to the fraud conveyance and

8    who personally stand to gain financially from the

9    fraudulent conveyance."

10           Do you see that?

11     A     Yes.

12     Q     Okay.  And who are the identity of the Jane

13   Doe defendants?

14     A     Again, right now we're in the middle of

15   discovery, and depending on the outcome of that

16   discovery, we'll be able to identify the Jane Doe

17   defendants after we've completed our discovery.

18     Q     Are you prepared to testify today about the

19   identity of any Jane Doe named in Paragraph 6 of the

20   second amended complaint, or are you not prepared to

21   testify about that today?

22           MR. BOSCH:  Objection to form.  He just did

23   testify to that.

24     A     I think I've te- -- I testified that we

25   will wait until discovery is completed before we're

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 334

1    able to identify the Jane Doe defendants.

2        Q    (BY MS. KROPF)  All right.  So will you

3    appear for another deposition on the last day of

4    discovery so we can ask you this question about Topic

5    Number 9, the identity of any Jane Doe defendants?

6            MR. BOSCH:  Objection to form.  Instruct

7    you not to answer.

8            MS. KROPF:  Will you have him appear for

9    another deposition so we can get the answer to that

10   question when discovery is done, since he needs to

11   wait until then?

12           MR. BOSCH:  I'll take it under advisement.

13       Q    (BY MS. KROPF)  Okay.  So sitting here

14   today, though, as the corporate representative, can

15   you identify any Jane Doe defendants that are -- that

16   are alleged in Paragraph 6 of the second amended

17   complaint?

18       A    I believe we've named a number of parties.

19   Again, I know -- as I understand it, Transamerica

20   still is -- maybe is -- there's a tolling agreement.

21   So I believe Transamerica is still a potential Jane

22   Doe.  And, again, there may be others.

23       Q    But you're not prepared today to testify

24   about the identity of any other Jane Doe defendant as

25   alleged in Paragraph 6 of the second amended

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 335

1    complaint; is that right?

2         A    As I indicated, there's discovery ongoing,

3    and until that discovery is concluded, I'm not able

4    to tell you at this point in time what other Jane Doe

5    defendants there may be.

6         Q    Could you -- could you pull out Exhibit 56,

7    which is the 30(b)(6) notice, please.  It's probably

8    at the very bottom of that stack.

9         A    Okay.  I've got it.

10        Q    Okay.  Are there any other topics in that

11   30(b)(6) notice that you are not prepared to testify

12   on today because discovery has not concluded?

13             MR. BOSCH:  Objection to form.  I think

14   you're going to have to ask him specific questions

15   and not ask him to anticipate what your questions may

16   be.

17        Q    (BY MS. KROPF)  No.  I'm just asking

18   whether or not there's any of the -- any of the other

19   topics on that list that you're not prepared to

20   testify about because discovery is not concluded?

21             MR. BOSCH:  Objection to form.

22        A    Again, I think I'm capable of testifying to

23   everything.

24        Q    (BY MS. KROPF)  Well, we got to Topic

25   Number 9, the identity of any Jane Does, you said you

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 336

1    can't answer that question until discovery is

2    concluded.

3           A     That's correct.

4           Q     Okay.  And I'm asking you, is that true for

5    any of the other topics on that list?

6                 MR. BOSCH:  Objection to form.

7           A     I don't know.  If you want to direct me to

8    a specific paragraph.

9           Q     (BY MS. KROPF)  Are there any of them that

10   you need to wait for discovery to be finished to --

11   to testify about?

12                MR. BOSCH:  Objection to form.  He asked

13   you to direct him to a specific --

14                MS. KROPF:  How about Topic 1?

15                MR. BOSCH:  This is drafting and

16   negotiation of the ground lease?

17          Q     (BY MS. KROPF)  Do you need to wait for

18   conclusion of discover to testify about that?

19                MR. BOSCH:  And to be clear, to testify

20   about the drafting and negotiations of the ground

21   lease regarding the provisions of the ground lease

22   pertaining to the assignment, correct?

23                MS. KROPF:  That's what your response is,

24   yes.

25                MR. BOSCH:  Yes.

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 353

1           MR. BOSCH:  Did you hear the question?

2     A     So did I advise -- will you repeat it?

3     Q     (BY MS. KROPF)  Yeah.  Did the plaintiff

4     let the landlord -- let the lender know that it

5     believed there had been a fraudulent conveyance of

6     the ground lease?

