# EXHIBIT D

Page 1

1           IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
2                    CIVIL DIVISION
3           Civil Action No:  8:20-cv-01502-PJM
4

ROCK SPRING PLAZA II, LLC,

5
            Plaintiff,

6
vs.

7

INVESTORS WARRANTY OF AMERICA, LLC,

8    et al.,
9           Defendants.
10   _____
11
12
13      VOLUME II - 30(b)(6) VIDEOTAPE DEPOSITION OF
            ROCK SPRING PLAZA II, LLC,
14            CHARLES A. CAMALIER, III
15
16
            Wednesday, March 22, 2023
17          8:57 a.m. to 10:56 a.m.
18
19
20
            Stenographically reported by:
21            Shauna T. Dietel, RPR
            Registered Professional Reporter
22
23
24
25

30(b)(6) Charles A. Camalier , III, Vol. II          March 22, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 13

1      A    Yes.  Under Section 7.3, the tenant is

2  required to post a bond or other security to assure

3  completion of replacement building.

4      Q    (BY MS. KROPF)  Is the building already

5  built on the property?

6      A    There is a building, but the ground lease

7  contemplates other buildings could be built.

8      Q    Okay.  Did you ever ask RSD to post a bond?

9      A    No.

10      Q    During the negotiations for the ground

11  lease -- well, let me back up.

12          Is there any --

13      A    There might be other sections that --

14      Q    Why don't you keep looking.  Let's make

15  sure we got all of them.  Is there anyplace else in

16  Exhibit 2 where there's a provision that any future

17  assignee of the ground lease must have a certain

18  capitalization level?

19          MR. BOSCH:  Can I have the question read

20  back?

21          (The court reporter read the last

22  question.)

23          MR. BOSCH:  Okay.  I'll object to the form

24  of the question.

25      A    Yes.  Another section, 5.4 --

30(b)(6) Charles A. Camalier , III, Vol. II                  March 22, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 14

1       Q      (BY MS. KROPF)  Uh-huh.

2       A      -- requires that tenant has to furnish such

3   security as landlord may reasonably require.

4       Q      Did the landlord require RSD to provide any

5   security when RSD became the tenant in August of

6   2017?

7              MR. BOSCH:  Objection to form.

8       A      No.

9       Q      (BY MS. KROPF)  Okay.  And since August of

10  2017, has the landlord required RSD to post any

11  security?

12      A      No.

13      Q      Any other provisions of the ground lease in

14  Exhibit 2 that have a provision that a future

15  assignee of the ground lease must have a certain

16  capitalization?

17      A      I think I've mentioned a number.  There may

18  be others that I can't recall --

19      Q      Please take --

20      A      -- at the present time.

21      Q      Please take your time.  I'm not asking for

22  --  as a member, you're the corporate representative.

23  This is about the negotiation of the ground lease.

24  You said that there were provisions in there from the

25  negotiation that there was a provision requiring an

Page 15

1    assignee to have a certain capitalization level.

2    You've identified two provisions.

3              Are there any more?

4              MR. BOSCH:  Objection to form.

5        A    I can't recall any other negotiations in

6    regard to the ground lease; however, there may be

7    provisions in the ground lease that I don't recall

8    the negotiations of those provisions now.

9        Q    (BY MS. KROPF)  So you're not prepared to

10   talk about the negotiations over the ground lease on

11   a provision that any future assignee of the ground

12   lease must have a capitalization level?

13       A    No --

14             MR. BOSCH:  Objection to form.

15       A    No.  I did.  I --

16       Q    (BY MS. KROPF)  Well, you just said you

17   didn't remember --

18       A    -- explained -- excuse me.

19             I explained to you that I don't recall any

20   specific negotiations concerning your question in

21   regard to when the ground lease was negotiated

22   between the parties.

23       Q    Okay.  And to your -- when you -- you did

24   answer my question that there were provisions in

25   Exhibit 2 that required a future assignee of the

30(b)(6) Charles A. Camalier , III, Vol. II          March 22, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 16

1   ground lease to have a certain capitalization level.

2          Do you remember testifying to that?

3      A    I did.  But I believe the question is

4   whether -- as I understand it now, was during

5   negotiations, were there discussions about security

6   or capitalization that the tenant had to offer.  And

7   I do not recall any discussions at the time of the

8   negotiations in that regard, other than what I've

9   mentioned to you already.

