**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

|  |  |
|---|---|
| ROCK SPRING PLAZA II, LLC, | ) |
|  | ) |
|     Plaintiff, | ) |
|  | ) |
|     v. | )  Civil Action No. 20-cv-01502-PJM |
|  | ) |
| INVESTORS WARRANTY OF AMERICA, | ) |
| LLC, et al., | ) |
|  | ) |
|     Defendants. | ) |
|  | ) |

**DEFENDANT ROCK SPRINGS DRIVE LLC'S MOTION TO COMPEL**
**NON-PARTY ANNE D. CAMALIER'S DEPOSITION**

For eight months now, Defendant Rock Springs Drive LLC (RSD) has been trying to depose Anne Camalier. She not only "ran the business" until the middle of 2022 but had "joint" decision making authority over the Ground Lease. She negotiated and signed the Ground Lease whose meaning is at the heart of this litigation. RSD served a Rule 45 deposition subpoena and offered to limit a remote deposition to a few hours. When counsel for Ms. Camalier (who is also counsel for Plaintiff) insisted that these terms were still too much for Ms. Camalier, who is elderly, the parties agreed to take her deposition by written question under Rule 31. RSD served the questions, Ms. Camalier's counsel objected, and the parties met and conferred. But when RSD said it needed to remotely observe Ms. Camalier while she answered the questions, given her counsel's suggestion of some incapacity, counsel for Ms. Camalier said she would no longer appear under Rule 31 and sent an unsigned affidavit that they proposed that she sign instead. Frustrated by her lawyer's refusal to abide by the parties' agreement, RSD served a second Rule

45 subpoena for a live deposition. Given Ms. Camalier's key role in Plaintiff's decisions, RSD moves to compel her deposition under Rule 45.

## FACTS

On January 11, 2023, RSD served Anne Camalier with a deposition subpoena for a deposition to be conducted virtually. Exhibit A. Plaintiff's counsel objected on Ms. Camalier's behalf, alleging that the stress involved with preparing for and sitting for a deposition was too much for Ms. Camalier. Counsel provided a letter from a doctor that suggested several health issues. Subsequently, undersigned counsel for RSD spoke with Plaintiff's counsel and the parties agreed on a Rule 31 deposition by written questions. Exhibit B (W. Bosch email agreeing to Rule 31 deposition). On March 29, 2023, RSD served Anne Camalier with a notice of deposition by written questions pursuant to Rule 31 and the agreement between the parties. Exhibit C. On April 12, 2023, Plaintiff, through counsel, submitted objections to RSD's notice of deposition by written questions. Plaintiff provided general objections, asserting that the testimony sought was beyond the scope of discovery and duplicative of discovery previously elicited from Plaintiff's 30(b)(6) witness, and therefore disproportionate to the needs of the case. Exhibit D.

During a meet and confer on the objections, counsel for RSD noted that she wished to observe Ms. Camalier while Ms. Camalier answered the questions during the video recording, such as by a recorded Zoom call. Counsel for RSD also proposed that if RSD had follow-up questions to Ms. Camalier's answers, then RSD pose them to counsel for Ms. Camalier, who could decide whether to permit the court reporter to ask them of Ms. Camalier then. After this meet and confer, Ms. Camalier's counsel sent an email saying that she no longer agreed to the Rule 31 deposition and attaching a proposed declaration in lieu of any deposition whatsoever. Exhibit E. In light of

information learned during discovery about Ms. Camalier's crucial role in this case, RSD served

a Rule 45 subpoena scheduling her deposition for September 1, 2023. Exhibit F.

## ARGUMENT

I.     **Anne Camalier has had "joint" decision making authority over the Ground Lease since 2015 and is a key witness in this case with discoverable information.**

Anne Camalier is a key witness in this case. She negotiated and signed the Ground Lease

and would have been involved with the negotiation of the Estoppel Agreement, which concerned

a $30 million loan to Plaintiff related to the Ground Lease. Even today, Ms. Camalier makes

decisions "jointly" with her son Charles Camalier. He testified during his Rule 30(b)(6) deposition

that he and his mother have jointly shared decision-making authority with respect to the Ground

