# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| ROCK SPRING PLAZA II, LLC, | ) <br> ) |
| *Plaintiff*, | ) <br> ) |
| v. | ) <br> ) Civil Action No. 20-cv-01502-PJM |
| INVESTORS WARRANTY OF AMERICA, LLC, et al., | ) <br> ) <br> ) |
| *Defendants*. | ) <br> ) |

**DEFENDANT ROCK SPRINGS DRIVE LLC'S**
**AMENDED AFFIRMATIVE DEFENSES TO SECOND AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Defendant Rock Springs Drive LLC ("Rock Springs Drive"), by and through its undersigned counsel, hereby amends the affirmative defenses to the Second Amended Complaint filed by Plaintiff Rock Spring Plaza II LLC ("Rock Spring Plaza") (Dkt. 196). RSD's answer to the Second Amended Complaint was filed on December 22, 2022. Dkt. 209. This filing incorporates that answer and counterclaims by reference.

**AMENDED AFFIRMATIVE DEFENSES**

Rock Springs Drive reserves the right to amend or add to these affirmative defenses during or after the completion of discovery. Capitalized terms have the same meaning as used in the Second Amended Complaint.

FIRST DEFENSE

Rock Spring Plaza has failed to state a claim upon which relief may be granted for several reasons as to Count II (Wrongful, Invalid Conveyance), including that it is not a permissible claim under Maryland law. In addition, Rock Spring Plaza cannot prove that RSD

1

had an obligation under Maryland law at the time of the Assignment to share information with Rock Spring Plaza; that the Assignment materially increased the burden or risk imposed on Rock Spring Plaza or materially impaired Rock Spring Plaza's chance of obtaining return performance, or materially reduced the Ground Lease's value to Rock Spring Plaza; Rock Spring Plaza cannot show that RSD breached the agreement sufficient to prove that it breached the covenant of good faith and fair dealing implied in the Ground Lease; RSD has complied with the Ground Lease since August 2017.

Rock Spring Plaza has failed to state a claim upon which relief may be granted for several reasons as to Count II (Fraudulent Conveyance), as explained in Rock Springs Drive and IWA's motions to dismiss (Dkt. Nos. 13, 24, 20, 23), which both rely on the facts alleged in Rock Spring Plaza's complaint and documents incorporated by reference. Rock Spring Plaza is unable to establish facts demonstrating that the conveyance was fraudulent for several reasons: IWA was not insolvent or in debt when it assigned the Ground Lease to Rock Springs Drive; the assignment was supported by adequate consideration; there was no threat of litigation against IWA at the time of the assignment; the assignment of the Ground Lease was not a departure of IWA's usual means of business; the assignment did not transfer all of IWA's assets; the transfer was not concealed from Rock Spring Plaza because IWA provided notice to Rock Spring Plaza a few days after it happened; the assignment transferred all rights and obligations of IWA to Rock Springs Drive; and IWA did not retain either possession or use of the Property after the assignment. In addition, the failure by IWA to record the Assignment does not invalidate the Assignment under the law and was the result of a reasonable business decision made at the time; the use of a newly-formed special purpose entity is common practice in real estate transactions; the Assignment was permitted by the Ground Lease and the Estoppel Agreement; and Rock

Spring Plaza cannot prove that IWA and RSD had any fraudulent intent at the time of the Assignment.

## SECOND DEFENSE

Rock Spring Plaza's claims are barred by the statute of limitations as they were filed more than three years after Rock Spring Plaza knew that IWA had the contractual ability to transfer the Ground Lease and then be released from its contractual obligations under it. Rock Spring Plaza was aware of these contractual terms on September 1, 2002, when it signed the First Amendment to Amended and Restated Ground Lease Indenture, and on June 6, 2006, when it entered into the Estoppel Agreement. Rock Spring Plaza was aware as of February 12, 2012, that the Ground Lease had been purchased by IWA. Despite this knowledge, Rock Spring Plaza did not seek a declaratory judgment to preclude IWA from assigning the Ground Lease or to alter the terms of the contracts to add the transfer restrictions that it seeks to impose here.

## THIRD DEFENSE

Rock Spring Plaza's claims are barred by the equitable doctrine of laches. Although Rock Spring Plaza was aware of the assignment of the Ground Lease from IWA to Rock Springs Drive by August 2017, it delayed filing this lawsuit until June 2020. This delay in filing the lawsuit prejudiced Rock Springs Drive as it paid rent and expended funds to maintain and repair the Property during this time.

