**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION**

| | |
|---|---|
| ROCK SPRING PLAZA II, LLC | |
| Plaintiff, | |
| v. | Civil Action No. 8:20-cv-01502-PJM |
| INVESTORS WARRANTY OF AMERICA, LLC, et al., | |
| Defendants. | |

**PLAINTIFF ROCK SPRING PLAZA II, LLC'S RESPONSE IN OPPOSITION TO
DEFENDANT ROCK SPRINGS DRIVE LLC'S MOTION FOR LEAVE TO TAKE
DEPOSITION OF WILLIAM BOSCH**

Plaintiff Rock Spring Plaza II, LLC ("Plaintiff") submits this Response in Opposition to

Defendant Rock Springs Drive LLC's ("RSD") Motion for Leave to Take Deposition of William

Bosch (the "Motion").  As RSD is aware, William Bosch has served as lead litigation counsel to

Plaintiff for the entirety of this case: his signature is on the initial complaint ("Complaint") filed

on June 5, 2020. ECF No. 1. Now, three years later, after the Court has seen evidence confirming

precisely the fraud theories that Plaintiff has been alleging since 2020 (which implicates certain

lawyers for the Defendants who were directly involved in setting up and then hiding the scheme),

RSD is trying to kneecap Plaintiff by attacking its lead litigation counsel.  This kind of

aggressive litigation practice is precisely what this Court admonished the parties to avoid.  Apr.

13, 2023, Hr. Tr. 33:24-35:2.[1]  RSD's motion should be denied and the Court should award

Plaintiff its fees and costs incurred in responding to this ill-considered Motion.

---

[1]  The Court: Why don't each of you keep a log every time that you think opposing counsel has told a lie, write it down, the date and the nature of the lie, and keep a log. I don't want to hear about it, but when you have, let's say 100 that you've reached for each, I may look at it. And I may impose sanctions. But this, frankly, is ridiculous. Really. These kinds of back and forth, these accusations are something I haven't seen before. You guys have lost it.

## I.      INTRODUCTION

This Court "view[s] skeptically efforts to depose an opposing party's attorney, especially when the subject matter of the deposition may be intertwined with potentially privileged information, and such depositions are typically permitted only when the information sought is not available from another source." *Carr v. Double T Diner*, 272 F.R.D. 431, 435 (D. Md. 2010). Deposing a party's attorney — let alone lead litigation counsel — "is usually both burdensome and disruptive." *S.E.C. v. SBM Inv. Certificates, Inc.*, Case No. DKC 06–0866, 2007 WL 609888, at *25–26 (D. Md. Feb.23, 2007).

It is clear: RSD seeks to depose Mr. Bosch as retaliation for Plaintiff's deposition of Mr. Barron. *See* Motion at 7, fn. 7.  But RSD's effort to depose Mr. Bosch on the premise that it is merely the mirror-image of Plaintiff being allowed to depose Robert Barron is a false equivalency, as Mr. Bosch and Mr. Barron are not equivalent players in this case. Defendant Investors Warranty of America, LLC ("IWA," collectively with RSD, "Defendants") identified Mr. Barron, RSD's non-litigation counsel, as RSD's representative and point of contact after the purported assignment of the Ground Lease from IWA to RSD (the "Assignment"). At a discovery hearing on February 16, 2023, (the "February 16th Hearing"), the Court recognized that Defendants used Mr. Barron's status as a lawyer to dodge Plaintiff's legitimate attempts to garner basic information about the identity and intentions of RSD under the guise of privilege. Feb. 16, 2023, Hr. Tr., 99:15-18.[2] Accordingly, the Court denied RSD's motion to quash and

---

[2] "THE COURT: By naming a lawyer as you're effectively the mouthpiece or whatever you would call him here, you get to use the privilege? MS. KROPF: I assume so would they, Your Honor. THE COURT: Well, don't assume anything."

permitted Plaintiff to proceed with deposing Robert Barron. *Id.* at 108:1-2.  That deposition occurred on April 14, 2023.[3]

