Exhibit L

Case 8:20-cv-01502-PJM   Document 356-1   Filed 09/12/23   Page 2 of 5
30(b)(6) Rock Spring Plaza II, LLC                                      March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 1

1             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF MARYLAND
2                     CIVIL DIVISION
         Civil Action No:  8:20-cv-01502-PJM
3
4
     ROCK SPRING PLAZA II, LLC,
5
              Plaintiff,
6
     vs.
7
     INVESTORS WARRANTY OF AMERICA, LLC,
8    et al.,
9             Defendants.
10   _____
11
12
13       VOLUME I - 30(b)(6) VIDEOTAPE DEPOSITION OF
                 ROCK SPRING PLAZA II, LLC,
14                 CHARLES A. CAMALIER, III
15
16
                 Tuesday, March 21, 2023
17                8:55 a.m. to 5:48 p.m.
18
19
20
            Stenographically reported by:
21              Shauna T. Dietel, RPR
           Registered Professional Reporter
22
23
24
25

|                                                                                                    Page 282 |
| ---- |
| 1   A   I see that. |
| 2   Q   And do you see that it's an e-mail to |
| 3   prubin@algongroup.com? |
| 4   A   I do. |
| 5   Q   And do you understand now that that's Paul |
| 6   Rubin of the Algon Group? |
| 7   A   It may be. |
| 8   Q   Okay. |
| 9   A   I don't -- I don't recall his e-mail |
| 10  address. |
| 11  Q   Okay.  So Ms. Kunze from Rock Springs |
| 12  Property was in touch with Mr. Rubin about this |
| 13  insurance certificate, right? |
| 14  A   That's what it appears to be. |
| 15  Q   Okay.  And your testimony here today is |
| 16  that you have no idea whether Ms. Kunze's e-mail to |
| 17  Mr. Rubin has anything to do with 6560?  That's your |
| 18  testimony? |
| 19      MR. BOSCH:  Objection to form. |
| 20  A   Well, I said there's no reference to 6560 |
| 21  in this e-mail. |
| 22  Q   (BY MS. KROPF) Okay.  And do you |
| 23  understand the reference to Spring Rock II to be a |
| 24  reference to 6560, or you're just not sure? |
| 25  A   I'm not sure. |

|                                                                                                    Page 283 |
| ---- |
| 1   Q   Because earlier today I thought you |
| 2   referenced that there was an e-mail about insurance |
| 3   between Rock Spring Property and -- between Rock |
| 4   Spring Properties and Rock Springs Drive. |
| 5   A   No -- |
| 6   Q   I thought you referenced an e-mail about |
| 7   insurance.  Was that not this e-mail? |
| 8   A   I don't think it's this e-mail. |
| 9   Q   Okay.  So there's another -- is there |
| 10  another e-mail between someone -- between Plaintiff |
| 11  and Rock Springs Drive about insurance? |
| 12  A   There may be. |
| 13  Q   Okay. |
| 14      (Deposition Exhibit 15 was marked.) |
| 15  Q   (BY MS. KROPF)  All right.  Mr. Camalier, |
| 16  I've handed you what's marked as Exhibit 15. |
| 17      Would you like to go off the record, if you |
| 18  need time to read it and put it in context or -- |
| 19  A   Sure.  That would be great. |
| 20      MS. KROPF:  Okay.  Why don't we go off the |
| 21  record. |
| 22      THE VIDEOGRAPHER:  Going off the record. |
| 23  The time is 3:37 p.m. |
| 24      (Recess taken, 3:37 p.m. until 3:40 p.m.) |
| 25      THE VIDEOGRAPHER:  Back on the record.  The |

|                                                                                                    Page 284 |
| ---- |
| 1   time is 3:40 p.m. |
| 2   Q   (BY MS. KROPF)  Mr. Camalier, you have in |
| 3   front of you what's been marked as Exhibit 15. |
| 4       Do you recognize it? |
| 5   A   Yes, I do. |
| 6   Q   What is it? |
| 7   A   ==It is a letter dated April 25th, 2018, from== |
| 8   ==Mr. Bosch to Mr. Barron.== |
| 9   Q   Okay.  Mr. Bosch is writing on behalf of |
| 10  the plaintiff, right? |
| 11  A   That is correct. |
| 12  Q   And he's writing to Mr. B- -- Mr. Barron on |
| 13  behalf of Rock Springs Drive, right? |
| 14      Mr. -- he's writing to Mr. Barron as the |
| 15  contact person for Rock Springs Drive? |
| 16  A   Correct. |
| 17  Q   And is there any indication in this letter |
| 18  that it was sent to IWA? |
| 19  A   I see no indication on here to indicate if |
| 20  it was sent to them or not. |
| 21  Q   Okay.  Did Plaintiff instruct Mr. Bosch to |
| 22  send a copy of the letter to IWA as well as Rock |
| 23  Springs Drive? |
| 24  A   I don't believe we did. |
| 25  Q   All right.  So in the -- in the -- at the |

