IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
GREENBELT DIVISION

| | |
|---|---|
| ROCK SPRING PLAZA II, LLC<br><br>      Plaintiff,<br><br>v.<br><br>INVESTORS WARRANTY OF AMERICA, LLC, et al.,<br><br>      Defendants. | Civil Action No. 8:20-cv-01502-PJM |

**PLAINTIFF ROCK SPRING PLAZA II, LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO COMPEL <u>DEPOSITION TESTIMONY OF CHARLES CAMALIER, III</u>**

Plaintiff Rock Spring Plaza II, LLC ("Plaintiff") submits this Response in Opposition to Defendant Investors Warranty of America, LLC ("IWA") and Defendant Rock Springs Drive LLC's ("RSD," collectively with IWA, "Defendants") Joint Motion to Compel Deposition Testimony of Charles Camalier, III (the "Joint Motion").

**I.      INTRODUCTION**

Requesting to re-depose Mr. Camalier nearly six months after his testimony is Defendants' latest attempt to compel improper discovery on issues that *already have been decided* by the Court. Mr. Camalier already has been deposed at length in both his corporate and individual capacity and provided complete answers to all questions within the permissible scope of discovery. When the questions Defendants seek to compel Mr. Camalier to answer are scrutinized, the impropriety of Defendants' questions and misunderstanding as to when counsel is permitted to instruct a witness not to respond is readily apparent. The Joint Motion to re-depose Mr. Camalier should be denied in its entirety.

## II.     ARGUMENT

The questions at issue in the Joint Motion are indisputably outside the scope of permissible discovery: they call for legal conclusions, violate the discovery limitations set by the Court at the February 16, 2023, Discovery Hearing (the "February 16th Hearing"), and are irrelevant. The general limitations on discovery under the Federal Rules apply to deposition testimony: a party is only entitled to testimony that is relevant and otherwise proper discovery under Federal Rule 26(b)(1). Accordingly, when deciding a motion to compel testimony, the court must first determine whether the deposition questions themselves are appropriate before scrutinizing counsel's instructions. *See e.g. E.E.O.C. v. Freeman*, 288 F.R.D. 92, 98 (D. Md. 2012) (noting "[r]egardless of the behavior of counsel during a deposition, a court need not compel the discovery of information that falls outside the scope of proper discovery under Federal Rule of Civil Procedure 26(b)(1)). Defendants fail to pass even this threshold checkpoint.

Defendants go a step further and assert that Plaintiff and Plaintiff's counsel failed to prepare for the depositions in question. Plaintiff was adequately prepared to provide testimony on topics within the *unobjectionable* scope of the deposition notice. Mr. Camalier's counsel's objections and instructions were justified and necessary to protect Mr. Camalier from improper and harassing questioning outside the scope of permissible discovery under the Federal Rules, Local Rules, and the discovery limitations set by this Court. It was Defendants' choice to spend much of Mr. Camalier's Rule 30(b)(6) deposition asking questions that were improper and required Plaintiff's counsel to direct Plaintiff not to answer. Plaintiff should not be made to expend more time and resources simply because Defendants want to take another shot at asking irrelevant and improper questions.

Defendants' Joint Motion therefore should be denied in its entirety.

### A. Questions Calling for a Legal Conclusion are Outside the Scope of Permissible Discovery

Despite Mr. Camalier being called to testify in his corporate representative and individual capacity, the bulk of questions Defendants claim he refused to answer impermissibly call for legal conclusions. This Court recognizes that "[q]uestions calling for pure legal analysis in a deposition are arguably objectionable and improper." *E.E.O.C. v. Freeman*, 288 F.R.D. 92, 103 (D. Md. 2012). While "a party's legal theories or contentions are discoverable to the extent that they relate to the application of law to fact, and do not violate the attorney work product doctrine," contention interrogatories are the favored method for exploring such matters, "not depositions." *Id.* at 102. Defendants not only fail to offer any argument that they were eliciting discoverable fact testimony from Mr. Camalier through their questions but admit that the legal issues they were exploring have been "repeatedly briefed in this case." Joint Motion at 14. Accordingly, when information sought by a deposition question "is legal in nature, and not directly geared towards discovering factual evidence or documents," regardless of the propriety of counsel's instructions, this Court has declined to compel testimony of a party's 30(b)(6) witness (*Id.*) and should do so here.

