# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ROCK SPRING PLAZA II, LLC | |
| Plaintiff, | |
| v. | Civil Action No. 8:20-cv-01502-PJM |
| INVESTORS WARRANTY OF AMERICA, LLC, et al., | |
| Defendants. | |

**PLAINTIFF ROCK SPRING PLAZA II, LLC'S MOTIONS *IN LIMINE***

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ............................................................................................................... 1

II.  BACKGROUND ................................................................................................................ 3

   A.  Factual Background ................................................................................................... 3

   B.  Plaza's Claims .......................................................................................................... 6

   C.  Procedural History .................................................................................................... 7

III. LEGAL STANDARDS ..................................................................................................... 9

   A.  Motions *in Limine* .................................................................................................... 9

   B.  Admissibility: Relevance, Prejudice, and Confusion ............................................ 10

IV.  PLAZA'S MOTIONS *IN LIMINE* ................................................................................. 11

   A.  The Court Should Exclude All Evidence or Argument Concerning the Original Tenant, the Loan, and the Original Tenant's Default. ................................................................ 11

   B.  The Court Should Exclude Any Argument Concerning the Negotiation or the Intent of the Estoppel Agreement. ................................................................................................. 16

   C.  Defendants Should be Precluded from Making Blanket References to the Entire "Camalier Family" or Referring to Plaza or the Original Tenant as a "Camalier Family Company." ..................................................................................................................... 19

   D.  The Court Should Exclude Any Evidence or Argument that Members of the Camalier Family or Entities In Which the Camaliers Have an Interest Were "On Both Sides" of the Ground Lease, or that the Terms of the Ground Lease are Favorable to Tenants as a Result. ........................................................................................................................... 20

   E.  The Court Should Exclude Any Reference to the Wealth or Other Business Activities of the Camalier Family, Including Other Properties in Which the Camalier Family Has an Interest. .......................................................................................................................... 21

   F.  The Court Should Exclude Reference to Previous Disputes Between Related Parties and their Counsel. .................................................................................................................. 22

   G.  The Court Should Exclude Any Evidence or Argument Describing Plaza or its Counsel as "Litigious" or "Aggressive." ...................................................................................... 23

V.   CONCLUSION ................................................................................................................ 24

i

# **TABLE OF AUTHORITIES**

Page(s)

## Cases

*Adams v. NVR Homes, Inc.*,
   141 F. Supp. 2d 554 (D. Md. 2001) ....................................................... 10

*Al-Sabah v. Agbodjogbe*,
   2019 WL 6498049 (D. Md. Dec. 3, 2019) ................................................ 9

*Atkinson Warehousing & Distribution, Inc. v. Ecolab, Inc.*,
   99 F. Supp. 2d 665 (D. Md. 2000) .................................................. 11, 15

*Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*,
   652 F. Supp. 1400 (D. Md. 1987) ......................................................... 10

*Daskarolis v. Firestone Tire & Rubber Co.*,
   651 F.2d 937 (4th Cir. 1981) ............................................................... 11

*Dorman v. Annapolis OB-GYN Assocs., P.A.*,
   781 F. App'x 136 (4th Cir. 2019) ......................................................... 23

*EEOC v. Proctor Fin., Inc.*,
   644 F. Supp. 3d 400 (E.D. Mich. 2022) ................................................. 24

*Fulton v. Nisbet*,
   2018 WL 565265 (D.S.C. Jan. 25, 2018) ......................................... 14, 18

*Gaiser v. Am.'s Floor Source*,
   2021 WL 5354702 (S.D. Ohio Nov. 17, 2021) ....................................... 22

*In re C.R. Bard, Inc., MDL, Pelvic Repair Sys. Prod. Liab. Litig.*,
   810 F.3d 913 (4th Cir. 2016) ............................................................... 18

*In re Smith & Nephew Birmingham HIP Resurfacing HIP Implant Prod. Liab. Litig.*,
   2021 WL 2685642 (D. Md. June 29, 2021) ........................................... 23

*Innovation Ventures, LLC v. N2G Distrib. Inc.*,
   763 F.3d 524 (6th Cir. 2014) ............................................................... 24

*Kauffman v. Park Place Hospitality Grp.*,
   468 F. App'x 220 (4th Cir. 2012) ......................................................... 10

*Louzon v. Ford Motor Co.*,
   718 F.3d 556 (6th Cir. 2013) ........................................................... 9, 10

*Luce v. United States*,
469 U.S. 38 (1984) ................................................................................................ 9

*McEwen v. City of Norman, Okl.*,
926 F.2d 1539 (10th Cir. 1991) ........................................................................ 10

*Mullen v. Princess Anne Volunteer Fire Co., Inc.*,
853 F.2d 1130 (4th Cir.1988) ........................................................................... 15

*Muse v. Supervalu Inc.*,
2011 WL 1980607 (D. Md. May 20, 2011) ...................................................... 14

*Nelson v. City of Chicago*,
810 F.3d 1061 (7th Cir. 2016) .......................................................................... 24

*Old Chief v. United States*,
519 U.S. 172 (1997) ............................................................................................ 11

*Prassas Cap., LLC v. Blue Sphere Corp.*,
2019 WL 2881560 (W.D.N.C. July 3, 2019) .............................................. 21, 22

*Stalnaker v. City of Charleston, W.Va.*,
934 F.2d 320 (4th Cir. 1991) ............................................................................ 14

*United States v. Bailey*,
840 F.3d 99 (3d Cir. 2016) ................................................................................ 11

*United States v. Boros*,
668 F.3d 901 (7th Cir. 2012) ............................................................................ 11

*United States v. Forrest*,
429 F.3d 73 (4th Cir. 2005) .............................................................................. 11

*United States v. Gondres-Medrano*,
3 F.4th 708 (4th Cir. 2021) .............................................................................. 10

*United States v. Mosby*,
2024 WL 96349 (D. Md. Jan. 9, 2024) ............................................................ 22

*United States v. Vargas*,
552 F.3d 550 (7th Cir. 2008) ............................................................................ 11

*Westmoreland v. Prince George's Cnty.*,
2013 WL 12246630 (D. Md. Apr. 5, 2013) ...................................................... 13

<u>Statutes</u>

Md. Code Ann., Com. Law § 15-207 .................................................................... 6

iii

Md. Code Ann., Cts. & Jud. Proc. § 3-406 ................................................................................. 7

<u>Rules</u>

Fed. R. Evid. 401 ................................................................................................ 10, 14, 21,,22

Fed. R. Evid. 402 ........................................................................................................... 10, 14

Fed. R. Evid. 403 ........................................................................................... 10, 11, 14, 15, 18

