IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **Rock Spring Plaza II, LLC,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**Investors Warranty of America, LLC,**<br>**et al.,**<br><br>    **Defendants.** | Civil Action No. 8:20-cv-01502-PJM |

**DEFENDANTS' JOINT MOTION IN LIMINE TO PROHIBIT USE OF OR REFERENCE TO ANY NONCOMPLIANCE WITH THE "BASIC INFORMATION" STANDARD AND INCORPORATED MEMORANDUM IN SUPPORT**

Defendants Investors Warranty of America, LLC ("IWA") and Rock Springs Drive, LLC ("RSD," and together with IWA, "Defendants"), by and through their attorneys, submit this Motion in Limine to Prohibit Use of or Reference to Any Purported Noncompliance With the Basic Information Standard and Incorporated Memorandum in Support. In support thereof, Defendants state as follows:

### I.   INTRODUCTION

On August 3, 2022, the Court introduced into Maryland law the requirement that an assignee and an assignor, upon demand by a landlord, must provide certain basic information under a theory of good faith and fair dealing even where the lease imposes no such obligation. *But see Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362-63 (Ct. App. Md. 2012) (holding that good faith and fair dealing did not require lender/assignor to retain certain records or to provide them to plaintiff where the mortgage agreement did not require lender to retain or produce documents to plaintiff); *Blondell v. Littlepage*, 413 Md. 96, 114 (2010) ("[T]he implied duty of good faith and fair dealing . . . is not understood to interpose new obligations about which the

contract is silent, even if inclusion of the obligation is thought to be logical and wise.")

There was no prior law, standard, rule, requirement or even secondary authority that set forth this "basic information" standard before August 3, 2022, and therefore it would be improper for Plaintiff to introduce evidence or make any arguments at trial suggesting that this standard applied to an assignment that took place in 2017 before the "basic information" standard was created. Evidence of Defendants' compliance or noncompliance with the post-assignment standard would be irrelevant under Fed. R. Civ. P. 401 and highly prejudicial under Fed. R. Civ. P. 403. Indeed, under binding precedent the "basic information" standard cannot be given retroactive effect. Thus, Defendants seek an order to preclude at trial any introduction of evidence, arguments, or inferences regarding the basic information standard, and any compliance or noncompliance with the same.

## II.   PROCEDURAL AND FACTUAL HISTORY

### A.   Factual History

Anne Camalier (Plaintiff's successor-in-interest) and Rock Spring II Limited Partnership ("Original Tenant") negotiated the Amended and Restated Ground Lease Indenture dated November 14, 1990 (the "Ground Lease"), for the property located 6560 Rock Spring Drive, Bethesda, Maryland (the "Property"). (*See* Defs.' Stmt. of Material Facts in Supp. of their Mots. for Summ. J. ("SOMF") [Dkt. 410-1] at ¶ 1.) Anne Camalier is part of the Camalier company, and Original Tenant and Plaintiff are both Camalier companies. Neither IWA nor RSD drafted or negotiated the Ground Lease. (*Id*. at 7-8.)

Section 5.2(a) of the Ground Lease provides, without restriction, that the "[t]enant may assign this Lease and may mortgage its leasehold estate." (*Id*. ¶ 4.)

Section 14.5 likewise permits unrestricted delegation of duties and obligations, stating:

"[n]otwithstanding anything else contained in this Lease, Landlord agrees that Tenant and its successors and assigns shall be liable only for obligations accruing while it holds the leasehold estate created hereunder." (*Id*. ¶ 6.) The Ground Lease did not require any tenant to provide any information to the landlord about any assignee.

To enable the Original Tenant, Plaintiff's affiliate, to obtain financing, Plaintiff executed the Ground Lessor Estoppel and Non-Disturbance Agreement dated June 2, 2006 ("Estoppel Agreement"). (*Id*. ¶ 12.) This agreement estopped Plaintiff from preventing or objecting to future transfers of the Leasehold Estate as long as certain notice requirements were met. (*Id*. ¶¶ 13-14.) Indeed, the Estoppel Agreement expressly states that the lender "agreed to make [the] Loan and accept the security upon the satisfaction of certain conditions, one of which is the execution of [the Estoppel Agreement] by [Plaintiff] and [Original] Tenant." (*Id*. at ¶ 12.)

