**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **Rock Spring Plaza II, LLC,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 8:20-cv-01502-PJM** |
| **Investors Warranty of America, LLC, et al.,** | |
| **Defendants.** | |

**DEFENDANTS' JOINT MOTION IN LIMINE TO EXCLUDE IWA'S FINANCIAL AND ACCOUNTING INFORMATION AND REFERENCES TO ACCOUNTING STANDARDS AND INCORPORATED MEMORANDUM IN SUPPORT**

Defendants Investors Warranty of America, LLC ("IWA") and Rock Springs Drive, LLC ("RSD," and together "Defendants"), by and through their attorneys, submit this Motion in Limine to Exclude IWA's Financial Information and Incorporated Memorandum in Support. In support thereof, Defendants state as follows:

## I.     INTRODUCTION

The Court has already ruled that IWA's financial documents, including its balance sheets, general ledger, profit and loss statements, operating budgets, capital expenditure budgets, tax returns, bank accounts, and sources of all funds in connection with the operation, maintenance, and payment of ground rent for the Leasehold Estate, and all documents sufficient to identify amounts, sources, and payment obligations on any debt in connection with the Property are not part of this lawsuit. (*See* Order dated Feb. 21, 2023 [Dkt. 286].) Therefore, Plaintiff should be precluded from introducing any evidence of IWA's financial status or accounting procedures, and should be further prohibited from raising arguments and attempting to induce or request any inferences as to IWA's past, present, or anticipated future net worth and assets.

On the other hand, RSD's financial records have been produced and analyzed by Defendants' financial expert Ian Ratner, a forensic accountant. Defendants do not dispute that Plaintiff may question witnesses about relevant issues related to RSD's produced financial documents (from 2017 to 2022), and Mr. Ratner will present undisputed testimony that RSD was adequately capitalized at the time of the relevant assignment, and remains so today. However, Plaintiff has suggested that it intends to introduce evidence of an inapplicable Generally Accepted Accounting Principles (GAAP) accounting method: Financial Accounting Standards Board ("FASB") ASC 842. There is no good faith basis for questioning any witness, including Mr. Ratner, on this subject since Mr. Ratner has already testified that GAAP and FASB standards do not apply to RSD, his expert testimony is unrebutted, and there is no qualified witness who can testify that GAAP or FASB are relevant here.

Defendants seek an order prohibiting questioning or the introduction of any evidence or negative inferences regarding IWA's financial and accounting records and practice and RSD's compliance with GAAP, FASB, or any other inapplicable accounting practices. This will prevent a mini-trial on appropriate accounting standards.

## PROCEDURAL AND FACTUAL HISTORY

### A.    Factual History

Anne Camalier (Plaintiff's successor-in-interest) and Rock Spring II Limited Partnership ("Original Tenant") negotiated the Amended and Restated Ground Lease Indenture dated November 14, 1990 (the "Ground Lease"), for the property located 5650 Rock Spring Drive, Bethesda, Maryland (the "Property"). (*See* Defs.' Stmt. of Material Facts in Supp. of their Mot. for Summ. J. ("SOMF") [Dkt. 410-1 at ¶ 1].) Anne Camalier is part of the Camalier company, and Original Tenant and Plaintiff are both Camalier companies. Neither IWA nor RSD drafted or

negotiated the Ground Lease. (*Id*. ¶¶ 7-8.)

In 2006, Original Tenant refinanced a $30 million loan (the "Loan"), and used the leasehold estate created by the Ground Lease (the "Leasehold Estate") as collateral. To enable the Original Tenant, Plaintiff's affiliate, to obtain financing, Plaintiff executed the Ground Lessor Estoppel and Non-Disturbance Agreement dated June 2, 2006 ("Estoppel Agreement"). (*Id.* ¶ 12.) This agreement estopped Plaintiff from preventing or objecting to future transfers of the Leasehold Estate as long as certain notice requirements were met. (*Id.* ¶¶ 13-14.) Indeed, the Estoppel Agreement expressly states that the lender "agreed to make [the] Loan and accept the security upon the satisfaction of certain conditions, one of which is the execution of [the Estoppel Agreement] by [Plaintiff] and [Original] Tenant." (*Id.* ¶ 12.) The Ground Lease and the Estoppel Agreement gave the lender the absolute right to assign the Ground Lease, and releases any lender that obtains the Property through foreclosure from any future liability under the Ground Lease after assignment. (*Id.* ¶¶ 4, 6, 12, 13 and 14.)

