# EXHIBIT A

```
                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
                           GREENBELT DIVISION


_____
                                         )
ROCK SPRING PLAZA II, LLC,               )
                                         )
       Plaintiff,                        )
                                         )DOCKET NO.
            vs.                          )8:20-cv-1502
                                         )
INVESTORS WARRANTY OF AMERICA, LLC,      )
ET AL.,                                  )
                                         )
       Defendants.                       )
_____)

                   TRANSCRIPT OF MOTIONS HEARING
              BEFORE THE HONORABLE PETER J. MESSITTE
                UNITED STATES DISTRICT COURT JUDGE
                 THURSDAY, JULY 18, 2024 AT 1:30 P.M.
APPEARANCES:

On Behalf of the Plaintiff:
        WILLIAM M. BOSCH, ESQ.
        ANTHONY F. CAVANAUGH, ESQ.
        NICOLE STEINBERG, ESQ.
        PILLSBURY WINTHROP SHAW PITTMAN LLP
        1200 17th St NW
        Washington, DC 20036

On Behalf of the Defendant Investors Warranty of America:
        REBECCA ALLISON DAVIS, ESQ.
        JENNIFER L. SHELFER, ESQ.
        ARNALL GOLDEN GREGORY LLP
        171 17th St NW, Suite 2100
        Atlanta, GA 30363

On Behalf of the Defendant Rock Springs Drive, LLC:
        SARA KROPF, ESQ.
        REBECCA GUITERMAN, ESQ.
        KROPF MOSELEY PLLC
        1100 H Street NW, Suite 1220
        Washington, DC 20005

PRESENT VIA TELEPHONE:  Troy Taylor and Paul Rubin

   KATHY CORTOPASSI, RDR, CRR, CRC, Official Court Reporter
        United States District Court, Greenbelt, Maryland

      ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***
```

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CERTIFICATE OF OFFICIAL REPORTER

I, Kathy Cortopassi, RDR, CRR, CRC, Federal Official Court Reporter, in and for the United States District Court for the District of Maryland, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this the 21st day of July, 2024.

/s/ Kathy Cortopassi
Kathy Cortopassi, RDR, CRR, CRC
U.S. Official Court Reporter

1  end of inquiry?  That's it?
2           MS. SHELFER:  Yes, Your Honor. End of inquiry.
3           THE COURT:  Is that your theory, though?
4           MS. SHELFER:  That's what the case law holds on the
5  concept of ratification.
6           THE COURT:  I don't know that the case law holds
7  that.  I mean, that flies in the face of everything I've ever
8  learned or done.  It's just, "We're assigning and you can't
9  even think about it."
10          MS. SHELFER:  And I know that we've had
11 disagreements over the merits of this case, Your Honor, and
12 other cases.  I'm telling you that the case law that we've
13 cited in our papers says that for ratification to occur, the
14 only material knowledge is knowledge of the assignment.
15          They received knowledge of the assignment and the
16 identity of the assignee.  They received information within
17 the time that the contract required it.  The law says
18 subsequent conduct can be ratification in that instance.
19          THE COURT:  Well, we need to talk about this.  But
20 because maybe this is not too early an occasion.  There are
21 issues that will go to the jury in this case.
22          MS. SHELFER:  Yes, Your Honor.
23          THE COURT:  But you will not be able to say -- and
24 I need counsel's full attention on this -- you are not going
25 to be able to go to the jury and say:  The law is that all

1 they need is to get notice.
2          I will instruct on the law and you will not.  And
3 you'll have to take my instructions as they come.
4          So, you need to keep that in mind when you say "the
5 law is."  You're trying to convince me now at the summary
6 judgment stage that I should rule one way or another.  But
7 bear in mind you will not argue to the jury, "the law says
8 this" if it isn't part of my instruction.  Just keep that in
9 mind when you insist that your law says this.
10          MS. SHELFER:  I absolutely understand your role.
11          THE COURT:  I have more to add on this.
12          When we talk about the traditional equitable
13 issues, whether we're talking about equitable estoppel,
14 laches, and so on, ultimately the jury doesn't say "we find
15 laches here and therefore we find in favor of the defendant."
16          They make factual findings.  But the Court in the
17 end says:  Based on the factual findings, there will be
18 either a determination of laches, which is a Court's call, or
19 equitable estoppel, which is a Court's call, and so on.  You
20 need to understand that, as well.
21          Even though there are equitable defenses, the jury
22 doesn't put the fine point on it at the end; it's the Court
23 that does.  Presumably, respectful of the jury's verdict,
24 which I think will probably cover most of our issues.
25          So, go ahead.  I just want -- it's a good occasion,

