# EXHIBIT B

Case 8:20-cv-01502-PJM   Document 493-2   Filed 07/29/24   Page 2 of 15
30(b)(6) Rock Spring Plaza II, LLC                               March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 1

```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
                     CIVIL DIVISION
          Civil Action No:  8:20-cv-01502-PJM


    ROCK SPRING PLAZA II, LLC,

              Plaintiff,

    vs.

    INVESTORS WARRANTY OF AMERICA, LLC,
    et al.,
              Defendants.
    _____


       VOLUME I - 30(b)(6) VIDEOTAPE DEPOSITION OF
                ROCK SPRING PLAZA II, LLC,
                 CHARLES A. CAMALIER, III



                Tuesday, March 21, 2023
                 8:55 a.m. to 5:48 p.m.



              Stenographically reported by:
                  Shauna T. Dietel, RPR
              Registered Professional Reporter
```

Page 390

1                    CERTIFICATE OF OATH
2
3
4    STATE OF FLORIDA
5
6    COUNTY OF COLLIER
7
8
9           I, Shauna T. Dietel, Registered
10   Professional Reporter, Notary Public, State of
11   Florida, certify that CHARLES CAMALIER, III,
12   personally appeared before me on the 21st day of
13   March, 2023, and was duly sworn.
14
15          Signed this 7th day of April, 2023.
16
17
18
19
20   *[signature: Shauna Dietel]*
21
22                    _____
                      Shauna T. Dietel, RPR
23                    Notary Public, State of Florida
                      Commission No: HH 146740
24                    Commission Expires: June 28, 2025
25

Page 391

CERTIFICATE OF REPORTER

STATE OF FLORIDA

COUNTY OF COLLIER

     I, Shauna T. Dietel, Registered Professional Reporter, certify that I was authorized to and did stenographically report the deposition of CHARLES CAMALIER, III, pages 1 through 389; that a review of the transcript was requested; and that the transcript is a true record of my stenographic notes.

     I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

I *[signature: Shauna Dietel]* 23.

_____
Shauna T. Dietel, RPR
Registered Professional Reporter

1    Camalier was involved as well, or was that with the
2    ground lease?
3        A    That was with the ground lease.
4        Q    Who else was involved in the negotiation
5    and execution of the estoppel agreement for the
6    plaintiff?
7        A    Just myself.
8        Q    All right.  Okay.  So we were looking at
9    Section 12 of the estoppel agreement.  All right?
10            Do you have that in front of you?
11       A    Yes, I do.
12       Q    Okay.  And are you prepared today to
13   testify as the corporate representative about the
14   plaintiff's understanding -- not legal
15   interpretation, but understanding -- of what Section
16   12 means?
17            MR. BOSCH:  That's -- show me the scope.
18   Which is the notice provision?
19            MS. KROPF:  So we've -- we don't need to
20   take time -- more time on the record, but, Bill --
21   Mr. Bosch, the topic was negotiation and execution of
22   the estoppel agreement.
23            Your response was a lot of objections, and
24   then said, "Plaintiff is willing to designate a
25   witness to testify on Plaintiff's behalf regarding

1    the provisions of the estoppel agreement pertaining
2    to the assignment."
3            MR. BOSCH:  Right.  Yes.  And Mr. Camalier
4    is prepared to testify on the negotiation and
5    drafting of the provisions of the ground lease and of
6    the estoppel agreement regarding the assignment.  But
7    now you're going beyond that.
8            MS. KROPF:  I'm -- I'm -- I'm looking at
9    the objection you served and yours -- your objection
10   does not say regarding the negotiation and execution
11   of the provisions of the estoppel agreement
12   pertaining to the assignment.
13           It says you will have a witness here to
14   testify, quote, "on Plaintiff's behalf regarding the
15   provisions of the estoppel agreement pertaining to
16   the assignment."
17           MR. BOSCH:  Are you saying that our
18   objections expand the scope of your notice,
19   Ms. Kropf?
20           MS. KROPF:  I'm not going to have a legal
21   argument.  Are you going to instruct him not to
22   answer if I ask him about Plaintiff's understanding
23   of Section 12 of the estoppel agreement?
24           MR. BOSCH:  I'm -- I'm asking you to show
25   me where in the notice you had asked for a witness to

Case 8:20-cv-01502-PJM Document 493-2 Filed 07/29/24 Page 7 of 15
30(b)(6) Rock Spring Plaza II, LLC                                    March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 56

1  be prepared to testify as to Plaintiff's
2  understanding of the provisions of the ground lease
3  or the --
4           MS. KROPF:  If you --
5           MR. BOSCH:  Ms. Kropf --
6           -- or the estoppel agreement.  Can you show
7  me where in the notice?
8           MS. KROPF:  I'm not going to have -- if
9  you're going to instruct him not to answer, let's
10 just move on.  We can go to the Court later, and we
11 can move to compel on it.
12          MR. BOSCH:  I'm not --
13          MS. KROPF:  My view is --
14          MR. BOSCH:  -- instruct- -- I'm not --
15          MS. KROPF:  -- Mr. Bosch, is that Subject
16 Matter 2 was broad.  It said negotiation and
17 execution of the estoppel agreement.
18          You tried to narrow it by saying you'd have
19 a -- here -- a witness here to testify on Plaintiff's
20 behalf regarding the provisions of the estoppel
21 agreement pertaining to the assignment.
22          What you said is not limited to
23 negotiations and execution of the estoppel agreement.
24 It is only about the provisions of the estoppel
25 agreement retain -- pertaining to the assignment.