7           MR. BOSCH:  Objection to form.  And can you

8     put that in time?

9           MS. KROPF:  Between the time of the

10    assignment and the institution of this litigation in

11    June of 2020.

12          MR. BOSCH:  Objection to form.

13    A     I don't recall that we did.

14    Q     (BY MS. KROPF)  That debt was secured, in

15    part, by the ground rent payments, right?

16          MR. BOSCH:  Objection to form.  I'm going

17    to instruct you not to answer.  You don't have to

18    answer those questions.

19          MS. KROPF:  Because it's outside the scope?

20          MR. BOSCH:  Yes.  And it's improper

21    testimony, in accordance with the Court's rulings.

22          MS. KROPF:  How is it improper under the

23    Court's ruling.

24          MR. BOSCH:  Standby, and I'll read the

25    language.

30(b)(6) Rock Spring Plaza II, LLC                      March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 354

1        MS. KROPF:  Okay.  Let me know what page
2    you're reading from, please.
3        MR. BOSCH:  Okay.  This is Page 161, Lines
4    22 to 162, Line 14.  If you have the transcript, you
5    can read it -- read it yourself.
6        MS. KROPF:  Okay.
7        MR. BOSCH:  Also, I'll give you another --
8    well, never mind.  That's fine.  That's -- that's
9    sufficient.
10       Q    (BY MS. KROPF)  All right.  What were the
11   terms of the personal guarantee that was security for
12   the debt on the property?
13       MR. BOSCH:  Objection.  I'm going to
14   instruct you not to answer.  Beyond the scope and
15   improper testimony.
16       Q    (BY MS. KROPF)  Did the landlord, when it
17   took out that loan, provide -- or took out -- or
18   incurred that debt from ING, did the landlord give a
19   copy of the ground lease and the estoppel agreement
20   to the lender?
21       MR. BOSCH:  Objection to form.  Instruct
22   you not to answer.  Beyond the scope.  Improper
23   testimony.
24       Q    (BY MS. KROPF)  At the time of the
25   assignment in 2017, did the landlord give the lender

30(b)(6) Rock Spring Plaza II, LLC                March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 355

1    a copy of the ground lease and the estoppel

2    agreement?

3            MR. BOSCH:  Objection to form.  I'm going

4    to instruct you not to answer.  It's beyond the

5    scope.

6        Q    (BY MS. KROPF)  Did the plaintiff, at the

7    time of the assignment, have any communications with

8    the lender about the assignment of the ground lease

9    from IWA to RSD?

10           MR. BOSCH:  Objection to form.  Asked and

11   answered.

12       Q    (BY MS. KROPF)  You can answer it.

13       A    I think I've answered it.

14       Q    And I think the -- the answer was, you

15   don't remember?

16       A    I think it was "I don't recall."

17       Q    Okay.  When Plaintiff filed this lawsuit

18   saying that the assignment was a fraudulent

19   conveyance, did you give a copy of that to the

20   lender?

21           MR. BOSCH:  Objection to form.

22       A    I don't recall.

23       Q    (BY MS. KROPF)  Did the lender call the

24   loan?

25           MR. BOSCH:  Objection to form.  You don't

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 356

1    need to answer that question.  It's beyond the scope.

2              MS. KROPF:  Beyond the scope of the

3    30(b)(6)?

4              MR. BOSCH:  And -- and -- and beyond the

5    scope of proper discovery in accordance with the

6    Court's rulings.

7              MS. KROPF:  Okay.

8              MR. BOSCH:  Do you disagree?

9              MS. KROPF:  I'm just thinking about my next

10   question, Mr. Bosch.

11       Q    (BY MS. KROPF)  Did the plaintiff ever tell

12   the lender that the ground lease had been assigned

13   to, in your words, a sham entity?

14             MR. BOSCH:  Objection to form.  This

15   witness has already testified about his

16   communications.

17             MS. KROPF:  Well, this is a different

18   question.

19       Q    (BY MS. KROPF)  You can answer the

20   question.

21             Did the plaintiff ever tell the lender that

22   it believed that IWA had assigned the ground lease to

23   a sham entity?

24       A    I don't recall.

25       Q    Given that the ground rents were at least

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 357

1    part of the collateral for that loan, wouldn't the

2    plaintiff have had -- have had to tell the lender

3    that its collateral had been impaired by this

4    assignment to a sham entity?