10     Q    Okay.  And I'm exploring your answer that

11  there are provisions in Exhibit 2 that require a

12  future assignee of the ground lease to have a cap- --

13  a certain capital -- hold on, sir -- have a certain

14  capitalization level.  And you've pointed to two, and

15  I want to make sure, as the corporate representative,

16  there are any more provisions in the ground lease to

17  explain the answer you gave under oath.

18         MR. BOSCH:  Hold on a second, Ms. Kropf.  I

19  think now you've gone beyond the scope.  You asked

20  him before whether he recalls negotiating any

21  provisions that pertain to the capitalization of the

22  tenant.  He referenced two provisions.

23         Then you asked him, so you're not prepared

24  to testify today about the -- the other provisions of

25  the ground lease.  That's different.  That's a

Page 17

1   different question, Ms. Kropf.

2           So are you -- are you -- are you suggesting

3   that this witness was not prepared to testify on the

4   negotiations of the provisions?

5           MS. KROPF:  Yes, I am.

6           MR. BOSCH:  Well, he just gave you the

7   testimony.  You may not like it, but he gave you the

8   testimony of the provisions that he recalls

9   negotiating that pertain to the limitations and

10  capitalization of the tenant.  And then he said, I

11  don't recall others.  You'll have to live with that

12  testimony, but you can't say he's not prepared to

13  testify.

14          MS. KROPF:  Well, I -- I think I will be --

15  I'll explain that to the Court.  We don't need to

16  argue it.

17          So why don't I go to my next question.

18      Q   (BY MS. KROPF)  During the negotiations

19  over the ground lease, Mr. Camalier, did the landlord

20  request that the ground lease include a provision

21  that the landlord must approve every assignment of

22  the ground lease in advance?

23          MR. BOSCH:  Objection to form.

24      A   I don't recall negotiations on that point.

25      Q   (BY MS. KROPF)  During the negotiations for

Page 18

1    the ground lease, did the landlord request that

2    ground lease include a provision that the tenant

3    could not assign the ground lease to an entity in

4    which the tenant had an ownership interest?

5            MR. BOSCH:  Objection to form.

6       A    I don't recall that in negotiations of the

7    ground lease.

8       Q    (BY MS. KROPF)  During the negotiations for

9    the ground lease, did the landlord request that the

10   ground lease include a provision that any assignee of

11   the ground lease must disclose its owners or members

12   to the landlord?

13           MR. BOSCH:  Objection to form.

14      A    I don't recall any negotiations in regard

15   to that provision.

16      Q    (BY MS. KROPF)  During the negotiations for

17   the ground lease, did the landlord request that the

18   ground lease include a provision that an existing

19   tenant must disclose to the landlord its ownership

20   interest in an assignee?

21           MR. BOSCH:  Can I hear that back again?

22      Q    (BY MS. KROPF)  During the negotiations for

23   the ground lease, did the landlord request a

24   provision that the current tenant must disclose to

25   the landlord -- landlord its ownership interest --

30(b)(6) Charles A. Camalier , III, Vol. II          March 22, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 37

1    that we had in the park.

2       Q    And who -- who -- who -- what did you mean

3    when you just said "how much vacant space we had in

4    the park"?  Who's the "we"?

5       A    Or --

6       Q    In your -- in your answer.

7       A    I don't -- I don't mean "we."  I mean --

8    I'm sorry.  That -- how much vacant space there was

9    in the park.

10      Q    And the four properties that he identifies,

11   do all four of those -- does the -- does the -- does

12   the Camalier family own the -- the -- the underlying

13   real estate, the fee simple?

14           MR. BOSCH:  Objection to form.

15      A    No.

16      Q    (BY MS. KROPF)  Okay.  Which one of those

17   did the Camalier family not own?

18           MR. BOSCH:  Objection to form.

19      A    I think 6560, and it says 6650, but I don't

20   -- I don't think that's the correct address.

21      Q    (BY MS. KROPF)  Is it your testimony that

22   the plaintiff does not own the underlying real estate

23   under 6560 Rock Spring?

24           MR. BOSCH:  Objection to form.

25      A    That was not your question.

30(b)(6) Charles A. Camalier , III, Vol. II          March 22, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 38

1      Q     (BY MS. KROPF)   No.   I'm asking you a

2   different question, sir.

3           Is it your testimony that --

4      A     You said it was my testimony.   You never

5   asked me the question before.   It's a different

6   question.