Lease from at least 2015 *to this day*.[1] *See* Exhibit G (C. Camalier Dep. Tr.), at 369:22-370:15:

> 22 Q (BY MS. KROPF) All right. Mr. Camalier,
> 23 with respect to the ground lease from 2015 forward,
> 24 who had the -- who had the decision-making authority
> 25 for the plaintiff?
> 1 A It would be my mother, in conjunction with
> 2 myself.
> 3 Q And your -- by "your mother," you mean Anne
> 4 Camalier?
> 5 A Yes.
> 6 Q Okay. And does Anne Camalier still have
> 7 decision-making authority with respect to the ground
> 8 lease?
> 9 A Yes.
> 10 Q What is -- what is her authority with
> 11 respect to the ground lease?
> 12 A Basically my mother and I make decisions
> 13 concerning the ground lease.
> 14 Q Okay. Do you make those jointly?
> 15 A Yes.

---

[1] Mr. Camalier's deposition testimony was limited to inquiring about 2015 and thereafter pursuant to the Court's Order on February 16, 2023.

Mr. Camalier went on to explain that he and Anne Camalier were the "ultimate decisionmakers" but if there was a disagreement Ms. Camalier would have the ultimate say. *See id.* 371:25-372:10.

> 25 Q (BY MS. KROPF) All right. So you said you
> 1 and your mother jointly make decisions with respect
> 2 to the ground lease. Does anyone else participate in
> 3 those decisions?
> 4 A We're the ultimate decision-makers.
> 5 Q The two of you equally?
> 6 A Again, we tend to reach a consensus. I've
> 7 never known us not to, so . . .
> 8 Q Does your mother usually win out?
> 9 MR. BOSCH: Objection --
> 10 A Always.

Anne Camalier's heavy involvement in the family business was further explained by Scott DeCain, who acted as the chief operating officer of the Camalier family real estate operating business from April 2020 through June 2022. *See* Exhibit H (S. DeCain Dep. Tr.) 12:5-9. Mr. DeCain explained that during his time at the business, Anne Camalier was in charge. *Id.* 41:19-42:6. ("Q. Okay. And how about Chris Camalier? How would you describe his role in the Camalier family business? A. Well I'd say Chris ran the business, but Chris worked for Mom. So – and Mom ran the business. So, you know, somewhere between Chris and Mom, they ran the business. Q. Okay. When you say Mom, is that Anne Camalier? A. Yes.").

As a signatory of the Ground Lease and key decisionmaker, Ms. Camalier is uniquely positioned to provide crucial insight into why Plaintiff agreed to the free assignability of the Ground Lease in 1990 and 2006 but now rejects that reading of the contracts. Ms. Camalier's testimony will also be vital to counter the Court's suggestion that IWA is a surety. *See*, *e.g.*, Feb. 16, 2023 Hr'g Tr. 10:14-19 ("I've stated this already, but it is my view that under the law, the assignor of the lease is the surety on the contract. If there was any dispute about whether IWA ultimately could be held on the hook for liability under the ground lease, my belief is that under

the law of contracts, it can."). RSD intends to question Ms. Camalier about the negotiation of and rationale behind the assignment provision of the Estoppel Agreement to show that Plaintiff and IWA's predecessor in interest explicitly agreed that the predecessor to IWA would be automatically released from all liability upon assigning the lease to any third party. RSD also intends to ask Ms. Camalier about the communications between the parties after the Assignment and about how the Assignment has materially impaired Plaintiff's interest in the Ground Lease.

This court has determined that the negotiation and assignment provisions within the Ground Lease and Estoppel Agreement are relevant to the litigation and open to discovery. For example, in its August 3, 2022 opinion, the Court noted that "… certain factual issues remain to be explored in discovery. Although Plaintiff claims that the conveyance to RSD was fraudulent and improper, the parties have yet to explore what information, if any, may go to that issue. Importantly, discovery would also be appropriate to determine whether the purported assignment would materially change Plaintiff's duties or risks under the contracts, would materially impair Plaintiff's chance of obtaining return performance, or would materially reduce its value to Plaintiff." Dkt. 151 at 20.  Several months later, during the October 13, 2022 hearing, the Court added that "it certainly would seem appropriate in connection with the overall litigation to depose whoever the people are -- have been involved in the assignment, and ask them what was this assignment all about, what was it for, why was it done and so on within limits. That seems appropriate." *See* Oct. 13, 2022 Hr'g Tr. 22:17-22.