## FOURTH DEFENSE

Rock Spring Plaza's claims are barred by the doctrine of equitable estoppel. By accepting the rent payments and other contractual performance by Rock Springs Drive from August 2017 (when the assignment was made) until the present, Rock Spring Plaza engaged in voluntary conduct to accept the assignment as valid. Rock Springs Drive relied upon Rock Spring Plaza's

voluntary conduct to its detriment as Rock Springs Drive continued to pay rent and invest other time and money into the Property, such as by repairing and maintaining the Property, seeking to sublease it to the GSA, and evaluating strategic alternatives to monetize the asset. Rock Spring Plaza is therefore estopped from challenging the assignment or seeking to set it aside.

In addition, Rock Spring Plaza is estopped from making these claims because it agreed in the Ground Lease and Estoppel Agreement that IWA had the absolute right to assign the Ground Lease to any third party and be released from all liability under the Ground Lease, as long as RSD assumed all obligations under the Ground Lease—which RSD did.

## FIFTH DEFENSE

Rock Spring Plaza has waived these claims. Rock Springs Drive was informed of the assignment of the Property to Rock Springs Drive in August 2017. Rock Spring Plaza could have objected to the assignment at that time but did not do so. By its failure to timely object to the assignment and its acceptance of rent payments and other contract performance from August 2017 to the present from RSD, Rock Spring Plaza intentionally relinquished its right to object to the assignment.

In addition, Rock Spring Plaza waived these claims because it agreed in the Ground Lease and Estoppel Agreement that IWA had the absolute right to assign the Ground Lease to any third party and be released from all liability under the Ground Lease, as long as RSD assumed all obligations under the Ground Lease—which RSD did.

## SIXTH DEFENSE

Even if the assignment was not permitted, Rock Spring Plaza ratified it. Rock Spring Plaza's ratification of the assignment may be inferred by its acceptance of monthly rent payments and other contractual performance by Rock Springs Drive from August 2017 to the

present. Rock Spring Plaza also ratified the assignment by communicating with Rock Springs Drive as the tenant under the Ground Lease beginning in August 2017, acknowledging Rock Springs Drive as the tenant in routine property management communications starting in 2017, and communicating with Rock Springs Drive about potential subtenants. Through these actions, Rock Springs Drive reasonably indicated its desire to affirm the assignment of the Ground Lease to Rock Springs Drive. Rock Spring Plaza had full knowledge of all material facts when it accepted the rent from Rock Springs Drive and took other actions to ratify the assignment.

## SEVENTH DEFENSE

Rock Spring Plaza's claims are barred by the unclean hands doctrine. Rock Spring Plaza engaged in inequitable conduct by accepting millions of dollars in rent and the value of the repair and maintenance of the Property, when Rock Spring Plaza apparently believed that Rock Springs Drive was not the proper tenant, and the assignment was invalid as fraudulent. Rock Spring Plaza's inequitable conduct relates directly to the claims in Rock Spring Plaza's complaint and supports application of this doctrine.

In addition, Rock Spring Plaza engaged in unclean hands by walking away from its $27 million loan obligation using a special purpose entity and then claiming in this lawsuit that using a special purpose entity is evidence of fraud. Finally, Rock Spring Plaza engaged in unclean hands by filing this lawsuit even though it benefitted from tens of millions of dollars in loan funds in return for executing the Estoppel Agreement and then refused to abide by the terms of its contractual agreements.

## EIGHTH DEFENSE

The Court lacks subject matter jurisdiction under Declaratory Judgment Act for the reasons explained in Rock Springs Drive's and IWA's motions to dismiss and related filings.

The complaint does not allege an actual controversy between Rock Spring Plaza and Rock Springs Drive of sufficient immediacy and reality because there is no breach of the contract or failure by Rock Springs Drive to follow the terms of the Ground Lease. Rock Spring Plaza's claims are based on its unwarranted and unreasonable speculation that Rock Springs Drive may not pay rent at some point in the future and that Landlord may need to seek payment from IWA rather than Rock Springs Drive. Because that event has not happened, and because there are no facts suggesting that it will happen at a later date, Rock Spring Plaza's claims are based on contingent future events that cannot form the basis of a declaratory judgment. In addition, Rock Spring Plaza may lack standing to bring this lawsuit.