To put it mildly, the deposition did not go well for RSD, as Mr. Barron admitted that the intention was to withhold information (or as Mr. Barron put it when asked why he didn't provide the information about RSD, "you're not the boss of me") because they were concerned that sharing information about IWA's involvement would trigger a lawsuit.  While Mr. Bosch has at all times acted as litigation counsel to Plaintiff, Mr. Barron is not RSD's trial attorney and admits he is "not a litigator." R. Barron Dep. Tr., 346:12-13. And discovery to date, including Mr. Barron's deposition testimony, confirms that Mr. Barron actively participated in forming RSD and in effectuating IWA's "exit strategy" through the fraudulent transaction. ECF No. 264 at 5. In short, Mr. Barron was directly involved in the alleged fraud, and his conduct is directly at issue in this lawsuit.

Whereas Plaintiff established a basis for deposing Mr. Barron, RSD has not and cannot establish any basis for deposing Plaintiff's lead litigation counsel.

## II.    ARGUMENT

To bolster its effort to depose Plaintiff's lead counsel, RSD contends that Plaintiff actually knew more about RSD than it let on.  RSD relies on misleading and factually inaccurate narratives comprised of cherry-picked emails that do not actually say anything at all about the ownership or financial wherewithal of RSD, which was the information Plaintiff repeatedly sought and which RSD (and its representative, Mr. Barron) refused to provide.  Even if the Court were to accept at face value every one of the factual assertions made by RSD in support of its

---

[3] Plaintiff reserves the right to pursue relief in connection with Defendants' counsel's improper privilege instructions during the Barron depositions (and others), upon resolution of IWA's petition to the Fourth Circuit Court of Appeals, as was discussed with the Court during an informal telephone conference on September 5, 2023.

motion, however, none of it is material to any of the claims or defenses in this case.  The reason

for that is because RSD misapprehends (or simply refuses to acknowledge) Plaintiff's claims and

is trying to manufacture a "defense" that is unrelated to any of the actual issues this Court will

need to decide.

### A.      Plaintiff's Lead Litigation Counsel Cannot Offer Relevant Non-privileged Testimony on Disputed Fact Issues Regarding the Restatement Claim

RSD does not need to depose Mr. Bosch because he cannot offer testimony on any

disputed issues of material fact regarding the Restatement issues before this Court.  At a hearing

over two years ago, the Court identified RSD's failure to respond to Plaintiff's reasonable

requests for basic information about RSD as "a fairly central potentially dispositive issue in this

case," (Aug. 12, 2021, Hr. Tr., 4:10) and ordered briefing on Plaintiff's entitlement "to know

who an assignee is and other relevant information" under the Restatement (Second) of Contracts

(the "Restatement"). ECF No. 117. What RSD brushes over in its Motion is that the Court has

*already decided* this "potentially dispositive issue." The Court ruled that "Plaintiff is entitled to

receive basic information about RSD so that Plaintiff may determine whether RSD has the ability

to satisfy IWA's ongoing obligations under the Ground Lease" and that Defendants did not

satisfy its obligation to provide such information. ECF No. 151 at 17.

In the light of the Court's ruling, the question is no longer whether Defendants

improperly withheld information (they did).  Mr. Bosch's communications with Mr. Barron

requesting information have been authenticated by Defendants' witnesses and have been part of

the record of this case now for more than three years.[4]  And RSD does not need to depose

---

[4] Instructive here is a case previously relied upon by RSD in seeking to quash Mr. Barron's deposition (ECF No. 255).  In *476 K St., LLC v. Seneca Specialty Ins. Co.*, "the defendant argued that the deposition of the Pillsbury lawyer was necessary because he made 'demands to [the defendant insurance company] requesting payment of covered losses under the policy and assisted in coordinating site inspections.'" *476 K St., LLC v. Seneca Specialty*

Plaintiff's lead litigation counsel to confirm the contents of Plaintiff's requests for information, which describe in detail "what information Plaintiff was asking for." Motion at 8.  The Court has already determined that whatever Plaintiff "knew about RSD as recited in these letters" (Motion at 8) was not enough to absolve Defendants from their obligation to provide basic information under the Restatement. *See* ECF No. 151.  And there is no basis for deposing Mr. Bosch solely to confirm what Defendants witnesses have already conceded, which is that Defendants did not disclose the information regarding IWA's involvement and RSD's financial capabilities, and in fact were directed not to do so.