|                                                                                                    Page 285 |
| ---- |
| 1   end of that first paragraph, Plaintiff says, "My |
| 2   client has also requested basic contact information |
| 3   for assignee, including -- including a point of |
| 4   contact with whom my client can discuss day-to-day |
| 5   operational issues concerning the building." |
| 6       Do you see that? |
| 7   A   Yes. |
| 8   Q   Did Plaintiff already have a point of |
| 9   contact with whom to discuss day-to-day operational |
| 10  issues concerning the building? |
| 11  A   Mr. Barron never gave us a point of contact |
| 12  other than himself. |
| 13  Q   I understand that.  That wasn't my |
| 14  question.  Could you listen to my question, please? |
| 15      My question is whether or not Plaintiff |
| 16  already had the name of a contact person with whom it |
| 17  could discuss day-to-day operational issues related |
| 18  to the building? |
| 19  A   I don't believe so. |
| 20  Q   Okay.  The e-mail we just looked from |
| 21  Ms. Kunze to Mr. Rubin -- you don't think Mr. Rubin |
| 22  was the contact person for day-to-day information |
| 23  regarding the building? |
| 24      MR. BOSCH:  Objection to form. |
| 25  A   No.  I have no understanding that Mr. Rubin |

Page 286

1  was the designated contact person.
2      Q   (BY MS. KROPF)  Okay.  Then why was
3  Ms. Kunze reaching out to him?
4          You can look back at Exhibit 14, if you
5  want to.
6          MR. BOSCH:  Let's have the question read
7  back.
8          (The court reporter read the last
9  question.)
10         MR. BOSCH:  Objection to form.
11     A   I don't know.
12     Q   (BY MS. KROPF)  All right.  At the bottom
13 of Page 1, and going on to Page 2, it says, "Kindly
14 confirm that the assignee is affiliated with
15 Investors Warranty of America."
16         Do you see that?
17     A   Yes.
18     Q   Okay.  Did Plaintiff believe that Rock
19 Springs Drive was affiliated with Investors Warranty
20 of America?
21     A   We were unaware whether they were or not.
22     Q   Well, you picked that -- that specific
23 company to ask about.  Why did you -- why did you ask
24 them to confirm whether or not they were affiliated
25 with IWA?

Page 287

1      A   Because the tax bills were still going to
2  Investors Warranty of America.
3      Q   Okay.  Any other reason?
4      A   That was the main reason.
5      Q   Okay.  Was there any other reason?
6      A   I don't recall.
7      Q   Then on Page 2 of that letter, second full
8  paragraph, it says, "You also note Landlord's other
9  commercial buildings -- Landlord's other commercial
10 office buildings in the market area and the
11 importance of assig- -- to assignee of keeping
12 confidential its proprietary business information and
13 its business plans with respect to the building, but
14 I assure you that Landlord has no interest in
15 learning assignee's proprietary information to gain
16 some competitive advantage over assignee."
17         Do you see that?
18     A   Yes.
19     Q   And was that true?
20     A   It's what I testified earlier, that, again,
21 Mr. Barron acted like we wanted this information.  We
22 never requested proprietary business information or
23 business plans.  We just wanted to know who the
24 members of RSD were and whether they had the
25 financial wherewithal to continue to meet the

Page 288

1  obligations of the tenant under the ground lease.
2      Q   And Mr. Bosch goes on to say, "Landlord's
3  sole interest is in seeing that the building on the
4  land that Landlord owns is put to a productive use
5  and does not continue to lie vacant, an interest that
6  assignee presumably shares."
7          Do you see that?
8      A   Yes.
9      Q   And is that true?
10     A   That's true.
11     Q   All right.  Now, the next paragraph says,
12 in the second sentence, "If it is forced to seek
13 information and other reporting to which Landlord is
14 entitled under the ground lease, it will do so."
15         Do you see that?
16     A   Yes.
17     Q   And are the provisions of the ground lease
18 that Plaintiff is referring to in the letter, are
19 they the same ones we've -- you've talked about
20 earlier today?
21     A   I would imagine.
22     Q   Are there any others you would add?
23     A   Not that I can recall at the present time.
24     Q   Okay.  And a little further down in that
25 paragraph, it says, "Assuming your client is