### 1. Questions Asking for Legal Analysis of the Obligations Under the Ground Lease and Estoppel Agreement Are Impermissible

Defendants asked Mr. Camalier to interpret the contracts at issue in this case: the Ground Lease and the Estoppel Agreement. These questions regarding the interpretation of clauses within legal documents are hardly permissible factual discovery as they call for pure legal analysis. It is for this Court to interpret the contracts at issue. Asking Mr. Camalier to advise this Court what the documents mean is clearly not within the scope of factual discovery permitted under Rule 26(b)(1). Indeed, as Defendants themselves lay out in the Joint Motion, all questions Mr. Camalier *could not* answer regarding the Ground Lease and Estoppel Agreement required

3

him to opine on the parties' obligations — or what they "can" or are "required" to do or refrain from doing — under such contracts. *See e.g.,* Joint Motion at 9-10, 14-15 (Arguing that Mr. Camalier did not answer "whether the landlord *can* sublease the property at issue under the Ground Lease," "whether the Landlord *can* enter the building to inspect it without the landlord's consent under the Ground Lease," "whether any provision of the Ground Lease *requires* a tenant to share information about assignees with the landlord," "what provisions of the Ground Lease *requires* the tenant to provide the landlord with the tenant's identity," "whether there was any *requirement* for the lender to assign the lease at the time of foreclosure of the property," "Is there any *requirement* in the ground lease that the assignee cannot be funded by an entity with an ownership interest in the assignee," and "Is there any *requirement* in the estoppel agreement that the Assignee cannot be funded by an entity with an ownership interest in the assignee").

As Mr. Camalier's Counsel reminded RSD's Counsel at Mr. Camalier's 30(b)(6) deposition, IWA relied on this same ground to object to responding to Plaintiff's Second Set of Interrogatories. C. Camalier 30(b)(6) Dep. Tr., 29:12-18 (Mr. Camalier's Counsel states, "I'll refer you to IWA's Response to Plaintiff's Second Set of Interrogatories in which your colleague, Ms. Davis, stated, quote, 'The Court has ruled that questions referring to obligations under the ground lease are improper discovery requests calling for a legal conclusion.'"). Defendants cannot have it both ways: they cannot refuse to respond to written discovery claiming that it calls for a legal conclusion, and then expect Plaintiff's corporate representative to opine on legal obligations created by the Ground Lease and Estoppel Agreement.

Nor are Defendants entitled to a second bite at the apple to properly phrase inquiries about Mr. Camalier's "understanding" of the contracts, as this issue was discussed during the deposition (C. Camalier Dep., 16:11-13), and yet Defendants' counsel refused to phrase a proper

4

question. For example, even after discussing off the record the distinction between asking a witness to interpret a contract and asking for his "understanding," RSD's Counsel asked, "Is there a *requirement*, Mr. Camalier, in the estoppel agreement that the lender had to assign the lease at the time of foreclosure?" C. Camalier Dep., 18:4-7. There is no basis under the Federal Rules to allow counsel to reopen a deposition to ask questions they simply failed to properly ask the first time around.

Furthermore, in those few instances when RSD's Counsel *did* attempt to frame a question about Mr. Camalier's understanding of a legal term – albeit divorced from any specific contract language; here, the witness's understanding of the term "arm's length transaction" – *Mr. Camalier answered the question. See e.g.,* P. 30(b)(6) Dep. Tr. Vol. I, 15:15-16:11.