## <u>INDEX OF EXHIBITS</u>

| Exhibit Number | Exhibit Name |
|---|---|
| Exhibit 1 | Hearing Transcript, Feb. 16, 2023 |
| Exhibit 2 | Ground Lease |
| Exhibit 3 | Assignment of Amended and Restated Leasehold Deed of Trust |
| Exhibit 4 | Stamped and Recorded Estoppel Agreement |
| Exhibit 5 | Trustee's Deed of Assignment |
| Exhibit 6 | IWA Value Consultation, Dec. 19, 2011 |
| Exhibit 7 | Email from Neal Hutchinson to Dale Wirtjes, Jul. 7-8, 2016 |
| Exhibit 8 | Email from Nick Koluch to David Feltman, Jan.3-4, 2017 |
| Exhibit 9 | David Feltman Deposition Transcripts, March 16-17, 2023 |
| Exhibit 10 | Robert Barron Deposition Transcript, Apr. 14, 2023 |
| Exhibit 11 | RSD Operating Agreement |
| Exhibit 12 | 6560 Rock Springs Drive Term Sheet |
| Exhibit 13 | Troy Taylor Deposition Transcript, Apr. 6, 2023 |
| Exhibit 14 | Letter from IWA to Plaza, Aug. 31, 2017 |
| Exhibit 15 | Email from Paul Rubin to Greg Van Gorp and Troy Taylor, July 17, 2019 |
| Exhibit 16 | Paul Rubin Deposition Transcript, Apr. 7, 2023 |
| Exhibit 17 | IWA Balance Sheet, Sept. 30, 2012 |
| Exhibit 18 | Letter from Plaza to RSD, Sept. 29, 2017 |
| Exhibit 19 | Letter from Plaza to RSD, Feb. 22, 2018 |
| Exhibit 20 | Letter from RSD to Plaza, Mar. 30, 2018 |
| Exhibit 21 | RSD Registration Information |
| Exhibit 22 | Hearing Transcript, Dec. 1, 2020 |

Exhibit 23            30(b)(6) Deposition of Rock Springs Plaza II, LLC (C. Camalier)
                      Transcript, Mar. 21, 2023

Exhibit 24            Hearing Transcript, Jul. 18, 2024

Exhibit 25            Notification of Loan Status Change

**PLAINTIFF ROCK SPRING PLAZA II, LLC'S MOTIONS *IN LIMINE***

Plaintiff Rock Spring Plaza II, LLC ("Plaza") submits these motions *in limine* to preclude Defendants Investors Warranty of America, LLC ("IWA") and Rock Spring Drive, LLC ("RSD") from referencing certain matters before the jury and to exclude certain categories of evidence at trial.

I.    **INTRODUCTION**

This case concerns a ground lease (the "Ground Lease") for the property located at 6560 Rock Springs Drive, Bethesda, Maryland (the "Property"). IWA acquired the tenant's interest in the Ground Lease (the "Leasehold Estate") in 2012. Five years later, IWA determined that its investment in the Leasehold Estate had become "worthless" and that it needed an "exit strategy" to escape its long-term financial liabilities to the landlord. After trying but quickly failing to sell the Leasehold Estate to a bona fide third-party purchaser, IWA decided instead to create a sham entity (RSD) that IWA would own and control and assigned the Leasehold Estate to that new sham entity (the "Assignment"). IWA planned for RSD to wait until after the three-year statute of limitations for fraudulent conveyance claims had run and then strategically default on the Ground Lease so that IWA could walk away from its obligations under the Ground Lease scot-free.

Before the statute of limitations ran, however, Plaza sued to invalidate the sham assignment, alleging that it was a fraudulent conveyance and, in the alternative, that it should be voided under contract theories (including breach of the implied duties of good faith and fair dealing). Plaza also alleged claims for corporate veil-piercing and alter-ego.

The resulting litigation has lasted more than four years and has been hotly contested at every turn. Along the way, the Court determined that several ancillary topics about which Defendants sought discovery were irrelevant and therefore could not be the subject of discovery – including a previous tenant's loan arrangements and default on that loan that occurred several years

before the Assignment and the business activities of the family that owns the Property (the Camalier family). Despite the Court's determination that these issues are irrelevant, Defendants have continued to place them at the center of their case, including on summary judgment, advancing a narrative that looks back in time nearly a decade before the Assignment and focuses on irrelevant collateral issues such as the circumstances surrounding the creation of the Ground Lease and the default of an entity that is not a party to this case.

Allowing Defendants to go into these irrelevant topics would unfairly prejudice Plaza and confuse the jury by suggesting that allowing a foreclosure and creating a structure to avoid liability are similar. It would also distract the jury from the relevant issues and potentially bias the jury against Plaza. Finally, it would waste time and resources on evidence and argument that have no bearing on Plaza's claims or Defendants' remaining defenses.

Motions *in limine* are designed to help focus trial on the relevant issues. Given Defendants' continual reference to irrelevant issues designed to muddy the issues and make Plaza appear culpable, narrowing the topics that can be discussed at trial is especially warranted in this case. Ultimately, this case, in the words of the Court, concerns "whether the assignment was appropriate or not." Ex. 1, Feb. 16, 2023, Hr'g Tr. 160:1-2. The Court should grant Plaza's motions *in limine* to ensure that the trial remains focused on what is relevant to this central question.[1]

---

[1]  Plaza files these motions *in limine*, in accordance with the Court's schedule for the parties to file pretrial motions (*See* ECF No. 461, Jul. 9, 2024, Order at 1), before receiving Defendants' proposed statement of facts for the pretrial order, witness list, exhibit list, or deposition designations. Plaza therefore reserves the right to modify these motions *in limine* or file additional motions *in limine* after reviewing Defendants' disclosures related to the pretrial order.

## II.      BACKGROUND

### A.      Factual Background

On November 14, 1990, Plaza's predecessor-in-interest entered into a 99-year ground lease with Rock Spring II LP ("Original Tenant"). Ex. 2, Ground Lease. A few years later, the Original Tenant borrowed $30 million (the "Loan") using the Leasehold Estate as collateral. After the Original Tenant defaulted on the Loan, IWA acquired the lender's position under the loan documents by assignment. Ex. 3, Assignment of Amended and Restated Leasehold Deed of Trust.

At that point, IWA had a decision to make. It had the right to walk away from the matter entirely, in which case it would have no rights and no obligations under the Ground Lease. Or IWA could acquire the tenant's rights and obligations under the Ground Lease. IWA, after conducting extensive due diligence, choose the latter course and made a considered investment decision to take title to the Leasehold Estate in a foreclosure sale in 2012. Ex. 4, Stamped and Recorded Estoppel Agreement; Ex. 5, Trustee's Deed of Assignment. IWA was aware that the office building on the Property was not generating income and that, as tenant, in exchange for the right to lease the Property to new tenants, it would be responsible for the financial obligations (in particular, ground rent payments) for the remaining 67 years on the Ground Lease. Ex. 6, IWA Value Consultation.