Section 12 of the Estoppel Agreement provides that "[t]he Lender or its successors or assigns may enforce the Deed of Trust and acquire title . . . to the leasehold estate," and "may, without further consent of Landlord, sell and assign the leasehold estate in the Premises." (*Id*. at ¶ 13.)

Likewise, Section 19 provides that, after foreclosure, "the Lender shall have the absolute right to assign the [Leasehold Estate] . . . to any third party," and "[s]o long as such third party assumes all of the Tenant's obligation under the Lease the Lender shall be automatically released from any further liability thereunder." (*Id*. at ¶ 14.)

Thereafter, through a series of assignments, the lender's rights under the loan documents were ultimately assigned to IWA. (*Id*. ¶ 15.) The Original Tenant defaulted on its loan obligations, and IWA commenced foreclosure proceedings in the Circuit Court for Montgomery County, Maryland in Civil Action No. 358310V. (*Id*. ¶¶ 24, 65-66.) By virtue of the foreclosure proceeding,

3

IWA acquired the Leasehold Estate pursuant to the Trustee's Deed of Assignment dated August 28, 2012 (the "Foreclosure Deed"). (*Id.*) The Foreclosure Deed granted to IWA, its successors and assigns, the "leasehold pursuant to the [Ground Lease], as affected by [the Estoppel Agreement]." (*Id.* at ¶ 25.)

On August 31, 2017, pursuant to multiple, explicit contract terms bargained for in exchange for the Loan, IWA assigned the Ground Lease to RSD (the "Assignment"). (*Id.* at ¶ 55.) RSD was formed on August 25, 2017, with IWA owning 98% and Longshore Ventures, LLC (the Algon principals' member) owning 2%. (*Id.* ¶ 45.) RSD is a special purpose entity, which is a common ownership structure for real estate and is consistent with prevailing industry norms and practices. (*See* Assignment and Assumption Agreement dated August 31, 2017, produced to Plaintiff on January 21, 2021 (*see* Defs.' Joint Mot. for Clarification [Dkt. 155] at 3);. RSD Operating Agreement dated August 31, 2017, produced to Plaintiff on January 13, 2021 (*see id.*); RSD's Rule 7.1 and L.R. 103.3 Corporate Disclosures, filed July 7, 2020 [Dkt. 19]; Longshore Ventures Written Consent, produced to Plaintiff on January 21, 2021 (*see* Dkt. 155 at 3); Longshore Ventures-RSD Management Agreement, produced to Plaintiff on January 21, 2021 (*see id.*); and RSD's corporate formation documents, attached as Ex. B to Pl's Compl. [Dkt. 1], and produced to Plaintiff on January 21, 2021 [Dkt. 155]at 3).[1]

---

[1] The Court did not deny Defendants' Motions to Dismiss or enter a scheduling order until December 2, 2020 [Dkt. 30 and 31.] Document production began on a rolling basis in January 2021. Contrary to the Court's repeated and ongoing erroneous statements that Defendants did not produce the "basic information" until after they were ordered to do so on August 3, 2022, Defendants had actually produced *all* such information *more than a year-and-a-half before* the August 3, 2022 Order. In fact, many of these documents were used by Plaintiff as exhibits to its summary judgment briefing filed on September 13, 2021, eleven (11) months before the Court created the "basic information" standard in its August 3, 2022 Order [Dkt. 127]. Despite knowing the timeline of events, counsel for Plaintiff has never corrected the Court's mistaken statements that Defendants only provided this information because it was ordered to do so on August 3, 2022.

Neither the Ground Lease nor the Estoppel Agreement gives the landlord any right or ability to evaluate the financial documents or accounting practices of any tenant, demand that a tenant provide its corporate structure, maintain any certain level of capitalization, or obtain any guarantee for rent payment under the Ground Lease. *See Polek*, 424 Md. at 362-63 (holding that good faith and fair dealing could not obligate a lender/assignor to provide documents to plaintiff where the contract did not obligate the lender/assignor to provide documents to plaintiff). Rather, the only requirement under either the Estoppel Agreement or the Ground Lease was that IWA was to send notice of the Assignment to Plaintiff within ten (10) days of the Assignment. (SOMF ¶ 13.) Per the express language of the Estoppel Agreement, Plaintiff is not entitled to evaluate, consider, contest, consent to, or even know about an assignee before an assignment occurs.