In 2008, Original Tenant's subtenant vacated the Property, and it has been vacant ever since. (*Id.* ¶ 19.) The Original Tenant decided that the Leasehold Estate had no value, and decided to breach its Loan obligations and walk away from the Ground Lease. (*Id.* ¶ 21.) Therefore, approximately six years after the Loan was made, Charles Camalier informed the lender in a one-paragraph letter that Original Tenant was defaulting on the Loan and would not pay the approximately $30 Million then owed. (*Id*.) He further advised that Original Tenant would make no additional rent payments under the Ground Lease, which, he asserted, would extinguish the lender's collateral by operation of law. (*Id*.)

To protect its collateral, the lender, now IWA, elected to foreclose on the Leasehold Estate in an attempt to recoup some of its losses stemming from Plaintiff's affiliate's nonpayment of the

$30 million Loan. (*Id*. ¶ 24.) Through a foreclosure proceeding, the Leasehold Estate was sold on February 28, 2012, to IWA. (*Id*.) The Maryland Circuit Court issued its order confirming and ratifying the sale of the Leasehold Estate to IWA, and the Leasehold Estate was conveyed to IWA pursuant to the Trustee's Deed of Assignment dated August 28, 2012 (the "Trustee's Deed"). (*Id*.) The Trustee's Deed, which was ratified and confirmed by the Maryland Circuit Court more than ten years ago, describes the Leasehold Estate and expressly states it is subject to the Ground Lease and the Estoppel Agreement. Neither the Ground Lease nor the Estoppel Agreement gives the landlord any right or ability to: (i) evaluate the financial documents or accounting practices of any tenant; or (ii) demand that a tenant provide its corporate structure, maintain any certain level of capitalization, or obtain any guarantee for rent payment under the Ground Lease. (*See id*. ¶ 25.) Moreover, both Plaintiff and the Maryland Circuit Court unequivocally confirmed that IWA's finances and accounting practices were in no way relevant when IWA obtained the Leasehold Estate.

On August 31, 2017, pursuant to multiple, explicit contract terms bargained for in exchange for the Loan, IWA assigned the Ground Lease to RSD (the "Assignment"). (*Id*. ¶ 55.) RSD has managed and operated the Leasehold Estate since it was acquired. RSD has met all of its obligations under the Ground Lease since acquiring the Leasehold Estate through the Assignment. Plaintiff nevertheless argues the Assignment should be invalidated because it speculates that RSD may default one day in the future.

### B.     Procedural History

On February 25, 2021, Plaintiff added Transamerica Corporation ("Transamerica") as a party to this case based on a theory that Transamerica is a proper defendant as the parent organization of IWA, and that Transamerica engaged in, and in fact directed, the Assignment. (*See*

4

Mem. In Supp. Of Mot. for Leave to Amend and Joinder [Dkts. 25 and 40 at 1].) On January 13, 2023, Transamerica was dismissed from this lawsuit. [Dkt. 224.]

On December 30, 2022, Plaintiff served a Motion to Compel demanding that IWA supplement its discovery responses to include documents and information bearing on IWA's financial obligations, capacities, and overall financial strength.[1] In part, Plaintiff sought to obtain those documents, including IWA's accounting records, because Plaintiff (i) wanted to confirm that IWA was not defrauding investors, and (ii) sought to understand RSD's source of capitalization, arguing in part that Plaintiff has a right to select a substitute tenant of its choice. RSD's capitalization, however, is not disputed. As Defendants' unrebutted expert, Ian Ratner, has consistently explained, "RSD's financial records show[] that RSD was adequately capitalized at the time of the Assignment and remains adequately capitalized today. (SOMF ¶ 73.)

On January 13, 2023, IWA responded to the Motion to Compel, arguing that IWA's financial information exceeded the bounds of discovery and Fed. R. Civ. P. 26, and further reiterated that, *first*, there has never been a default of the Ground Lease by either IWA or RSD, and thus there were no damages that would make IWA's finances relevant, and *second*, that IWA

---

[1] Specific documents requested by Plaintiff included:

- "All documents reflecting Your balance sheets, general ledger, profit and loss statements, operating budgets, capital expenditure budgets and tax returns." (RFP No. 12);

- "All documents constituting, referencing, reflecting, or regarding the location (i.e., bank accounts) and sources of all funds in connection with the operation, maintenance, and payment of ground rent for the Property." (RFP No. 13);

- "All documents sufficient to identify amounts, sources and payment obligations on any debt in connection with the Property." (RFP No. 14);