1      MS. DAVIS:  Your Honor, may I finish where I'm
2 going with this?  I would like to show you their discovery
3 responses to this.
4      THE COURT:  Let him answer.  You're taking me by
5 surprise, candidly.  We are at the doom's door right now, and
6 you're raising such a fundamental issue it takes me by
7 surprise.
8      Now, I even asked you at the beginning of the case,
9 is there something you want me to know about preliminarily?
10 And now you're saying, well, in fact, there's some issue
11 about whether these folks have standing to be here.  Why did
12 I waste all my time with argument today and all these many
13 months if you think these folks don't belong in court?
14      MS. DAVIS:  We filed the motion to compel for the
15 information.  I have the discovery responses here.
16      THE COURT:  Let me hear what he says first.
17      MS. DAVIS:  And it was part of my brief.
18      THE COURT:  Step back.  Hold on.  Let me hear what
19 he says.
20      MR. BOSCH:  If we're going to reopen discovery,
21 there's a lot --
22      THE COURT:  ==We are not reopening discovery==.  Let me
23 hear what you say.
24      MR. BOSCH:  IWA points to no evidence that any
25 party other than Plaza owns the property, and there is no

1          THE COURT:  Well, also the de facto situation that
2  they acted and then accepted -- for folks who like to talk
3  about ratification -- for the last several years as the
4  landlord.
5          MS. DAVIS:  That does not establish standing.  It
6  is plaintiff's burden to establish standing.  And standing
7  can be raised at any time.
8          But our point -- our point is they cannot argue
9  impairment if they don't own it.  If they have sold it --
10         THE COURT:  If they show those documents, how do
11 you respond?  Why is that prima facie evidence of ownership?
12         Assuming they put them in evidence, what are you
13 going to do?  Say they haven't proven their case?  Because
14 I'm telling you the extreme high likelihood is they have.
15         And I'm just wondering why you're doing this at
16 this stage, Ms. Davis.  It really troubles me.  I'm holding
17 back on some of my adjectives here because there's a
18 gamesmanship going on here that just baffles me.
19         All they have to do is put in one document and
20 suggest that they've been acting de facto as landlord for a
21 period of time, and that's a prima facie showing.  What do
22 you have in response?  What do you have in response?
23         MS. DAVIS:  Your Honor, it is relevant.
24         There is no de facto showing.  They refused to
25 answer questions on it.  They have refused.  Absolutely

1  refused.
2           Mr. Bosch's argument is not evidence that they have
3  owned the property since 2017.  Or 2020, apologies.
4           THE COURT:  So, what do you expect to get?
5           MS. DAVIS:  If they don't own it, they can't argue
6  impairment.
7           THE COURT:  What do you expect them to show?  What
8  do you think they have to show to demonstrate ownership?
9           MS. DAVIS:  If he will testify that they do, in
10 fact, own it, that ownership hasn't changed, that's all we
11 would have needed in the deposition.  That's all we would
12 have needed in the discovery requests.  It's Exhibit 1 with
13 the brief.  That's all we would have needed.
14          THE COURT:  All right.
15          I don't need to decide this.  When the evidence
16 comes in that I've suggested, extreme high likelihood is they
17 will have made their case.  And if you cannot rebut it, then
18 I'm going to question your good faith in raising it.  I'm
19 telling you that right now.
20          ==This is as troublesome an argument on the eve of==
21 ==trial as I think I've heard in years==.
22          Get into your motion and start arguing it.
23          MS. DAVIS:  Your Honor, we are on invalid wrongful
24 assignment.  We have reviewed cases on that, attempted to
25 find cases on that.