 1              If you are not prepared to have a witness
 2     testify on that, we can disagree about what your
 3     objection means, and we can go to the Court later
 4     about it.  If he's not prepared, then he's not
 5     prepared.  Let's just get it on the record and move
 6     on.
 7         Q    (BY MS. KROPF)  Okay.  So, Mr. Camalier,
 8     what was the plaintiff's understanding of the
 9     provision in Section 12 that says, sort of in the
10     middle there, ". . .upon acquisition of the leasehold
11     estate by a deed or other transfer in lieu of
12     foreclosure, Lender may, without further consent of
13     Landlord, sell and assign the leasehold estate in the
14     Premises"?
15              MR. BOSCH:  Objection to form.  I'm going
16     to instruct you not to answer, Mr. Camalier.  It's
17     beyond the scope, and it's improper discovery,
18     consistent with the defendant's, IWA's, statement.
19         Q    (BY MS. KROPF)  Mr. Camalier, looking at
20     Section 12 of the estoppel agreement, what is
21     Plaintiff's understanding of the next sentence that
22     says, "Lender shall notify Landlord in writing of
23     such sale or assignment within 10 days of such sale
24     or assignment"?
25              MR. BOSCH:  Objection.  I'm going to

1    limitations on assignments in the ground lease?
2           MR. BOSCH:  Objection to form.
3       A   Yes.
4       Q   (BY MS. KROPF)  Okay.  And how does -- how
5    does Section 19 create a limitation on assignments of
6    the ground lease?
7           MR. BOSCH:  Objection to form.
8       A   There's a restriction that any assignment
9    or sublease has to be to a third party, and the
10   assignor cannot be released from liability unless the
11   assignee is willing to and can perform the
12   obligations required under the ground lease.
13      Q   (BY MS. KROPF) Okay.  Let's unpack those a
14   little bit.  You said there were -- the first
15   limitation was that the assignment has to be to a
16   third party; is that right?
17      A   Correct.
18      Q   Is "third party" defined in the estoppel
19   agreement?
20          MR. BOSCH:  Objection to form.
21      A   I don't recall.
22      Q   (BY MS. KROPF)  You can take a look through
23   it, if you want.
24          MS. KROPF:  Why don't we go off the record.
25          THE VIDEOGRAPHER:  Going off the record.

Page 62

```
 1    "someone unrelated to the assignor"?  What provisions
 2    of the estoppel agreement does that understanding
 3    come from?
 4         A    I think in Section 19, Section 12.  I think
 5    when you read them in the entirety, it's clear that
 6    "third party" means an unrelated third party --
 7         Q    Okay.
 8         A    -- to the assignor.
 9         Q    Where in Section 19 is there any language
10    that the third party must be unrelated to the
11    assignor?
12         A    I think it's common knowledge that when you
13    talk about a third party, it would mean someone
14    unrelated.
15         Q    Okay.  Where does that -- when you say
16    "common knowledge," where does that common knowledge
17    come from?
18         A    That's just my understanding of what third
19    party means.
20         Q    Okay.  All right.  And what does
21    "unrelated" mean?
22         A    Well, in this case, the assignee was owned
23    98 percent by the assignor, so -- furthermore, the --
24    the other partner had no financial obligations in the
25    assignee, which is RSD.  So I certainly think that
```

Case 8:20-cv-01502-PJM Document 493-2 Filed 07/29/24 Page 11 of 15
30(b)(6) Rock Spring Plaza II, LLC                     March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 63

```
 1    you can't say RSD is a third party to IWA.
 2         Q    Okay.  And looking at -- at Section 19, is
 3    there any provision there that the third -- that the
 4    assignor cannot have an ownership interest in the
 5    assignee?
 6              MR. BOSCH:  Objection to form.
 7         A    It says it has to be a third party.
 8         Q    (BY MS. KROPF)  Section 19 doesn't say
 9    anything about the assignor cannot have any ownership
10    interest in the assignee, does it?
11              MR. BOSCH:  Objection to form.
12         A    If they want to assign or sublease, it has
13    to be to a third party.
14         Q    (BY MS. KROPF)  That wasn't my question.
15              My question was whether or not Section 19
16    of the estoppel agreement says anything about the
17    assignor cannot have an ownership interest in the
18    assignee?
19              MR. BOSCH:  Objection to form.  Asked and
20    answered.
21         Q    (BY MS. KROPF)  Does it?
22         A    I think it cannot -- under that clause that
23    you referred to, it cannot be deemed to be an
24    assignment to a third party where the assignor owns
25    98 percent of that entity.
```