5             MR. BOSCH:  Objection to form.  I'm going

6    to instruct you not to answer because it's beyond the

7    scope, and it's improper, in accordance with the

8    Court's ruling.

9             MS. KROPF:  Mr. Bosch, this is directly

10   within the scope.  I'm asking about his

11   communications with any other person about

12   Plaintiff's claim in the case, and Plaintiff's claim

13   in the case is that this is a sham entity.  And I'm

14   asking whether or not he communicated with the lender

15   about whether or not -- wheth- -- about Plaintiff's

16   claim that this is a sham entity.

17            Are you instructing him not to answer that

18   question?

19            MR. BOSCH:  No.  He's already answered that

20   question.

21            MS. KROPF:  No.  You just -- are you

22   instructing him not to answer it?

23            MR. BOSCH:  No.  He answered the question.

24            MS. KROPF:  I must -- could -- could we go

25   back and see if he answered that question?

30(b)(6) Rock Spring Plaza II, LLC                March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 361

1        Q    Do you believe that the assignment from IWA
2   to RSD made it less likely that the plaintiff would
3   receive its ground rent payments?
4        A    Yes.
5        Q    And even though those ground rent payments
6   were part of the collateral for this loan, your
7   testimony is that you don't remember whether or not
8   Plaintiff let the lender know about the assignment?
9             MR. BOSCH:  Objection to form.
10       A    That's my testimony.
11       Q    (BY MS. KROPF)  Is that something that you
12  believe you were required to let the lender know,
13  that its collateral had been made less valuable?
14            MR. BOSCH:  Objection to form.  You don't
15  need to answer that question.  It's beyond the scope,
16  and it's improper discovery.
17            MS. KROPF:  So I'm asking directly about
18  his communications with the lender about his claims.
19            MR. BOSCH:  No.  You're asking him --
20            MS. KROPF:  Are you instructing him not to
21  answer?
22            MR. BOSCH:  You're asking him what he
23  believes the obligations are.  That's improper.
24       Q    (BY MS. KROPF)  Okay.  Did Plaintiff have
25  an obligation to let the lender know if its

1    collateral for the loan had been impaired?

2          MR. BOSCH:  Ms. Kropf, you can't just

3    rephrase the same improper question.  It's an

4    improper question.

5          I'm going to instruct you not to answer,

6    Mr. Camalier.  It's beyond the scope.  It's improper

7    testimony.  It doesn't pertain to any of the

8    defenses.  It's not a defense to the fraudulent

9    conveyance claim here.  And, again, it's inconsistent

10    with the Court's rulings.

11          Do you disagree?

12          MS. KROPF:  I do.

13          MR. BOSCH:  So what's the basis for your

14    disagreement that it's inconsistent with the Court's

15    rulings?

16          MS. KROPF:  I don't need to make it on the

17    record here today, Mr. Bosch.  I disagree with you.

18    You've instructed him not to answer.  If you'd like

19    to have a discussion off the record, we can do that,

20    but I believe I've stated why I believe it's

21    relevant.

22          MR. BOSCH:  Okay.  Since Mr. Camalier will

23    be coming back tomorrow, I'll ask you, overnight, to

24    send me the basis for your contention that it is

25    proper to examine this witness on the terms and his

30(b)(6) Rock Spring Plaza II, LLC                     March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 363

1    understanding of the obligations under the loan.

2              MS. KROPF:  I'll take that under

3    advisement.

4              MR. BOSCH:  Thank you.

5         Q    (BY MS. KROPF)  All right.  Does the

6    landlord still own money -- owe money to ING under

7    the debt that was in place when the assignment

8    happened?

9              MR. BOSCH:  I'll allow you to answer that

10   question.

11        A    No.

12        Q    (BY MS. KROPF)  When was that debt

13   extinguished?

14             MR. BOSCH:  I'm going to object and

15   instruct you not to answer.  It goes beyond the

16   scope, and it's improper discovery.

17        Q    (BY MS. KROPF)  So I believe you said -- I

18   think I asked you, did -- did Plaintiff let the

19   lender know about the assignment of the ground lease

20   from IWA to RSD in -- at the time of the assignment,

21   and I believe you said you don't recall.

22             How about in 2018?  Did the lender -- did

23   the plaintiff let the lender know about the

24   assignment from IWA to RSD?

25        A    I don't recall.

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 364

1       Q      How about in 2019?

2       A      I don't recall.

3       Q      So even around the time when your lawyer

4    was sending a letter saying that this was a

5    fraudulent conveyance, you don't recall whether or

6    not you let the lender know that you believed the

7    collateral for its loan had been assigned to -- to

8    someone fraudulently?