7      Q     Mr. Camalier, is it your testimony that the

8   plaintiff does not own the underlying real estate in

9   -- for 6560 Rock Spring?

10     A     I don't think I've answered that question.

11   You didn't ask me that question.

12     Q     I just asked it.   Could you answer it,

13   please?

14          MR. BOSCH:   Well, hold on a second.   Why

15   don't you -- instead of saying "is it your

16   testimony," why don't you ask him the question.

17          MS. KROPF:   I did.   I can restate it.

18     Q     (BY MS. KROPF)   Did you -- was my question

19   confusing?

20     A     My testimony was -- you mischaracterized --

21          MR. BOSCH:   You don't need to explain it.

22   She just needs to ask you a more clear question.

23   And, again, the rules of the deposition are, if you

24   don't understand it, you can tell her you don't

25   understand it.   If I object to the form, also, that

30(b)(6) Charles A. Camalier , III, Vol. II          March 22, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 39

1    gives Ms. Kropf an opportunity to fix the errors in

2    her question.

3          Q      (BY MS. KROPF)  Was my -- do you need me to

4    re- -- re-ask my question?

5          A      You can --

6          Q      Okay.

7          A      -- if you'd like.

8          Q      Does the Cama- -- did the Camalier family

9    in -- as of September 1st, 2020, own the underlying

10   real estate at 6560 Rock Spring?

11         A      I don't understand your question.

12         Q      Which part don't you understand?

13         A      Under -- "the underlying real estate."

14         Q      Okay.  Did the -- as of September 1st,

15   2020, did the Camalier family own fee simple the real

16   estate loaned at -- or located at 6560 Rock Spring?

17                MR. BOSCH:  Objection to form.

18         A      No.

19         Q      (BY MS. KROPF)  Do you know who did?

20                MR. BOSCH:  Objection to form.

21         A      There was no one party that owned fee

22   simple.

23         Q      (BY MS. KROPF)  Okay.  Was there -- do you

24   know whether there was an entity that owned it -- the

25   property under 6560 in fee simple?

Case 8:20-cv-01502-PJM   Document 347-4   Filed 08/29/23   Page 12 of 28

30(b)(6) Charles A. Camalier , III, Vol. II          March 22, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 40

1           MR. BOSCH:  Objection to form.

2      A    No.

3      Q    (BY MS. KROPF)  All right.  Does -- did the

4  plaintiff own the fee simple property interest at

5  6560 Rock Spring as of September 1st, 2020?

6           MR. BOSCH:  Objection to form.

7      A    No.

8      Q    (BY MS. KROPF)  Do you know who did?

9           MR. BOSCH:  Objection to form.

10     A    No.

11     Q    (BY MS. KROPF)  Okay.  All right.  So your

12 testimony, if I -- if I understand correctly, the

13 Camalier family did not -- the plaintiff did not own

14 the fee simple real estate under 6560 and did not

15 have the right to sublease it, the building, correct?

16          MR. BOSCH:  Objection to form.

17     A    It's a compound question.

18     Q    (BY MS. KROPF)  Can you answer it?

19     A    No.

20          MR. BOSCH:  Hold on.

21     Q    (BY MS. KROPF)  You can't?  Okay.

22          MR. BOSCH:  Hold on.  Mr. Camalier, let me

23 hear the question back again and --

24          MS. KROPF:  I -- I can re-ask it.

25          MR. BOSCH:  Thank you.

30(b)(6) Charles A. Camalier , III, Vol. II          March 22, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 41

1          MS. KROPF:  That's fine.  If he doesn't

2     understand it, I can -- I can re-ask it.

3          Q    (BY MS. KROPF)  So what your test- -- I

4     believe you just testified that the Camalier family

5     does not own the fee simple real estate under 6560

6     Rock Spring.  Do I have that correct?

7          MR. BOSCH:  Objection to form.

8     A    Could you ask the question again?

9          Q    (BY MS. KROPF)  Sure.

10          I believe you just testified that the

11     Camalier family does not -- sorry.

12          I believe you just testified that the

13     plaintiff does not own the fee simple property

14     interest under 6560 Rock Spring; is that correct?

15          MR. BOSCH:  Objection to form.

16     A    Correct.

17          Q    (BY MS. KROPF)  Okay.  And -- all right.

18          So do you know why Mr. DeCain was e-mailing

19     a real estate broker about 6560 Rock Spring?