Then again, at the February 16, 2023 hearing, the Court denied Plaintiff's motion for a protective order and explained that "it's clear [Defendants will] be able to ask about the assignment

provisions of the ground lease and the estoppel insofar as it relates to the assignment." Feb. 16, 2023 Hr'g Tr. 186:20-23.[2]

## II.    <u>Given Ms. Camalier's role in the Ground Lease, a live deposition is necessary.</u>

When RSD in January 2023 agreed to take Ms. Camalier's testimony through Rule 31, RSD was not aware that Ms. Camalier was still a "joint" decisionmaker with Mr. Camalier for matters related to the Ground Lease or that she was actively involved in the Property until at least June 2022. Now that Plaintiff has conceded that Ms. Camalier plays a key role in the case, the need for her live deposition is even greater. The deposition would include asking about the matters authorized by the Court in February, including questions "about the assignment provisions of the ground lease and the estoppel insofar as it relates to the assignment." *See* Feb. 16, 2023 Hr'g Tr. 186:20-23. A deposition by written questions will not suffice to fully explore these important issues.

Plaintiff may assert that the testimony sought is duplicative of testimony elicited from Charles Camalier, Plaintiff's corporate representative, in response to RSD's 30(b)(6) deposition, and therefore not proportional to the needs of the case. While many of the questions overlap, Mr. Camalier failed to respond to a number of questions and completely refused or was not prepared to answer questions about the "assignment provisions of the ground lease and estoppel." *See* Dkt. 347 (Def. Motion to Compel C. Camalier deposition). As noted above, Charles Camalier and Anne Camalier were the "joint" decisionmakers regarding the Ground Lease and Anne Camalier is the

---

[2] When the parties had agreed to proceed under Rule 31, RSD drafted written discovery questions to Ms. Camalier that involved the negotiation of the assignment provisions of the two contracts and fit squarely within the bounds dictated by the Court. Nonetheless, Plaintiff's counsel objected to 25 of the 41questions as "beyond the scope of discovery set by the Court at the motions hearing on February 16, 2023" and directed Ms. Camalier not to answer. Exhibit D at 4-13.

ultimate decisionmaker. It would be unfairly prejudicial to deny RSD the opportunity to depose the person who has knowledge about the two key contracts in this case.

Ms. Camalier is elderly but advanced age does not equate to incapacity. RSD is willing to accommodate Ms. Camalier's health needs, including conducting the deposition remotely, limiting the deposition to a certain number of hours each day, and taking frequent breaks. RSD understands that Ms. Camalier may have some other impairments and can work to accommodate them as well. To avoid a deposition, Ms. Camalier would need to show that a deposition is not just difficult due to her health, but "dangerous" to it. *See Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 127–28 (D. Md. 2009) (holding that party "'seeking to prevent or delay a deposition by reason of medical grounds'" has the burden of "'making a specific and documented factual showing that the deposition would be dangerous to the deponent's health.'") (quoting *Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C. 1987)).

Given that Plaintiff has admitted that Ms. Camalier has joint decision-making authority over the Ground Lease since before the Assignment and until the current day (as well as having knowledge of the negotiations surrounding the Ground Lease and, possibly, Estoppel Agreement), her deposition is necessary in this case.

## <u>CONCLUSION</u>

For these reasons, RSD respectfully requests that the Court grant its motion to compel Anne Camalier to appear for a deposition under Rule 45. A proposed order is attached.

Dated:  August 31, 2023                      Respectfully submitted,

                                             /s/ Sara E. Kropf
                                             Sara E. Kropf (Bar No. 26818)
                                             Rebecca Guiterman (*pro hac vice*)
                                             Kropf Moseley PLLC
                                             1100 H Street NW, Suite 1220
                                             Washington, DC 20005
                                             (202) 627-6900
                                             sara@kmlawfirm.com
                                             *Attorney for Rock Springs Drive LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of August 2023, the foregoing motion was served through the court's electronic filing system on all counsel of record.

/s/ Sara E. Kropf
Sara E. Kropf