NINTH DEFENSE

Rock Spring Plaza's claims are barred by its own fraud. Rock Spring Plaza knew that Rock Springs Drive believed it had obtained a proper assignment of the Ground Lease because Rock Springs Drive sent rent payments to Rock Spring Plaza, and repaired and maintained the Property. Rock Spring Plaza accepted those rent payments from Rock Springs Drive for three years and communicated with Rock Springs Drive as the tenant under the Ground Lease from August 2017 to the present. From the beginning, Rock Spring Plaza intended to accept millions of dollars in rent payments from Rock Springs Drive and then seek to reverse the conveyance later, thus depriving Rock Springs Drive of its bargained-for asset (the Ground Lease). In addition, Rock Spring Plaza fraudulently induced Rock Springs Drive to continue to make rent payments and maintain the Property by its acceptance of the rent payments for three years without objection.

TENTH DEFENSE

Rock Spring Plaza's claims are barred as they would render the Ground Lease and Estoppel Agreement unconscionable and violative of public policy. Rock Spring Plaza is a party to the Ground Lease and the Estoppel Agreement. These contracts, on their face, permit the assignment of the Ground Lease from IWA to Rock Springs Drive. For example, the contracts do not require the consent of Rock Spring Plaza before assignment or require that the assignee meet financial requirements. Many years after it entered into these agreements, and three years after the assignment, Rock Spring Plaza asserts that the bargained-for contracts mean just the opposite and that a conveyance consistent with the contract terms is improper. Effectively, Rock Spring Plaza's position is that that one party to these agreements may unilaterally change their terms to the detriment of the other parties. This interpretation negates the reasonable expectations of Rock Springs Drive as to the meaning of the contracts. In addition, Rock Spring Plaza's reading of these contracts would restrict the conveyance of real property and unjustifiably interfere with the contractual relationship between Rock Springs Drive and IWA, both of which violate Maryland public policy.

ELEVENTH DEFENSE

Rock Spring Plaza's claims are barred by the doctrine of accord and satisfaction, or payment and release. Rock Springs Drive has met all of its contractual obligations under the Ground Lease and has paid all rent due. Rock Spring Plaza has accepted those payments even after raising a dispute over the effectiveness of the assignment and continues to accept payments to the present. In addition, IWA was released from its obligations under the Ground Lease when it assigned them to Rock Springs Drive.

TWELFTH DEFENSE

Rock Spring Plaza's claims are barred because it has an adequate remedy at law. Should Rock Springs Drive stop paying rent or otherwise performing under the contract, then Rock Spring Plaza can take advantage of the remedies in Section 10.2 of the Ground Lease, including termination of the Ground Lease and repossession of the Property. These are the remedies for which Rock Spring Plaza bargained and it is not entitled to seek additional equitable remedies.

**GENERAL DENIAL AND PRAYER FOR RELIEF**

Rock Springs Drive denies every allegation in the Second Amended Complaint except those expressly admitted in its answer to the Second Amended Complaint. Dkt. 209. Rock Springs Drive requests that the Court:

a. Dismiss Plaintiffs' action with prejudice.

b. Award attorney's fees, costs, pre- and post-judgment interest, and other expenses of litigation to Rock Springs Drive.

c. Such other relief as this Court deems just and proper.

Dated: August 31, 2023                                   Respectfully submitted,

/s/ Sara E. Kropf
Sara E. Kropf (Bar No. 26818)
Rebecca Guiterman (*pro hac vice*)
Kropf Moseley PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
(202) 627-6900
sara@kmlawfirm.com
rebecca@kmlawfirm.com

*Attorneys for Rock Springs Drive LLC*

Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

|  |  |
|---|---|
| ROCK SPRING PLAZA II, LLC, )<br>)<br>    *Plaintiff*, )<br>)<br>    v. )<br>)<br>INVESTORS WARRANTY OF AMERICA, )<br>LLC, et al., )<br>)<br>    *Defendants*. ) | Civil Action No. 20-cv-01502-PJM |

**DEFENDANT ROCK SPRINGS DRIVE LLC'S**
~~ANSWER TO~~**AMENDED AFFIRMATIVE DEFENSES TO SECOND** **AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Defendant Rock Springs Drive LLC ("Rock Springs Drive"), by and through its undersigned counsel, hereby ~~files this answer to~~ amends the affirmative defenses to the Second Amended Complaint filed by Plaintiff Rock Spring Plaza II ~~LLC's Amended Complaint~~ LLC ("Rock Spring Plaza~~")~~.") (Dkt. 196). RSD's answer to the Second Amended Complaint was filed on December 22, 2022. Dkt. 209. This filing incorporates that answer and counterclaims by reference.