The question this Court needs to decide now is whether, *with* the information that was belatedly produced in discovery confirming that RSD is a sham that has no independent ability to satisfy Tenant's obligations under the Ground Lease, the Assignment comports with the Restatement's limitations on assignment such that IWA was not relieved of its contractual obligations to Plaintiff.  Specifically, Plaintiff's claim under the Restatement now boils down to whether the Assignment materially increases Plaintiff's risk as Landlord under the Ground Lease, impairs Landlord's chance of obtaining ground rent and maintenance of the Property, or reduces the value of the Ground Lease to Plaintiff. Restatement Section 317(2).

What RSD seeks to discover by deposing Mr. Bosch has nothing to do with Plaintiff's claim that the Assignment is invalid under the Restatement. Plaintiff does not intend to call Mr. Bosch as a witness, because it does not need his testimony to prove anything.

Accordingly, RSD cannot establish any need for deposing Plaintiff's lead litigation counsel pertaining to the Restatement issues before this Court.

---

*Ins. Co.* No. CIV. TDC 14-2739, 2015 WL 3464459, at *2 (D. Md. May 28, 2015). The *Seneca Specialty* Court denied the discovery of the lawyer, noting that the lawyer's deposition was being pursued "based on speculation that [p]laintiff will use his testimony to prove certain factual assertions in [p]laintiff's complaint." *Id.* at *2.

**B.**     **Plaintiff's Lead Litigation Counsel Cannot Offer Relevant Non-privileged Testimony on Disputed Fact Issues Regarding the Fraudulent Conveyance Claim**

What RSD appears to be arguing now is that it should be allowed to question Mr. Bosch about Plaintiff's pre-filing investigation into RSD, going beyond the substance of the information requested in Mr. Bosch's correspondence to RSD representative Barron, which it contends goes to the fraud issues in this case.  Not so.  The Court made clear at the time it found that there are Restatement issues implicated by IWA's purported assignment to RSD that it had not yet reached the separate issue whether there was a fraudulent conveyance.  *See* ECF No. 151 at 20.  Contrary to RSD's insinuation in its Motion, the Court never said that RSD's failure to respond to Plaintiff's reasonable requests for basic information about RSD as "a fairly central potentially dispositive issue in this case" *as to Plaintiff's fraudulent conveyance claim*.  And that is because it is not.

Indeed, when RSD contends that Plaintiff claims that its refusal to provide information "after the Assignment constituted fraud," as the predicate for pursuing discovery from Plaintiff's lead litigation counsel, it misconstrues Plaintiff's fraud claim. Plaintiff has never alleged that the act of Defendants improperly withholding information, by itself, constitutes fraud. Prior to Plaintiff discovering direct evidence of fraud through discovery, Plaintiff had to rely on "badges" of fraud that gave rise to an *inference* of Defendants' fraudulent intent. One such badge was secrecy or concealment: Plaintiff argued initially that Defendants' refusal to provide information about RSD suggested fraudulent *intent*. ECF No. 21 at 29.  The fact is that there is now direct evidence of fraudulent intent, revealed through produced documents, deposition testimony, and an *in camera* review of materials Defendants attempted to bury under the attorney-client privilege.  But Plaintiff has not alleged that Defendants' secrecy and concealment by themselves constitute actionable fraud.

Therefore, it does not matter what Plaintiff knew or reasonably believed at the time of Defendants' concealment, as Plaintiff has not asserted any claim that would make its actual knowledge an element of recovery or of any defense. *See, e.g.,* Md. Code, Com. Law, § 15-207 ("Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors, is fraudulent as to both present and future creditors.").