Page 289

1  legitimately engaged in commercial activity in the
2  building, it would be in both parties' interest to be
3  able to discuss these potential opportunities as they
4  arise."
5          Do you see that?
6      A   Yes.
7      Q   Okay.  And is that true?
8      A   Yes.
9      Q   Okay.  So it was in Landlord's interest to
10 be able to discuss potential opportunities for
11 subleasing the building; is that right?
12     A   Yes.
13     Q   Okay.  And so would Landlord share any
14 subleasing opportunities it learned about, that were
15 potential subleasing opportunities for --for 6560?
16     A   We did.  We brought to them numerous times
17 subleases, opportunities that they refused to pursue.
18     Q   Well, earlier you identified one, which was
19 a GSA opportunity.
20         MR. BOSCH:  Objection to the form.
21     Q   (BY MS. KROPF)  Were there others?
22     A   Again, there were numerous.  Whether I
23 provided them or they were in the marketplace, there
24 were numerous GSA proposals and one private sector
25 proposal that I was aware of that they refused to

Page 290

1   even negotiate with a prospective subtenant.
2       Q   And were there any others that you were
3   aware of?
4       A   There may have been, but I can't recall
5   them as we sit here today.
6       Q   Okay.  Okay.  Let me back up just one
7   moment.
8           This -- the Exhibit 15 refers back to the
9   OFAC regulations; is that right?
10      A   Do you want to direct me where you're
11  looking at?
12      Q   Sure.  The bottom of Page 2.
13      A   It does.
14      Q   So at this point, Rock Springs Drive had --
15  had been paying Landlord ground rent for about eight
16  months, right?
17      A   I counted seven months.
18      Q   Okay.  About seven months.
19          So for seven months Landlord had been
20  accepting hundreds of thousands of dollars in payment
21  from Rock Springs Drive, right?
22          MR. BOSCH:  Objection to form.
23      A   Correct.
24      Q   (BY MS. KROPF)  And so I assume during
25  those seven months that Landlord didn't have a

Page 291

1   serious concern about whether or not any of Rock
2   Springs Drive or its owners or investors appears on
3   any OFAC sanctions list or is a citizen of any of the
4   countries identified above, right?
5           MR. BOSCH:  Objection to form.
6       A   We did have concern.  We repeatedly asked
7   them to tell us their members, which they failed to
8   do.
9       Q   (BY MS. KROPF)  But you were fine accepting
10  hundreds of thousands of dollars in payments from
11  this entity?
12          MR. BOSCH:  Objection to form.
13      A   Yes.
14          (Deposition Exhibit 16 was marked.)
15      Q   (BY MS. KROPF)  Mr. Camalier, I've shown
16  you what's been marked as Exhibit 16.  At the top
17  you'll see it's an e-mail from Jody Rice to you; is
18  that right?
19      A   That's correct.
20      Q   Okay.  And the subject line of that says
21  6560 Rock Springs Drive, right?
22      A   That's correct.
23      Q   And it's dated May 2nd, 2018, right?
24      A   That's correct.
25      Q   Okay.  And Jody is forwarding an e-mail

Page 292

1   from Cyndi Kunze; is that right?
2       A   That appears to be the case.
3       Q   Okay.  And Ms. Kunze's e-mail says, "Here
4   is what I was able to obtain from your new contact.
5   Contact information is below," right?
6       A   That's what the e-mail says.
7       Q   Okay.  And it says Paul Rubin, right?
8       A   Yes.
9       Q   It says, Longshore Ventures, LLC, right?
10      A   Yes.
11      Q   It has a cell phone number, right?
12      A   Yes.
13      Q   And it has an e-mail address,
14  prubin@algongroup.com, right?
15      A   Correct.
16      Q   Okay.  When you received this e-mail, did
17  you understand that the contact information there was
18  for 6560 Rock Springs Drive?
19          MR. BOSCH:  Objection to the form of the
20  question.
21      A   I -- I was confused when I got the -- the
22  e-mail because before Mr. Rubin had been identified
23  as working, not for Longshore Ventures, but for
24  another entity.
25      Q   (BY MS. KROPF)  Okay.  Did you understand

Page 293

1   that he had something to do with 6560 Rock Spring
2   Drive from Ms. Rice's e-mail?
3       A   I don't know from -- Ms. Rice's e-mail had
4   no comment on it.
5       Q   Well, it looks like it had a comment, but
6   it's redacted, correct?
7       A   I don't know.
8       Q   Do you see where it says, "Redacted for
9   privilege"?
10      A   I see that.
11      Q   Okay.  So Ms. -- Ms. Rice had something
12  there, but it's been redacted for privilege reasons,
13  right?
14      A   I don't know.
15      Q   Did you ask Mr. Barron who Paul Rubin was?
16      A   I did not.
17      Q   Did you ask Mr. Bosch to ask Mr. Barron who
18  Paul Rubin was?
19      A   I don't recall.
20      Q   Did you ask -- did -- did you ask Rock
21  Springs Drive what Longshore Ventures was?
22      A   No.
23      Q   Did you ask Mr. Bosch to ask Mr. Barron
24  what Longshore Ventures was?
25      A   No.