> **Q** And I'm not asking you for a legal opinion, to be clear. I'm asking for what your understanding is of an "arm's length transaction."
> **MR. BOSCH:** Can I hear the question back?
> **MS. KROPF:** I just asked it. I'm asking Mr. Camalier what his understanding is of an arm's length transaction.
> **MR. BOSCH:** I'll object to the form of the question.
> **A** I think it's, again, an independent transaction where there's not undue influence on either side.
> **Q** (BY MS. KROPF) Undue influence on either side?
> **A** Yes.
> **Q** Okay. So under your definition, was the negotiation of the ground lease an arm's length transaction?
> **MR. BOSCH:** Objection to form.
> **A** Again, it was a transaction both parties wanted to enter into, and we negotiated in good faith and entered into it.

### 2. Questions Asking for Legal Analysis of Defendants' Position as a Surety to the Ground Lease Are Impermissible

Second, Defendants impermissibly asked Mr. Camalier to interpret *Defendants'* inchoate legal position concerning whether it agreed to be a "surety" or "guarantor" of the Ground Lease. While Plaintiff has argued – and the Court has agreed – that IWA was not released from its obligations under the Ground Lease when it purportedly assigned it to RSD [Feb. 16, Hr'g. Tr.

5

40:90-13], Plaintiff has not taken the position, as Defendants claim, that IWA is a "surety" of the Ground Lease. Joint Motion at 15. This theory of liability was mentioned off-handedly by the Court at the February 16th Hearing. Feb. 16 Hr'g. Tr., 10:14-19 (the Court states "I've stated this already, but it is my view that under the law, the assignor of the lease is the surety on the contract. If there was any dispute about whether IWA ultimately could be held on the hook for liability under the ground lease, my belief is that under the law of contracts, it can."). The Court was not using the term "surety" in any technical legal sense but was merely using it generically to describe its view that IWA was not *released* from privity of contract through the purported Assignment to RSD. Feb. 16 Hr'g. Tr., 33:24-34:10[1]

While Defendants proclaim that they asked Mr. Camalier about a theory of suretyship or guarantee "to prepare for trial" and avoid the "surprise" of "new evidence," (Joint Motion at 16) they instead sought a legal conclusion on "what provisions of the estoppel agreement support [Mr. Camalier's] position that [IWA] is a surety." P. 30(b)(6) Vol. 1 Tr., 99:19-22. There is no obligation under the Restatement or in connection with its fraudulent conveyance claim to prove that IWA is a "surety," however that term may be defined under Maryland law. This is Defendants' contrivance, leveraging an isolated "incautious" use of the term by the Court, that is not relevant to any material issue in this case. Again, when RSD's counsel properly framed the question, *Mr. Camalier answered the question*. Plaintiff's Counsel even aided RSD's Counsel in laying such foundation:

---

[1] **THE COURT:** As surety.
**MS. KROPF:** Well, I disagree that it's a surety, Your Honor.
**THE COURT:** Well, I don't want to get stuck on that.
**MS. KROPF:** Yeah, I don't think that's been briefed. I don't think it says that in the restatement. I don't think Maryland law supports it. So I do think that – that is the first time I heard you use that phrase.
**THE COURT:** Well, there is language to that effect in general contract law and I may have quoted it somewhat incautiously, but the idea still is that yes, the assignor would remain potentially liable.

> **MR. BOSCH:** Hold on a second. What I said was that he's prepared to testify on Plaintiff's behalf regarding IWA's undertaking that it would not be released from its contractual obligations under the ground lease through an assignment to RSD.
> **Q (BY MS. KROPF)** Okay. And are you prepared to testify on that topic?
> **A** Yes.
> **Q** Okay. And where does IWA's undertaking not to be released come from?
> **MR. BOSCH:** Objection. Asked and answered. But you can answer it again.
> **A** Again, they cannot be released under the estoppel agreement.
> **Q (BY MS. KROPF)** And which provisions?
> **A** I answered this before: 12 and 19.