However, by July 2016, years after IWA made its decision to take title to the Leasehold Estate, IWA's parent company, Transamerica, determined that the Property was "worthless" and asked IWA "is there any exit strategy on this to get it off the books[?] Is it even possible to just walk away from the agreement?" Ex. 7, Email from Neal Hutchinson to Dale Wirtjes, Jill Gilmore, and Matt Pithan, Jul. 7, 2016. IWA's asset management team, led by IWA's corporate representative, David Feltman, "engaged outside counsel to explore an exit which would stop the

monthly losses and any future liability." Ex. 8, Email from Neal Hutchinson to Dale Wirtjes, Jill Gilmore, and Matt Pithan, July 7, 2016.

IWA initially tried to sell the Ground Lease to a bona fide third party. Ex. 8, Email N. Koluch to D. Feltman, Jan. 3-4, 2017; Ex. 9, Feltman Dep. Tr., 307:18-308:4. After one attempt failed, the "exit strategy" IWA devised "to stop future liability under the ground lease" (Ex. 9, Feltman Dep. Tr. 247:9-10) was to assign the Ground Lease to a sham entity that IWA would create and control and that would strategically default on the Ground Lease in three years, just after the statute of limitations for fraudulent conveyance claims would have expired. Ex. 9, Feltman Dep. Tr. 185:3-186:15; 247:9-10; 360:16-363:15; Ex. 10, Barron Dep. 64:2-66:12. That sham entity is RSD.

IWA retained a 98% interest in RSD and recruited restructuring experts, Troy Taylor and Paul Rubin of Algon Group, acting through a special purpose entity (SPE), Longshore Ventures LLC ("Longshore" or the "Algon Member"), to hold the remaining 2% interest. Ex. 11, RSD Operating Agreement; Ex. 12, Term Sheet. Longshore paid nothing for its interest. Ex. 11, RSD Operating Agreement, Ex. A; Ex. 13, Taylor Dep. Tr. 146:1-17. IWA reserved the option to reacquire the Algon Member's 2% interest for $1,000 at any time. Ex. 11, RSD Operating Agreement; Ex. 12, Term Sheet. RSD had no independent source of revenue; it was funded exclusively by voluntary contributions from IWA, which committed only $3.9 million, barely enough to cover rent and operating expenses for three years. Ex. 11, RSD Operating Agreement; Ex. 12, Term Sheet.

During the three-year statute of limitations period, IWA hid both RSD's design and the fact that IWA remained the real interested party. IWA appointed Algon's outside counsel, Robert Barron, to serve as the mouthpiece for RSD (Ex. 14, Letter from IWA to Plaza, Aug. 31, 2017)

4

and decided not to record the assignment or pay recordation taxes. Ex. 15, Email P. Rubin to G. Van Gorp and T. Taylor, Jul. 17, 2019; Ex. 16, Rubin Dep. Tr. 265:4-16. Feltman directed Longshore to make no attempt to sell the Property for three years (Ex. 9, Feltman Dep. Tr. 406:7-22; Ex. 13, Taylor Dep. Tr. 281:14-284:16) and directed RSD not to communicate with Plaza for the same three years. Ex. 9, Feltman Dep. Tr. 384:15-387:20.

Once the statute of limitations had run, IWA and RSD (the assignee it created and controlled) "would be turning the keys over to the landlord," leaving Plaza to chase an empty shell. Ex. 10, Barron Dep. Tr. 219:14-20; *see also* Ex. 9, Feltman Dep. Tr. 373:21-374:6. At the time of RSD's formation, Defendants not only planned to leave Plaza high and dry after the statute of limitations ran but also agreed to dissolve RSD by no later than August 1, 2026, with more than 60 years left on the Ground Lease. Ex. 11, RSD Operating Agreement at Sec. 10.1.1.

IWA, a well-capitalized company with over $650 million in assets and no debt, indisputably had the ability to fulfill its obligations under the Ground Lease, including its obligations to pay Ground Rent and to maintain the Property. Ex. 17, IWA Balance Sheet, Sept. 30, 2012. Before the Assignment, Plaza had no reason to believe IWA would be unable to perform its obligations under the Ground Lease or otherwise would impair the value of the Ground Lease.

IWA notified Plaza that it had assigned the Ground Lease to RSD on August 31, 2017 – but said nothing more about RSD. Ex. 14, Letter from IWA to Plaza, Aug. 31, 2017. Plaza (through counsel) immediately pressed for information regarding RSD, to determine whether RSD had the ability to fulfill tenant's obligations under the Ground Lease. Ex. 18, Letter from Plaza to RSD, Sept. 29, 2017. Despite numerous follow-up requests (*see, e.g.*, Ex. 19, Letter from Plaza to RSD, Feb. 22, 2018), IWA and RSD refused to provide any information concerning RSD's members or

its capacity to fulfill tenant's obligations under the Ground Lease. Ex. 20 Letter from RSD to Plaza, Mar. 30, 2018.

Only through its own investigation was Plaza able to determine that RSD was not in fact a bona fide third-party assignee but rather was a new affiliate of IWA. Ex. 21, RSD Registration Information. RSD's status as a sham entity owned and controlled by IWA was confirmed in discovery, including in documents containing "basic information" about RSD that the Court ordered Defendants to provide to Plaza. *See* ECF No. 151, Aug. 3, 2022, Mem. Op. at 16.

### B.    Plaza's Claims

Plaza filed suit to invalidate the Assignment and to ensure that IWA could not escape its obligations under the Ground Lease by assigning it to a related entity that would "walk away" after the statute of limitations had run. In the Second Amended Complaint, Plaza asserts five counts, including for declaratory judgment that the Assignment was made with the intent to hinder, delay, or defraud Plaza and was a fraudulent conveyance (Count II) and to set aside the Assignment under Section 15-207 of the Maryland Uniform Fraudulent Conveyance Act ("MUFCA") (Count III), as well as a claim for "Wrongful, Invalid Assignment" (Count I). *See* ECF No. 196, 2nd Am. Compl., at 10-11. Plaza also seeks to pierce the corporate veil to allow Plaza to collect ground rent from IWA for the remainder of the Ground Lease (Count IV) and a judgment that RSD is the alter ego of IWA (Count V). *Id.* at 12.

Plaza's claims focus on the Assignment and the relationship between IWA and RSD. Plaza's fraudulent conveyance claim is based on common law fraud theories and MUFCA Section 15-207 and turns on IWA's intent in making the Assignment. *See, e.g.*, Md. Code Ann., Com. Law § 15-207 ("Every conveyance made . . . with actual intent . . . to hinder, delay, or defraud present or future creditors is fraudulent as to both present and future creditors."). And in its contract-based claim, Plaza seeks a determination of the Assignment's "validity arising under the…contract" at

issue here, when read with the Restatement (Second) of Contracts (the "Restatement") and the

covenant of good faith and fair dealing, which is implicit in every contract under Maryland law.