Since acquiring the Leasehold Estate, RSD has fully performed its Ground Lease obligations, and Plaintiff admits that RSD is not in default of the Ground Lease. (*Id.* ¶¶ 69-73, 90.) RSD negotiated contracts with multiple vendors to maintain and repair the building, including daily onsite maintenance, landscaping, elevator inspection, security alarm and sprinkler system, snow removal, and HVAC maintenance. (*Id.* ¶ 71.) RSD has also overseen required repairs to the building as recommended by RSD's onsite maintenance company since 2017. (*Id.*) Further, in an effort to sublease the property to GSA, RSD spent approximately $20,000 and several months on the bidding process. (*Id.* ¶ 95.)

On August 12, 2021, the Court ordered Plaintiff to file a motion for summary judgment because it wished to consider " as a matter of law the entitlement of an obligor under a contract to know who an assignee is and other relevant information with respect to who the assignee is." [Dkt. 117.] Briefing concluded on November 23, 2021. [Dkt. 146.] On August 3, 2022, the Court issued its Order, which agreed with Defendants that the Ground Lease and Estoppel Agreement

allowed the absolute assignment of the Ground Lease.[2] [Dkt. 152.] The Court, however, stated that "at [that] juncture, the issue [was] not whether the Ground Lease and Estoppel Agreement permit the purported assignment by IWA and RSD. The question before the Court is what information regarding RSD, if any, is Plaintiff, as party to the original contract (obligor), entitled to receive about the assignment at the time of the proposed assignment?" (*Id*. at 10.) Rephrasing it slightly, the Court stated its inquiry was "If assignment is permitted under a contract, is the party to the original contract, against whom the assignment is made, i.e., the obligor, entitled to know the identity of a proposed assignee and at least some basic information as to the proposed assignee's ability to perform under the contract before the assignment becomes effective?" (*Id*.)

In the August 3, 2022 Order, the Court stated that it "is unaware of, nor have the parties submitted, any Maryland law addressing the right of an obligor under a contract to receive information about an assignee in advance of the assignment. No cases from other jurisdictions, nor articles appear to address the issue." (*Id*. at 11.) The Court went on to state that "[n]evertheless, Maryland courts have often applied the principles of contract law embodied in the Restatement (Second) of Contracts." (*Id*. (citing, *e.g.*, *Pub. Serv. Comm'n of Md. v. Panda-Brandywine*, *L.P.*, 825 A.2d 462, 469 (Md. 2003)). "The Court, therefore, considers the parties' arguments within the framework of the Restatement." (*Id*.) Through the August 3, 2022 Order, the Court then created and imposed a "basic information standard," even though it was contrary to the language of the contract documents, and held that Plaintiff:

> Under a contract—even a contract permitting assignment subject to no specific limitations—is, **upon request**, entitled to at least some basic information regarding a proposed assignee by the proposed assignor and proposed assignee—such as the identify of the assignee if an entity, who the owners and principals of the assignee

---

[2] As the Court acknowledged, the only limitation was an assignment prior to the termination of a mortgage, which was satisfied long before the Assignment in 2017.

4894-9682-6834.v1

are; when the assignee, if an entity was formed and for what purpose, and cursory information about an assignee entity's organization and structure.

(*Id*. (emphasis added).) The Court further made clear that the "basic information" was to be provided only when requested by the obligor. (*Id.* at 16 ("To repeat: The obligor may only seek basic information about the proposed assignee and must do so and the proposed assignor's and proposed assignee's response to its inquiry must proceed—in good faith—and without question, this should occur expeditiously, presumably in a matter of days or a few weeks at most.").)[3]

Prior to August 3, 2022, the "basic information" standard did not exist, and certainly did not exist at the time of the Assignment in 2017, or when this litigation commenced on June 5, 2020.