- "All documents referencing or reflecting the valuation of Your interest in the Property." (RFP No. 21.)

obtained the Leasehold Estate through a lawful foreclosure that established IWA's ownership of the Leasehold Estate in a validated Trustee's Deed, and Plaintiff did not get to simply rewrite the Ground Lease to afford itself  the right to select and approve a new tenant. Denying Plaintiff's Motion to Compel, the Court agreed that IWA's accounting records and finances are not relevant, especially records that were created years after the Assignment.  At a hearing on February 16, 2023, the Court ruled that IWA's financial records "need not be produced. Period." (2/16/2023 Hr'g Tr. 40:21-22.) The Court's Order denying Plaintiff's Motion to Compel was issued on February 21, 2023. [Dkt. 286].

Although IWA's financial documents, including its assets, balance sheets, and accounting practices and records are not, and never have been a part of this case, RSD has produced its financial documents, including its budgetary information and financial statements through 2022, five years after the Assignment. Defendants' expert, a forensic accountant, has reviewed RSD's financial documents, including RSD's financial statements, and has concluded that RSD was adequately capitalized at the time of the Assignment. (SOMF ¶¶ 73-76.) Plaintiff did not disclose any experts, but Plaintiff instead plans to create confusion based on questions asked in bad faith to Defendants' experts, and other witnesses, about irrelevant and inapplicable accounting methods, *i.e.*, questions about whether RSD complied with an FASB accounting method known as ASC 842. Defendants' expert has already provided unrebutted testimony that the accounting method, ASC 842, is not commonly followed by organizations like RSD and is not applicable to RSD. Specifically, when asked about FASB, Mr. Ratner confirmed that FASB, which includes ASC 842 accounting, is only for GAAP reporters, and that RSD is not a GAAP reporter. (Ratner Dep. 331:6-9, relevant excerpts attached hereto as Exhibit 1.) Moreover, Mr. Ratner conclusively testified that

neither GAAP, nor FASB, nor ASC 842 were applicable to the Ground Lease. (*Id*. at 337:14-338:14.) Plaintiffs did not offer an expert to rebut Mr. Ratner in any regard.

## II.   <u>LEGAL STANDARD</u>

"A motion in limine is a request for guidance by the court regarding an evidentiary question." *Hunt Valley Baptist Church, Inc. v. Baltimore Cty., Md.*, No. CV ELH-17-804, 2018 WL 2717834, at *7 (D. Md. June 6, 2018) (unpublished) (quoting *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)). Pretrial motions in limine seek to exclude prejudicial evidence before it is offered at trial. *Changzhou Kaidi Elec. Co., Ltd. v. Okin Am., Inc*., 102 F. Supp. 3d 740, 745 (D. Md. 2015) (citing *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). They also help to streamline a case by allowing the Court to avoid "lengthy argument at, or interruption of, the trial." *Banque Hypothecaire Du Canton De Geneve v. Union Mines, Inc*., 652 F. Supp. 1400, 1401 (D. - Md. 1987); *see also Changzhou Kaidi*, 102 F. Supp. 3d at 745 (Motions in limine "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.") (quoting *Louzon v. Ford Motor Co*., 718 F.3d 556, 561 (6th Cir. 2013)). Motions in limine further promote judicial efficiency by preserving the issues raised for appeal and eliminating the need for parties to renew their objections at trial, "just so long as the movant has clearly identified the ruling sought and the trial court has ruled upon it." *United States v. Williams*, 81 F.3d 1321, 1325 (4th Cir. 1996); *see* Fed. R. Evid. 103(a); *cf*. R. 103(a) advisory committee's note to 2000 amendment (acknowledging that Rule 103(a) "applies to all rulings on evidence . . . including so-called '*in limine*' rulings").

"District courts may grant motions in limine pursuant to their inherent authority to manage trials. *Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc*.,, No 19-1312-PJM, 2024 WL 1640997, at *3 (D. Md. Apr. 16, 2024) (citing *United States v. Verges*, No. 1:13cr222 (JCC), 2014 U.S. Dist. LEXIS 17969, at *5 (E.D. Va. Feb. 12, 2014) (citing *Luce*, 469 U.S. at 41 n.4).

4872-6139-3874.v1

Ultimately, rulings on these motions fall within the Court's "broad discretion." *Kauffman v. Park Place Hosp. Grp.*, 468 F. App'x 220, 222 (4th Cir. 2012); *see also United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010) (noting that evidentiary rulings fall within a trial court's discretion).