Page 64

```
 1        Q    Well, does Section 19 -- 19 say something
 2   about 98 percent ownership?
 3             MR. BOSCH:  Objection to form.
 4        A    It says "third party."
 5        Q    (BY MS. KROPF)  All right.  The -- the
 6   other reason you said was, The assignment does not --
 7   the assignor is not released from liability unless
 8   the assignee is willing to and can perform the
 9   obligations under the ground lease.
10             Was that your testimony?
11        A    I don't know if that was my exact
12   testimony, but I did answer your question earlier.
13        Q    Okay.  Well, let me re-ask it.  When is the
14   assignor released from liability after an assignment,
15   under Section 19 of the estoppel agreement?
16             MR. BOSCH:  Objection to form.
17        A    Well, there are multiple parts to it, but
18   to be released from liability, the assignee has to be
19   able to assume and -- the obligations, and to be
20   financially capable of performing those obligations.
21        Q    (BY MS. KROPF)  Okay.  You said that the
22   assignee must be able to assume the obligations.
23             Where is that contained in Section 19?
24             MR. BOSCH:  Objection to form.
25        A    I believe that's what it says.
```

1     understand the facts in support of Plaintiff's claim
2     that the assignment was a fraudulent conveyance.  All
3     right?
4            A     Yes.
5            Q     Are those facts contained in the complaint,
6     or have you learned more during discovery?
7            A     Again, we're in the process of discovery,
8     and we are, as I understand, learning more and more
9     about the fraudulent conveyance as we conduct
10    discovery.  So, again, I may not know all the facts
11    concerning the allegation, but I know a large number.
12           Q     Okay.  All right.
13           A     But, again, I may -- I -- I don't recall
14    all of them because, again, discovery's still ongoing
15    and, again, I can help with the list, but again, I
16    may forget something.  But -- but I will -- if you
17    want me to pursue that answer, I will go through
18    that.
19           Q     Let's talk about the facts that Plaintiff
20    has in support of its claim that this is a fraudulent
21    conveyance.  Could you give us one fact that supports
22    Plaintiff's claim that this is a fraudulent
23    conveyance?
24           A     Yes.  The lack of commercial activity at
25    the property after the assignment; the fact that the

Case 8:20-cv-01502-PJM   Document 493-2   Filed 07/20/24   Page 14 of 15
30(b)(6) Rock Spring Plaza II, LLC                          March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 341

1  assignor assigned a vacant building to an entity that
2  was created a full -- few days before the alleged
3  conveyance; and the fact that, one, the owners, the
4  principals of that assignee have never been revealed
5  to us and have been hidden from us; two, the fact
6  that there was no assignment recorded in the land
7  records of Montgomery County; three, the lack of
8  consideration in the assignment from the assignor to
9  the assignee.
10             Let me see what else.
11             The fact that the assignee was not well
12 capitalized and their -- that the assignee was made
13 up of a 90 (sic) percent ownership interest by the
14 assignor; that the assignor put a cap on how much
15 money it was obligated to contribute to the -- to
16 RSD; that there was no requirement of the other 2
17 percent partner to make any contribution to the
18 assignee RSD.
19             Furthermore, that IWA controlled,
20 completely, the new entity because IWA could acquire
21 the 2 percent interest that was held by the other
22 partner for basically nominal consideration.  The
23 fact that they didn't retain any brokers on an
24 exclusive basis; the fact that they would not enter
25 into any negotiations with any potential subtenants

Case 8:20-cv-01502-PJM   Document 493-2   Filed 07/29/24   Page 15 of 15
30(b)(6) Rock Spring Plaza II, LLC                                       March 21, 2023
Rock Spring Plaza II, LLC v. Investors Warranty of America, LLC

Page 342

1    of the property.
2          All these factors are an indication to us
3    that a fraudulent conveyance took place.  There may
4    be others that I am not recalling at the present
5    time, and there may be other evidence presented as we
6    complete our discovery.
7        Q    Okay.  Any others that you can think of
8    here today as the corporate representative for
9    Plaintiff on the facts in support of Plaintiff's
10   claim that the assignment was a fraudulent
11   conveyance?
12       A    Those are the ones that come to mind now.
13   There may be others that I'm not recalling.
14       Q    Okay.  One of the reasons you gave was that
15   there was a lack of consideration.  What did you mean
16   by that?
17       A    I don't believe there's any payment made by
18   the assignee to the assignor for the assignment of
19   the ground lease.
20       Q    And is that the only way consideration can
21   happen, is by a payment of -- of cash?
22            MR. BOSCH:  Objection to form.
23       A    That's normally how it's done.
24       Q    (BY MS. KROPF)  Okay.  Is that the only way
25   it has to be done?