9              MR. BOSCH:  Objection to form.

10   Mischaracterizing the test- -- the letter itself,

11   Ms. Kropf.

12      Q      (BY MS. KROPF)  You can answer it.

13             MR. BOSCH:  Do you want to refer the

14   witness to a particular letter, a particular time?

15      Q      (BY MS. KROPF)  Do you know which letter

16   I'm speaking about, Mr. Camalier?

17      A      No.  If you could help me.

18      Q      The June 6th, 2019, letter.

19             Do you see on the second page?  Do you see

20   that it says, "What increasingly appears to be a

21   fraudulent conveyance"?  Do you see that?

22      A      Yes, I do.

23      Q      Okay.  So in June of 2019, your lawyer is

24   telling Rock Springs Drive that it believes that this

25   is a fraudulent conveyance, right?

30(b)(6) Rock Spring Plaza II, LLC                     March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 365

1          MR. BOSCH:  Objection to form.

2      A    I don't -- I think the letter speaks for

3   itself of what Mr. Bosch indicated.

4      Q    (BY MS. KROPF)  And he indicated that it

5   was increasingly -- "This increasingly appears to be

6   a fraudulent conveyance," right?

7      A    That's correct.

8      Q    Okay.  So in June of 2019, did Plaintiff

9   let the landlord know -- or let the lender know --

10   let me start that over.

11          In June of 2019, did Plaintiff let the

12   lender know that there increasingly appeared to be a

13   fraudulent conveyance of the ground lease which was

14   the collateral for that loan?

15          MR. BOSCH:  Objection to form.

16      A    I don't recall.

17      Q    (BY MS. KROPF)  Is there anything that

18   would help you recall?

19          MR. BOSCH:  Objection to form.

20      A    Not that I know of.

21      Q    (BY MS. KROPF)  If you had made such a

22   communication, would you make it in writing?

23          MR. BOSCH:  Objection to the form.

24      A    I don't recall.

25      Q    (BY MS. KROPF)  When Plaintiff would

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 366

1    communicate with the lender about the loan, would it

2    usually be by phone call or in writing?

3              MR. BOSCH:  Objection to form.  I'm going

4    to instruct you not to answer.  This goes beyond the

5    scope.  It's improper testimony.

6              MS. KROPF:  Well, I'm asking to try to find

7    out what would be there to help prepare, so perhaps

8    you could prepare him tonight on the topic that is

9    identified in the notice.

10             So I'm trying to find out whether or not

11   there's anything that would help on that front, but

12   if you're going to instruct him not to answer, then

13   we can deal with that later.

14             MR. BOSCH:  Yeah.  You're asking for how

15   would a borrower typically communicate with a lender.

16             MS. KROPF:  Yes.

17             MR. BOSCH:  It's beyond the scope.

18             MS. KROPF:  And the -- the point of that,

19   just so the record is clear, is that I'm trying to

20   find out whether there's anything that would help him

21   prepare on this topic, because he -- what he's

22   answered, when I asked about communications with the

23   lender about the claims that Plaintiff has, he said

24   "I don't know" several times.

25             MR. BOSCH:  Okay.

30(b)(6) Rock Spring Plaza II, LLC                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 367

1          MS. KROPF:  So what I'm --

2          MR. BOSCH:  Fair enough.

3          MS. KROPF:  Hold on.

4          MR. BOSCH:  I understand.  I'm going to

5     allow you to answer --

6          MS. KROPF:  Hold -- hold -- hold --

7     Mr. Bosch, if you could -- if you could let me answer

8     -- let me finish my statement.

9          MR. BOSCH:  Go right ahead.

10          MS. KROPF:  Okay.  What I'm trying to find

11     out is whether there's anything that would help him

12     prepare for that topic of the scope of his communica-

13     -- Plaintiff's communications with the lender about

14     whether or not they let the lender know that the

15     assignment happened or that the collateral that the

16     lender held had been impaired.

17          MR. BOSCH:  I understand that's your

18     position, Ms. Kropf.

19          MS. KROPF:  Okay.  And you're instructing

20     him not to answer that question?

21          MR. BOSCH:  No -- well, that question, yes.

22     But you can ask your question, and I'll -- I'll hear

23     it.

24          Q    (BY MS. KROPF)  I believe the question was,

25     when you would communicate with the lender -- I'll