20     A    No.

21          Q    Could you turn to the second page of that

22     e-mail.  Do you see Mr. DeCain's e-mail to

23     Mr. Hutchens on August 26th at 6:40 a.m.?

24     A    Yes.

25          Q    And Mr. DeCain says, "Tim, do you have a

Page 54

1       A     I -- I wouldn't expect it in a property

2    that's -- that -- if someone was marketing it for

3    sale or lease.

4       Q     You wouldn't expect a commercial -- you

5    wouldn't expect a commercial property to remain

6    unlocked when there aren't any tenants in the

7    building?

8       A     I -- I think I testified to that yesterday.

9       Q     Okay.  Okay.

10            (Deposition Exhibit 66 was marked.)

11            MR. BOSCH:  Thank you.

12      Q     (BY MS. KROPF)  Mr. Camalier, I've -- I've

13   shown you what's been marked as Exhibit 66.  Do you

14   see at the top that it's an e-mail from Scott DeCain

15   to you?

16      A     Yes.

17      Q     And do you see that it's dated November

18   25th, 2020?  Is that right?

19      A     Correct.

20      Q     And is Mr. DeCain forwarding you the rest

21   of the e-mail message in this e-mail?

22      A     It appears that way.

23      Q     Okay.  So from looking at Exhibit 66,

24   you're able to understand that Mr. DeCain forwarded

25   the rest of that e-mail to you; is that right?

Page 55

1      A     That this exhibit -- it -- it looks like it

2    does, but I can't tell you for sure.

3      Q     Okay.  When you say "it looks like it

4    does," is -- is that because near the top of the --

5    just above Brian Sullivan's name on the first page,

6    it says, "forwarded message?

7      A     No.

8      Q     No.

9            How could you determine whether or not this

10    was forwarded to you?

11      A     I -- I didn't.  I said it looks like it,

12    but I can't tell you for sure.

13      Q     What -- what on the -- what on Exhibit 66

14    supports your testimony that it looks like it was

15    forwarded to you?

16      A     It's just my judgment.

17      Q     Is there anything on the document that

18    supports your testimony that it looks like Mr. DeCain

19    forwarded you the e-mails below?

20      A     No.  But if you don't think it was

21    forwarded, I -- I'm -- I'll take your word for that,

22    if you don't think it was forwarded.

23      Q     I'm -- I'm -- you're the one who's

24    answering the questions here, sir.

25            Was -- from looking at this document, did

Page 56

1    Mr. DeCain forward you the rest of the e-mail chain

2    beginning with Mr. Sullivan's e-mail at 4:58 p.m.?

3         A    I have no way of independently knowing

4    that.

5         Q    Okay.  So from looking at this document,

6    you can't determine that it was forwarded to you?

7    That's your testimony?

8         A    I -- I -- I said that it appears to be, but

9    I can't tell you for sure.

10        Q    Okay.  All right.  So about two-thirds of

11   the way down, do you see where it says, on November

12   25th, 2020, at 4:46 p.m., M. Scott DeCain wrote -- do

13   you see that?

14        A    Yes.

15        Q    Brian -- he writes, "Brian, is it accurate

16   to assume that you did not introduce this concept to

17   the current ground lessee of 6560."

18             Do you see that?

19        A    I see that.

20        Q    Now, according to this e-mail, did Scott

21   DeCain write that?

22        A    I can't -- I can't tell because, again,

23   this is odd.  It doesn't look like normal e-mails.

24   Normally they have a -- a to and from, and -- and

25   this e-mail doesn't seem to have that.  So I -- I --

30(b)(6) Charles A. Camalier , III, Vol. II          March 22, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 57

1    this is different looking.

2        Q    Do you see the Bates number in the lower

3    right-hand corner?

4        A    Yes.

5        Q    This was produced by you, correct?

6            MR. BOSCH:  Objection to form.

7            MS. KROPF:  What's the -- what's the

8    objection to that?

9            MR. BOSCH:  "You."  It's not produced by

10   "you."  It was produced by --

11           MS. KROPF:  Well, he's testifying as the

12   corporate representative, so when I say "you," I mean

13   the plaintiff.

14           MR. BOSCH:  Okay.  And I'm -- I'm asking

15   you to clarify that.

16           MS. KROPF:  I didn't hear you ask to

17   clarify it.

18           MR. BOSCH:  Well, I -- I didn't -- you

19   didn't ask me to explain it.  I just did.  So maybe

20   you can clarify.