**AMENDED AFFIRMATIVE DEFENSES**

Rock Springs Drive reserves the right to amend or add to these affirmative defenses during or after the completion of discovery. Capitalized terms have the same meaning as used in the Second Amended Complaint.

FIRST DEFENSE

Rock Spring Plaza has failed to state a claim upon which relief may be granted for several reasons~~,~~ as to Count II (Wrongful, Invalid Conveyance), including that it is not a

1

permissible claim under Maryland law. In addition, Rock Spring Plaza cannot prove that RSD had an obligation under Maryland law at the time of the Assignment to share information with Rock Spring Plaza; that the Assignment materially increased the burden or risk imposed on Rock Spring Plaza or materially impaired Rock Spring Plaza's chance of obtaining return performance, or materially reduced the Ground Lease's value to Rock Spring Plaza; Rock Spring Plaza cannot show that RSD breached the agreement sufficient to prove that it breached the covenant of good faith and fair dealing implied in the Ground Lease; RSD has complied with the Ground Lease since August 2017.

Rock Spring Plaza has failed to state a claim upon which relief may be granted for several reasons as to Count II (Fraudulent Conveyance), as explained in Rock Springs Drive and IWA's motions to dismiss [(Dkt. Nos. 13, 24, 20, 23]).), which both rely on the facts alleged in Rock Spring Plaza's complaint and documents incorporated by reference. Specifically, Rock Spring Plaza is unable to establish facts demonstrating that the conveyance was fraudulent for several reasons: IWA was not insolvent or in debt when it assigned the Ground Lease to Rock Springs Drive; the assignment was supported by adequate consideration; there was no threat of litigation against IWA at the time of the assignment; the assignment of the Ground Lease was not a departure of IWA's usual means of business; the assignment did not transfer all of IWA's assets; the transfer was not concealed from Rock Spring Plaza because IWA provided notice to Rock Spring Plaza a few days after it happened; the assignment transferred all rights and obligations of IWA to Rock Springs Drive; and IWA did not retain either possession or use of the Property after the assignment. In addition, the failure by IWA to record the Assignment does not invalidate the Assignment under the law and was the result of a reasonable business decision made at the time; the use of a newly-formed special purpose entity is common practice in real

2

estate transactions; the Assignment was permitted by the Ground Lease and the Estoppel Agreement; and Rock ~~Springs Drive accepted the assignment in good faith and for fair consideration~~Spring Plaza cannot prove that IWA and RSD had any fraudulent intent at the time of the Assignment.

SECOND DEFENSE

Rock Spring Plaza's claims are barred by the statute of limitations as they were filed ~~(1) more than three years after Rock Spring Plaza entered into the relevant contracts that it seeks to alter and (2)~~ more than three years after Rock Spring Plaza knew that IWA had the contractual ability to transfer the Ground Lease and then be released from the Ground Lease ~~without Rock Spring Plaza's consent~~ its contractual obligations under it. Rock Spring Plaza was aware of these contractual terms on September 1, 2002, when it signed the First Amendment to Amended and Restated Ground Lease Indenture, and on June 6, 2006, when it entered into the Estoppel Agreement. Rock Spring Plaza was aware as of February 12, 2012, that the Ground Lease had been purchased by IWA. ~~It did not file this complaint until June 2020. Although Rock Spring Plaza calls its claim one for "fraudulent conveyance," it actually seeks a rewriting of its contractual obligations. If Rock Spring Plaza wished to seek reformation or rescission of the contract, then it had to make these claims long before 2020.~~ Despite this knowledge, Rock Spring Plaza did not seek a declaratory judgment to preclude IWA from assigning the Ground Lease or to alter the terms of the contracts to add the transfer restrictions that it seeks to impose here.

THIRD DEFENSE

Rock Spring Plaza's claims are barred by the equitable doctrine of laches. Although Rock Spring Plaza was aware of the assignment of the Ground Lease from IWA to Rock Springs Drive

3

by August 2017, it delayed filing~~, or failed to act with due diligence with respect to,~~ this lawsuit until June 2020. This delay in filing the lawsuit prejudiced Rock Springs Drive as it paid rent and expended funds to maintain and repair the Property during this time.