To defend against a claim that Plaintiff does not allege, RSD asserts that it must depose Mr. Bosch to determine what Plaintiff "knew when Mr. Bosch sent [the letters to Mr. Barron] and what it did not know." Motion at 8. RSD resurrects the unsuccessful argument it first raised in briefing on the Restatement: that Plaintiff supposedly already had the information it requested in letters to Mr. Barron. ECF No. 136.1 at 33. The Court saw through this then, ruling that Defendants had not "met their obligation to provide information sufficient to give Plaintiff adequate assurance that RSD can fulfill IWA's obligations under the Ground Lease and Estoppel Agreement," and nothing has changed. ECF No. 151 at 19-20. RSD is making up fraud claims that do not exist in this case to justify a deposition of Plaintiff's lead litigation counsel that simply is unwarranted.  Just as Mr. Bosch can provide no testimony that bears on any of the Restatement issues in this case, there is no testimony that RSD can elicit from Mr. Bosch that is proper or even relevant to the fraudulent conveyance claim or to RSD's defenses.

### C.     Mr. Bosch Was Acting as Plaintiff's Lawyer

Further to its efforts to falsely equate a deposition of Plaintiff's lead litigation counsel with the deposition of Mr. Barron, RSD appears to be contending that it should be allowed to depose Mr. Bosch about topics beyond the undisputed contents of his correspondence with Mr. Barron because Mr. Bosch was not acting in a legal capacity.  RSD concedes in its Motion that, if Mr. Bosch was acting as Plaintiff's lawyer in his communications with Mr. Barron, "this

should preclude RSD from asking Mr. Bosch about his communications with his client." Motion

at 7.  But RSD merely demonstrates that its Motion is frivolous, as RSD cannot credibly argue

that Mr. Bosch was acting in any capacity *other* than as Plaintiff's lawyer at all relevant times.

RSD's counsel already conceded this point, as did Mr. Barron himself.   At the February 16th

Hearing, counsel for RSD stated:

> MS. KROPF: And so one of the primary issues seems to be what [Mr. Barron]
> decided to disclose and why he perhaps didn't. Now in that role, Your Honor,
> he's acting as the lawyer. The first reach out that my client got wasn't from Mr.
> Camalier, wasn't from someone who wanted to see what was going on. It wasn't
> business person to business person. Mr. Bosch, **the litigation counsel**, reached
> out.

Feb. 16. Hr. Tr. 96: 7-13 (emphasis added). And in his deposition, Mr. Barron references Mr.

Bosch's position as "head of litigation at a big law firm" over a dozen times (*see e.g.,* R. Barron

Dep. Tr., 263:2) and testifies that Mr. Bosch's position as litigation counsel put RSD on notice of

impending litigation. *Id.* at 397:16-20 ("When you send the letter, the only reason why you're

sending letters like this is in preparation of litigation. It is a litigation threat by the very fact of

you signing a letter."). RSD cannot now reverse course and argue that Mr. Bosch was not acting

in his legal capacity when communicating with Mr. Barron.

RSD dances around this admission by contending that Mr. Bosch unwittingly

acknowledged his role as a "key witness" when he did not refer to himself in the third person

when taking Mr. Barron's deposition.  Motion at 7-8.  That is not a good faith argument for

deposing Plaintiff's lead litigation counsel in this case, and just illustrates the weakness of RSD's

Motion.  RSD even goes so far as to contend that it should be allowed to depose Mr. Bosch

because Plaintiff's corporate representative, Mr. Camalier, did not respond to RSD's

impermissible request for a legal conclusion when he was asked whether Mr. Bosch was acting

as Plaintiff's lawyer. C. Camalier Dep. Tr. Vol. I, 185:11-17.[5] As with RSD's disregard for this Court's prior rulings, its misstatements of fact and its rejiggering of Plaintiff's fraudulent conveyance claim to suit its narrative, these frivolous arguments should not be countenanced.

**D.    RSD Relies on Evidence That Does Not Support the Arguments Made in its Motion**

As noted, the information RSD seeks to elicit from Mr. Bosch concerning what Plaintiff did and did not know is irrelevant. Furthermore, it clearly implicates issues of privilege and work product associated with Plaintiff's pre-filing investigation.  Accordingly, RSD has not established grounds for the deposition; the Court need go no further.