P. 30(b)(6) Dep. Tr. Vol. I, 101:1-17.

### 3.   Questions Asking for Legal Analysis of the Sufficiency of Notice of the Assignment Are Impermissible

Third, Defendants impermissibly asked Mr. Camalier to interpret whether legally sufficient notice of the Assignment had been provided by IWA. RSD's Counsel asked, "Is it Plaintiff's position that it didn't get notice of the assignment from IWA to RSD of the ground lease?" and Mr. Camalier's counsel pointed out that the question was "asking for [Mr. Camalier] to draw a legal conclusion as to whether [the document] constitutes notice" and asked RSD's Counsel to "clarify the question." P. 30(b)(6) Dep. Tr. Vol. I, 106:3-12. Although not included in the Joint Motion, when RSD's Counsel laid the appropriate foundation, after prompting by Mr. Camalier's counsel to clarify that she was not seeking a legal conclusion, *Mr. Camalier answered the question*.

> **Q (BY MS. KROPF)** So, Mr. Camalier, looking at Exhibit 5, the second page -- do you have that in front out of you?
> **A** Yes, ma'am.
> **Q** Okay. And was this where IWA let the plaintiff know that the assignment had been made?
> **A** I believe so.
> **Q** Okay. And is Plaintiff's claim here that it didn't know the assignment happened?
> **A** I don't believe so.
> **Q** Okay. You found out about the assignment through this letter dated August 31st, 2017, right?
> **A** Yes.
> **Q** Okay. It wasn't hidden from the plaintiff, right?

**A** The members of RSD were hidden from the plaintiff --
**Q** Not my question. My question was whether or not the assignment was hidden from Plaintiff?
**A** We received notice that RSD was the proposed assignee of IWA.

P. 30(b)(6) Dep. Tr. Vol. I, 108:13-109:9.

    **B.**    **Questions that Violate the Court' Discovery Limitation are Outside the Scope of Permissible Discovery and Plaintiff Properly Instructed Mr. Camalier Not to Answer**

At the February 16th hearing, the Court curtailed the scope of discovery in this case. Among other limitations, the Court denied discovery on:

- Loans made in connection with the property (*Id.* at 162:6-14, where the Court rules that documents regarding loans made in connection with the property are "irrelevant and we're not going to permit [discovery on] it.")

- Non-parties, including the Camalier Family. *Id.* at 162:23-163:5 (the Court states "I just don't see that the Camaliers, whatever they did in the past, whether they were the lender, the borrower, both, I mean, that's just not where we are" and denies ECF No. 98, IWA's Motion to Compel Non-party Rockledge Associates, LLC).

In direct violation of the Court's limitations, RSD served Plaintiff with requests for production *after* the February 16th Hearing seeking "all documents related to any loan associated with 6560 Rock Springs Drive" and communications with "the lender for any loan associated with 6560 Rock Springs Drive." Exhibit A, Defendant RSD's Third Set of Requests for Production to Plaintiff. Because Plaintiff properly objected to such impermissible written discovery, Defendants unabashedly confirm in their Joint Motion that they again attempted to violate the Court's limitations during Mr. Camalier's depositions by asking Mr. Camalier about loans made in connection with the Property, broker involvement with underwriting loans on the

8

Property, and the alleged loan that the Camalier Family had on the Property. Joint Motion at 16-17.

In addition to such questions being an improper violation of the Court's discovery limitations – which is itself sufficient to deny the Joint Motion to Compel – Mr. Camalier's counsel was permitted under the Federal and Local Rules to instruct Mr. Camalier not to answer them. Federal Rule 30(c)(2) provides that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, **to enforce a limitation ordered by the court**, or to present a motion under Rule 30(d)(3)." (emphasis added). The Local Rules Discovery Guideline 6(d) aligns with the Federal Rule, stating "[i]t is presumptively improper to instruct a witness not to answer a question during the taking of a deposition **unless under the circumstances permitted by Fed. R. Civ. P. 30(c)(2)**." (emphasis added).

Without citing to any support, Defendants argue that Plaintiff's counsel "misstated and misapplied the Court's [February 16th] Ruling." Joint Motion at 7. This is perplexing, considering it is Defendants who have disregarded the Court's discovery limitations and misapplied both the Federal and Local Rules governing permissible discovery. Defendants have not met their burden, as the moving parties to compel, to show that the questions at issue were permissible or that the contested instructions were not attempting to enforce the discovery limitations set by the Court at the February 16th Hearing. This allows the Court to easily dispose of the Joint Motion. *See McNulty v. Casero*, No. SAG-16-2426, 2020 WL 2556667, at *4–5 (D. Md. May 20, 2020) (denying a motion to compel deposition testimony because instructions not to answer were attempts to enforce the Court's discovery limitation order).