*See* Md. Code Ann., Cts. & Jud. Proc. § 3-406.[2] Plaza's veil-piercing and alter-ego claims turn on

the relationship between IWA and RSD and the purpose for which IWA formed RSD.

 Plaza does not maintain that the underlying agreements prohibit assignment to bona fide

third parties. Rather, the central issue is whether Maryland law permits IWA to assign its interest

in the Ground Lease to a sham entity that IWA created and that has no independent ability to

perform the tenant's obligations under the Ground Lease, with the intention of having that entity

default once the statute of limitations for a fraudulent conveyance claim expired, leaving Plaza

with no recourse.

  **C.**  **Procedural History**

 Here Plaza sets forth only the key procedural developments that bear directly on these

Motions *in Limine*. In August 2022, the Court granted in part Plaza's Motion for Partial Summary

Judgment and ruled that, as a matter of law, an obligor under a contract is "entitled to at least some

basic information regarding a proposed assignee by the proposed assignor and proposed assignee

– such as the identity of the assignee; if an entity, who the owners and principals of the assignee

are; when the assignee, if an entity, was formed and for what purpose, and cursory information

about an assignee entity's organization and structure." ECF No. 151, Aug. 3, 2022, Mem. Op. at

16. The Court ordered Defendants to "provide information sufficient to give Plaintiff adequate

---

[2] The Court has already determined that: (1) the Restatement and implied covenant of good faith and fair dealing restrict IWA's right to assign the Ground Lease despite provisions in the documents that permit assignment; (2) Plaza is entitled to adequate assurance under the Restatement that RSD is able to perform the tenant's obligations under the Ground Lease; and (3) Restatement § 323 does not apply because Plaza did not assent to an assignment in violation of Restatement § 317 or to the materially adverse impacts such an assignment would have on Plaza. ECF No. 151, Aug. 3, 2022, Mem. Op. at 17-20.

assurance that RSD can fulfill IWA's obligations under the Ground Lease" because of the duties of "good faith and fair dealing that Maryland courts have held inherent in all contracts, which . . . cannot simply be renounced at the whim of the parties to a contract." *Id.* at 16, 19.

In so ruling, the Court rejected Defendants' contention that IWA had an unfettered right to assign the Ground Lease to any person or entity and be released forever from all future Ground Lease obligations – regardless of the assignee's ability to assume and perform such obligations. *Id.*; *see also* Ex. 22, Dec. 1, 2020, Hr'g Tr. 7:11-13 (holding that the Ground Lease contains restrictions on assignment). As such, this case turns on how the assignment right in the Ground Lease is objectively interpreted in light of, *inter alia,* the Restatement and the common law duty of good faith and fair dealing and IWA's obligations under Maryland law to refrain from making a fraudulent conveyance.

On February 16, 2023, the Court ruled that certain topics about which Defendants sought discovery were irrelevant: (1) information about both Plaza's and the Original Tenant's capitalization and finances, (2) the Original Tenant's default on the Loan and the Ground Lease, (3) the business activities and other properties of the Camalier family and related entities, and (4) other disputes between related entities not parties to this case. Ex. 1, Feb. 16, 2023, Hr'g Tr. 124:5-9; 162:12-14; 167:11-168:23; 182:17-20; 184:8-9; 185:25. Indeed, the Court determined that *anything* that happened before August 31, 2015 – two years before the date of the Assignment – was irrelevant. *Id.* at 150:19-23. Plaza therefore moves *in limine* to preclude Defendants from referencing or introducing evidence related to several of the topics that the Court has already determined are irrelevant.

In a ruling just before the close of discovery, the Court observed that "the parties filed a flurry of motions related to discovery shortly before (and some after) the deadline for the close of

discovery" and that "some of the motions [sought] information that, frankly . . . concerns events that (for purposes of this litigation) occurred at the dawn of time." ECF No. 380, Nov. 2, 2023, Mem. Op. at 2. The Court granted Plaza's motions to quash the depositions of both William Bosch (trial counsel for Plaza) and Anne Camalier. In particular, the Court questioned the relevance of the "negotiation process of either the Ground Lease (which was executed in 1990, over thirty years ago) or the Estoppel Agreement (executed in 2006)." *Id.* at 7. Neither IWA nor RSD was involved in those negotiations, but Plaza's corporate representative, Chris Camalier, testified to the best of his recollection that Plaza executed the Estoppel Agreement in 2006 because it was required to do so under the terms of the Ground Lease. Ex. 23, 30(b)(6) Dep. of Rock Springs Plaza II, LLC (C. Camalier) Tr., 38:1-13. He did not recall there being any negotiation about Section 12 of the Estoppel Agreement. *Id.* at 49:19-22.

Finally, on July 18, 2024, the Court granted Plaza's motion for summary judgment on Defendants' affirmative defenses of adequate remedy at law, subject matter jurisdiction, improper advisory opinion, unconscionability, fraud, unclean hands, statute of limitations, and laches. *See* Ex. 24, Jul. 18, 2024, Hr'g Tr. 136:22-140:23.[3]

## III.    LEGAL STANDARDS

### A.    Motions *in Limine*

Pretrial motions *in limine* seek to exclude inadmissible and prejudicial evidence before it is offered at trial. *Al-Sabah v. Agbodjogbe*, 2019 WL 6498049, at *2 (D. Md. Dec. 3, 2019) (citing *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). They are "'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions,'" including by avoiding "'lengthy

---

[3] Defendants earlier withdrew their affirmative defenses of acquiescence, accord and satisfaction, payment, and failure to mitigate damages. ECF No. 430, Defs.' Joint Resp. in Opp. to Pl.'s Mot. for Summ. J. as to Certain of Defs.' Affirmative Defenses at 7 n.4; *see also* Ex. 24, Jul. 18, 2024, Hr'g Tr. 6:3-4.

argument'" about evidentiary issues during the trial. *Id.* (quoting *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) and *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400, 1401 (D. Md. 1987)).

Motions *in limine* can help to avoid prejudice that could not be adequately remedied even when an objection is sustained, a remark is stricken, or a suggestion is entirely disproved. *See, e.g.*, *McEwen v. City of Norman, Okl.*, 926 F.2d 1539, 1548 (10th Cir. 1991) (One purpose of a motion *in limine* is to avoid the obviously futile attempt to "unring the bell" when highly prejudicial evidence is offered and then stricken at trial.). The decision to grant motions *in limine* falls within the Court's "broad discretion." *Kauffman v. Park Place Hospitality Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012).