### III.   LEGAL STANDARD

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *Hunt Valley Baptist Church, Inc. v. Baltimore Cty., Md.*, No. CV ELH-17-804, 2018 WL 2717834, at *7 (D. Md. June 6, 2018) (unpublished) (quoting *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)). Pretrial *motions in limine* seek to exclude prejudicial evidence before it is offered at trial. *Changzhou Kaidi Elec. Co., Ltd. v. Okin Am., Inc.*, 102 F. Supp. 3d 740, 745 (D. Md. 2015) (citing *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). They also help to streamline a case by allowing the Court to avoid "lengthy argument at, or interruption of, the trial." *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc.*, 652 F. Supp. 1400, 1401 (D. Md. 1987); *see also Changzhou*, 102 F. Supp. 3d at 745 (*Motions in limine* "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.") (quoting *Louzon v. Ford Motor*

---

[3] Inexplicably, the Court also determined that Defendants had not provided the "basic information" to Plaintiff as of the date of its Order, when, in fact, Defendants had done so more than a year-and-a-half before the August 3, 2022, Order was issued. (*See*, generally Dkt. 155.)

*Co.*, 718 F.3d 556, 561 (6th Cir. 2013)). *Motions in limine* further promote judicial efficiency by preserving the issues raised for appeal and eliminating the need for parties to renew their objections at trial, "just so long as the movant has clearly identified the ruling sought and the trial court has ruled upon it." *United States v. Williams*, 81 F.3d 1321, 1325 (4th Cir. 1996); *see* Fed. R. Evid. 103(a); *cf*. R. 103(a) advisory committee's note to 2000 amendment (acknowledging that Rule 103(a) "applies to all rulings on evidence . . . including so-called '*in limine*' rulings").

"District courts may grant *motions in limine* pursuant to their inherent authority to manage trials. *Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc*.,, No 19-1312-PJM, 2024 WL 1640997, at *3 (D. Md. Apr. 16, 2024) (citing *United States v. Verges*, No. 1:13cr222 (JCC), 2014 U.S. Dist. LEXIS 17969, at *5 (E.D. Va. Feb. 12, 2014) (citing *Luce*, 469 U.S. at 41 n.4). Ultimately, rulings on these motions fall within the Court's "broad discretion." *Kauffman v. Park Place Hosp. Grp*., 468 F. App'x 220, 222 (4th Cir. 2012); *see also United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010) (noting that evidentiary rulings fall within a trial court's discretion).

## IV.    ARGUMENT

Maryland law recognizes freedom of contract, and this Court has also affirmed that "'[a]s a general rule, parties are free to contract as they wish' under Maryland law." *State Auto. Mut. Ins. Co. v. Lennox*, 422 F. Supp. 3d 948, 969 (D. Md. 2019) (quoting *Stickley v. State Farm Fire & Cas. Co*., 431 Md. 347, 366 (2013)). Indeed, "[t]he cardinal rule of contract interpretation is to give effect to the parties' intentions." *Rockledge Assocs., LLC v. Transamerica Life Ins. Co*., Case No. PWG-16-710, 2017 WL 1239182, at *5 (D. Md. Feb. 3, 2017) (citing *Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetery Co*., 434 Md. 37, 51 (2013)). The Fourth Circuit too has recognized that "[o]ne of our country's bedrock principles is the freedom of individuals and entities to enter into contracts and rely that their terms will be enforced." *United States v. Turner Constr. Co*., 946

8

F.3d 201, 204 (4th Cir. 2019).

Maryland applies the law of objective contract interpretation, and the "written language embodying the terms of an agreement will govern the rights and liabilities of the parties" to the contract. *Rockledge*, 2017 WL 1239182, at *5. "When construing an unambiguous contract, courts focus on the four corners of the agreement and ascribe to the contract's language its customary, ordinary, and accepted meaning." *Id.* at *6; *Dynacorp Ltd. v. Aramtel Ltd.*, 208 Md. App. 403, 468-69 (2012) (internal citations omitted); *see also C B Structures, Inc. v. Potomac Elec. Power Co.*, 122 F. Supp. 3d 247, 251-52 (D. Md. 2015); *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 234 (2013); *see also Italian Fisherman, Inc. v. Middlemas*, 313 Md. 156, 166 (1988) (stating "the better approach is to look to the express provisions of the lease").