## III.   ARGUMENT

### A.    The Court Has Already Ruled That's IWA's Financial Records Are Not Relevant.

Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. And so, evidence is relevant only if it logically relates to matters that are at issue in the case. *See United States v. Mosby*, 626 F. Supp. 847, 856 (D. Md. 2022) (citing *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008). "Moreover, the party seeking to introduce evidence bears the burden of establishing relevancy." *Id.* (citing *Dowling v. United States*, 493 U.S. 342, 351 n.3 (1990). Fed. R. Evid. 403 also allows the Court to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403.

This Court has held that IWA's financial information, including its balance sheets, general ledger, profit and loss statements, operating budgets, capital expenditure budgets and tax returns, is not relevant. Since the Court's ruling, Plaintiff has not offered any reason why IWA's financial information is relevant here. It has not, for example, ever argued that IWA was insolvent at the time of the Assignment. As such, there remains no reason to elicit any testimony, cross examine any witnesses, or ask the judge or jury to infer any findings with respect to a category of documents and accounting principles that were not a part of this case through discovery. Indeed, there is no reason to refer to IWA's financial information in any way for any purpose at trial, and Defendants

8

seek an order to confirm its exclusion.

**B.**      **Questions and Suggestions Regarding Inapplicable Accounting Practices are Prejudicial and There is No Good Faith Basis for Asserting GAAP or FASB Requirements.**

Plaintiff had an opportunity to retain its own financial expert to rebut the expert report of Ian Ratner, but elected not to do so. Now, Plaintiff seeks to discredit Mr. Ratner's accounting analysis by asking questions lacking any legitimate premise about accounting methods that do not apply to RSD's financial statements. Mr. Ratner testified in no uncertain terms that FASB is a GAAP accounting standard, and that RSD is not a GAAP reporter. There is no evidence in the record to the contrary, and the record is clear that GAAP and FASB would not have been a proper accounting methodology for RSD to use. Accordingly, any line of questioning based on GAAP or FASB is not relevant, and any attempt by Plaintiff to question Mr. Ratner's opinions through such questioning would be in bad faith and would be improper because no witness would be able to lay the foundation for such questioning on Plaintiff's behalf.

Accordingly, Defendants seek an order precluding any introduction of evidence or questioning of witnesses regarding GAAP or FASB principles, including the ASC 842 accounting method. The  unrebutted expert testimony is that the aforementioned accounting principles do not apply to RSD.

### IV.      <u>CONCLUSION</u>

For the reasons stated above, the issue as to the relevance and admissibility of IWA's financial information has already been ruled upon by this Court, and therefore any attempt to produce evidence, elicit testimony, or attempt to create or seek any inferences, about IWA's past, present, or future financial records should be precluded. Accordingly, Defendants respectfully request that the Court enter an Order *in limine* precluding Plaintiff, its counsel, and any witnesses

from mentioning, commenting upon, or placing before the Court or the jury, any evidence concerning IWA's financial information. Similarly, neither GAAP or FASB, including the ASC 842 accounting method, are relevant to RSD and any evidence, testimony, or inferences regarding the same should be excluded.

A proposed order is attached.

Respectfully submitted,

ARNALL GOLDEN GREGORY, LLP

*/s/ Rebecca A. Davis*
Rebecca A. Davis
Maryland USDC Bar No. 23183
Rebecca.Davis@agg.com
Jennifer Shelfer
GA Bar No. 557213 (*pro hac vice*)
Jennifer.Shelfer@agg.com
171 17th Street, Suite 2100
Atlanta, Georgia 30363
Telephone: (404) 873-8768
Facsimile: (404) 873-8769

SEYFARTH SHAW LLP
William B. Hill, Jr.
GA Bar No. 354725 (*pro hac vice*)
WBHill@seyfarth.com
1075 Peachtree Street, Suite 2500
Atlanta, Georgia 30309
Telephone: (404) 704-9655
Facsimile: (404) 724-1608
*Counsel for Defendant Investors Warranty of America, LLC*

/s/ *Sara E. Kropf*
Sara E. Kropf (Bar No. 26818)
Rebecca Guiterman (*pro hac vice*)
Kropf Moseley PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
(202) 627-6900
sara@kmlawfirm.com
*Attorney for Rock Springs Drive LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of July 2024, the foregoing motion was served

through the court's electronic filing system on all counsel of record.

/s/ *Rebecca A. Davis*
Rebecca A. Davis

11

4872-6139-3874.v1