21       Q    (BY MS. KROPF)  Do you understand the

22   question, sir?

23           Was this -- was Exhibit 66 produced by you?

24       A    It appears that it was.  Not me, but it

25   appears that it was produced by Camalier.

Page 58

1      Q    Okay.  And so if we had the original e-mail

2   in native format, in -- in the Outlook format, would

3   you be able to determine whether or not it was -- who

4   -- who Mr. DeCain's e-mail was sent to?

5           MR. BOSCH:  Objection to form.

6      A    I don't know.

7           MS. KROPF:  Okay.  So we'd ask for a native

8   format e-mail of this, along with all the other

9   e-mails, because we're having difficulty with this

10  witness answering the questions.

11          MR. BOSCH:  No, you're not.

12          MS. KROPF:  Okay.  Well, we -- I disagree

13  with you, and I think we'll probably have to go to

14  Court on this, Mr. Bosch.

15          Would you like to speak with your client

16  outside about whether or not he can testify about

17  these e-mails and whether they were forwarded to him?

18          MR. BOSCH:  He is.  As you heard yesterday,

19  Mr. Camalier doesn't use a lot of e-mail.  He's just

20  a little confused by the format.  He's testified it

21  appears to have been, but you're trying to get him to

22  drill down like an IT expert here.

23          So we're not -- we're not objecting to your

24  examining this witness about the contents of the

25  documents, and he said it appears to have been

30(b)(6) Charles A. Camalier , III, Vol. II          March 22, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 71

1    Camalier entity to try to sell the property, correct?

2         A    No.

3         Q    And they didn't come to you, meaning the

4    plaintiff, right?

5         A    That's correct.

6         Q    Is there any requirement in the ground

7    lease that the assignee cannot be funded by an entity

8    that has an ownership interest in the assignee?

9              MR. BOSCH:  Objection to form.

10        A    Can you repeat the question, please?

11        Q    (BY MS. KROPF)  Is there any requirement in

12   the ground lease that the assignee cannot be funded

13   by an entity with an ownership interest in the

14   assignee?

15             MR. BOSCH:  Objection to form.

16        A    Are you asking me to give you my opinion of

17   the ground lease, or are you asking me about the

18   negotiation of the ground lease?

19        Q    (BY MS. KROPF)  I'm just asking you the

20   question.  If you don't understand it, let me know.

21             Is there -- let me ask it again.

22             Is there any requirement in the ground

23   lease that the assignee cannot be funded by an entity

24   with an ownership interest in the assignee?

25             MR. BOSCH:  Objection to form.

30(b)(6) Charles A. Camalier , III, Vol. II                       March 22, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 72

1          I think Mr. Camalier is right.  You're now

2    asking this witness to testify as to his

3    understanding of a legal document.  Is that the

4    question?

5          MS. KROPF:  You heard the question.  Do you

6    need it with read back to you, and are you objecting

7    and instructing him not to answer?

8          MR. BOSCH:  I will instruct him not to

9    answer.  It's beyond the scope.  It's improper

10   testimony, and it's being elicited against the

11   Judge's rulings, and is also contrary to Defendant

12   IWA's objections to discovery in this case.

13         MS. KROPF:  Okay.  I believe I asked if you

14   had found that Rock Springs Drive had raised those

15   same objections.  Did -- were you able to locate

16   that?

17         MR. BOSCH:  In fact, I asked you and I told

18   you when you had done so.  And you -- do you dispute

19   that --

20         MS. KROPF:  I do.

21         MR. BOSCH:  -- Ms. Kropf?

22    Q    (BY MS. KROPF)  Okay.  All right.  Mr. --

23         MR. BOSCH:  But, Ms. Kropf, I -- I

24   specifically referenced to you where you had raised

25   those objections in discovery, and you raised them

30(b)(6) Charles A. Camalier , III, Vol. II          March 22, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 73

1    with the Court.

2              So are you now saying that it's proper

3    testimony, contrary to the Court's ruling?  And I can

4    cite you, if you want, to the Court's ruling, to

5    elicit testimony from a lay witness as to his

6    understand of a legal document.

7              MS. KROPF:  So I disagree with your

8    character- --

9              MR. BOSCH:  Go ahead.

10             MS. KROPF:  Is it all right if I finish

11   what I was saying?

12             MR. BOSCH:  No.  No.  Please.

13             MS. KROPF:  Okay.  Thank you.

14             I disagree with your characterization of

15   what my question was.  I wasn't asking for a legal

16   opinion.  That's all I have to say on it.