### FOURTH DEFENSE

Rock Spring Plaza's claims are barred by the doctrine of equitable estoppel. By accepting the rent payments and ~~maintenance efforts~~other contractual performance by Rock Springs Drive from August 2017 (when the assignment was made) until ~~June 2020 (when Rock Spring Plaza filed the lawsuit),~~the present, Rock Spring Plaza engaged in ~~a~~ voluntary ~~act or~~ conduct ~~that accepted~~to accept the assignment as valid. Rock Springs Drive relied upon Rock Spring Plaza's voluntary conduct to its detriment as Rock Springs Drive continued to pay rent and invest other time and money into the Property, such as by repairing and maintaining the Property, seeking to sublease it to the GSA, and evaluating strategic alternatives to monetize the asset. Rock Spring Plaza is therefore estopped from challenging the assignment or seeking to set it aside.

In addition, Rock Spring Plaza is estopped from making these claims because it agreed in the Ground Lease and Estoppel Agreement that IWA had the absolute right to assign the Ground Lease to any third party and be released from all liability under the Ground Lease, as long as RSD assumed all obligations under the Ground Lease—which RSD did.

### FIFTH DEFENSE

Rock Spring Plaza has waived these claims. Rock Springs Drive was informed of the assignment of the Property to Rock Springs Drive in August 2017. Rock Spring Plaza could have objected to the assignment ~~as a fraudulent transfer~~ at that time~~,~~ but ~~chose~~did not ~~to~~ do so ~~in order to accept rent payments of millions of dollars and substantial maintenance efforts.~~. By its failure to timely object to the assignment and its acceptance of rent payments and ~~maintenance efforts~~

4

~~without objection~~other contract performance from August 2017 to the present from RSD, Rock Spring Plaza intentionally ~~and voluntarily~~ relinquished its ~~known~~ right to object to the assignment.

In addition, Rock Spring Plaza waived these claims because it agreed in the Ground Lease and Estoppel Agreement that IWA had the absolute right to assign the Ground Lease to any third party and be released from all liability under the Ground Lease, as long as RSD assumed all obligations under the Ground Lease—which RSD did.

SIXTH DEFENSE

Even if the assignment was not permitted, Rock Spring Plaza ratified it. Rock Spring Plaza's ratification of the assignment may be inferred by its acceptance of monthly rent payments and other contractual performance by Rock Springs Drive from August 2017 to the present. Rock Spring Plaza also ratified the assignment by communicating with Rock Springs Drive as the tenant under the Ground Lease beginning in August 2017, ~~such~~acknowledging Rock Springs Drive as ~~by suggesting at least one subleasing opportunity~~the tenant in ~~2019.~~routine property management communications starting in 2017, and communicating with Rock Springs Drive about potential subtenants. Through these actions, Rock Springs ~~Plaza~~Drive reasonably indicated its desire to affirm the assignment of the Ground Lease to Rock Springs Drive. Rock Spring Plaza had full knowledge of all material facts when it accepted the rent from Rock Springs Drive and took other actions to ratify the assignment.

SEVENTH DEFENSE

Rock Spring Plaza's claims are barred by the unclean hands doctrine. Rock Spring Plaza engaged in inequitable conduct by accepting millions of dollars in rent and the value of the repair and maintenance of the Property, when Rock Spring Plaza apparently believed that Rock Springs

5

Drive was not the proper tenant, and the assignment was invalid as fraudulent. Rock Spring Plaza's inequitable conduct ~~of accepting rent for three years while it planned to challenge the conveyance as fraudulent~~ relates directly to the claims in Rock Spring Plaza's complaint ~~about~~and supports application of this doctrine.

In addition, Rock Spring Plaza engaged in unclean hands by walking away from its $27 million loan obligation using a special purpose entity and then claiming in this lawsuit that using a special purpose entity is evidence of fraud. Finally, Rock Spring Plaza engaged in unclean hands by filing this lawsuit even though it benefitted from tens of millions of dollars in loan funds in return for executing the Estoppel Agreement and then refused to abide by the ~~conveyance~~terms of its contractual agreements.