But Plaintiff does not want to leave RSD's factual assertions unanswered, as any careful review of the evidence presented by RSD in support of its Motion demonstrates that it is not being forthright about the facts surrounding what was "disclosed" to Plaintiff.  It is simply incredible for RSD now to contend, in its request to depose Plaintiff's lead litigation counsel, that it was forthcoming in disclosing information requested by Plaintiff.

*First,* RSD argues that Plaintiff knew Paul Rubin was the point of contact for RSD because it "emailed Mr. Rubin about an operational issue" on October 6, 2017. Exhibit C to Motion. In the email chain cited by RSD, Cyndi Kunze of Rock Springs Properties (not Plaintiff) reaches out to a broker at CBRE, who directs her to Mr. Rubin to assist with obtaining proof of property tax payment. *Id.* All this contact information indicates is that Mr. Rubin is affiliated with an entity called "Algon" and was acting in some property management capacity. But it says nothing whatsoever about RSD or about Mr. Rubin's relationship to RSD.  Mr. Bosch cannot

---

[5]  When asked whether Mr. Bosch "was acting as Plaintiff's lawyer," Mr. Camalier testified, "We asked him to prepare a letter to find out this information from Mr. Barron. Again, your classification, whether he was a lawyer or was writing this on our behalf, I don't understand the distinction."

offer testimony on the contents of these emails, which speak for themselves and do not support the arguments being advanced by RSD in connection with this Motion.

*Second*, RSD then points to another email six months later where Ms. Kunze (of Rock Springs Properties) states that Mr. Rubin (of Algon) has been identified "as the new entity that will be able to help us obtain a new insurance certificate." Exhibit G to Motion. Mr. Rubin says "you found the right person," but contrary to RSD's assertion (Motion at 3), again says nothing about RSD. *Id.* His response indicates his affiliation with yet another entity, Longshore Ventures LLC ("Longshore"), in his signature line, but identifies nothing about his or Longshore's affiliation with RSD.

We now know, through discovery in this litigation, that Longshore was the 2% member of RSD, and that Longshore in turn is controlled by Troy Taylor and Paul Rubin, who claim they hold those interests in their personal capacity and not through Algon, the financial restructuring advisory group with whom they're publicly affiliated.[6]  Neither of these emails includes any reference to RSD, let alone identifies a point of contact for RSD, the purported Tenant.  Nor do the emails say anything about RSD's financial wherewithal to satisfy Tenant's obligations under the Ground Lease.  Mr. Bosch cannot offer testimony about these emails, which speak for themselves and do not support RSD's arguments.

*Third,* RSD argues that a February 6, 2018, email sent by a broker, Steve Silverberg of CBRE, to Charles Camalier informed Plaintiff: (1) who RSD's managing member was; (2) provided contact information for RSD's principals; and (3) advised "that the previous tenant Aegon (IWA) was still involved in the property ***in some way***." Motion at 3 (emphasis added). The email provides "requested contact info[rmation] for AEGON and Algon" and includes

---

[6] *See Senior Team*, Algon Group,  https://algongroup.com/senior-team/ (last visited Sept. 5, 2023).

contact cards for three individuals --Nick Koluch, Mr. Rubin, and Troy Taylor—none of whom are identified as being affiliated with RSD (or with IWA, for that matter). Exhibit B to Motion. The email identifies the contact information for Mr. Rubin and Mr. Taylor and their affiliation with Algon, but nothing about what Algon is or its relationship to RSD. Similarly, the email identifies contact information for Mr. Koluch and his affiliation with Aegon, but does not, as RSD claims, reveal that Mr. Koluch "was on RSD's management committee."

RSD is trotting out stale evidence that already has been addressed by the Court.  As the Court noted in its Restatement ruling, "Charles Camalier on behalf of Plaintiff was given information for contacts with entities who were managing the Property, but not about the principals who owned and operated RSD itself." ECF No. 151 at 19. The email does not reveal that Plaintiff knew anything about "who was managing RSD and handling operational issues" (Motion at 3) and in fact, does not mention RSD at all.