### C. Mr. Camalier Was Prepared to and Answered Questions Within the Scope of Permissible Discovery

A party may file a motion to compel discovery, including deposition testimony, that is responsive to its discovery requests. However, to prevail on a motion to compel testimony the moving party must demonstrate that the questions are relevant. An allegedly improper instruction to a deposition witness to decline to answer a question does not, by itself, provide a legal basis to compel the testimony. As a threshold matter, to compel testimony, the Court must find that the testimony is relevant and otherwise proper discovery under Rule 26(b)(1). *See, e.g.*, Fed. R. Civ. P. 26(b)(1)*; Boyd v. University of Maryland Med*. Sys., 173 F.R.D. 143, 146-48 (D. Md. 1997) (discussing instructions to not answer and examining whether questions sought relevant information to determine if motion to compel should be granted); *see also King v. Coppin State College*, 42 F.3d 1386, 1994 WL 712563, at *3 (4th Cir., Dec. 23, 1994) (unpublished) (holding it was not abuse of discretion for district court to deny motion to compel answers to deposition questions that were not relevant to claims or defenses).

After Plaintiff prepared Mr. Camalier to answer Defendants' questions for nearly 10 hours over two days, Defendants cannot in good faith argue that Plaintiff has not complied with its discovery obligations. P. 30(b)(6) Dep. Tr. Vol. I, 8:15-9:1[2] While the duty of a corporation to prepare a Rule 30(b)(6) witness is well established, the extent of preparations necessary is a highly fact dependent inquiry. *Coryn Grp. II, LLC v. O.C. Seacrets, Inc.*, 265 F.R.D. 235, 239 (D. Md. 2010) (Noting, "[t]he determination of whether information is known or reasonably

---

[2] **Q:** Did you prepare for today's deposition?
**A:** Yes.
**Q:** How did you prepare?
**A:** I met with counsel and reviewed documents.
**Q:** How many times did you meet with counsel to prepare?
**A:** I met with counsel two days – to and – two days, and then this morning before the deposition.
**Q:** And about how many hours did you meet to prepare for this deposition?
**A:** I'd say about 10 hours.

Case 8:20-cv-01502-PJM Document 357 Filed 09/12/23 Page 11 of 14

available to a corporation requires a fact-specific analysis."). The party offering a Rule 30(b)(6) witness must make a "good faith effort" to "find out the relevant facts" about "matters known or reasonably available." *Wilson v. Lakner*, 228 F.R.D. 524, 529 (D. Md. 2005). "[P]erfection in preparation" is not necessary. *Id.* at 528.

Defendants take issue with Mr. Camalier's responses to questions about negotiating the Estoppel Agreement ***seventeen years ago***. *See* P. 30(b)(6) Dep. Tr. Vol. 1, 39:4-5 ("Again, I don't recall exactly today what my understanding back in 2006 was."). Mr. Camalier was entitled to refuse to answer such questions entirely, as they are outside the relevant timeframe for discovery the Court set at the February 16th Hearing. Feb. 16 Hr'g Tr., 150: 49-23 (The Court states, "24 months, two years prior to the date of the transfer is the only operable time frame. Everything before that is out because you're just getting into collateral issues of frankly, what I would consider ancient history."). Nevertheless, Mr. Camalier did testify on this topic, and explained that the loan was a reason Plaintiff signed the Estoppel Agreement. Defendants take issue with his inability to state definitively whether there were any other possible contributing reasons.

> **Q (BY MS. KROPF)** Okay. And so you said one of the reasons the tenant may have signed the estoppel agreement was to get the loan, right?
> **MR. BOSCH:** Objection to the form.
> **A** I've testified to that, I believe.
> **Q (BY MS. KROPF)** And are you prepared here today to testify to any other reasons that the tenant signed the estoppel agreement?
> **MR. BOSCH:** Objection to form.
> **A** Again, I've answered the question, saying there may be other reasons that I don't recall right now.