### B.      Admissibility: Relevance, Prejudice, and Confusion

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. To be relevant, evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Even where evidence is relevant, however, it may be excluded "if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also United States v. Gondres-Medrano*, 3 F.4th 708, 719 (4th Cir. 2021) (noting that district courts have wide discretion to exclude relevant evidence when its probative value is "'substantially outweighed' by one or more of the listed dangers" in Rule 403).

"The decision to exclude relevant evidence pursuant to Rule 403 is committed to the sound discretion of the trial court." *Adams v. NVR Homes, Inc.*, 141 F. Supp. 2d 554, 558 (D. Md. 2001). A court "abuse[s] its discretion by refusing to exclude such evidence [if] there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is

10

disproportionate to the probative value of the offered evidence." *United States v. Forrest*, 429 F.3d 73, 80 (4th Cir. 2005) (internal quotation marks omitted).

To determine whether the prejudicial effect of evidence substantially outweighs its probative value, courts conduct a balancing test, weighing the probative value of the evidence against the dangers listed in Rule 403. *See Old Chief v. United States*, 519 U.S. 172, 182 (1997). "'[T]he more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote.'" *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012) (quoting *United States v. Vargas*, 552 F.3d 550, 557 (7th Cir. 2008)). Thus, "[w]hen the probative value of evidence is tenuous, a relatively minor risk of substantial undue prejudice should counsel against admitting it." *United States v. Bailey*, 840 F.3d 99, 119 (3d Cir. 2016).

"As the Fourth Circuit has in particular noted, considerations of potential confusion of the jury through the introduction of evidence not directly related to the controversy before it adequately justifies an exercise of a trial judge's discretion in favor of exclusion." *Atkinson Warehousing & Distribution, Inc. v. Ecolab, Inc.*, 99 F. Supp. 2d 665, 666 (D. Md. 2000) (citing *Daskarolis v. Firestone Tire & Rubber Co.*, 651 F.2d 937, 940 (4th Cir. 1981)).

## IV. PLAZA'S MOTIONS *IN LIMINE*

### A. The Court Should Exclude All Evidence or Argument Concerning the Original Tenant, the Loan, and the Original Tenant's Default.

The Court should exclude all evidence or argument concerning the Original Tenant, the Loan it obtained related to the Property, and the Original Tenant's eventual default. In a case about IWA's assignment of its interest under the Ground Lease to RSD, events that occurred before IWA acquired the Leasehold Estate are irrelevant, and there is significant danger of unfair prejudice to Plaza should evidence and argument about these issues be introduced at trial.

In 2006, the Original Tenant (not a party to this case) took out a $30 million loan from Monumental Life Insurance Company ("Monumental Life") (also not a party to this case) using the Leasehold Estate as collateral. In September 2011, after the Property had been vacant for three years, the Original Tenant informed the Lender[4] that it did not intend to continue to make payments on the Loan.[5] After the Loan went into default, IWA acquired the Loan by assignment. Thereafter, IWA acquired the Leasehold Estate in foreclosure on February 28, 2012. Ex. 25, Notification of Loan Status Change; Ex. 5, Trustee's Deed of Assignment.

The Original Tenant is not a party to this lawsuit, which involves IWA, RSD, and Plaza. And the facts and circumstances of the Original Tenant's financing and default are of no consequence to this litigation, which concerns only the Assignment. The Loan and the Original Tenant's default both occurred more than five years before IWA assigned its interest in the Ground Lease to RSD on August 31, 2017, and in the intervening years, IWA acquired the Ground Lease with eyes-wide-open about its rights and obligations under the Ground Lease (including the obligation to pay Ground Rent). The Loan and the Original Tenant's default have absolutely no bearing on the question whether Defendants made the Assignment with an intent "to hinder, delay, or defraud" IWA's "present or future creditors," Md. Comm. L. Code, § 15-207, or whether IWA violated its duties of good faith and fair dealing in making the Assignment.

It is also immaterial how IWA came to hold a loan issued by Monumental Life to the Original Tenant that already was in default. What matters now is that, as between Plaza and IWA,

---

[4]  To avoid confusion, Plaza simply refers to "the Lender," even though the Loan changed hands a number of times before IWA acquired it.

[5]  Contrary to Defendants' assertions on summary judgment, the Original Tenant never defaulted on the Ground Lease. *See* ECF No. 431-1 ¶ 21. Defendants' misrepresentation of the facts is another reason to preclude Defendants from offering evidence and argument on the Original Tenant's default.

IWA *was the tenant* under the Ground Lease and assigned the Leasehold Estate to a sham entity that would strategically default once the statute of limitations for a fraudulent conveyance claim expired. The rest is, in the words of the Court, "ancient history." Ex. 1, Feb. 16, 2023, Hr'g Tr. 150:19-23; *see also Westmoreland v. Prince George's Cnty.*, 2013 WL 12246630, at *1 (D. Md. Apr. 5, 2013) (excluding evidence on events that took place "nearly a decade before the relevant actions" because it was "not a necessary background fact").

The Court has already determined that both the Loan and the Original Tenant's default are irrelevant. *See* Ex. 1, Feb. 16, 2023, Hr'g Tr. 162:12-14 (discussing Defendant's requested discovery about loans related to the Property, THE COURT: "I don't think it's frankly relevant and I don't think anything – I don't think you need to respond. It's irrelevant and we're not going to permit it."); *see also id*. at 167:23-168:1 (THE COURT: "All these other things about default and so on, it's all past history."). The Court also determined that the Original Tenant's capitalization and finances more broadly (as well as those of Plaza itself) are likewise irrelevant. *Id.* at 124:5-9 (THE COURT: "This is the kind of thing I think that really is not . . . part of this litigation. It's so irrelevant. They're a plaintiff in the case that asks you about your capitalization and you're saying, first tell me about yours and go back X years. Totally irrelevant."); *id.* at 168:8-12 (THE COURT: "Financial information out of the question."). Likewise, the Court has determined that the Original Tenant's purported default on the Ground Lease itself (which did not even occur) is irrelevant. *See id.* at 184:8-9 (THE COURT: "Number 6, default on the original – on the ground lease by original tenant, irrelevant, denied."); *id.* at 182:17-20 (THE COURT: ". . . tenant's default on the ground lease . . . foreclosure activity. All irrelevant, all denied.").[6]

---

[6] Indeed, the Court has already determined that that anything that took place more than two years before the Assignment is irrelevant. *See* Ex. 1, Feb. 16, 2023, Hr'g Tr. at 150:19-23 ("So let's

The Court's previous rulings excluding from discovery (1) the Loan, (2) the Original Tenant's default on the Loan, (3) the Original Tenant's finances, and (4) the Original Tenant's default on the Ground Lease, all because they are irrelevant, dictate that any argument or evidence concerning these issues should be excluded from trial under Rules 401 and 402. *Fulton v. Nisbet*, 2018 WL 565265, at *5 (D.S.C. Jan. 25, 2018) (previous ruling that a topic was "not relevant" justified granting motion *in limine* excluding reference to those issues at trial); *see also Stalnaker v. City of Charleston, W.Va.*, 934 F.2d 320 (4th Cir. 1991) (affirming the exclusion of evidence that was not probative of the issue in the case); *Muse v. Supervalu Inc.*, 2011 WL 1980607, at *24-25 (D. Md. May 20, 2011) (excluding evidence that was not relevant to the "fact at issue").