Leases are contracts and, as such, are to be construed by Maryland's rule of contract construction. *Middlebrook Tech, LLC v. Moore*, 157 Md. App. 40, 66 (2004). Here, the negotiated terms of the Ground Lease and the Estoppel Agreement are unequivocal and unambiguous. Section 5.2 of the Ground Lease allows that the "[t]enant may assign this Lease and may mortgage its leasehold estate." Section 5.2 separately affirms that liabilities can be assigned (*i.e.*, duties may be delegated), except when there was a mortgage held by a specific former lender. (SOMF ¶ 4.) The Ground Lease does not afford the landlord the right to consent or withhold consent to any assignment. (*Id.*)

Section 14.5 also makes plain that liability under the lease transfers with the Ground Lease and a tenant is released from its obligations upon an assignment. (*Id.*) Indeed, it provides: "Landlord agrees that Teant and its successors and assigns shall be liable only for obligations accruing while it holds the leasehold estate created hereunder." (*Id.* ¶ 6 (emphasis added).) The Ground Lease does not contain any obligations, criteria, or requirements as to the assignee

9

whatsoever, including as to capitalization, identity, structure, makeup, or ownership.

Similarly, the Estoppel Agreement explicitly states that Lender can acquire the Leasehold Estate through foreclosure, and then "without further consent of Landlord, sell and assign the leasehold estate in the Premises." (SOMF ¶ 13 (emphasis added).) Lender was not required to provide any information about the assignee or give any advance notice of the assignment to Landlord. (*Id.*) Rather, Lender was only required to "notify Landlord in writing of such sale or assignment within ten (10) days of such sale or assignment." (*Id.*) Likewise, Section 19 of the Estoppel Agreement expressly permits an acquiring lender to assign all or a portion of its interest in the Ground Lease to a third party. (*Id.* ¶ 14.) Under Section 19, Landlord further agreed that, "so long as that assignee assumes all of the tenant obligations of the Ground Lease, the lender is automatically released from all future Ground Lease obligations." (*Id.* (emphasis added).)

In creating its "basic information" standard, and its potential further application as to the assessment of the validity of assignments, the Court relied on the Maryland Supreme Court case of *Panda-Brandywine, L.P.*, and its discussion of the Restatement (Second) of Contracts. However, the *Panda* court did not expressly adopt the Restatement. Rather, *Panda* confirmed that the common law rule for personal contracts is that "[i]n the absence of a contrary provision. . . . rights and duties under an executory bilateral contract may be assigned and delegated." *Panda*, 375 Md. at 198.[4] Moreover, the *Panda* court also recognized the effect of prior assent to an

---

[4] *Panda* acknowledges that Section 318 contains overlapping principles with Maryland law, and confirms that Maryland's common law rule for personal contracts is that "[i]n the absence of a contrary provision. . . . rights and duties under an executory bilateral contract may be assigned and delegated." *Id.* And, further, subject to contrary provisions in the contract, "duties under a contract to provide personal services may never be delegated, nor rights be assigned under a contract where delectus personae was an ingredient of the bargain." *Id.* Thus, *Panda* recognized that Maryland common law Restatement (Second) of Contracts § 323 was relevant to any analysis using Sections 317 and 318, and reiterated the "extent to which rights may be assigned and duties of performance delegated are subject to valid contract provisions," before ultimately concluding that an anti-

10

assignment, which this Court' August 3, 2022 Order does not allow or at least significantly limits. Accordingly, prior to the Court's creation of the "basic information" standard on August 3, 2022, the Restatement (Second) of Contracts §§ 317 and 318, to the express exclusion of § 323, was not the law in Maryland.[5]

The 2017 Assignment is not subject to the "basic information" standard first created in 2022. As the Supreme Court has explained, the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal," and there is a longstanding presumption against retroactivity. *Landgraf v. USI Film Prod.*, 511 U.S. 244, 265, 286 (1994); *see also Tasios v. Reno*, 204 F.3d 544, 551 (4th Cir. 2000). Under Maryland law, retrospective statutes are those that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Willowbrook Apartment Assocs., LLC v. Mayor & City Council of Baltimore*, 563 F. Supp. 3d 428, 445 (D. Md. 2021) (quoting *John Deere Const. & Forestry Co. v. Reliable Tractor, Inc.*, 406 Md. 139, 147 (2008)). In *John Deere*, the Court of Appeals also adopted the *Landgraf* factors to assess whether a statute operates retroactively. *John Deere*, 406 Md. at 147-48. Those factors assess "fair notice, reasonable reliance, and settled expectations" to evaluate "the nature and extent of the change in law and the degree of connection between the operation of the new rule and a relevant past event." *Landgraf*, 511 U.S. at 270.