17             MR. BOSCH:  Good.  And all right.

18        Q    (BY MS. KROPF)  Mr. Camalier, does -- does

19   the landlord have a right to dictate the purpose --

20   the business purpose of the tenant under the ground

21   lease?

22             MR. BOSCH:  Objection to the form.

23        A    Are you asking me about the negotiations of

24   the ground lease?

25        Q    (BY MS. KROPF)  I'm just asking the -- the

30(b)(6) Charles A. Camalier , III, Vol. II          March 22, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 74

1   question.  I wasn't referencing the negotiations.

2           Does the landlord have a right to dictate

3   the business purpose of the tenant under the ground

4   lease?

5           MR. BOSCH:  So, again, where is this within

6   the scope of the 30(b)(6) testimony?

7           MS. KROPF:  I believe's under Number 1, and

8   consistent with your response, it's about the

9   provisions of the ground lease.

10          Are you instructing him not to answer?

11          MR. BOSCH:  Well, actually, no.  The --

12   Topic 1 is the negotiation of the provisions of the

13   ground lease pertaining to the assignment.

14          MS. KROPF:  Okay.  And in addition, we have

15   a -- well, one, you responded that you would have a

16   witness prepared on the provisions of the ground

17   lease.  So that's my response to Number 1.  And --

18          MR. BOSCH:  And he's fully testified on

19   those issues.

20          MS. KROPF:  In addition, Number 5, one of

21   our topics is Plaintiff's demands, knowledge, or

22   claims regarding any requirement for a certain

23   capitalization level for Rock Springs Drive or type

24   of funding -- funding source for operations, or any

25   requirement that Rock Springs Drive used the building

Page 75

1    for a certain business.

2            And so I'm asking him about Plaintiff's

3    demand that there was a requirement that Rock Springs

4    Drive use the building for a certain business

5    purpose.

6            MR. BOSCH:  Okay.  And that's been covered

7    exhaustively.  So I'll allow the witness to testify,

8    but not as to the interpretation of the ground lease

9    or the interpretation of the estoppel agreement.

10       Q    (BY MS. KROPF)  Mr. Camalier, does the

11   landlord have a right to dictate the business purpose

12   of the tenant under the ground lease?

13           MR. BOSCH:  Objection to form.

14       A    Where is -- I'm sorry.  Where is that on

15   this list, so I can refresh my memory?

16       Q    (BY MS. KROPF)  Number 5 and Number 1.

17       A    Okay.  I'm sorry.  Can you repeat your

18   question?  I apologize.

19       Q    Let me do it for the third time.

20           Does the landlord have a right to dictate

21   the business purpose of the tenant under the ground

22   lease?

23           MR. BOSCH:  Objection to form.

24       A    I believe there's certain restrictions in

25   the ground lease as --

30(b)(6) Charles A. Camalier , III, Vol. II          March 22, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 76

1        Q    (BY MS. KROPF)  To the business purpose of
2    the tenant?
3        A    Yes.  They have to -- I believe that's in
4    the ground lease.
5        Q    Okay.  Could you point to me where?
6             MR. BOSCH:  So while we're waiting,
7    Ms. Kropf, do you tend to seek relief from the Court
8    today so we can avoid burdening Mr. Camalier?
9             MS. KROPF:  No.  I want to take a look at
10   the transcript first to make sure I'm correct.
11            MR. BOSCH:  Okay.  Fair enough.
12            MS. KROPF:  And then we can raise all the
13   issues that we might need to raise about his lack of
14   preparation on certain topics and give it all at
15   once.
16            MR. BOSCH:  So it's clear, I'll just
17   dispute your characterization.
18       A    Yes.  There are restrictions in 5.1 and
19   7.1, and there may be others.
20       Q    (BY MS. KROPF)  Okay.  Any others?  5.1 and
21   7.1, and any others?
22       A    Well, there are a lot of obligations under
23   the ground lease.  I can't go through all the of them
24   now, but those are a couple.
25       Q    Well, I can be patient.  Are there any

30(b)(6) Charles A. Camalier , III, Vol. II                    March 22, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 81

1      A    There may be more evidence that we discover

2    during discovery, so I -- I don't want to limit it to

3    what I've mentioned now.  There may be additional

4    pieces of evidence that we find to -- to indicate

5    that.