EIGHTH DEFENSE

The Court lacks subject matter jurisdiction under Declaratory Judgment Act for the reasons explained in Rock Springs Drive's and IWA's motions to dismiss and related filings. The complaint does not allege an actual controversy between Rock Spring Plaza and Rock Springs Drive of sufficient immediacy and reality because there is no breach of the contract or failure by Rock Springs Drive to follow the terms of the Ground Lease. Rock Spring Plaza's claims are based on its unwarranted and unreasonable speculation that Rock Springs Drive may not pay rent at some point in the future and that Landlord may need to seek payment from IWA rather than Rock Springs Drive. Because that event has not happened, and because there are no facts suggesting that it will happen at a later date, Rock Spring Plaza's claims are based on contingent future events that cannot form the basis of a declaratory judgment. In addition, Rock Spring Plaza may lack standing to bring this lawsuit.

NINTH DEFENSE

6

Rock Spring Plaza's claims are barred by its own fraud. Rock Spring Plaza knew that Rock Springs Drive believed it had obtained a proper assignment of the Ground Lease because Rock Springs Drive sent rent payments to Rock Spring Plaza, and repaired and maintained the Property. Rock Spring Plaza~~, itself a special purpose entity created for this ground lease,~~ accepted those rent payments from Rock Springs Drive for three years~~,~~ and communicated with Rock Springs Drive as the tenant under the Ground Lease from August 2017 to the present. From the beginning, Rock Spring Plaza ~~intentionally and deliberately concealed its intent to challenge the assignment as a fraudulent conveyance, by~~intended to accept millions of dollars in rent payments from Rock Springs Drive ~~without objection and without asking IWA~~and then seek to ~~pay instead. This fraud deprived Rock Springs Drive of its rent payments and seeks to deprive~~reverse the conveyance later, thus depriving Rock Springs Drive of its bargained-for asset (the Ground Lease). In addition, Rock Spring Plaza fraudulently induced Rock Springs Drive to continue to make rent payments and ~~spend money to~~ maintain the Property by its acceptance of the rent payments for three years without objection.

### TENTH DEFENSE

Rock Spring Plaza's claims are barred as they would render the Ground Lease and Estoppel Agreement unconscionable and violative of public policy. Rock Spring Plaza is a party to the Ground Lease and the Estoppel Agreement. These contracts, on their face, permit the assignment of the Ground Lease from IWA to Rock Springs Drive. For example, the contracts do not require the consent of Rock Spring Plaza before assignment or require that the assignee meet financial requirements. Many years after it entered into these agreements, and three years after the assignment, Rock Spring Plaza asserts that the bargained-for contracts mean just the opposite and that a conveyance consistent with the contract terms is improper. Effectively, Rock Spring Plaza's position is that that one party to these agreements may unilaterally change their terms to the detriment of the other parties. This interpretation negates the reasonable expectations of Rock Springs Drive as to the meaning of the contracts. In addition, Rock Spring Plaza's reading of these contracts would restrict the conveyance of real property and unjustifiably interfere with the contractual relationship between Rock Springs Drive and IWA, both of which ~~violates Maryland public policy. In addition, Rock Spring Plaza seeks to impose an unreasonable restraint on IWA's alienation of the ground lease, which violates Maryland public policy.~~ violate Maryland public policy.

### ELEVENTH DEFENSE

Rock Spring Plaza's claims are barred by the doctrine of accord and satisfaction, or payment and release. Rock Springs Drive has met all of its contractual obligations under the Ground Lease and has paid all rent due. Rock Spring Plaza has accepted those payments even after raising a dispute over the effectiveness of the assignment and continues to accept payments to the present. In addition, IWA was released from its obligations under the Ground Lease when

8

it assigned them to Rock Springs Drive.

TWELFTH DEFENSE

Rock Spring Plaza's claims are barred because it has an adequate remedy at law. Should Rock Springs Drive stop paying rent or otherwise performing under the contract, then Rock Spring Plaza can take advantage of the remedies in Section 10.2 of the Ground Lease, including termination of the Ground Lease and repossession of the Property. These are the remedies for which Rock Spring Plaza bargained and it is not entitled to seek additional equitable remedies.

**GENERAL DENIAL AND PRAYER FOR RELIEF**

Rock Springs Drive denies ~~that Plaintiff is entitled to the recovery it seeks in this action. It further denies~~ every allegation in the Second Amended Complaint except those expressly admitted in ~~paragraphs 1 through 52 above.~~ its answer to the Second Amended Complaint. Dkt. 209. Rock Springs Drive requests that the Court:

a. Dismiss ~~Plaintiff's~~ Plaintiffs' action with prejudice.
b. Award attorney's fees, costs, pre- and post-judgment interest, and other expenses of litigation to Rock Springs Drive.
c. Such other relief as this Court deems just and proper.

9