Moreover, whether Plaintiff suspected that IWA was involved ***in some way*** is of no consequence: no reasonable interpretation of Mr. Silverberg's email could suggest that it sufficed to inform Plaintiff that IWA retained a 98% membership interest in RSD, much less that RSD lacked independent ability to perform Tenant's obligations under the Ground Lease without IWA's continued financial support. Those are the questions that were directed to RSD, through Mr. Barron.  And the answers to those questions were specifically withheld, as the testimony of Defendants' chief witnesses (including Mr. Barron) now bears out, because Defendants were hoping to get past the statute of limitations before Plaintiff discovered the fraudulent conveyance.   Concealing IWA's involvement was purposeful and a key element of IWA's exit strategy. When asked "under normal circumstances, would it have made sense to tell the landlord that IWA was still involved?" Mr. Taylor testified, "Our instructions from management

committee were not to reach out to the landlord and have any discussions." T. Taylor Dep. Tr., 322:11-13, 18-20.  Mr. Bosch cannot offer any fact testimony bearing on that issue, but he certainly anticipates offering evidence of Defendants' fraudulent intention at trial.

*Fourth*, RSD claims that Mr. Rubin and Mr. Taylor met with "Plaintiff's real estate brokers" and told them that "they were the managing member of RSD." Motion at 2. However, Mr. Taylor's testimony directly conflicts with that of the brokers – who were subpoenaed by RSD. First, the brokers to whom RSD is referring, Mr. Silverberg and James G. Cahill from CBRE, had a listing agreement for the Property with Aegon (IWA's asset manager), not with Plaintiff.  Following the Assignment, Mr. Koluch of Aegon told his brokers to contact Messrs. Rubin and Taylor.  Mr. Cahill testified that when he asked Taylor and Rubin "do they own [the Property], what type of ownership is it, you know, what's the relationship with Aegon," they replied that "it was a sublease" which "red-flagged that there's an issue here" to the brokers. J. Cahill Dep. Tr., 26:20-22, 27:5, 28:16-17.  Mr. Cahill also testified that Mr. Taylor and Mr. Rubin "weren't behaving in the manner we were used to with asset manager owners" and that they made the brokers uncomfortable to the point of including a retainer fee for a listing agreement because "this smelled to us like it was a waste of time." J. Cahill Dep. Tr., 33:6-8; 30:20-22.

In sum, **nothing** that RSD puts forth in its Motion suggests that Plaintiff knew that RSD was a special-purpose entity owned 98% by IWA and 2% by another special-purpose entity, Longshore, or that Mr. Rubin or Mr. Taylor were principals in RSD through their ownership of Longshore. But even if RSD did have some basis to contend that Plaintiff knew more about IWA's involvement in RSD or about RSD's inability to perform without IWA's financial

backing than it let on, the question remains:  so what?  None of the discovery RSD would pursue

from Plaintiff's lead litigation counsel bears on any issue in the case.

In this context, RSD's factual assertions are baseless, and do not come close to

establishing grounds for pursuing the deposition of Plaintiff's lead litigation counsel.  Zealous

advocacy has its limits, which RSD has exceeded with its Motion.

**E.     RSD's Threat to Seek Disqualification of Plaintiff's Lead Counsel is Late and Frivolous**

In a lone paragraph at the end of its Motion, RSD reveals its ultimate purpose in pursuing

a deposition of Plaintiff's lead counsel: to set up a motion to disqualify Mr. Bosch as trial

counsel. Motion at 8. The timing of this threat is auspicious, coming as it does more than three

years after the Complaint was filed but just days after this Court ordered IWA to produce

documents supporting Plaintiff's fraud theories.   Disqualification is a "disfavored" and "drastic

remedy" in Maryland. *Gross v. SES Americom, Inc.*, 307 F. Supp. 2d 719, 722–23 (D. Md.

2004). The "tactical abuse" of the disqualification process to "block, harass, or otherwise hinder

the other party's case" is to be guarded against. *Klupt v. Krongard*, 728 A. 2d 727, 740 (Md.

App. 1999).

The mere threat of disqualification here is troubling, as it lacks any good faith basis by

reference to the Maryland Rules of Professional Conduct. *See* MD Rules Attorneys, Rule 19-

303.7. Rule 19-303.7 states, in relevant part:

(a) An attorney shall not act as an advocate at a trial in which the attorney is likely to
be a necessary witness unless:
(1) the testimony related to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered
in the case; or
(3) disqualification of the attorney would work substantial hardship on the
client.