P. 30(b)(6) Dep. Tr. Vol. 1, 44:14-25.

Furthermore, this is not a situation where Mr. Camalier failed to prepare on this "ancient history," as his testimony on this very issue (which Defendants omit from their motion) makes

11

clear. Mr. Camalier not only confirmed that he was "involved in the negotiation and execution of the estoppel agreement for the plaintiff" (*Id.* at 54:4-7), but laid out the steps he took to prepare for this deposition topic:

> **Q (MS. KROPF)** Did you do anything to prepare to go back to look at your records to find out how the estoppel agreement was negotiated?
> **A** There were no records for this document.
> **Q** Did you -- did you -- where did you look for records related to the negotiation of the estoppel agreement?
> **MR. BOSCH:** Objection to form.
> **A** I would have looked in the files that I had. I didn't have any files on this.
> **(BY MS. KROPF)** Okay. So you searched your files for records related to the negotiation of the estoppel agreement?
> **A** Correct.
> **Q** And when you say "files," what do you mean?
> **A** So if I had any records.
> **Q** I'm asking you to define it. Are these hard-copy records? Did you look for hard-copy records?
> **A** Yes.
> **Q** Did you look for e-mails?
> **A** Yes.
> **Q** You searched which e-mail accounts?
> **A** All of mine.

P. 30(b)(6) Dep. Tr. Vol. 1, 51:2-15. Defendants are left with the ridiculous argument that Plaintiff should have prepared by asking lawyers who may have been involved in negotiating the Estoppel Agreement to go back seventeen years to look "for their records about the negotiation." (*Id.* at 17-20). Defendants advance no plausible reason for how hunting for artifacts about "other reasons for signing" is proportionate to the needs of this case, especially where there is no genuine dispute about what the relevant language of the Estoppel Agreement says.

### D. Subjecting Mr. Camalier to an Additional Deposition is Unnecessary and Sanctions are Patently Unwarranted

As there is no properly discoverable information that Plaintiff's counsel instructed Mr. Camalier not to provide, subjecting him to an additional deposition is without any justification. As the Joint Motion lays out, this Court looks to five factors to determine whether sanctions are

appropriate and has found factor three, "whether the question which prompted the instruction not to answer was proper and unobjectionable," to be one of the most persuasive when deciding not to order sanctions. *E.E.O.C. v. Freeman*, 288 F.R.D. 92, 103 (D. Md. 2012). As in *E.E.O.C. v. Freeman,* "[a]ny further questioning would be redundant and unnecessary" given the impropriety of questions seeking legal conclusions and the limitations imposed by the Court at the February 16th Hearing. *Id.* at 102. Indeed, the Court is well within its rights to award Plaintiff its reasonable fees and costs in connection with opposing Defendants' motion.

### III. CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court deny Defendants' Joint Motion to Compel Deposition Testimony of Charles Camalier, III, and grant such further relief as the Court considers appropriate.

Dated: September 12, 2023

Respectfully submitted,

/s/ *William M. Bosch*
William M. Bosch
Anthony F. Cavanaugh
Katherine T. Danial
Alvin Dunn
Nicole Steinberg
PILLSBURY WINTHROP SHAW PITTMAN LLP
1200 Seventeenth Street N.W.
Washington, D.C. 20036
Telephone: (202) 663-8000
Facsimile: (202) 663-8007
william.bosch@pillsburylaw.com
anthony.cavanaugh@pillsburylaw.com
katherine.danial@pillsburylaw.com
alvin.dunn@pillsburylaw.com
nicole.steinberg@pillsburylaw.com

*Counsel for Plaintiff Rock Spring Plaza II, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2023, I caused a copy of the foregoing Plaintiff's Response in Opposition to Defendants' Joint Motion to Compel Deposition Testimony of Charles Camalier, III to be served via email on all counsel of record.

*/s/ Katherine Danial*