Nonetheless, Defendants have consistently attempted to place the identity of the Original Tenant, the Loan, and the Original Tenant's default at the center of their narrative. *See, e.g.,* ECF No. 410.1, Defs.' Joint Statement of Material Facts ¶¶ 11-25 (discussing the Original Tenant and the Loan). Should Defendants be allowed to present evidence and argument on these issues at trial, it would cause substantial unfair prejudice to Plaza.

If these topics are not excluded under Rules 401 and 402, they should be excluded under Rule 403 of the Federal Rules of Evidence. There is a significant risk that discussion of these topics would confuse the jury and distract it from issues it needs to decide by bringing an irrelevant backstory into the case.

The arguments that Defendants seek to advance concerning the Original Tenant and the Loan are highly prejudicial to Plaza. Not only do these arguments have no foundation in evidence, but they are designed to make Plaza appear culpable for matters involving other entities that have

---

just take a base date. 24 months, two years prior to the date of the transfer is the only operable time frame. Everything before that is out because you're just getting into collateral issues of frankly, what I would consider ancient history.").

no connection to the claims in this litigation. Defendants have argued on summary judgment, with no evidence, that the Original Tenant "default[ed] owing IWA approximately $27 million on a $30 million loan, and thus there is . . . a reasonable inference that the Original Tenant never intended to repay the loan, but instead intended to pocket the money and then saddle the lender with a vacant, abovemarket, and undesirable asset." *See, e.g.,* ECF No. 430, Defs.' Resp. Br. in Opp. to Summ. J. at 20. Defendants would advance the same argument at trial if they were allowed to do so.

Defendants' accusations have no foundation in evidence. They are speculative at best and pernicious at worst. How IWA was presented with the opportunity to acquire the Ground Lease is irrelevant. More importantly, the suggestion that Plaza is not entitled to relief because *a different entity defaulted* on a loan *before IWA decided to acquire the Leasehold Estate for itself* is calculated to unfairly turn sentiment against Plaza. *Mullen v. Princess Anne Volunteer Fire Co., Inc.*, 853 F.2d 1130, 1133 (4th Cir.1988) (evidence introduced to cast defendant in a negative light was properly excluded under Rule 403); *Atkinson Warehousing & Distribution Inc.*, 99 F. Supp. 2d at 667 (excluding evidence relating to the financial difficulties of a related party because the "probative value of such evidence is substantially outweighed by the danger that the jury would confuse the issues in this case and would be misled by evidence relating to the operation" of the related party). Moreover, the Court has granted summary judgment in favor of Plaza on Defendants' affirmative defenses of fraud and unclean hands, rejecting these arguments. *See* Ex. 24, Jul. 18, 2024, Hr'g Tr. 136:22-140:23. Rule 403's balancing test requires exclusion because the significant dangers of unfair prejudice posed by evidence and argument on these issues outweigh their complete lack of probative value.

**B.      The Court Should Exclude Any Argument Concerning the Negotiation or the Intent of the Estoppel Agreement.**

Defendants intend to argue that the Lender only extended financing to the Original Tenant in exchange for a purported "absolute right" to assign the Ground Lease contained in the Ground Lessor Estoppel and Non-Disturbance Agreement  (the "Estoppel Agreement"), which Defendants claim that Plaza executed so that the Original Tenant could obtain the Loan. *See, e.g.* ECF No. 409, Defs.' Mot. for Summ. J. on Fraudulent Conveyance Claim at 1 (arguing that Plaza "knowingly relinquished its right as landlord to investigate the financial wherewithal of a potential assignee or to approve of a potential assignee. As consideration for this promise, IWA loaned an affiliated Camalier family entity $30 million."). As a factual matter, this is pure argument; Defendants have *no evidence* Plaza "knowingly relinquished" anything of the sort and have never identified any witness who could testify on behalf of the Lender. That perhaps explains why Defendants erroneously claim that it was IWA, and not Monumental Life, that made the Loan to the Original Tenant. IWA loaned nothing to Plaza or even to the Original Tenant. IWA did not even acquire its interest in the Loan until after the Loan was in default.

In any event, in addition to being misleading and based on conjecture, the Lender's reasons for extending financing to the Original Tenant are plainly irrelevant to this case, which does not involve the Loan. *See* § IV.A, *supra.* Accordingly, the Court should exclude argument related to the negotiation and intent of the Estoppel Agreement.

The Court has already determined that circumstances surrounding the negotiation of the Ground Lease and the Estoppel Agreement are irrelevant, except insofar as they directly pertain to the negotiation of the assignment provisions. *See* Ex. 1, Feb. 16, 2023, Hr'g Tr. 167:11-168:23 ("MR. BOSCH: IWA cannot question plaintiff regarding the amended ground lease received in 1990 and the estoppel agreement executed in 2006, other than with respect to the assignment

16

provisions. If they want to examine a witness about the ground lease or the estoppel, examine them about the assignment – THE COURT: I agree with that . . . it has to pertain to the ground lease, the assignment aspect of the ground lease. All these other things about default and so on, it's all past history."). And, as set forth above, the Court has also already determined that matters related to the Loan itself are irrelevant. *Id.* at 162:12-14. And the Court recently ruled that "[D]efendants may argue, may present evidence, about the Camaliers' and [O]riginal [T]enant's intentions in negotiating the estoppel agreement. They can argue that this earlier conduct does show that Plaza has agreed to give to IWA the absolute right, untrammeled, to assign the ground lease to whomever it wishes." *See* Ex. 24, Jul. 18, 2024, Hr'g Tr. 141:12-17. But as the Court recognized, "we have nothing directly in the record one way or another as to how the language was negotiated," *id.* at 141:22-24, and there is no testimony in the record that the parties intended to make the Ground Lease freely assignable with no restrictions whatsoever by adopting the Estoppel Agreement.