---

assignment provision, combined with the highly personal nature of the contract prohibited assignment. *Id*.

[5] Restatements of the Law are not controlling, or binding authority. Rather, they "are a series of treatises that articulate the principles or rules for a specific area of law. They are secondary sources of law written and published by the American Law Institute (ALI) to clarify the law. . . The ALI created Restatements to help courts understand and interpret the current common law. (Wex, Available: https://www.law.cornell.edu/wex/restatement_of_the_law) As secondary sources, Restatements are only a source of persuasive authority and do not replace precedents and controlling statutes." *Id*.

Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. And so, evidence is relevant only if it logically relates to matters that are at issue in the case. *See United States v. Mosby*, 626 F. Supp. 847, 856 (D. Md. 2022) (citing *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008). "Moreover, the party seeking to introduce evidence bears the burden of establishing relevancy." *Id. (*citing *Dowling v. United States*, 493 U.S. 342, 351 n.3, (1990). Fed. R. Evid. 403 also allows the Court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403.

As the "basic information" standard cannot be retroactively applied to the 2017 Assignment, attempts to elicit or introduce facts or supposed evidence relating to purported noncompliance with the standard would be irrelevant under Fed. R. Civ . P. Rule 401. Reference to any requirement of compliance would also be misleading and prejudicial and would be highly prejudicial under Fed. R. Civ. Rule 403. Accordingly, to elicit testimony, and any attempt to create or seek any inferences, about IWA's past compliance or non-compliance with the "basic information" standard should be precluded. Therefore, Defendants respectfully request that the Court enter an Order *in limine* precluding Plaintiff, its counsel, and any witnesses from mentioning, commenting upon, or placing before the Court or the jury, any evidence concerning IWA's compliance or noncompliance with the "basic information" standard established by the Court's August 3, 2022 Order.

### V.    CONCLUSION

For the reasons stated above, Defendants request that the Court grant its Motion in Limine.

A proposed order is attached.

                                      Respectfully submitted,

                                      ARNALL GOLDEN GREGORY, LLP

                                      */s/ Rebecca A. Davis*
                                      Rebecca A. Davis
                                      Maryland USDC Bar No. 23183
                                      Rebecca.Davis@agg.com
                                      Jennifer Shelfer
                                      GA Bar No. 557213 (*pro hac vice*)
                                      Jennifer.Shelfer@agg.com
                                      171 17th Street, Suite 2100
                                      Atlanta, Georgia 30363
                                      Telephone: (404) 873-8768
                                      Facsimile: (404) 873-8769

                                      SEYFARTH SHAW LLP
                                      William B. Hill, Jr.
                                      GA Bar No. 354725 (*pro hac vice*)
                                      WBHill@seyfarth.com
                                      1075 Peachtree Street, Suite 2500
                                      Atlanta, Georgia 30309
                                      Telephone: (404) 704-9655
                                      Facsimile: (404) 724-1608

                                      *Counsel for Defendant Investors Warranty of America, LLC*


                                      /s/ Sara E. Kropf
                                      Sara E. Kropf (Bar No. 26818)
                                      Rebecca Guiterman (*pro hac vice*)
                                      Kropf Moseley PLLC
                                      1100 H Street NW, Suite 1220
                                      Washington, DC 20005
                                      (202) 627-6900
                                      sara@kmlawfirm.com
                                      rebecca@kmlawfirm.com
                                      *Attorney for Rock Springs Drive LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of July 2024, the foregoing motion was served through the court's electronic filing system on all counsel of record.

/s/ *Rebecca A. Davis*
Rebecca A. Davis