6      Q    Did IWA make any statements to Plaintiff

7    that were false following the assignment?

8           MR. BOSCH:  Objection to form.

9      A    I can't -- I can't answer that, I think,

10   until we complete discovery.

11     Q    (BY MS. KROPF)  Okay.  So once discovery is

12   complete, you'll be able to answer my question about

13   whether or not IWA made any statements to Plaintiff

14   that were false following the assignment?

15          MR. BOSCH:  Objection to form.

16     A    Hopefully we'll be able to.

17     Q    (BY MS. KROPF)  But -- but sitting here

18   today, on March 22nd, 2023, you are unable to answer

19   the question of whether or not IWA made any

20   statements to the plaintiff that were false after the

21   assignment?

22          MR. BOSCH:  Objection to form.

23     Q    (BY MS. KROPF)  Is that correct?

24     A    I -- I don't have the full knowledge of

25   that because discovery hasn't been completed at -- at

30(b)(6) Charles A. Camalier , III, Vol. II          March 22, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 82

1   -- I hope to be able -- I would be in a position to

2   answer that question after discovery is completed.

3        Q    Okay.  Did Rock Springs Drive make any

4   statements to Plaintiff that were false following the

5   assignment?

6             MR. BOSCH:  Objection to form.

7        A    Again, I would -- same answer.  Again,

8   discovery is ongoing, and -- and at such time as

9   discovery is completed, hopefully I would be able to

10  answer that question.

11       Q    (BY MS. KROPF)  Sitting here today on March

12  22, 2023, you are unable to identify any statements

13  that Rock Springs Drive made to Plaintiff that were

14  false; is that correct?

15       A    I don't recall specifically now any

16  statement, but again, until we complete discovery, I

17  don't think I'm going to be in a position to answer

18  that.

19       Q    Did you rely on any statements made by IWA

20  after the assignment that caused harm to Plaintiff?

21            MR. BOSCH:  Objection to form.

22       A    What caused harm to Plaintiff is the fact

23  that IWA assigned the ground lease to this sham

24  entity that had -- did not have the financial

25  wherewithal to -- to assume and pay the obligations

30(b)(6) Charles A. Camalier , III, Vol. II          March 22, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 83

1      of the tenant under the ground lease.  That's how we

2      were harmed.

3              The fact that we would be limited in the

4      income we would receive, and the fact that the value

5      of the -- the ground lease would be diminished due to

6      the fact that they assigned it to a sham entity and

7      stopped paying rent after the expiration of the

8      statute of limitations; those were all harms that we

9      incurred in this assignment.

10         Q    (BY MS. KROPF)  Has RSD stopped paying rent

11     to the landlord?

12         A    No.  But we believe the only reason that

13     the rent is continuing now is because we had to bring

14     litigation.

15         Q    Did the assignment from IWA to RSD increase

16     a financial risk to the landlord related to ground

17     lease?

18              MR. BOSCH:  Objection to form.

19         A    We believe so.

20         Q    (BY MS. KROPF)  Okay.  And -- and how did

21     it increase the risk --

22              MR. BOSCH:  Objection to form.

23         Q    (BY MS. KROPF)  -- to the landlord?

24         A    I just indicated that.

25         Q    Okay.  Are there any other ways it

30(b)(6) Charles A. Camalier , III, Vol. II          March 22, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 87

1          MR. BOSCH:  Objection to form.

2      A    Again, as I mentioned earlier, the fact

3  that RSD is not attempting to lease the property to

4  create a stream of income that would support the

5  ground lease is another detriment to the landlord.

6      Q    (BY MS. KROPF)  Any other detriments to the

7  landlord?

8          MR. BOSCH:  Objection to form.

9      A    The requirements to pay the real estate

10  taxes.  If you-all don't pay the real estate taxes,

11  the landlord could lose the property.  That's a

12  detriment to them.  If the -- RSD doesn't pay the

13  insurance and there's a casualty at the property,

14  that's a detriment to the landlord.

15      Q    (BY MS. KROPF)  Are there any other

16  detriments to the landlord arising from the

17  assignment from IWA to Rock Springs Drive of the

18  ground lease?

19          MR. BOSCH:  Objection to form.

20      A    Again, there may be additional ones that I

21  haven't thought of but -- or that we will discover

22  when discovery is completed.

23      Q    (BY MS. KROPF)  Okay.  Any others you can

24  identify for us here today?

25      A    I think between what I've testified today