Here, the substance of the correspondence between Plaintiff's lead counsel and RSD's point of contact, Mr. Barron, is clear from the face of the documents.   The letters have been authenticated by deposition testimony, and there are no disputes about what information Plaintiff was seeking.  Those issues have already been decided by the Court. Therefore, any potential testimony by Mr. Bosch about this correspondence would be redundant and related to an uncontested issue.

Furthermore, there is no question that disqualification would work a substantial hardship on Plaintiff.  Mr. Bosch's representation of Plaintiff in this litigation and his role in communicating with RSD's representative Mr. Barron on behalf of Plaintiff were both known to RSD when Mr. Bosch signed the complaint initiating the case three years ago. If Defendants had any good faith basis for challenging Mr. Bosch on the grounds that he might be a necessary and material witness (which he is not), that was the time to speak up.  Even if there was some legitimate basis to pursue disqualification, which there is not, RSD has waived that challenge under the Maryland Rules of Professional Conduct by sitting on its hands. Indeed, this Court has held that much shorter delays waived the right to disqualification.[7]

RSD has no good faith excuse for waiting until three years into the case to raise this issue.  RSD has been represented by the same counsel since the case was initiated but did not threaten such a motion until a discovery letter on June 29, 2023, without any

---

[7]  *See In re Modanlo,* 342 B.R. 230, 236–38 (finding that the movant's disqualification efforts based on allegations of a conflict of interest were waived because he waited more than five months after learning of the conflict to file his motion)*; see also Gross,* 307 F.Supp.2d at 723–24 (finding that the movant had waived its right to raise conflict allegations when it was aware of the conflict during the two years of negotiations preceding the lawsuit, but failed to file the motion to disqualify counsel until a year after the complaint was filed)*; see also Reed v. Baltimore Life Ins. Co.,* 127 Md.App. 536, 563–64 (1999) (finding that the district court did not abuse its discretion by denying movant's motion to disqualify opposing counsel when movant was aware of the opposing counsel's conflict for one year before filing its motion).

explanation for the delay in expressing RSD's "increasing concern." Exhibit A, Letter from S. Kropf to W. Bosch and K. Danial. The "increasing concern" expressed by RSD presumably relates to the fact that RSD's witnesses, including Mr. Barron, have substantiated Plaintiff's fraudulent conveyance claim.  None of the purported "evidence" offered by RSD in support of its Motion is new, or even helpful to RSD (as noted).  And now that the Court has ordered the disclosure of documents previously withheld on privilege grounds that further support Plaintiff's fraud theories, the timing of RSD's threat to pursue disqualification is transparently retaliatory and desperate.

The Motion not only should be denied, but RSD should be held accountable for burdening the Court and Plaintiff with such aggressive litigation tactics.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court deny RSD's Motion for Leave to Take Deposition of William Bosch and order such additional relief as may be warranted given the frivolous and transparently harassing nature of this retaliatory Motion.

Dated: September 5, 2023                      Respectfully submitted,

                                              /s/ *William M. Bosch*
                                              William M. Bosch
                                              Anthony F. Cavanaugh
                                              Katherine T. Danial
                                              Alvin Dunn
                                              Nicole Steinberg
                                              PILLSBURY WINTHROP SHAW PITTMAN LLP
                                              1200 Seventeenth Street N.W.
                                              Washington, D.C. 20036
                                              Telephone: (202) 663-8000
                                              Facsimile: (202) 663-8007
                                              william.bosch@pillsburylaw.com
                                              anthony.cavanaugh@pillsburylaw.com
                                              katherine.danial@pillsburylaw.com
                                              alvin.dunn@pillsburylaw.com
                                              nicole.steinberg@pillsburylaw.com

                                              *Counsel for Plaintiff Rock Spring Plaza II, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 5, 2023, I caused a copy of the foregoing Plaintiff's

Response in Opposition to Defendant RSD's Motion for Leave to Take Deposition of William

Bosch to be served via email on all counsel of record.

*/s/ Katherine Danial*