The only witness deposed in this matter with knowledge on the parties' intent in adopting the Estoppel Agreement is Charles Camalier, who testified that Plaza signed the Estoppel Agreement because it understood it was required to do so under the Ground Lease and that there were no negotiations specific to Section 12 (one of the assignment provisions). Ex. 23, 30(b)(6) Dep. of Rock Springs Plaza II, LLC (C. Camalier) Tr. 38:1-13; 49:19-22.[7] And Defendants have not disclosed any witnesses with knowledge of the negotiation for or intent of the Estoppel Agreement or other evidence on this issue, and they cannot do so on the eve of trial. As such, Defendants should not be permitted to argue that Plaza intended to allow any assignment of the

---

[7] Defendants' counsel neglected to ask about Section 19 of the Estoppel Agreement, which is more relevant, but Mr. Camalier's testimony would be the same (as they are free to ask at trial).

Leasehold Estate, even if fraudulent or to a related party of the assignor that cannot perform tenant's obligations, without the support of any admissible evidence.[8]

The Court has previously questioned the viability of Defendants' argument that Plaza relinquished any right to challenge the Assignment simply by entering into the Estoppel Agreement. *See* ECF No. 30, Dec. 1, 2020, Mem. Op. at 25. Ultimately, excluding argument about the circumstances surrounding the adoption of the Estoppel Agreement would be consistent with the Court's ruling at the July 18, 2024, summary judgment hearing that ultimately "[Defendants] cannot argue that this conduct bars Plaza's present claims." *id.* at 141:17-8; *see also Fulton*, 2018 WL 565265, at *5.

Even if not excluded as irrelevant, the introduction of argument about the Lender's motivations for extending financing to the Original Tenant and the intent behind the Estoppel Agreement would work substantial prejudice against Plaza and should be excluded under Rule 403. Not only would such argument be wholly unsupported by evidence, but the implication that Plaza "bargained away" its rights not to be defrauded and not to have tenant act in good faith in exchange for a loan obtained by a different party would confuse the jury as to the proper legal standard to consider for liability and distract from the ultimate issue by bringing irrelevant back-story into the case. *In re C.R. Bard, Inc.*, *MDL, Pelvic Repair Sys. Prod. Liab. Litig.*, 810 F.3d 913, 921-22 (4th Cir. 2016) (upholding the district court's exclusion of evidence because the evidence could create a mini-trial about an issue that was not the ultimate issue in the case and could confuse the issues). As the Court recognized, "there is not a sufficient nexus between the Camaliers' alleged inequitable conduct in negotiating and then defaulting on the loan and Plaza's present

---

[8]  Excluding argument about the circumstances surrounding the negotiations for and the intent of the Estoppel Agreement would not prevent IWA from arguing that the Assignment was permitted by the Estoppel Agreement

claims to warrant application of the unclean hands defense." *See* Ex. 24, Jul. 18, 2024, Hr'g Tr. 141:7-11. Allowing Defendants to argue otherwise, especially in the absence of any evidence concerning the parties' intentions specific to the assignment provisions, would confuse the jury and unfairly prejudice Plaza.

### C.   Defendants Should be Precluded from Making Blanket References to the Entire "Camalier Family" or Referring to Plaza or the Original Tenant as a "Camalier Family Company."

Defendants have frequently referred to "the Camalier family" and "Camalier family companies." *See, e.g.,* ECF No. 410.1, Defs.' Joint Statement of Material Facts ¶¶ 7-10, 19-21, 28-29. Defendants should be precluded from making such generic references as a short-hand for Plaza or for any other entity in which the Camaliers may hold an interest because such references would confuse the jury and unfairly prejudice Plaza.

The Camalier family is not a defined entity, nor is it a party to the Ground Lease or the Estoppel Agreement. Prior to Plaza, the parties to the Ground Lease were Anne Camalier, an individual, and the Original Tenant, Rock Spring II, L.P. *See* Ex. 2, Ground Lease. Generic references to "Camalier family companies" obscure the actual identity and ownership of these entities. For example, the Original Tenant was a joint venture between COMSAT, a global telecommunications company, and Fernwood Two Corporation. Not only is characterizing the Original Tenant as a "Camalier family company" contrary to the evidence, but it unfairly characterizes the Original Tenant as having uniform interests with Plaza and with other entities or individuals with ties to the Camalier family.

To eliminate confusion and potential prejudice, Defendants should be precluded from making generic references to "the Camalier family" unless they are specifically referring to family members by name and should not be allowed to refer to or imply the existence of "Camalier family

companies." Individual members of the Camalier family should be referred to by name, as should any entities referenced at trial.

**D.  The Court Should Exclude Any Evidence or Argument that Members of the Camalier Family or Entities In Which the Camaliers Have an Interest Were "On Both Sides" of the Ground Lease, or that the Terms of the Ground Lease are Favorable to Tenants as a Result.**

For similar reasons, the Court should exclude any evidence or argument that the Camalier family or Camalier-related entities were "on both sides" of the Ground Lease at its inception, as well as any implication that the terms of the Ground Lease are tenant-friendly as a result. The Ground Lease was formed between the Original Tenant and Anne Camalier as landlord, before she assigned her interest to Plaza. The terms of the Ground Lease speak for themselves. IWA reviewed carefully the Ground Lease and Estoppel Agreement before acquiring the Ground Lease and had every opportunity to attempt to renegotiate any of their terms, and any argument about the terms of the underlying documents based on the identity of the parties is both irrelevant and unfairly prejudicial to Plaza.

The Court has already determined that the particular interests of the Camalier family are irrelevant. *See* Ex. 1, Feb. 16, 2023, Hr'g Tr. 162:23-163:4 (THE COURT: "I just don't see that the Camaliers, whatever they did in the past, whether they were the lender, the borrower, both, I mean, that's just not where we are. It's another issue. It's not the kind of thing you ever would, I don't think, have brought up had you not been sued in this case on the issue of the assignment. But I don't see how it impacts that decision."). And as explained above (*see* § IV.C, *supra*), the Camalier family is not a defined entity, nor is it a party to the Ground Lease, and any characterization of the Original Tenant as a "Camalier family company" is unfairly prejudicial to Plaza.

**E.     The Court Should Exclude Any Reference to the Wealth or Other Business Activities of the Camalier Family, Including Other Properties in Which the Camalier Family Has an Interest.**

The Court should also exclude any refence to the wealth or other business activities of the Camalier family, including other properties in which members of the Camalier family have an interest. These topics are not relevant to this case, which is limited to a dispute over a single property, 6560 Rock Springs Drive. Moreover, discussion of these issues may confuse the jury and pose a risk of unfair prejudice to Plaza.

The Court has already determined that the background, business activities, and real estate holdings of the Camalier family are irrelevant to this case. *See* Ex. 1, Feb. 16, 2023, Hr'g Tr. 143:7-13 (finding that "other Camalier-owned entities" are irrelevant); *see also id.* at 162:23-163:1 (THE COURT: "I just don't see that the Camaliers, whatever they did in the past, whether they were the lender, the borrower, both, I mean, that's just not where we are. It's another issue."); *id.* at 163:24-25 (THE COURT: "Why do we need to know anything about the other properties?").

If not excluded as irrelevant, the Court should exclude reference to the Camalier family's wealth and other business interests because discussion of these issues is likely to confuse the jury and cause unfair prejudice to Plaza. Again, this case involves only one property, 6560 Rock Spring Drive. The jury should not be presented evidence or arguments about other properties that it might confuse with the Property at issue here.

Moreover, orienting the jury towards the Camalier family's wealth may imply that IWA can shirk its financial obligations to Plaza without causing Plaza meaningful harm. *Prassas Cap., LLC v. Blue Sphere Corp.*, 2019 WL 2881560, at *5 (W.D.N.C. July 3, 2019) ("[T]he parties' current relative wealth . . . has no relevance to any claim or defense and would be unfairly prejudicial and should be excluded under Federal Rules of Evidence 401-03."). Likewise, revealing to the jury that the Camalier family holds interests in other properties may imply that

Plaza can somehow afford not to collect the ground rent it is entitled to receive under the Ground Lease. *See United States v. Mosby*, 2024 WL 96349, at *15 (D. Md. Jan. 9, 2024) ("[C]haracterization of the Florida Homes as "luxury" properties during the mortgage fraud trial would be substantially prejudicial to the Defendant, because such argument could appeal to the emotions of the jury.").

**F.     The Court Should Exclude Reference to Previous Disputes Between Related Parties and their Counsel.**

The Court should exclude any reference to previous litigation between Rockledge Associates, LLC and IWA's parent company, Transamerica (*Rockledge Associates, LLC v. Transamerica Life Insurance Company*, Case No. PWG-16-710 (D. Md.)), as well as any other disputes between related parties and their counsel. These disputes are irrelevant, and discussion of them would risk confusing the jury and could be used to unfairly sway the jury against Plaza.

The existence of other litigation between related entities is not relevant to the outcome of this case, which involves different parties and different property. The Court has already determined that disputes related to other properties are irrelevant. *See* Ex. 1, Feb. 16, 2023, Hr'g Tr. 162:6-14 (THE COURT: "I just don't see the relevance of that for this particular case. You know, there seemed to be a series of hassles around all the properties out in Rockledge and this case doesn't become the vehicle for all of them. This is just one issue you may be litigating for eternity on different issues, but not everything happens here. Okay, I don't think it's frankly relevant and I don't think anything – I don't think you need to respond. It's irrelevant and we're not going to permit it."). And courts routinely exclude reference to and evidence regarding other lawsuits and other disputes involving the same or related parties. *See Prassas Cap., LLC*, 2019 WL 2881560, at *5 ("[U]nrelated litigation has no relevance to any claim or defense and would be unfairly prejudicial and should be excluded under Federal Rules of Evidence 401-03."); *Gaiser v. Am.'s*

*Floor Source*, 2021 WL 5354702, at *3 (S.D. Ohio Nov. 17, 2021) (excluding evidence related to "separate and unrelated lawsuit[s]" that "do not make a material fact of consequence in this case more or less likely"); *In re Smith & Nephew Birmingham HIP Resurfacing HIP Implant Prod. Liab. Litig.*, 2021 WL 2685642, at *1 (D. Md. June 29, 2021) (excluding evidence and argument about "unrelated public controversies").

If not excluded as irrelevant, Defendants should still be precluded from referencing any other disputes between related parties and their counsel because of the risk such references would confuse the jury and unfairly prejudice Plaza. Defendants have asserted that the *Rockledge* litigation caused "animosity between *Rockledge*'s counsel and IWA," and that as a result there "was concern that any communications or demands received from [Plaza]'s counsel was connected to the ongoing *Rockledge* litigation or were for future litigation against IWA," ECF No. 410.1, Defs.' Joint Statement of Material Facts ¶¶ 81, implying that RSD was somehow justified in withholding information from Plaza because different entities were involved in unrelated litigation. But the Court has ruled that Defendants were required to provide Plaza with basic information about Plaza under the Restatement. *See* ECF No. 151, Aug. 3, 2022, Mem. Op. at 16. Any suggestion to the contrary is unfairly prejudicial to Plaza.

### G. The Court Should Exclude Any Evidence or Argument Describing Plaza or its Counsel as "Litigious" or "Aggressive."

For similar reasons, Defendants should be precluded from describing Plaza or its counsel as "litigious" or "aggressive." Any such characterization is irrelevant to this case. *Dorman v. Annapolis OB-GYN Assocs., P.A.*, 781 F. App'x 136, 142 (4th Cir. 2019) (upholding the exclusion of evidence about doctor's general reputation because it was irrelevant to the standard of care question before the jury).

23

Moreover, the implication that Plaza or any Camalier-related entity is overly litigious is both unsupported by the record and would be unfairly prejudicial to Plaza. Any such characterization would unfairly suggest to the jury that Plaza's lawsuit is not a legitimate assertion of its rights but rather a calculated effort to drag IWA into court. *Nelson v. City of Chicago*, 810 F.3d 1061, 1071 (7th Cir. 2016) ("a plaintiff's litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant"); *EEOC v. Proctor Fin., Inc.*, 644 F. Supp. 3d 400, 411 (E.D. Mich. 2022) (even if it were somehow relevant, a showing of "apparent litigiousness" constitutes "impermissible character evidence"); *see also Innovation Ventures, LLC v. N2G Distrib. Inc.*, 763 F.3d 524, 542 (6th Cir. 2014) ("The district court did not err in concluding that the probative value of this evidence [the outcomes of plaintiff's prior suits] was substantially outweighed by its potentially deleterious impact on the trial.").

Likewise, any assertion that RSD was justified in not providing information to Plaza because litigation counsel reached out on behalf of Plaza to inquire about RSD, or that Plaza acted in bad faith by doing so, or even that it would have been more appropriate for a non-lawyer representative reach out instead (*see, e.g.,* Ex. 13, Taylor Dep. Tr. 373:22-382:19) would be unfairly prejudicial to Plaza based on evidence that has no probative value. Any such evidence and argument should be excluded.

## V.   CONCLUSION

For the foregoing reasons, Plaza respectfully requests that this Court grant its Motions *in Limine* and exclude the categories or evidence and argument identified above.

Dated: July 22, 2024

Respectfully submitted,
*/s/ William M. Bosch*

William M. Bosch
Anthony Cavanaugh
Alvin Dunn
Katherine Danial
Nicole Steinberg
PILLSBURY WINTHROP SHAW
PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone: 202-663-8000
Facsimile: 202-663-8007
william.bosch@pillsburylaw.com
anthony.cavanaugh@pillsburylaw.com
alvin.dunn@pillsburylaw.com
katherine.danial@pillsburylaw.com
nicole.steinberg@pillsburylaw.com

*Counsel for Plaintiff Rock Spring Plaza II,*
*LLC*